THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail:    sgt@tidricklaw.com
E-mail:    jby@tidricklaw.com

Attorneys for Individual and Representative
Plaintiff JANE ROE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC; and DOES 1-200,<br><br>Defendants. | Civil Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br>**(1) FAIR LABOR STANDARDS ACT;**<br>**(2) CALIFORNIA LABOR CODE;**<br>**(3) SAN FRANCISCO ADMINISTRATIVE CODE;**<br>**(4) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS; and**<br>**(5) CALIFORNIA'S UNFAIR COMPETITION ACT, BUS. & PROF. CODE §§ 17200 *et seq.***<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Roe ("Plaintiff"), on behalf of herself and all others similarly situated,

and all others who consent to become party Plaintiff , allege as follows:

## I.    NATURE OF THE CASE

1.    Plaintiff formerly worked for SFBSC Management, LLC ("Defendant") as an

exotic dancer.  She seeks to represent a class consisting of all individuals who, during the

relevant time period, worked as exotic dancers at night clubs in California that Defendant

operated, controlled, and where Defendant dictated employment policies.  All class members

were denied their fundamental rights under applicable state and federal wage and hour laws in

a similar and common way.  Specifically, Plaintiff complains that Defendant misclassified

1

Plaintiff and all other class members as independent contractors, as opposed to employees, at all times in which they worked as exotic dancers at any of Defendant's Nightclubs located in California.  As a result, Defendant failed to pay Plaintiff and all other class members the minimum wages and other benefits to which they were entitled under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, California Labor Code, California Industrial Welfare Commission Wage Order 4-2001 ("Wage Order No. 4"), and the San Francisco Minimum Wage Ordinance ("SFMWO").  Additionally, Defendant engaged in unlawful tip-splitting by requiring dancers to split and share gratuities given to them by patrons with the Nightclubs and other workers, such as managers, doormen, and DJs.  Plaintiff therefore brings this class action seeking damages, back pay, restitution, liquidated damages, applicable civil penalties, prejudgment interest, reasonable attorneys' fees and costs, declaratory and injunctive relief, and all other relief that the Court deems just, reasonable, and equitable.

## II.  JURISDICTION AND VENUE

2.       The FLSA authorizes private rights of action to recover damages for violations of the FLSA's wage and hour provisions.  29 U.S.C. § 216(b).  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the California state law claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution.

3.       Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because all of the actions alleged herein occurred within the Northern District of California.

4.       <u>Intradistrict Assignment</u>. The events set forth in this Complaint occurred within the County of San Francisco, and it is therefore properly assigned to the San Francisco or Oakland division of this Court pursuant to Civil Local Rule 3-2(c) and (d).

## III.  PARTIES

5.       Plaintiff Jane Roe ("Roe") is a resident of Alameda County.  Roe worked as an exotic dancer for Defendant at the Condor Gentlemen's Club and Gold Club in San Francisco, California during the Class Period and is a member of the Class.  Like other Class members,

when Roe worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below.  Roe sues on her own behalf, and as class representative on behalf of similarly situated individuals who are or were employed by Defendant within the applicable statute of limitations period.  Plaintiff sues under a fictitious name, Jane Roe, due to the highly sensitive and personal nature of the details about Plaintiff in this action.  A true and correct copy of an executed "Consent to Become Party Plaintiff" is attached hereto as **Exhibit A**, which has been redacted in order to protect Plaintiff's privacy.  Plaintiff will file additional Consent to Become Party Plaintiff documents executed by similarly situated individuals as they are secured.

6.    Defendant SFBSC MANAGEMENT, LLC maintains ownership, recruitment, and/or operational interests in various nightclubs featuring nude or semi-nude dancing in California, including but not limited to nightclubs doing business as HUNGRY I, CENTERFOLDS, ROARING 20'S, GARDEN OF EDEN, LARRY FLYNT'S HUSTLER CLUB, LITTLE DARLINGS, GOLD CLUB, MARKET STREET CINEMA, NEW CENTURY, SHOWGIRLS, and CONDOR GENTLEMEN'S CLUB (collectively, the "Nightclubs").

7.    The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as DOES are unknown to Plaintiff at this time and therefore said Defendants are sued by such fictitious names.  Plaintiff will amend this Complaint to show their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a DOE defendant is legally responsible in some manner for the events and happenings herein alleged and in such manner proximately caused damages to Plaintiff as hereinafter further alleged.

8.    Plaintiff is informed and believes and thereon alleges that each of the Defendants was acting as the agent, employee, partner, or servant of each of the remaining Defendants and was acting within the course and scope of that relationship, and gave consent

COLLECTIVE AND CLASS ACTION COMPLAINT

to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

9.      On information and belief, Plaintiff anticipates naming, and possibly substituting, additional business entities or individuals because Defendant operates local nightclubs, while maintaining shell corporations and/or sham agreements to create the appearance that it does not have ownership and/or control of the Nightclubs.

## IV.      GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

10.     Each of the Nightclubs delegates its senior management functions to Defendant, including functions that affect the employment status, classification, and treatment of dancers. While each Nightclub has a distinct business location where it operated and conducted business with the public, nevertheless each Nightclub allows employees, executives, and officers of Defendant to make corporate decisions and executed contractual agreements and legal documents on behalf of the Nightclubs. Moreover, the Nightclubs share certain officers, directors, and employees with Defendant and act at their behest with regard to material matters pertinent to the dancer's work at the Nightclubs.

11.     At all relevant times Defendant jointly employed all exotic dancers working in the Nightclubs, managed, directed and controlled the dancers in each Nightclub, including but not limited to the decisions: (1) to misclassify dancers as independent contractors, as opposed to employees; (2) to require that dancers split their table dance tips with Nightclubs; (3) to require that dancers further split their table dance tips with Nightclubs' managers, doormen, floor walkers, DJs and other workers who do not usually receive tips, by paying "tip-outs;" (4) to not pay any dancers any wages; (5) to demand improper and unlawful payments from class members; (6) to adopt and implement employment policies which violate the FLSA, California Labor Code, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), Non-California State Law Claims and/or (7) to threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee.  Defendant and its principals created the common business model employed at each Nightclub regarding dancer classification and tip splitting and require that it continue to be employed.

12.     Defendant has agreed and conspired with others to unlawfully: (1) misclassify

dancers as independent contractors, as opposed to employees at each Nightclub; (2) require that dancers split their table dance tips with Defendant's managers, doormen, floor walkers, DJs and other workers who do not usually receive tips, by paying "tip-outs;" (4) not pay any dancers any wages at each Nightclub; (5) demand improper and unlawful payments from class members; (6) adopt and implement employment policies which violate the FLSA, California Labor Code, UCL, SFMWO, and/or other laws; and/or (7) threaten retaliation against any dancer attempting to assert their statutory rights to be recognized as an employee. The unlawful agreements in the enterprise were entered into in California as part of a strategy to maximize their revenues and profits by disregarding applicable wage and hour laws and engaging in the other unlawful conduct described. The agreements were made at the time the Nightclubs were formed and/or entered into agreement with Defendant for management services and direction.

13. At all relevant times, Defendant has owned and operated nightclub businesses (the Nightclubs) engaged in interstate commerce and utilizing goods that have moved in interstate commerce. For example, goods sold at the Nightclubs are moved in interstate commerce. Defendant owns, manages and/or controls the business operations at numerous Nightclubs. During the relevant time period, the annual gross revenues of Defendant exceeded $500,000 per year.

14. By reason of the foregoing, Defendant, along with the Nightclubs and the persons who directly and indirectly hold ownership interest in those entities, were at all relevant times enterprises engaged in commerce as defined in 29 U.S.C. §203(r) and §203(s). Defendant, the Nightclubs, and their owners constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose. At relevant times, Plaintiff was jointly employed by Defendant's enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

15. Defendant controls the adult entertainment industry in the San Francisco area, inasmuch as it operates approximately 11 of the 17 adult nightclubs in the City, and operates all but one of the large nightclubs. Further, because Defendant has increasing control of this

industry in San Francisco, and because of the concomitantly diminishing alternatives that exotic dancers have for such work, Defendant has the economic power to prohibit dancers from engaging in collective bargaining – or from bargaining at all – and requires dancers to work under illegal and unconscionable terms.

16.     The FLSA, California Labor Code, and SFMWO applied to the Class during the period they worked at the Nightclubs. No exceptions to the application of the FLSA, the California Labor Code, and/or the SFMWO apply to Plaintiff and the Class. The exotic dancing preformed by Class members while working at the Nightclubs does not require invention, imagination or talent in a recognized field of artistic endeavor, and Class members have never been compensated by Defendant on a set salary, wage, or fee basis. Rather, Class members' sole source of income while working at the Nightclubs have been tips given to them by patrons (*i.e.*, table dance tips and stage dance tips).

17.     At relevant times, Plaintiff and class members, defined below, were employees of Defendant under the FLSA, the California Labor Code, and SFMWO, but were misclassified. During the relevant time period over 500 different people have worked as exotic dancers at the Nightclubs without being paid any minimum wages while also being denied the rights and benefits of an employee. Each Nightclub averages 30-40 class members working on any given day.

18.     At relevant times, Defendant has been the employer of Plaintiff and each class member, as defined below, under the FLSA, the California Labor Code, and SFMWO. Defendant suffered or permitted class members to work.  Defendant directly or indirectly employed and exercised significant control over the wages, hours, and working conditions of class members.

19.     At all relevant times, Defendant has been a joint employer of Plaintiff and class members (and/or each subclass member) under the FLSA, the California Labor Code, and SFMWO.  Plaintiff's and class members' employment for Defendant is not completely disassociated from their employment by others.  Defendant does not act entirely independent of others and is not completely dissociated with respect to the employment of Plaintiff and the

6

class members.  Defendant maintains significant control over Plaintiff and other class members while working at the Nightclubs.  Defendant plays significant roles in establishing, maintaining, and directing the employment policies that are to be applied to class members while working at the Nightclubs. Defendant benefits financially from the work that class members perform while working at the Nightclubs.  Additionally, joint employers act directly or indirectly in the interest in relation to any supervision they provided Plaintiff and other class members.  As a joint employer of Plaintiff and class members, Defendant is responsible both individually and jointly for compliance with all of the applicable provisions of the FLSA, the California Labor Code, and/or the SFMWO.

20.    During the relevant time period, the employment terms, conditions and policies that applied to Plaintiff was the same as those applied to the other Class members who worked as exotic dancers at the Nightclubs.

21.    Throughout the relevant time period, Defendant's policies and procedures regarding the classification of all exotic dancers (including Plaintiff) at the Nightclubs and treatment of dance tips were the same in all material respect.  As a matter of common business policy, Defendant systematically misclassified Plaintiff and all Class members as independent contractors, as opposed to employees. Defendant's classification of Plaintiff and class members as independent contractors was not due to any unique factor related to their employment or relationship with Defendant.  Rather, as a matter of common business policy, Defendant routinely misclassified all exotic dancers as independent contractors as opposed to employees.  All Nightclubs used the same or material identical contract attempting to classify dancers as independent contractors and confirming these uniform employment policies and procedures. As a result of this uniform misclassification, Plaintiff and the class members were not paid the minimum wages under the FLSA, the California Labor Code, and/or the SFMWO, and were deprived of other statutory rights and benefits.  Therefore, they suffered harm, injury, and incurred financial loss.

22.    Plaintiff and class members incurred financial loss, injury, and damage as a result of Defendant's common practices misclassifying them as independent contractors and

failing to pay them minimum wages in addition to the tips that they were given by patrons. Plaintiff's injury and financial loss was caused by Defendant's application of those common policies in the same manner as they were applied to absent Class members.

23.    During the relevant time period, no class member received any wages or other compensation from Defendant. Members of the Class generated their income solely through tips received from customers when they preformed exotic table, chair, couch, lap, and/or VIP room dances (hereinafter collectively referred to as "table dance tips").

24.    All monies that class members such as Plaintiff received from customers when they preformed dances were tips, not wages or service fees. Tips belong to the person they are given to. Table dance tips were given by patrons directly to dancers in the Class and therefore, belong to dancers in the Class, not Defendant.

25.    The full amount that dancers in the class are given by patrons in relation to exotic dances they perform are not taken into Defendant's gross receipts, with a portion then paid out to the dancers. Defendant does not issue W-2 forms, 1099 forms, or any other documents to class members indicating any amounts being paid from their gross receipts to Class members as wages.

26.    Plaintiff and class members are tipped employees as they are engaged in an occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted.  *See* California Labor Code §351. Therefore, as employees of Defendant, Class members are entitled to: (i) receive the full minimum wages due under the California Labor Code and/or the SFMWO, without any tip credit, and (ii) to retain the full amount of any table dance tips and monies given to them by customers when they perform exotic dances.

27.    Defendant's misclassification of Plaintiff and other class members as independent contractors was designed to deny Class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to Class member by customers, and done to enhance Defendant's profits at the expense of the Class.

28.    Defendant's misclassification of exotic dancers such as Plaintiff was willful.

8

Defendant knew or should have known that Plaintiff and other dancers performing the same job functions were improperly misclassified as independent contractors.

29.     Employment is defined with "striking breadth" in the wage and hour laws. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26, 112 S.Ct. 1344, 1349-50 (1992). The determining factors as to whether exotic dancers such as Plaintiff are employees or independent contractors under FLSA or the California Labor Code is not the dancer's election, subjective intent or any contract. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Real v. Driscoll Strawberry Associates, Ltd.*, 603 F.2d 784, 755 (9th Cir. 1979); *Borello & Sons v. Dept of Industrial Relations*, 48 Cal. 3d 341 (1989). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under that test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment by others.

30.     Any contract with attempts to have workers in the Class waive, limit or abridge their statutory rights to be treated as an employee under FLSA, the California Labor Code, and/or the SFMWO is void, unenforceable, unconscionable and contrary to public policy. Workers in the Class cannot validly "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.

31.     Despite this, Defendant unfairly, unlawfully, fraudulently, and unconscionably has attempted to coerce dancers in the Class to waive their rights under the FLSA, the California Labor Code, and/or the SFMWO and elect to be treated as independent contractors. Defendant threatens to penalize and discriminate against dancers and/or potential dancers if they assert their FLSA, the California Labor Code, and/or SFMWO rights such as through termination and the confiscation of all table dance tips, among other adverse decisions, conditions, and/or retaliations. Any actual or threatened retaliation against an employee for the assertion of wage and hour law claims violates the state's fundamental public policy to protect the payment of wages and employee's rights.

32.     Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

33.     The totality of circumstances surrounding the employment relationship between Defendant and the dancers in the Class working at the Nightclubs establishes economic dependence by the dancers on Defendant and employee status. Here, as a matter of economic reality, Plaintiff and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendant. The dancers are not engaged in occupations of businesses distinct from that of Defendant.  Rather, their work is the basis for Defendant's business. Defendant obtains the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendant. Defendant retains pervasive control over the nightclub operations as a whole, and the dancer's duties are an integral part of the operations.

A.     **Degree Of Control – Plaintiff And The Other Dancers Exercise No Control Over Their "Own" Or Their Employers' Business**.

34.     Plaintiff and the other members of the Class do not exert control over a meaningful part of the nightclubs business and do not stand as separate economic entities from Defendant. Defendant exercises control over all aspects of the working relationship with Plaintiff and the other dancers in the Nightclubs.

35.     Class members' economic status is inextricably linked to those conditions over which Defendant has complete control.  Plaintiff and the other dancers are completely dependent on the Nightclubs for their earnings. The club controls all of the advertising and promotion without which dancers such as Plaintiff could not survive economically. Moreover, Defendant creates and controls the atmosphere and surroundings at the Nightclubs, the

existence of which dictates the flow of customers into the clubs. The dancers have no control over the customer volume or the atmosphere at the Nightclubs.

36.    Defendant has maintained guidelines and rules dictating the way in which dancers such as Plaintiff must conduct themselves while working at the Nightclubs. Defendant sets the hours of operation; length of shifts dancer must work; the show times during which a dancer may perform; minimum table dance tips; the sequence in which a dancer may perform on stage during her stage rotation; the format and themes of dancers' performance (including their costuming and appearances); theme nights; conduct while at work (*e.g.*, that they be on the floor as much as possible when not on stage and mingle with patrons in a manner which supports Defendant's general business plan); pay tip-splits; pay "tip-outs" to managers, doormen and other employees who do not normally receive tips from patrons; require that dancers help sell a minimum number of drinks to patrons (or be penalized and have to buy the drinks themselves); and all other terms and conditions of employment.

37.    Defendant requires that Plaintiff and the other dancers in the Class schedule work shifts. Defendant requires that each shift worked by a dancer be of a minimum number of hours. Further, Defendant requires dancers such as Plaintiff to clock in and clock out (or otherwise check in or report) at the beginning and end of each shift. If late or absent for a shift, a dancer is subject to fine, penalty, or reprimand by Defendant. Once a shift starts a dancer, such as Plaintiff, is required to complete the shift and cannot leave early without penalty or reprimand.

38.    While working at the Nightclubs dancers like Plaintiff perform exotic table, chair, couch, lap and/or VIP room dances for patrons offering them tips (referred to herein "table dance tips" or "tips"). Defendant, not the dancers, sets the minimum tip amount that dancers must collect from patrons when performing exotic dances. Defendant announces the minimum tip amounts to patrons in the nightclub wishing to see table dances.

39.    Defendant dictates the manner and procedure in which table dance tips are collected from customers and tracked. Each time a dancer performs an exotic table dance for a patron and receives a table dance tip, the dancer is required to immediately account to

11

Defendant for their time and any table dance tip given to them by the patron. Additionally, Defendant employs other workers called "checkers," doormen, and/or floor walkers to watch dancers work, count private dances they perform, and record the amount of any table dance tips received. At the end of a work shift, dancers like Plaintiff are required to clock out and account to Defendant for all dances preformed for the patrons of the nightclub.  Then, in addition to any base "rent" payment, the dancer is required pay a portion of each table dance tip given to them by patrons over to Defendant as "rent."  The "rent" payment typically exceeds 30% of each table dance tip.

40.    The entire sum that a dancer receives from the patron in relation to the table dance is not given to Defendant (and/or the Nightclubs) and taken into their gross receipts. Rather, the dancers keep their share of the payment under the tip share policy and only pay over to Defendant and/or the Nightclubs the portion they demand as "rent" (*e.g.*, $7 from each $20 table dance tip received).  As a result, there is no payout by Defendant to the dancer of any wage.  Defendant issues no 1099 forms, W-2 forms, or other documents to any dancers showing any sums being paid to dancers as wages.

41.    Defendant establishes the split of percentage that each dancer is required to pay it for each type of dance that the dancer receives in table dance tips for during the work shift. In addition, per-dance amounts of "tip-outs" must be paid by dancers to the nightclub manager, dance checkers, disk-jockey, bouncers, door staff, and/or other workers as part of Defendant's tip-splitting policy.  The foregoing establishes that Defendant controls and sets the terms and conditions of all work by the dancers.  This is the hallmark of economic dependence and control.

**B.    Skill and Initiative of a Person in Business for Themselves**

42.    Plaintiff, like all other dancers, does not exercise the skills and initiative of a person in business for themselves.

43.    Plaintiff, like all other dancers, is not required to have any specialized or unusual skills to work at the Nightclubs. Prior dance experience is not required to perform at the Nightclubs. Dancers are not required to attain a certain level of skill in order to work at the

Nightclubs.

44.    Plaintiff, like all other dancers, does not have the opportunity to exercise the business sills and initiative necessary to elevate their status to that of independent contractors. Dancers, like Plaintiff, own no enterprise. Dancers, like Plaintiff, exercise no business management skills. Dancers maintain no separate business structures or facilities. Dancers exercise no control over customer volume or atmosphere at the Nightclubs. Dancers do not actively participate in any effort to increase the Nightclub's client base, enhance goodwill, or establish contracting possibilities. The scope of a dancer's initiative is restricted to decisions involving what clothes to wear (within Defendant's guidelines) or how provocatively to dance which is consistent with the status of an employee opposed to an independent contractor.

45.    Plaintiff and class members are not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons and increase their revenues, as an independent contractor in business for themselves would.

**C.    Relative Investment**

46.    Plaintiff's relative investment is minor when compared to the investment made by Defendant.  Plaintiff, like all other dancers, has made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage, and other inventory, or staffing, of the Nightclubs.  Defendant provides investment and risk capital.  Dancers do not. Dancers' investment is limited to expenditures on costumes and make-up that they may wear while working, and their own labor.  But for Defendant's provision of the lavish nightclub work environment, the dancers would earn nothing.

**D.    Opportunity for Profit and Loss**

47.    Defendant, not dancers such as Plaintiff, manage all aspects of the business operation including attracting investors, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.).  Defendant, not the dancers, take the true business risks for the Nightclubs.  Defendant, not the dancers, has responsibility for attracting investors required to provide the capital necessary to open, operate, and expand the nightclub business.

48.     Dancers such as Plaintiff do not control the key determinants of profit and loss of a successful enterprise.  Plaintiff is not responsible for any aspect of the enterprises' on-going business risk.  For example, Defendant, not the dancers, has responsibility for financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining appropriate business insurance and licenses. Defendant, not the dancers, establishes the minimum table dance tip amounts to be collected from patrons for dances. Even with respect to any "rent" payments, the dancers do not truly pay the Club's "rent" for the exclusive use of space.  Rather, the term "rent" is a misnomer or subterfuge for tip-splitting.  Defendant simply demands a set portion (approximately 35%) of each table dance tip given to a dancer.

49.     The extent of the immediate financial risk that dancers such as Plaintiff bear is the loss of any "base rent" fee that Defendant collects after each worker's shift.  Defendant, not the dancers, bear the risk of loss.  For example, the table dance tips the dancers receive are not a return for risk on capital investment. They are a gratitude for services rendered.  Thus, it is clear that a dancer's "return on investment" (*i.e.*, tips) is illusory, and no different than that of a waiter who serves food during a customer's meal at a restaurant.

**E.      Permanency**

50.     Certain dancers in the Class have worked at the Nightclubs for significant periods of time.

**F.      Integral Part of Employer's Business**

51.     Dancers such as Plaintiff are essential to the success of the Nightclubs. The continued success of the Nightclubs depends to an appreciable degree upon the provision of exotic dances by dancers for patrons. In fact, the primary reason the nightclubs exist is to showcase the dancers' physical attributes for customers. The primary "product" or "good" Defendant is in business to sell patrons that come to their Nightclubs are lap dances performed by the exotic dancers in the Class that Defendant recruits to work in the Nightclubs and instructs to work in specific ways.

52.     Many of the Nightclubs do not serve alcohol and therefore, are not truly in

14

direct competition with other enterprises in the nightclub, tavern or bar business. Absent the provision of exotic dances by dancers for customers, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business. Moreover, Defendant is able to charge admission prices and a much higher price for their drinks (*e.g.*, $10 for soft drinks) than establishments without exotic dancers because the dancers are the main attraction of the Nightclubs. As a result, the dancers are an integral part of the Nightclubs' business.

53.    The foregoing demonstrates that dancers such as Plaintiff are economically dependent on Defendant and subject to significant control by Defendant. Therefore, Plaintiff was misclassified as independent contractors and should have been paid minimum wages at all times she worked at any Nightclub and otherwise been afforded all rights and benefits of an employee under federal and state wage and hour laws.

### G.    Defendant's Intent

54.    All of Defendant's actions and agreements as described herein were willful, intentional, and not the result of mistake or inadvertence.

55.    Defendant was aware that the FLSA, the California Labor Code, and/or the SFMWO applied to its operation of the Nightclubs at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, the dancers were misclassified as independent contractors. Defendant was subject to, or aware of, previous litigation and enforcement actions that successfully challenged the misclassification of exotic dancers as independent contractors. Further Defendant was aware, and on actual or constructive notice, that California Labor Code § 350(e), § 351, and A.B. 2509 rendered all table dance tips given to class members by patrons when working in the Nightclubs the dancer/class member's sole property, rendering Defendant's tip-share, rent and tip-out policies unlawful.  Despite being on notice of their violations, Defendant intentionally chose to continue to misclassify dancers such as Plaintiff, withhold payment of minimum wages and require dancers to split their tips with Defendant and its other workers, in order to enhance profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

15

**H.    Injury and Damage**

56.    Plaintiff and all Class members suffered injury, were harmed, incurred damage and financial loss and result of Defendant's conduct complained of herein. Among other things. Plaintiff and the Class were entitled to minimum wages and to retain all of the table dance tips and other tips they were given by patrons, Defendant injured Plaintiff and the members of the Class and caused them financial loss, harm, injury, and damage.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

57.    Plaintiff brings the First Cause of Action (for violations of the FLSA) as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of herself and a proposed collection of similarly situated individuals defined as follows, and hereinafter referred to as the "FLSA Collection":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this action.

58.    Plaintiff, individually, and on behalf of other similarly situated dancers defined above, seeks relief on a collective basis challenging Defendant's policy and practice of failing to pay for all hours worked plus applicable overtime and failing to accurately record all hours worked.  Named Plaintiff and the FLSA Collection are similarly situated, have performed substantially similar duties for Defendant, and are uniformly subject to and are currently being subjected to Defendant's uniform, class-wide payroll practices, including the policy of and practice of not compensating class members for compensable time as described herein. The number and identity of other similarly situated persons yet to opt-in and consent to be party-Plaintiff may be determined from the records of Defendant, and potential opt-ins may be easily and quickly notified of the pendency of this action.

59.    The names and addresses of the individuals who comprise the FLSA Collection are available from Defendant. Accordingly, Plaintiff herein pray for an Order requiring Defendant to provide the names and all available locating information for all members of the FLSA Collection, so notice can be provided regarding the pendency of this action, and of such

individuals' right to opt-in to this action as party plaintiffs.

60.    Plaintiff brings the Second through Eighth Causes of Action (the California state law claims) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23, defined initially as follows, and hereinafter referred to as the "California Class":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this action.

Excluded from the California Class is anyone employed by counsel for Plaintiff in this action, and any Judge to whom this action is assigned and his or her immediate family members.

61.    Plaintiff brings the Ninth Cause of Action (the claims under § 17200 *et seq.*) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23, defined initially as follows, and hereinafter referred to as the "Cal. Bus. & Prof. Code § 17200 Class":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date four (4) years before the filing of this action.

Excluded from the class is anyone employed by counsel for Plaintiff in this action, and any Judge to whom this action is assigned and his or her immediate family members.

62.    <u>Numerosity</u>.  Defendant has employed hundreds individuals as exotic dancers during the relevant time periods.

63.    <u>Existence and Predominance of Common Questions</u>.  Common questions of law and/or fact exist as to the members of the proposed classes and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the proposed classes.  The common questions include the following:

a.    Whether Defendant's policy and practice of not paying dancers the minimum wage and/or at one-and-a-half (1.5) times the regular rate of pay (*i.e.*, time-and-a-half) for all hours worked in excess of forty hours in a week or eight hours in a day violates the FLSA, California labor laws, and/or the SFMWO;

b.    Whether Defendant's payroll policies and practices have violated

COLLECTIVE AND CLASS ACTION COMPLAINT

California Labor Code §§ 201, 202, 203, and 204;

c.  Whether Defendant's practices have violated the UCL;

d.  Whether the Class members are entitled to unpaid wages, waiting time penalties, and other relief;

e.  Whether Defendant's affirmative defenses, if any, raise common issues of fact or law as to Plaintiff and the Class members; and

f.  Whether Plaintiff and the proposed classes are entitled to damages and equitable relief, including, but not limited to, restitution and a preliminary and/or permanent injunction, and if so, the proper measure and formulation of such relief.

64.  <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the proposed classes. Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiff and the proposed classes to sustain the same or similar injuries and damages. Plaintiff's claims are therefore representative of and co-extensive with the claims of the proposed classes.

65.  <u>Adequacy</u>. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the members of the classes she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the proposed classes.

66.  <u>Superiority</u>. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the proposed classes, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

18

67.    In the alternative, the proposed classes may be certified because the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members of the proposed classes that would establish incompatible standards of conduct for Defendant; and Defendant has acted and/or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## PRIVATE ATTORNEY GENERAL ALLEGATIONS

68.    In addition to asserting class action claims in this action, Plaintiff asserts claims as a private attorney general action on behalf of members of the general public pursuant to the UCL. The purpose of such claims is to require Defendant to disgorge and restore all monies wrongfully obtained by Defendant through its unlawful business acts and practices. A private attorney general action is necessary and appropriate because Defendant has engaged in the wrongful acts described herein as a general business practice.  Under the UCL, Plaintiff pursues said representative claims and seeks relief on behalf of herself and the proposed classes pursuant to Federal Rule of Civil Procedure 23.

## FIRST CAUSE OF ACTION

### Violations of the Fair Labor Standards Act

### (By the FLSA Collection)

69.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

70.    This particular claim presents a collective cause of action under the Fair Labor Standards Act by Plaintiff Jane Roe, as well as any similarly situated dancers who "opt in" to this action under 29 U.S.C. § 216.

71.    The Fair Labor Standards Act provides that a private civil action may be brought for the non-payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by any employee on behalf of him or herself and others employees similarly situated pursuant to 29 U.S.C. § 216(b). Moreover, Plaintiff

19

may recover the attorneys' fees incurred in enforcing their rights pursuant to 29 U.S.C.

§ 216(b). Federal district courts further have the authority to fashion injunctive relief pursuant

to 29 U.S.C. § 217.

72.     As set forth above, Defendant avoids its legal obligation to provide dancers

basic employee rights such as wages and workers compensation by employing them under

sham "independent contractor" agreements.

73.     Defendant does this by presenting dancers and/or potential dancers with non-

negotiable employment "options": an independent contractor "option" and an employee

"option."  Virtually all dancers necessarily choose the independent contractor "option"

because it is the only real "option."  In other words the Defendant's purported "choice" for

dancers to decide whether to work as "employees" or "independent contractors" is not a

choice at all.  It is a sham.

74.     Notwithstanding its legal duty to afford independent contractors greater control

over their work than employees, Defendant does not observe any distinction between the few

"employee" dancers and "independent contractor" dancers. Rather, it exercises great control

over all dancers, independent contractors and employees alike.

75.     This control is sufficient to render all dancers employees. In other words,

Defendant uses these sham "independent contractor" agreements to avoid its duties to pay

wages. Further, as noted above, Defendant actually has used the sham "independent

contractor" agreements to require dancers to pay to work.

76.     Therefore, Plaintiff seeks, on behalf of herself and all others who "opt in" to

this cause of action under 29 U.S.C. § 216, unpaid wages, including minimum wages and

overtime wages, reimbursement of their stage fees, liquidated damages, interest, attorney's

fees and costs, and all other costs and penalties allowed by law. Plaintiff further seek

injunctive relief to compel Defendant to recognize Plaintiff's employee status, to provide all

wages guaranteed to Plaintiff by law, and for this Court's continuing jurisdiction to enforce

compliance.

## SECOND CAUSE OF ACTION

**Failure to Pay All Straight Time Worked in Violation of Calif. Labor Code § 1194, 1197, 1198, and 1199**

**(By the California Class)**

77.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

78.    California Labor Code § 1194(a) provide for a private right of action for nonpayment of wages, and further provides that a plaintiff may recover the unpaid balance of the full amount of such wages, together with costs of suit, as well as liquidated damages, interest thereon, and the attorneys' fees and costs incurred in enforcing the employees' rights. California Labor Code § 1194.5 further grants courts the authority to enjoin violations of this statute.

79.    At all times relevant to this Complaint, Defendant employed Plaintiff and all similarly situated class members, but willfully failed to pay them any wages whatsoever. In fact, Defendant required that Plaintiff actually pay it in order to work.

80.    Therefore, Plaintiff seeks, on behalf of herself and all others similarly situated, unpaid wages at the required legal rate, reimbursement of their stage fees, liquidated damages, interest, attorney's fees and costs, and all other costs and penalties allowed by law. Plaintiff further seeks injunctive relief to compel Defendant to recognize Plaintiff's employee status, to provide all payment guaranteed to Plaintiff by law, and for this Court's continuing jurisdiction to enforce compliance.

**THIRD CAUSE OF ACTION**

**Failure to Pay the Minimum Wage for All Hours Worked in Violation of San Francisco Administrative Code Chapter 12R**

**(By the California Class)**

81.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

82.    At all times relevant to this Complaint, Defendant employed Plaintiff and all similarly situated members, but willfully failed to treat them as employees or pay them any

wages whatsoever.  In fact, Defendant required that Plaintiff actually pay it in order to work.

83.    Pursuant to the San Francisco Administrative Code, Chapter 12R, Plaintiff and the proposed California Class are entitled to recover in a civil action the unpaid balance of the full amount of straight time owed to them, including interest thereon, plus liquidated damages, plus reasonable attorneys' fees and costs.

## **FOURTH CAUSE OF ACTION**

### **Failure to Pay Overtime as Required by State Law**
### **(By the California Class)**

84.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

85.    At all times relevant to the Complaint, Wage Order No. 4 required the payment of an overtime premium for hours worked in excess of 8 in a workday, 40 in a workweek, or on the seventh day worked in a single workweek.

86.    At all times relevant to this Complaint, Plaintiff and the similarly situated members dancers were employed by Defendant within California but were not paid overtime wages for overtime hours worked.

87.    Plaintiff requests that Defendant be required to pay her, and all those similarly situated, all overtime wages illegally withheld, penalties as provided under the California Labor Code including §§ 201-203, 510 and 1194.1(a) *et seq*., punitive/exemplary damages, and attorneys' fees and costs under California Labor Code § 218.5 and 1194(a).

## **FIFTH CAUSE OF ACTION**

### **Failure to Provide Itemized Wage Statements in Violation of California Labor Code**
### **§ 226 and IWC Wage Order 4-2001**
### **(By the California Class)**

88.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

89.    Defendant has failed and continues to fail to provide timely, accurate itemized wage statements to Plaintiff and members of the proposed California Class in accordance with

22

California Labor Code § 226 and Wage Order No. 4.  The wage statements that Defendant has provided to its dancers, including Plaintiff and the proposed California Class members, do not accurately reflect the actual hours worked and wages earned.

90.    Defendant's failure to provide timely, accurate, itemized wage statements to Plaintiff and members of the proposed California Class in accordance with the California Labor Code and the applicable Wage Orders has been knowing and intentional.  Accordingly, Defendant is liable for damages and penalties under Labor Code § 226.

**SIXTH CAUSE OF ACTION**

**Waiting Time Penalties Under California Labor Code §§ 201, 202, and 203**

**(By the California Class)**

91.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

92.    California Labor Code § 201(a) requires an employer who discharges an employee to pay compensation due and owing to said employee upon discharge. California Labor Code § 202(a) requires an employer to pay compensation due and owing within seventy-two (72) hours of an employee's termination of employment by resignation. California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

93.    Certain members of the proposed California Class are no longer employed by Defendant but have not been paid full compensation for all hours worked, as alleged above. They are entitled to unpaid compensation for all hours worked, and overtime, for which to date they have not received compensation, and any applicable overtime.

94.    Defendant has failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages and compensation to Plaintiff and members of the proposed California Class whose employment with Defendant have terminated, as required by California Labor Code §§ 201 and 202.  As a direct and proximate result, Defendant is liable

23

to Plaintiff and proposed California class members for up to thirty (30) days of waiting time penalties pursuant to California Labor Code § 203, together with interest thereon.

95.    WHEREFORE, pursuant to Labor Code §§ 218, 218.5, and 218.6, Plaintiff and Class members are entitled to recover the full amount of their unpaid wages, continuation wages under § 203, interest thereon, reasonable attorneys' fees, and costs of suit.

<u>SEVENTH CAUSE OF ACTION</u>

**Failure To Pay all Wages Owed Every Pay Period Under California Labor Code § 204**

**(By the California Class)**

96.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

97.    At all times relevant during the liability period, Plaintiff and other class members were employees of Defendant covered by Labor Code § 204 but not treated as employees.

98.    Pursuant to Labor Code § 204, Plaintiff and class members were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

99.    Defendant failed to pay Plaintiff and other similarly situated workers all wages earned each pay period. Plaintiff is informed, believe, and thereon allege, that at all times relevant during the liability period, Defendant maintained a policy or practice of not paying Plaintiff and other similarly situated workers, overtime wages for all overtime hours worked.

100.    As a result of Defendant's unlawful conduct, Plaintiff and class members have suffered damages in an amount, subject to proof, to the extent they were not paid all wages and/or compensation and/or penalties each pay period. The precise amount of unpaid wages, compensation, and/or penalties is not presently known to Plaintiff but can be determined directly from Defendant's records or indirectly based on information from Defendant's records.

101.    WHEREFORE, pursuant to Labor Code §§ 218, 218.5 and 218.6, Plaintiff and members of the Class are entitled to recover the full amount of their unpaid wages, interest thereon, reasonable attorneys' fees and costs of suit.

24

**EIGHTH CAUSE OF ACTION**

**Common Law Conversion**

**(By the California Class)**

102.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

103.    Defendant's failure to give class members gratuities from patrons that were given and/or left for class members, as alleged above, constitutes common law conversion.

104.    Defendant has assumed control and ownership over the above-referenced gratuities, and applied them to its own use.

105.    Plaintiff and the proposed class had a right of ownership and possession over the above-referenced gratuities.

106.    Defendant's theft and retention of the above-referenced gratuities, without consent, have caused Plaintiff and the proposed class significant financial harm.

107.    In failing to pay said monies to Plaintiff and each class member and retaining that money for their own use, Defendant has acted with malice, oppression, or conscious disregard for the statutory rights of Plaintiff and each class member. Such wrongful and intentional acts, given the number of victims and the number of acts and previous claims and/or lawsuits relative to similar acts, justify awarding Plaintiff and the class members punitive damages pursuant to California Civil Code § 3294 *et seq.* in an amount sufficient to deter future similar conduct by Defendant.

**NINTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.***

**(By the Section 17200 Class)**

108.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

109.    Plaintiff brings this claim on behalf of herself and all others similarly situated in her representative capacity as a private attorney general against Defendant and Does 1

COLLECTIVE AND CLASS ACTION COMPLAINT

through 200 for their unlawful business acts and/or practices pursuant to the UCL, which prohibits all unlawful business acts/or practices.

110.    Plaintiff assert these claims as she is representative of an aggrieved group and as a private attorney general on behalf of the General Public and other persons who have been exposed to Defendant's unlawful acts and/or practices and are owed wages that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by the UCL.

111.    As set forth above, Defendant is engaging in numerous illegal business practices that constitute unlawful and/or unfair and/or fraudulent business acts and/or practices within the meaning of the UCL, including but not limited to, imposing sham, non-negotiable "independent contractor" agreements on dancers to avoid their legal obligation to provide basic employee rights, failing to give dancers gratuities from patrons that were given and/or left for dancers, as alleged above, in violation of California Labor Code § 351, failing to properly pay for all hours worked including overtime, failing to pay all wages when they were due and upon termination, failure to provide accurate and itemized wage statements.

112.    Defendant's conduct constitutes one or more unfair business practices as defined in California Business and Professions Code §§ 17200 *et seq.* Defendant's conduct was, and is, unfair within the meaning of California Business and Professions Code §§ 17200 *et seq.* because it is unlawful, causes significant harm to Plaintiff, and is in no way counterbalanced by legitimate utility to Defendant. In addition, the conduct offends established legislatively declared public policy and was immoral, unethical, oppressive, or unscrupulous. Plaintiff and the class members are injured by Defendant's illegal activities, which have deprived them of their legitimate rights as employees, including wages. Plaintiff and class members are accordingly entitled to restitution of monies due, disgorgement of the ill-gotten gains obtained by Defendant, a preliminary and permanent injunction enjoining Defendant from continuing the unlawful and unfair practices described herein, and to such other equitable relief as is appropriate under the UCL, including the fees and costs incurred in vindicating their rights and the public interest generally pursuant to California Code of Civil Procedure §1021.1 and any other applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)  For an order certifying that the First Cause of Action of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and requiring that Defendant identify all members of the FLSA Collection and to provide all locating information for members of the FLSA Collection, and to provide notice to all members of the FLSA Collection apprising them of the pendency of this action and her opportunity to file Consents to Become Party Plaintiff thereto;

b)  For an order certifying that the Second through Ninth Causes of Action of this Complaint may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the classes as defined herein and that notice of the pendency of this action be provided to members of the proposed classes;

c)   For an order designating Plaintiff as class representative for both the FLSA and California state law claims and Plaintiff's attorneys as counsel for the FLSA Collection and the proposed classes;

d)  For an order awarding Plaintiff, the FLSA Collection, and the proposed classes compensatory damages and statutory damages (including liquidated damages on the FLSA claim), including unpaid wages, overtime compensation, and all other sums of money owed, together with interest on these amounts;

e)  For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant, its officers, and agents, from committing the violations of law herein alleged in the future;

f)  For a declaratory judgment that Defendant has violated the FLSA and California Labor Law and public policy as alleged herein;

g)  For an order imposing all statutory and/or civil penalties provided by law, including without limitation penalties under California Labor Code §§ 203 and 226(e), together with interest on these amounts;

h)  For exemplary and punitive damages, as appropriate and available under each

1    cause of action, pursuant to California Civil Code § 3294;

2    i)  For all unpaid overtime wages due to Plaintiff and each class member;

3    j)  For an order enjoining Defendant from further unfair and unlawful business

4        practices in violation of the UCL;

5    k)  Disgorgement of profits;

6    l)  For an order awarding restitution of the unpaid regular, overtime, and premium

7        wages due Plaintiff and Class members;

8    m) For pre- and post-judgment interest;

9    n)  For an award of reasonable attorneys' fees as provided by the FLSA, California

10       Labor Code §§ 226(e) and 1194; California Code of Civil Procedure § 1021.5; the

11       San Francisco Administrative Code, Chapter 12R; and/or other applicable law;

12   o)  For all straight time owed, including interest thereon, plus liquidated damages,

13       pursuant to the San Francisco Administrative Code, Chapter 12R;

14   p)  For all costs of suit; and

15   q)  For such other and further relief as the Court deems just and proper.

16   DATED:  August 8, 2014                    Respectfully submitted,

17                                             THE TIDRICK LAW FIRM

18

19                                     By:

20                                             STEVEN G. TIDRICK, SBN 224760
                                               JOEL B. YOUNG, SBN 236662
21
                                               THE TIDRICK LAW FIRM
22                                             2039 Shattuck Avenue, Suite 308
                                               Berkeley, California  94704
23                                             Telephone:  (510) 788-5100
                                               Facsimile:   (510) 291-3226
24                                             E-mail:      sgt@tidricklaw.com

25                                             Attorneys for Individual and Representative
                                               Plaintiff Jane Roe
26

27

28
                                          28

1

## JURY DEMAND

2      Plaintiff in the above-referenced action, on her own behalf and on behalf of all persons

3   she seeks to represent, hereby demands a trial by jury on all counts.

4   DATED:  August 8, 2014                    Respectfully submitted,

5                                             THE TIDRICK LAW FIRM

6

7                                     By:

8                                             STEVEN G. TIDRICK, SBN 224760
                                              JOEL B. YOUNG, SBN 236662

9

10                                            THE TIDRICK LAW FIRM
                                              2039 Shattuck Avenue, Suite 308
11                                            Berkeley, California  94704
                                              Telephone:  (510) 788-5100
12                                            Facsimile:  (510) 291-3226
                                              E-mail:     sgt@tidricklaw.com

13                                            Attorneys for Individual and Representative
                                              Plaintiff Jane Roe

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COLLECTIVE AND CLASS ACTION COMPLAINT

Exhibit A

## CONSENT TO BECOME PARTY PLAINTIFF

I currently or formerly work or have worked for SFBSC
Management, LLC (hereinafter "Defendant") as a dancer. I hereby
consent to be a party plaintiff in a Fair Labor Standards Act action
against Defendant regarding Defendant's failure to fully compensate
me for all compensable work time. I hereby authorize The Tidrick Law
Firm to represent me before any court or agency on such claims, and I
hereby further authorize such counsel to make such further decisions
with respect to the conduct and handling of this action, including the
settlement thereof, as they deem appropriate or necessary.

Date: 8-8-13      By: _____

Signature