1  Douglas J. Melton, Bar No. 161353
   Shane M. Cahill, Bar. No. 227972
2  LONG & LEVIT LLP
   465 California Street, 5th Floor
3  San Francisco, California 94104
   Telephone:   (415) 397-2222
4  E-mail:      dmelton@longlevit.com
                scahill@longlevit.com
5
   Attorneys for Defendant
6  SFBSC Management, LLC

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | JANE ROE, on behalf of herself and all     | Case No. 3:14-cv-03616-LB
   | others similarly situated,
12 |                                            | **SUPPLEMENTAL DECLARATION OF
   |          Plaintiff,                        | GARY MARLIN IN SUPPORT OF
13 |                                            | MOTION TO COMPEL ARBITRATION
   | v.                                         | RE PLAINTIFFS JANE ROE 1 AND 2**
14 |
   | SFBSC MANAGEMENT, LLC; and
15 | DOES 1-200,                                | Date:   February 5, 2015
   |                                            | Time:   9:30 a.m.
16 |          Defendants.                       | Place:  Courtroom C, 15th Floor
   |                                            | Judge:  Hon. Laurel Beeler

17

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 1 -

Supp. Decl. of Marlin ISO Motion to Compel
Arbitration Re Plaintiffs Jane Roe 1 and 2
CASE NO. 3:14-CV-03616-LB

I, Gary Marlin, declare:

1. I have personal knowledge of all the facts stated in this declaration. I could and would competently testify to these facts if called upon to do so in court.

2. I have reviewed Darius Rodrigues' declaration dated December 24, 2014. The declaration contains multiple misstatements. I respond here to some but not all of the misstatements in the declaration. The fact that I don't address all the misstatements in the declaration does not mean I don't dispute them.

3. BSC does not own the nightclubs listed in Plaintiffs' Amended Complaint or in Mr. Rodrigues' declaration (the "Client Nightclubs"). Each of the Client Nightclubs is owned by a different company or business entity (with the exception of Larry Flynt's Hustler Club and the Condor, which are both owned by the same business entity). In addition to being separately owned, the Client Nightclubs have their own separate payroll, employees, tax identification number, books and records, bank accounts, business premises, etc. The Client Nightclubs also operate independently and not in a uniform manner. For example, some of the Client Nightclubs serve alcohol and permit only topless performances. Others permit fully nude performances and do not serve alcohol. Some of the Client Nightclubs host events (such as live bands or UFC fights) that do not involve exotic dancing. Some Client Nightclubs serve food, others do not. The Client Nightclubs have different hours of operation, etc.

4. Mr. Rodrigues was never employed by BSC. When he worked as a barback and as an assistant manager at Larry Flynt's Hustler Club, Mr. Rodrigues would have been employed by SAW Entertainment, Ltd., which owns and operates Larry Flynt's Hustler Club. When Mr. Rodrigues worked as an assistant manager at The Gold Club, he would have been employed by Gold Club-SF LLC, which owns and operates The Gold Club.

5. Mr. Rodrigues says in his declaration there is an upper limit on the age of exotic dancers who perform at the Client Nightclubs. I am aware of no age restriction policies at any of the Client Nightclubs. I am, however, aware that there are many entertainers currently under contract at the Client Nightclubs who are over the age of 28.

6. Mr. Rodrigues' statement in his declaration that BSC "exerts control over all

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 1 -

Supp. Decl. of Marlin ISO Motion to Compel
Arbitration Re Plaintiffs Jane Roe 1 and 2
CASE NO. 3:14-CV-03616-LB

aspects of the Nightclubs as well as the working relationship with the exotic dancers" is false. As noted in my first declaration, BSC provides the Client Nightclubs with a portfolio of services including marketing and advertising, human resources support, payroll coordination, and contract review and administration. There are many aspects of the Client Nightclubs' operations with which BSC has no role. As for BSC's role in the Nightclubs' working relationship with exotic dancers, BSC does monitor developments regarding state and local laws regulating exotic dancer conduct and it advises the Client Nightclubs on such issues. This may be what Mr. Rodrigues means when he says that BSC "maintains guidelines and rules dictating the way in which exotic dancers must conduct themselves while working at the Nightclubs." But BSC does not exert control over all aspects of the Nightclubs' working relationship with exotic dancers the way Mr. Rodrigues' declaration suggests.

7. In fact, it is my understanding that the various Client Nightclubs interact with the exotic dancers who perform there in ways that are not at all uniform. For example, the way exotic dancers collect dance fees differs from Client Nightclub to Client Nightclub (some clubs use fee collection boxes, some use automated "bill collector" machines, etc.) as does the amount of gross revenue—or non-tip dance fees collected by a performer—that each Client Nightclub receives from an exotic dancer. The various Client Nightclubs also have differing policies and procedures regarding issues such as the scheduling of exotic dancers' performances and related issues.

8. BSC does not advise (much less have a "policy and practice") that the Client Nightclubs "require" every applicant for an exotic dancer position to fill out and sign an Application for Performer Agreement. BSC did develop both the Application for Performer Agreement template and the Offer of Employee Status template for use by the Client Nightclubs in response to some of the Client Nightclubs' desire to offer exotic dancers a choice between an employee relationship – under which the exotic dancer would be treated like the Client Nightclubs' other employees (i.e., subject to wage & hour laws, mandatory meal periods and rest breaks, payroll withholdings, tip reporting, a schedule set by management, a required uniform/costume, etc.) or a more traditional independent contractor relationship (under which the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 2 -

Supp. Decl. of Marlin ISO Motion to Compel
Arbitration Re Plaintiffs Jane Roe 1 and 2
CASE NO. 3:14-CV-03616-LB

exotic dancer is not controlled by management as an employee would be but rather is free to set her own schedule, perform or not perform for whomever she chooses, retain a portion of the dance fees, and control her performances, costumes and music, etc.). BSC has not told the Client Nightclubs to encourage or discourage exotic dancers to select one or the other status and I am not aware that any of the Client Nightclubs have done so. It is my understanding that exotic dancers have elected employee status at some of the Client Nightclubs.

9. The Offer of Employee Status template attempts to be very clear about the differences between performing at the Client Nightclub as an employee versus as an independent contractor. The document states at the top:

> Entertainers have historically performed at this club as independent contractors who control if, when, where, how and for whom they perform. However, if you wish to become an "EMPLOYEE" of this club, you may apply to do so. The employee-entertainer arrangement is very different than a club-contractor arrangement. Please review this guideline which contains information concerning dancers as employees instead of independent contractors.

10. In the next paragraph, the Offer of Employee Status template attempts to educate entertainers about the differences between being an employee and an independent contractor and about their rights with respect to each relationship:

> <u>Statement of Impact of choice between employee vs. contractor status.</u> Read this to understand your rights about being an employee or contractor. First, the club has important controls over employees which it does not have over independent contractors, including regarding scheduling, customers, costumes, music, dance sales, stage performances, and job assignments, among other things. On the other hand, an employee is entitled to important federal and state benefits and regulations to which a contractor is not entitled. This includes, among other things, workers compensation, unemployment insurance, state leave and disability protections, minimum wage and overtime protections, meal and break periods, and more. Also, as an employee, the club would take tax deductions from your payroll check and would be obligated to pay a payroll taxes, including for Social Security, on your behalf. It would not be obligated to do this if you chose to be a contractor. To review employee rights, or to seek advice, visit the government website for the state of California (<u>www.DLSE.gov</u>) and for the Federal government (<u>www.DOL.gov</u>).

11. Near the bottom of the Offer of Employee Status template, it states in all capital letters:

IMPORTANT NOTE: THE CLUB'S MANAGERS HAVE NO OPINION ON

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 3 -

Supp. Decl. of Marlin ISO Motion to Compel
Arbitration Re Plaintiffs Jane Roe 1 and 2
CASE NO. 3:14-CV-03616-LB

THIS MATTER, AND THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION. IT IS YOUR FREE CHOICE. YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT PRIOR TO MAKING YOUR DECISION. YOU MAY ALSO SEEK ADVICE FROM THE STATE OF CALIFORNIA (SEE WEB SITES LISTED ABOVE).

12. Turning to the Performer Contract, Mr. Rodrigues' statements that BSC "directed" managers at the Client Nightclubs to "make sure" each exotic dancer accepted the arbitration provision and/or waiver of class action provision in the Performer Contract, to "terminate" or "not hire" exotic dancers who rejected the these provisions, or to "intentionally lose" contracts where exotic dancers rejected these provisions, are absolutely false.

13. In fact, as detailed in my first declaration, Jane Roe 2 rejected these provisions in her 2012 Performer Contracts with respect to The Gold Club and Centerfolds. Obviously, neither of these clubs terminated Jane Roe 2's 2012 contracts nor did they "intentionally lose" them. Based on a review of Performer Contracts at the various Client Nightclubs over the last few years, I am aware of dozens of instances where exotic dancers rejected these provisions and continued to perform at the Client Nightclub.

14. Finally, Mr. Rodrigues claims in his declaration that an unidentified "BSC executive" gave him a stack of Performer Contracts with instructions to sign and/or "back date" them. I never did that nor, to my knowledge, did any other BSC employee. The allegation is untrue and preposterous.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct and that this declaration was signed at San Francisco, California, on January 16, 2015.

_____
Gary Marlin

DOCS\S0301-204\739576.3