Douglas J. Melton, Bar No. 161353
Shane M. Cahill, Bar. No. 227972
LONG & LEVIT LLP
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 397-2222
E-mail: dmelton@longlevit.com
scahill@longlevit.com

Attorneys for Defendant
SFBSC Management, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC; and DOES 1-200,<br><br>　　　　　Defendants. | Case No. 3:14-cv-03616-LB<br><br>**DECLARATION OF CRAIG BORDEAU IN SUPPORT OF MOTION TO COMPEL ARBITRATION RE PLAINTIFF JANE ROE 1**<br><br>Date:　　February 5, 2015<br>Time:　　9:30 a.m.<br>Place:　　Courtroom C, 15th Floor<br>Judge:　　Hon. Laurel Beeler |

- 1 -

Decl. of Bordeau ISO Motion to Compel
Arbitration Re Plaintiff Jane Roe 1
CASE NO. 3:14-CV-03616-LB

I, Craig Bordeau, declare:

1. I am the General Manager of the Gold Club located at 650 Howard Street in San Francisco. I have personal knowledge of all the facts stated in this declaration. I could and would competently testify to these facts if called upon to do so in court.

2. I have reviewed the Stipulated Protective Order in this action and executed the "Acknowledgment and Agreement to Be Bound" attached to it. After that, I was informed of the identities of Jane Roe 1 and Jane Roe 2.

3. I have been the General Manager at The Gold Club for approximately the last year. For about three years before that I was the Gold Club's Assistant General Manager.

4. I am not employed by BSC Management ("BSC"). BSC is a management company with which the Gold Club contracts for consulting and administrative services. I, like all the Gold Club's employees, am employed by Gold Club-SF, LLC, which I understand owns the Gold Club.

5. I know Darius Rodrigues. He is a disgruntled former Gold Club employee who I terminated for cause last August.

6. When he worked at the Gold Club, Mr. Rodrigues was employed by Gold Club-SF, LLC.

7. Mr. Rodrigues says in his declaration that he was the Assistant General Manager at the Gold Club. That is not right. Mr. Rodrigues' highest position at the Gold Club was Assistant Manager. That position has fewer responsibilities than the Assistant General Manager position. Mr. Rodrigues vastly overstates his "roles and responsibilities" at the Gold Club.

8. During my employment with the Gold Club, qualified entertainers who want to perform there have been given the option of either employee or independent contractor status. Differences between the two classifications are outlined in a form called: NOTICE TO ENTERTAINERS - OFFER OF EMPLOYEE STATUS - STATEMENT OF IMPACT CHOICE OF CONTRACTOR STATUS.

9. This form explains that entertainers have the option of performing at the Gold Club either as employees or independent contractors and how their choice will impact them.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 1 -

Decl. of Bordeau ISO Motion to Compel
Arbitration Re Plaintiff Jane Roe 1
CASE NO. 3:14-CV-03616-LB

1  Entertainers who elect to perform as independent contracts decline employee status on the Offer
2  of Employee Status form and fill out a "Performer Contract."

3      10.    I have never told prospective entertainers that they "had to sign" a Performer
4  Contract to perform at the Gold Club.  In fact, the Offer of Employee Status form says,
5  "Entertainers have historically performed at this club as independent contractors who control if,
6  when, where, how and for whom they perform.  However, if you wish to become an
7  'EMPLOYEE' of this club, you may apply to do so."  The form also says in capital letters:
8  IMPORTANT NOTE:  THE CLUB'S MANAGERS HAVE NO OPINION ON THIS MATTER,
9  AND THEY WILL NOT ENCOURAGE OR DISCOURAGE YOUR DECISION.  IT IS YOUR
10  FREE CHOICE.  YOU MAY WISH TO CONSULT YOUR ATTORNEY OR ACCOUNTANT
11  PRIOR TO MAKING YOUR DECISION.  YOU MAY ALSO SEEK ADVICE FROM THE
12  STATE OF CALIFORNIA (SEE WEB SITES LISTED ABOVE).

13      11.    It seems to me that these statements tell prospective entertainers they do <u>not</u> have
14  to sign a Performer Contract to perform at the Gold Club.

15      12.    The Gold Club's Performer Contracts contain arbitration provisions.  In some
16  older versions, entertainers were asked to either accept or reject the arbitration provision.  Some
17  entertainers, like Jane Roe 2, rejected the arbitration provision.  They were still allowed to
18  perform at the Gold Club.  Whether they accepted or rejected the arbitration provisions made no
19  difference.

20      13.    It has never been the Gold Club's "policy" or "practice" to force entertainers to
21  accept the arbitration provision.  If an entertainer rejected the arbitration provision, it has never
22  been the Gold Club's "policy" or "practice" to retaliate against her, or to pretend to lose her
23  Performer Contract, or to make her fill out a new Performer Contract and accept the arbitration
24  provision.  Obviously, I never lost (or pretended to lose) Jane Roe 2's 2012 Performer Contract.
25  Nor did I (or anybody else) terminate her contract or treat her differently than the entertainers
26  who accepted the arbitration provision.  In fact, Jane Roe 2 continued to perform at Gold Club at
27  various times throughout 2012, 2013 and 2014.

28      14.    I don't remember Jane Roe 1 or Jane Roe 2 asking me any questions about the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 2 -

Decl. of Bordeau ISO Motion to Compel
Arbitration Re Plaintiff Jane Roe 1
CASE NO. 3:14-CV-03616-LB

Performer Contracts or the arbitration provisions. If they had, I would have answered them. The Performer Contract itself says to "Read and consider it, seek the advice of counsel or a person you trust to assist you." (It also says, in capital letters, "ALSO, BEFORE SIGNING, BE SURE TO CONSIDER OWNERS' SEPARATE OFFER OF EMPLOYMENT.")

15. The Gold Club has never had a policy of requiring entertainers to review Performer Contracts only when they are "mostly naked." Usually, prospective entertainers who are given their first set of entertainer documents (including the Performer Contract and Offer of Employee Status) are wearing their street clothes. Sometimes, entertainers who are reviewing and signing renewal Performer Contracts are at the club because they are performing that day. Entertainers usually put on their costumes and makeup first thing after arriving at the club. Entertainers' costumes show a lot of skin. That's a big part of exotic dance (obviously). If an entertainer happens to be "mostly naked" when she reviews a Performer Contract that's really her choice. It is not some strategy by management to embarrass her.

16. The Gold Club has never had a policy of rushing entertainers to review Performer Contracts. Nor do we tell entertainers they can't take home a copy of the Performer Contract. The Performer Contract specifically tells entertainers to "read and consider it, seek the advice of counsel or a person you trust to assist you."

17. I am not aware that any entertainer has ever been intoxicated from alcohol or under the influence of illegal drugs while reviewing and signing a Performer Contract. Entertainers are free to consume alcohol if they want to when they are performing and we rely on them to use good judgment about how much they drink. If an entertainer were observably drunk, we would not want her trying to review or sign a Performer Contract. As for drugs, the Gold Club has a zero tolerance policy for illegal drugs and the Performer Contract specifies that use of illegal drugs on premises by entertainers is a material breach of the contract.

///

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 3 -

Decl. of Bordeau ISO Motion to Compel
Arbitration Re Plaintiff Jane Roe 1
CASE NO. 3:14-CV-03616-LB

18. Jane Roe 1 says in her declaration that club management told her in July 2014 that she "could no longer work there effective immediately." Jane Roe 2 says in her declaration that club management told her in June 2014 that she "could no longer work there effective immediately." Because their declarations suggest there was something arbitrary or wrong about the Gold Club's decision to terminate their contracts, I have been asked to disclose that the Gold Club terminated the contracts of Jane Roe 1 and Jane Roe 2 due to concerns about conduct on their part that constituted a material breach of their contracts.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct and that this declaration was signed at San Francisco, California, on January 18, 2015.

_____
Craig Bordeau

DOCS\S0301-204\739583.2

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO

- 4 -

Decl. of Bordeau ISO Motion to Compel
Arbitration Re Plaintiff Jane Roe 1
CASE NO. 3:14-CV-03616-LB