THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Individual and Representative
Plaintiffs JANE ROES 1-2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROES 1-2, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC; and DOES 1-200,<br><br>Defendants. | Civil Case No. 14-cv-03616-LB<br><br>**PLAINTIFFS' SURREPLY TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |

## I. INTRODUCTION

Plaintiffs file this surreply for the purpose of making a few limited points in response to some of the assertions and evidence that Defendant has presented in its reply papers. This surreply is not intended to address all of the assertions and evidence that Defendant has presented in its reply papers, or to repeat arguments Plaintiffs have already made.[1]

## II. PLAINTIFFS' RESPONSE TO THE TWO "EXTENSION OF CLUB PERFORMER CONTRACT" DOCUMENTS FILED BY DEFENDANT ON JANUARY 28, 2015 (DOCKET NO. 42)

Several days after Defendant's deadline for filing reply papers, Defendant filed an additional declaration without leave of Court on January 28, 2015, which attached two documents, each entitled "EXTENSION OF CLUB PERFORMER CONTRACT" (Docket Nos. 42-1 and 42-2). Plaintiffs offer five general observations in response.

First, both of the "extension" documents refer to two (2) different purported contracts: the preamble refers to the "2012-2013 Club Performer Contract," and paragraph 6 refers to the "Original 2013-2014 Contract." They also refer to an "addendum 'A'" to "the Original 2013-2014 Contract." Defendant has failed to produce any contracts labeled in any of those ways, and has also failed to produce any "addendum A" documents. The fact that Defendant has never produced any "addendum 'A'" to any purported contract, despite this evidence that there were "addendum 'A'" pages, indicates that Defendant has not produced the entire purported contracts. Defendant's failure to produce the entire purported contracts is an independent basis for denying Defendant's motion to compel arbitration. It is possible that the "addendum 'A'" pages relate to the arbitration provisions. In the absence of the entire purported contracts, this Court is unable to (1) determine whether a valid arbitration agreement exists that binds anyone, or (2) determine whether any of Plaintiffs' claims fall within the scope of the arbitration clauses. Under similar circumstances, at least one other court has denied a motion to compel arbitration. That court reasoned as follows:

> The record does not reflect that the Branch Parties ever submitted the complete MSA to the trial court. In addition, this case does not involve a situation in which the

---

[1] Plaintiffs respectfully ask that the Court not infer from the points made here that Plaintiffs concede the validity or truthfulness of anything else that Defendant has presented.

1

> opposing party, Osborn, has access to a copy of the entire contract and it might be argued that he would have submitted any other parts of the contract relating to the arbitration issues, if there were any. The Branch Parties and their counsel represented to the trial court and to Osborn that they had submitted all parts of the MSA relevant to the issues raised by their motion to compel arbitration. However, neither Osborn, nor the trial court or this court is required to rely on mere assurances of the Branch Parties or their counsel. We see no reason to depart from the general rule that a writing must be examined as a whole in an effort to harmonize and give effect to all its provisions so that none is rendered meaningless. In the absence of the entirety of the MSA in evidence, neither the trial court nor this court properly is able to determine:
> (1) whether a valid arbitration agreement exists that binds Osborn and (2) whether Osborn's claims fall within the scope of the MSA's arbitration agreement. On this record, we cannot say that the Branch Parties established they were entitled to an order compelling arbitration.

*Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 397-398 (Tex. App. 2014) (citations and footnote references omitted). That court's reasoning is consistent with Ninth Circuit authority holding that the meaning of words in a contract is to be determined from a reading of the ***entire*** contract. *See Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1976) ("The meaning of the words contained in a contract is to be determined not from a consideration of the words alone but from a reading of the entire contract."). *See also Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("We must interpret the agreement by reading the words of [the] contract in the context of the entire contract and construing the contract to effectuate the parties' intent.") (internal quotations omitted).

   Second, the facts described above corroborate Plaintiffs' evidence of management's policies and practices that not only are oppressive but also give rise to surprise. Both of those factors support a finding of procedural unconscionability. *See* Plaintiffs' Opp. at 12:11-14:16.

   Third, the language in the preamble of these "extension" documents confirms that "the Parties" to each of the purported "performer contracts" are only a Nightclub and the exotic dancer. *See* Docket Nos. 42-1 and 42-2 (definition of "the Parties" in the preamble).

   Fourth, the fact that Darius Rodrigues signed both of the "extension" documents on behalf of the "CLUB" as well as many of the "PERFORMER CONTRACT" documents that Defendant proffered with its motion to compel arbitration is consistent with Mr. Rodrigues's statements in his declaration regarding his level of authority and management responsibilities during the time of his employment by Defendant (see Docket No. 34), and discredits Defendant's assertions to the contrary. *See* Docket Nos. 25-5, 25-6, 42-1 and 42-2 (the

2

"Manager Signature" line for the "CLUB").

Fifth, Defendant may argue that the "extension" documents expand the temporal scope of purported contracts preceding them, but that lacks merit because the "extension" documents are uncertain. The preamble refers to the "2012-2013 Club Performer Contract," and paragraph 6 refers to the "Original 2013-2014 Contract." Defendant has failed to produce any contracts labeled in those ways. Therefore, if the Court does not deny Defendant's motion in its entirety, and thus reaches this aspect of the analysis, the Court should find that the "extension" documents are too imprecise to enforce. *See Kahn Creative P'ships, Inc. v. Nth Degree, Inc.*, 2011 U.S. Dist. LEXIS 34248, at *11-12 (C.D. Cal. Mar. 29, 2011) (finding no contract to exist where "the terms of the alleged contract were 'uncertain and indefinite'").

### III. PLAINTIFFS' RESPONSE TO A SUPPLEMENTAL DEMAND FOR ARBITRATION IN JANUARY 19, 2015 LETTER FROM DEFENDANT'S COUNSEL DOUGLAS MELTON (DOCKET NO. 38-1, at pages 6 and 7 of 7)

Plaintiffs argued in their opposition that "Plaintiffs should not be compelled to arbitrate claims for which Defendant sent no letter demanding arbitration," and specified as examples any claims arising from "Jane Roe 2's work at two of the Nightclubs, Larry Flynt's Hustler Club and Centerfolds," and "any of Jane Roe 3's work performed during the class period." *See* Plaintiffs' Opposition at 22:21-24. Apparently in response to that argument, Defendant's counsel sent a supplemental demand for arbitration on January 19, 2015 (one week after Plaintiffs filed their opposition) stating, "I write to clarify that SFBSC demands that Jane Roe No. 2 ("ROE 2") submit to binding arbitration of ***any and all claims*** she asserts against SFBSC Management." In contrast, Defendant's original demand for arbitration, dated December 9, 2014, demanded that Jane Roe No. 2 "submit any and all claims she has against SFBSC ***relating to her performances at Gold Club SF, LLC*** ("Gold Club") to binding arbitration on an individual basis," with no mention of Roe 2's claims arising from her work at two of the other Nightclubs, specifically, Larry Flynt's Hustler Club and Centerfolds. *Compare* Docket No. 36-2, at page 4 of 8 (Dec. 9, 2014 letter demanding arbitration) with Docket No. 38-1, at page 6 of 7 (Jan. 19, 2015 letter demanding arbitration) (emphasis added).

Plaintiffs offer two general observations in response to Defendant's attempt to "cure"

3

PLAINTIFFS' SURREPLY TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Roe v. SFBSC Management, LLC et al.*, Civil Case No. 14-cv-03616-LB

its original inadequate demand for arbitration.  <u>First</u>, there is no basis for the supplemental demand because there are no contracts that even purport to require arbitration of Roe 2's claims arising from her work at two of the Nightclubs, Larry Flynt's Hustler Club and Centerfolds.  There is apparently no written contract at all regarding Roe 2's work at Larry Flynt's Hustler Club.  As for the other club, Centerfolds, the purported written contract has Roe 2's initials next to the word "REJECT" next to the paragraphs regarding arbitration and class actions.  *See* Declaration of Jane Roe 2 (Docket No. 35-3), ¶¶ 2, 3 & Ex. A.  *See also* Plaintiffs' Opposition at 20:6-14.  <u>Second</u>, while Defendant asserts that the arbitration clauses purport to cover "all disputes," *see* Def. Reply at 6:9, the clauses state "all disputes ***between the parties***" (emphasis added).  The "parties" do not include Defendant.

### IV. THE COURT SHOULD APPLY FEDERAL LAW, NOT STATE LAW, REGARDING ALTER EGO AND AGENCY

Regarding *Prudential Bache Secur., Inc.*, 802 F.2d 1185 (9th Cir. 1986) and *Britton v. Co-Op Banking Group*, 4 F.3d 742 (9th Cir. 1993), Defendant asserts that "[e]ven if *Letizia* and *Britton* stand for the proposition Plaintiffs posit, the agency issue must be analyzed under California law." Def. Reply at 6:10-11.  Defendant is wrong.  As the Ninth Circuit has stated:

> Letizia argues that, even if Bache may submit this dispute to arbitration, the individual defendants, who are nonsignatories to the Customer Agreement, may not. The question is one of first impression in this circuit, and it is reviewed de novo as a question of law. ***Because the issue involves the arbitrability of a dispute, it is controlled by application of federal substantive law rather than state law***.

*Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (citing *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir. 1986)).

In light of that Ninth Circuit authority, Plaintiffs urge this Court to consider whether *Rowe v. Exline*, 153 Cal. App. 4th 1276, 1285 (2007), is wrongly decided or even binding on this Court.  Defendant cites that California state court case for the proposition that a Plaintiffs' ***allegations*** that would support a finding of alter ego liability are a sufficient basis to allow a defendant to enforce an arbitration agreement as an alter ego.  *See* Def. Reply at 2:26-3:2.

Under Ninth Circuit precedent, the question whether nonsignatories can enforce an arbitration agreement is controlled by federal substantive law rather than state law.  *See, e.g.*,

4

*Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) (citing *Bayma v. Smith Barney, Harris Upham & Co.*, 784 F.2d 1023, 1025 (9th Cir. 1986)).

Under federal law, in order to allow a nonsignatory to enforce an arbitration agreement under an alter ego or agency theory, the Court must ***find***, based on ***evidence***, that the nonsignatory is an alter ego or agent of the signatory. *See Tyco Lab., Inc. v. Dasi Indus., Inc.*, 1993 U.S. Dist. LEXIS 12654, at *25-26 (N.D. Ill. Sept. 9, 1993) ("Whether an alter ego relationship exists is a question of fact to be determined by the circumstances of each case."); *Hidrocarburos y Derivados, C.A. v. Lemos*, 453 F. Supp. 160, 173 (S.D.N.Y. 1977) ("The question, insofar as Lemos's obligation to arbitrate is concerned, relates to 'the making of the arbitration agreement or the failure, neglect or refusal to perform the same', Federal Arbitration Act, 9 U.S.C. § 4; the statute requires that, if such issues are raised, 'the court shall proceed summarily to the trial thereof.'"); *Sapic v. Gov't of Turkm.*, 345 F.3d 347, 359-360 (5th Cir. 2003) ("Courts do not lightly pierce the corporate veil even in deference to the strong policy favoring arbitration.") (quoting *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1461 (10th Cir. 1995)); *Thompson v. Thi of N.M. at Casa Arena Blanca, LLC*, 2008 U.S. Dist. LEXIS 108726, at *40-42 (D.N.M. Dec. 24, 2008) ("The party attempting to prove that a corporation is the alter ego of another must show the alter-ego's dominance of the subsidiary") (listing factors); *International Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.*, 814 F. Supp. 392, 403-404 (D. Del. 1993) ("The province of the courts extends to determinations that a duty to submit to arbitration exists based upon a ***finding*** of alter ego.") (emphasis added); *Altresco Phil. v. CMS Generation Co.*, 1997 U.S. App. LEXIS 7623, at *18-20 (10th Cir. 1997) ("To establish that Williams or WRW is the alter ego of Altresco Philippines, the signatory to the PDA and EFA, CMS must ***prove*** that Altresco Philippines is a 'mere instrumentality' of Williams and/or WRW, and that Altresco Philippines' separate corporate structure was used to perpetuate a fraud, illegality or inequity.") (emphasis added) (citation omitted).

Therefore, under federal law, Defendant cannot have it both ways – Defendant cannot gain the benefit of an arbitration agreement on the basis that it is an alter ego of a signatory

5

while reserving the right to evade liability by denying that it is an alter ego. Defendant proffers evidence that it is not an alter ego of the Nightclubs. *See, e.g.*, Declaration of Gary Marlin (Docket No. 25-4), ¶¶ 3, 4; Supplemental Declaration of Gary Marlin (Docket No. 38-2), ¶¶ 3, 6; Declaration of Mark Calcagni (Docket No. 38-3), ¶ 3; Declaration of Craig Bordeau (Docket No. 38-4), ¶ 4. If the Court nevertheless finds, based on the totality of the evidence, that Defendant is an alter ego of the Nightclubs, then there are alternative reasons that Defendant lacks standing to enforce the arbitration clauses. *See* Plaintiffs' Opposition (Docket No. 33) at 9:14-10:4. Furthermore, if the Court finds that Defendant has standing to enforce the arbitration clauses, the arbitration clauses are nevertheless (1) unconscionable and unenforceable (*see* Plaintiffs' Opposition at 11:25-20:3); (2) do not cover all of Plaintiffs' disputes (*see* Plaintiffs' Opposition at 20:4-22:26); (3) do not compel arbitration of PAGA claims (*see* Plaintiffs' Opposition at 22:27-24:19); and (4) do not compel arbitration of claims of Roe 3, who joined the action on December 3, 2014 (*see* Plaintiffs' Opposition at 7:8-8:4).

### V.  UNCONSCIONABILITY

Plaintiffs will not repeat all of the arguments and evidence already presented, which directly contradict all of the assertions that Defendant now makes in its reply papers. Plaintiffs supplement their prior arguments and evidence with the Supplemental Declaration of Darius Rodrigues filed herewith, which further establishes the oppression and surprise that support a finding of procedural unconscionability.

Defendant asserts in its reply: "At the risk of stating the obvious, a class action is a procedural device that permits one or more plaintiffs to file and prosecute a lawsuit on behalf of a larger group, or 'class.'" Def. Reply at 9:13-14. Plaintiffs offer two observations in response: First, Rule 23 authorizes defendant classes. *See* Fed. R. Civ. P. 23(a) (stating that "[o]ne or more members of a class may sue ***or be sued*** as representative parties on behalf of all members" (emphasis added). Second, Plaintiffs have shown that Defendant's Nightclubs have sued exotic dancers as a putative class, and have settled claims with them on a classwide basis. *See* Docket No. 33 (Plaintiffs' Opposition) at 15:3-8 (citing evidence). The fact that the Nightclubs made classwide claims against exotic dancers by way of counterclaim is beside

the point. The Nightclubs could have sought offset by way of affirmative defense only, but still chose to *sue* exotics dancers on a classwide basis. *See DuFour v. Allen*, 2014 U.S. Dist. LEXIS 132139, at *19-20 (C.D. Cal. Sept. 15, 2014) ("A cross-complaint is generally considered to be a separate action from that initiated by the complaint") (internal quotations omitted); *Jacobson v. Persolve, LLC*, 2014 U.S. Dist. LEXIS 115601, at *27-28 (N.D. Cal. Aug. 19, 2014) (defendant's affirmative defense for offset was "factually sufficient").

Defendant also asserts: "There is also no merit to Plaintiffs' argument that the arbitration provisions are unenforceable because the Nightclubs did not have to initial their acceptance or rejection thereof in the older versions of the contracts." Def. Reply at 10:11-13. Defendant misses the point. Those clauses stated "initial required" but Defendant did not initial those clauses, so they are one-sided and non-mutual, and Defendant did not agree to them. That fact is one of 6 (six) one-sided aspects that Plaintiff has identified (*see* Plaintiffs' Opposition at 15:9-19:5), which collectively render the clauses substantively unconscionable.

### VI. PLAINTIFFS' RESPONSE TO ASSERTION THAT "ARBITRATION AGREEMENTS BROADLY COVER ALL OF PLAINTIFFS' CLAIMS"

Defendant asserts that in "each" of the cases cited by Plaintiffs, "the arbitration provisions generally limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement." Def. Reply at 13:6-7. That is not true.

For example, in *Goodrich Cargo Sys. v. Aero Union Corp.*, 2006 U.S. Dist. LEXIS 93680 (N.D. Cal. Dec. 14, 2006), there is no indication that the arbitration provision limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement. Moreover, the court held: "Just because the parties enacted multiple agreements . . . does not mean that this Court may ignore the fact that there are discrete agreements pertaining to different facets of the transaction. Here, the parties executed two distinct agreements. . . . Only the latter agreement contains an arbitration clause, and it follows that the arbitration clause only applies to disputes as to those aspects of the transaction that are actually covered by the latter agreement." *Id.* at *5-6.

Likewise, in *Mendez v. Puerto Rican Int'l Cos.*, 2010 U.S. Dist. LEXIS 66295 (D.V.I.

7

July 1, 2010), there is no indication that the arbitration provision limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement. Indeed, the court stated: "It is undisputed that the terms of the DRAs do not explicitly address the duration and temporal effect of each Plaintiff's promise to arbitrate." *Id.* at *16. Moreover, the court held: "It would be particularly unreasonable to conclude that in the signing the DRAs, Plaintiffs intended to waive or otherwise relinquish claims that arose some years before they even signed the DRAs." *Id.* at *15. The court also held: "Once the underlying contract expires, an arbitration clause survives to cover only those disputes arising under the contract, n9 unless the parties include explicit language within the clause extending the duration of the promised benefit of arbitration." *Id.* at *18.

Likewise, in *Nissan North America, Inc v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989 (7th Cir. 2007) there is no indication that the arbitration provision limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement. Moreover, the court held: "Nissan has failed again to demonstrate that the parties had a written agreement to arbitrate that covered the subject of the termination dispute. . . . True, the parties continued to conduct business after May 1, 1999. Nissan continued to supply the M'Lady dealership with cars and trucks, and M'Lady continued to sell Nissan cars and trucks. Some kind of agreement governed the relationship but there is no evidence that part of that agreement was a promise to arbitrate any disputes." *Id.* at 994-95.

Likewise, in *Colorama Paints & Equip., Inc. v. Akzo Nobel Coatings, Inc.*, 2007 U.S. Dist. LEXIS 2799 (D.P.R. Jan. 11, 2007), there is no indication that the arbitration provision limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement. Indeed, the court quoted the arbitration provision as follows: "Consistent with the provisions of the United States Arbitration Act (9 U.S.C. § 1 et seq.), the Parties agree that the dispute resolution process outlined in this Section, which includes binding Arbitration, shall be the exclusive mechanism for resolving any dispute, controversy or claim among the Parties. Specifically, the Parties agree. [sic] to resolve all such disputes arising during the term of this Agreement and thereafter through binding Arbitration

8

conducted in accordance with the commercial rules and procedures of AAA Arbitration, with arbitration hearings to be held in Atlanta, Georgia." *Id.* at *2. Moreover, the court held: "we may not compel arbitration on the *assumption* that the parties meant for the written arbitration clause to apply with equal force to the second distribution agreement." *Id.* at *6.

Likewise, in *Morales v. Chem. Lime Co.*, 2011 U.S. Dist. LEXIS 158585 (D. Ala. 2011) there is no indication that the arbitration provision limited the scope of disputes the parties agreed to arbitrate to those arising out of the particular agreement. Moreover, the court held: "The court finds nothing in the 2009 CBA that constitutes a clear expression of an intent to have the agreement to arbitrate apply retroactively. Therefore, pursuant to binding Eleventh Circuit authority in Thomas v. Carnival Corporation, 573 F.3d 1113, 1119 (11th Cir. 2009) (concluding that "if the parties had intended retroactivity, they would have explicitly said so") all of Ms. Morales claims that predate November 22, 2009, i.e., the date of the specific collective bargaining agreement ('CBA') containing the arbitration agreement that is the basis for Defendant's Motion, are not subject to arbitration." *Id.* at *5.

Defendant's reliance on *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 651-652 (6th Cir. 2008) is unavailing. In that case, the court found that it was significant that there were no prior written contracts governing the parties' relationship. The court stated: "The case at bar does not involve a situation where the parties had prior written contracts governing their relationship." *Id.* at 651-52. In contrast, here there are multiple purported contracts, each of which purports to govern a distinct, specific time period. Another relevant distinction between this case and *Watson Wyatt & Co.* is that in that case there was a "cover letter [that] specifically explains that the intent of the proposed agreement was to formalize Watson Wyatt's terms and conditions of engagement with its clients because historically it did not set forth its terms in writing." *Id.* at 652. Also, the contract had no time limitation, unlike the purported contracts here, each of which has a specific, clearly defined temporal scope.

Defendant's reliance on *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1223 (N.D. Cal. 2007) is also unavailing. While there were prior written agreements between the parties in that case, there is no indication that the March 2005 agreement had any language

9

PLAINTIFFS' SURREPLY TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
*Roe v. SFBSC Management, LLC et al.*, Civil Case No. 14-cv-03616-LB

limiting the temporal scope of the agreement, in contrast to the purported contracts here, each of which purports to govern a distinct, specified time period. *See id.* at 1223.

### VII. PAGA

The U.S. Supreme Court has denied the petition for writ of certiorari in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014). Other than that update, Plaintiffs refer the Court to arguments Plaintiffs already presented. *See* Plaintiffs' Opp. at 22:27-24:19.

### VIII. JANE ROE 3 AND JANE ROE 4

Defendant fails to address the case law establishing that "[o]nce opt-in plaintiffs consent to join, 'opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.'" *See* Plaintiffs' Opposition at 7:22-25. Defendant's reliance on *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) is unavailing because there were no FLSA opt-in party plaintiffs in that case. *Compare Bamgbose v. Delta-T Group, Inc.*, 724 F. Supp. 2d 510, 517 (E.D. Pa. 2010) (finding that plaintiff's accepted offer of judgment did not moot the collective FLSA action where there were opt-in plaintiffs).

Roe 3 and Roe 4 are party plaintiffs. Defendant's "objections" to Roe 4's filed "Consent to Become Party Plaintiff" lack merit for the same reasons that they do for Roe 3. *See* Plaintiffs' Opposition at 7:10-8:4. Defendant has not sent letters demanding arbitration with respect to either Roe 3 or Roe 4, nor has Defendant moved to compel arbitration of their claims. Therefore, whatever rulings that Court may make with respect to Roe 1 and Roe 2, the Court should allow the claims of Roe 3 and Roe 4 to proceed before this Court.

### IX. CONCLUSION

For the reasons stated above and in Plaintiffs' Opposition, Plaintiffs respectfully request that the Court deny Defendant's motion to compel arbitration.

DATED: February 4, 2015  Respectfully submitted,

THE TIDRICK LAW FIRM

By: /s/ Steven G. Tidrick, Esq.
_____
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662