1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10                                   San Francisco Division

11

12    JANE ROE, et al.,                        Case No.  14-cv-03616-LB

13                      Plaintiffs,

14          v.                                  **ORDER STAYING CASE**

15    SFBSC MANAGEMENT, LLC,                    [Re: ECF Nos. 54, 59, 60]

16                      Defendant.

17                                       **INTRODUCTION**

18          This is a dispute under federal and California labor law. It is a putative collective action under

19    the Fair Labor Standards Act (29 U.S.C. §§ 201-19) and a putative class action under Rule 23.

20    (Am. Compl. – ECF No. 11 at 1-2, ¶ 1.)[1] The plaintiffs are or were exotic dancers suing the

21    company — defendant SFBSC, LLC ("BSC") — that (broadly speaking) managed the nightclubs

22    where they worked. The court previously denied BSC's motion to compel arbitration — which

23    motion was directed against plaintiffs Jane Roe 1 and Jane Roe 2. (ECF No. 53.) BSC has

24    appealed that decision to the Ninth Circuit. (ECF No. 58.)[2]

25    _____

26    [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
      ECF-generated page numbers at the tops of the documents.

27    [2] There is some dispute about how thoroughly BSC controlled operations at the relevant clubs, how
      uniformly BSC managed them, and what BSC's ultimate role is in this labor dispute. To ease

28    discussion, the court generally talks about BSC "managing" or "operating" its client nightclubs. The

ORDER 14-3616 LB

Three contested motions are before the court. BSC moves to stay all proceedings in this case until the Ninth Circuit renders its decision. (ECF No. 60.) The plaintiffs move the court to approve notice under *Hoffman–LaRoche v. Sperling*, 493 U.S.165 (1989). (ECF No. 54.) That notice would apprise other present and former dancers at BSC-operated nightclubs that this action is pending, and would give them the opportunity to join this case as additional plaintiffs. The plaintiffs also move to add Jane Roe 3 (who has already opted in to this case (ECF No. 15)) as "an additional proposed class representative." (ECF No. 59.)

For the reasons stated below, the court grants BSC's motion to stay this case pending resolution of its appeal. The court denies the plaintiffs' motions to send *Hoffman-LaRoche* notice and to add Jane Roe 3 as a proposed class representative. Should the Ninth Circuit affirm the court's arbitration order, the plaintiffs may re-notice their motions. They may then choose to stand on the papers that they have already filed or they may submit new briefs. The court also holds that the statute of limitation is tolled as to all potential plaintiffs during the pendency of the appeal — *i.e.*, from the date on which BSC noticed its appeal (March 9, 2015) until the date on which the Ninth Circuit releases its decision.

**ANALYSIS**

### I.   GOVERNING LAW

The parties do not dispute the governing legal principles. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" *Id.* (quoting in part *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926) and *Hilton v. Braunskill*, 481 U.S. 770, 777 (1986)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556 U.S. at 433-34.

The court's discretion is not unbounded. The Ninth Circuit uses a four-part test for considering

---

court expresses no opinion, and certainly reaches no conclusion, about the exact role that BSC played at the relevant clubs, or how uniformly they were run.

a stay pending appeal of an order refusing to compel arbitration. *See Leiva-Perez v. Holder,* 640 F.3d 962, 964 (9th Cir. 2011); *see also Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990) (citing *C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 716 F. Supp. 307, 309 (W.D. Tenn. 1989) (citing in turn *Hilton*, 481 U.S. at 776)). The governing test asks:

1. Whether the movant "has made a strong showing that [it] is likely to succeed on the merits";

2. Whether the movant will be "irreparably injured" absent a stay;

3. Whether a stay would "substantially injure" other parties interested in the proceeding; and

4. "[W]here the public interest lies."

*Leiva-Perez,* 640 F.3d at 964 (quoting *Nken*, 556 U.S. at 425-26). The court takes a "flexible approach" to these factors and uses a "sliding scale," meaning that the factors are "balanced" so that "a stronger showing of one element may offset a weaker showing of another." *Leiva-Perez*, 640 F.3d at 964-66 (quoting in part *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 2015 WL 674962, *2 (N.D. Cal. Feb. 17, 2015). "Under this sliding[-]scale approach,

> a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where he shows that his appeal "raises **serious legal questions**, or has a reasonable probability or fair prospect of success." *Leiva–Perez,* 640 F.3d at 971. A party satisfying this lower threshold under the first *Nken* factor **is not required to show that it is more likely than not to win** on the merits, but must then demonstrate that the balance of hardships under the second and third factors **tilts sharply** in its favor.

*Kum Tat*, 2015 WL 674962, at *2 (quotation and some citations omitted) (emphases added). One California federal court has observed that,

> courts within the Ninth Circuit have taken a more relaxed approach to stay requests in connection with decisions to refrain from sending parties to arbitration" or "have determined that stay requests in such circumstances meet the traditional requirements for such a stay because of the nature of the dispute and underlying rights at issue (*i.e.,* that the right to arbitrate would be devalued, if not rendered meaningless, if litigation proceeded apace).

*Cherny v. AT&T, Inc.*, 2010 WL 2572929, at *1 (C.D. Cal. Feb. 8, 2010) (citing cases).

## II. APPLICATION

### A.  Likelihood of Success on the Merits — "Serious Legal Question"

The court agrees that BSC has raised "serious legal questions" regarding the correctness of the court's order denying arbitration. The court does not agree that it got the order wrong; if it did, then the better course would be to vacate that order and direct the parties to arbitration. But it would be hubris to pretend that BSC's well-stated arguments might not convince the Ninth Circuit to reverse this court's decision. This court itself suggested, after all, that the question of procedural unconscionability was "close[]." (ECF No. 53 at 12.) BSC adds to that several other legal points that, in its view, embody "a substantial case for [reversal]." *See Leiva–Perez,* 640 F.3d at 967-68. Again, it is not BSC's burden to show that it will "more likely than not" prevail on appeal. *Id.* at 966-67 (citing *Nken, supra,* and *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010)). It need show only that its appeal presents "serious legal questions." *Leiva–Perez,* 640 F.3d at 971. BSC has done that.

### B.  The Balance of Harm

#### 1.  *Harm to the defendant*

The court also agrees that denying a stay would irreparably harm BSC. This harm lies primarily in the resources that BSC would have to expend pursuing this litigation — expenditures that, if the Ninth Circuit ultimately reverses and sends this case to arbitration, would be largely squandered. That would undermine or wholly defeat exactly the right (to an arbitral forum) that BSC seeks to vindicate before the Ninth Circuit. The relative benefits of arbitration, "speed and economy," will largely be lost if this lawsuit proceeds and the Ninth Circuit then decides that the case must be sent to arbitration. *See, e.g., Cherny*, 2010 WL 2572929 at *1; *Pokorny v. Quixtar, Inc.*, 2008 WL 1787111, *2 (N.D. Cal. Apr. 17, 2008) ("Absent a stay, Defendant could spend substantial time and resources on the litigation, only to have the appellate court reverse the Order and compel arbitration after the fact. In that situation, the primary benefits of ADR — speed and economy — would have been lost.") (citing *Alsacom, Inc. v. ITT N. Elec. Co.,* 727 F.2d 1418, 1422 (9th Cir.1984)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The plaintiffs argue and cite cases to support the proposition that litigation costs do not

2    constitute "irreparable harm" under the stay analysis. As BSC rightly points out, though, all but

3    one of the plaintiffs' cases are individual rather than collective suits. They are therefore

4    importantly different. Consider just the likely work connected with discovery: "The burdens

5    associated with discovery in a putative class action are substantially greater than in an individual

6    arbitration." *Kwan v. Clearwire Corp.*, 2011 WL 1213176, *3 (W.D. Wash. Mar. 29, 2011); *see

7    Kaltwasser v. Cingular Wireless, LLC*, 2010 WL 2557379, *2 (N.D. Cal. June 21, 2010) ("[T]he

8    nature and extent of discovery in private arbitration is fundamentally different from that allowed in

9    class-action litigation.").

10   The larger, looming, and (should the court's order be reversed) irreparably harmful costs of

11   moving ahead with this lawsuit remain even if, as the plaintiffs contend, discovery would inform

12   both this and arbitral proceedings. (*See* ECF No. 75 at 10 (quoting *Raymundo v. ACS State &

13   Local Solutions, Inc.*, No. 13-cv-442-WHA, 2 (N.D. Cal. Aug. 6, 2013) (order denying stay)

14   ("discovery will be useful even if this action is ultimately arbitrated").) Discovery is not the only

15   consideration. Litigation presents opportunities for ancillary practice that do not exist in

16   arbitration. That judicial and arbitral channels differ in ways that make the latter more time- and

17   cost-effective is exactly what underwrites the strong federal policy favoring arbitration.

18   In roughly this vein, BSC points out that proceeding with this lawsuit will almost certainly

19   involve a cycle of arbitration motions against additional plaintiffs beyond Jane Roe 1 and Jane

20   Roe 2. It is, after all, an important premise of the complaint that the current and prospective

21   plaintiffs worked under largely similar contractual arrangements.[3] In other words, it seems very

22   likely that many or most potential plaintiffs will have signed independent-contractor agreements

23   similar to the ones that Jane Roe 1 and Jane Roe 2 signed, that these will have been signed under

24   roughly similar conditions, and that these will generally contain identical arbitration terms. To

25   keep from waiving its right to arbitrate, BSC would have to move to compel arbitration against

26   _____

27   [3] *See* Am. Compl. – ECF No. 11 at 8, ¶ 23 ("[T]he employment terms, conditions, and policies that

28   applied to Plaintiffs were the same as those applied to the other class members who worked as exotic
     dancers at Defendant's Nightclubs."); pp. 18-21, ¶¶ 60-70 (collective- and class-action allegations).

ORDER 14-3616 LB

5

United States District Court
Northern District of California

1    such additional plaintiffs. The court would have to rule on all such motions. Yet, if the Ninth

2    Circuit eventually reverses this court's decision on the arbitration clauses, all that effort will have

3    gone for naught.

4         Judicial thinking seems to go both ways on whether litigation costs are irreparable harm. In

5    this relatively complicated context, involving 11 nightclubs and by the plaintiffs' estimate

6    approximately 500 "or more" potential plaintiffs (ECF No. 54 at 7), the court agrees that the costs

7    of proceeding with this lawsuit would irreparably harm BSC were it to prevail on appeal.

8              ***2. Harm to the plaintiff***

9         By contrast, no especial harm will befall the plaintiffs if this case pauses pending the Ninth

10   Circuit's decision. The plaintiffs suggest several ways in which a stay will harm them, but none is

11   persuasive. They argue, for example, that a stay "would force them to wait to receive the money to

12   which they are entitled," as well as "delay any injunctive relief that the Court may impose in order

13   to stop ongoing violations of law." (ECF No. 75 at 11-12.) Both these arguments presume that the

14   plaintiffs will win on the merits of their claims. The court cannot indulge in that presumption

15   without extreme unfairness to the defendant. As BSC puts it: "At this point, without having

16   received any merits evidence, the Court cannot reasonably predicate the denial of a stay on a

17   prediction that Plaintiffs will prevail on the merits." (ECF No. 78 at 11.)

18        The plaintiffs' remaining three arguments in this area warn that delaying this case will lead to

19   the loss of witnesses, tangible evidence, and potential claimants as life's vagaries make the last

20   increasingly harder to locate. (ECF No. 75 at 12.) That is probably all true. But so it is in every

21   case. There is nothing unusually ephemeral about the proof or potential parties that populate this

22   dispute. To the extent that this danger exists, its possibility does not rise to the level of "substantial

23   harm."

24                                          *   *   *

25        If delay prejudices the plaintiffs, that detriment "is outweighed by the potential prejudice to

26   Defendants that would result from further litigation of claims which may ultimately be subject to

27   arbitration." *In re Apple iPhone 3G Prods. Liab. Litig.*, 2010 WL 9517400, at *2 (N.D. Cal. Dec.

28

9, 2010). The court finds that the balance of hardships — factors 2 and 3 in the *Leiva–Perez* stay analysis — "tilts sharply" in BSC's favor.

### 3. Public interest

Finally, in considering the *Leiva–Perez* factors, pressing ahead with this case would not serve the public interest. Especially as that interest resides in the prudent use of scarce judicial resources. On this ground, in addition to restating arguments they make under previous factors (and which the court has already addressed), the plaintiffs suggest two essentially identical ways in which denying a stay would better advance the public interest. They write that moving ahead would: 1) "allow[] this law[-]enforcement action" under California's Labor Code Private Attorney General Act of 2004, Cal. Labor Code § 2698 *et seq.* "to proceed"; and 2) moving ahead would allow *Hoffman–LaRoche* notice to go out "promptly," assuming that notice is warranted, and "[p]rompt notice promotes the broad remedial goals of the Fair Labor Standards Act." (ECF No. 75 at 13.)

Prompt remedies are always preferred. But promptness is not the only goal and, like most ends, must bend to accommodate other concerns. The main concern here is the potential waste of the litigants' and the court's resources. If the Ninth Circuit reverses this court's decision on arbitration, then what will speed have gained? Rushing ahead may buy little and waste much. This threat looms especially large given the likelihood that, absent a stay, the court would face a cycle of motions to compel arbitration. "If this case were to proceed, the Court would be required to expend judicial resources ruling on issues which may be rendered moot after a decision" by the Ninth Circuit. *Apple iPhone 3G*, 2010 WL 9517400, at *2. There is no sound reason to proceed in such a way while the Ninth Circuit is deciding whether the arbitration clauses are enforceable. Waiting for that decision is in the best interests of the parties, the court, and the public. *See Brown v. MHN Gov't Servs., Inc.*, 2014 WL 2472094, *4 (N.D. Cal. June 3, 2014) ("conclud[ing] that a stay pending . . . appeal is necessary to ensure judicial efficiency and to preserve the parties' time and resources").

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.  The Plaintiffs' Motions

The discussion above equally moves the court to deny the plaintiffs' motions to approve *Hoffman–LaRoche* notice and to add Jane Roe 3 as a proposed class representative. The key point here, with respect to *Hoffman–LaRoche* notice, lies in the class-action waiver that is contained in the contracts of Jane Roe 1 and Jane Roe 2. In denying BSC's motion to compel arbitration, the court found that waiver substantively unconscionable. (ECF No. 53 at 14-16.) BSC proffers this as one ground on which the Ninth Circuit should reverse this court. (ECF No. 60 at 10-13.) If the appellate court does that, and upholds the contracts' ban on collective actions, then the question of *Hoffman–LaRoche* notice will be nullified. The court thinks it wiser to forgo the time, effort, and expense of notifying approximately 500 potential plaintiffs until the Ninth Circuit confirms that the plaintiffs can proceed collectively. This part of the discussion obviously assumes that all the plaintiffs signed contracts containing the class-action waiver — but the court's conclusion is not wholly dependent on that assumption. Even if some plaintiffs' contracts later prove not to contain class-action waivers, that is something that we cannot know without embarking upon discovery; for the reasons already given, even if that does prove true, the better course at this point is to await the clarity of the Ninth Circuit's holding. The same basic considerations also counsel denying the motion to add Jane Roe 3 as a proposed class representative. *See Castle v. Wells Fargo Fin., Inc.*, 2007 WL 703609, * (N.D. Cal. Mar. 5, 2007) ("[T]he better course is to first determine the enforceability of the arbitration agreements before addressing the scope and management of the remainder of this litigation.") (citing *Carter v. Countrywide Credit Indus., Inc.,* 189 F. Supp. 2d 606, 618 (N.D. Tex. 2002) ("[T]he issue of whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached.")); *Hiett v. MHN Gov't Servs., Inc.*, 2013 WL 567093 (W.D. Wash. Feb. 13, 2013) (refusing to lift stay pending appeal in wage case; stay "furthers the goal of efficiency for both the judiciary and litigants").

### D.  Tolling the Statute of Limitation

To ensure that no potential plaintiff is harmed by this stay, the court rules that the statute of

United States District Court
Northern District of California

1    limitation is tolled for the putative class during the pendency of the appeal. That is to say, the

2    court tolls the statute of limitations from the date on which BSC noticed its appeal (March 9, 2015

3    – *see* ECF No. 58) until the date on which the Ninth Circuit issues its mandate.

4                                           **CONCLUSION**

5         The court sees no compelling reason to continue with this litigation while the Ninth Circuit

6    works toward a decision that could take this case out of the court's power entirely. (With the

7    obvious qualification that some plaintiffs may not have signed arbitration agreements and so could

8    continue litigating.) For the reasons given above, the court grants BSC's motion to stay this case

9    pending the Ninth Circuit's decision on BSC's appeal. This case is stayed entirely as to all current

10   and potential plaintiffs. This stay entails denying the plaintiffs' motions to approve *Hoffman–*

11   *LaRoche* notice and to add Jane Roe 3 as a proposed class representative. Should the Ninth Circuit

12   affirm this court's decision on arbitration, the plaintiffs may re-notice those motions; they may

13   then choose to stand on the papers that they have already submitted, or they may file new,

14   substitute briefs. The statute of limitation is tolled with respect to all present and potential

15   plaintiffs from the date on which BSC  noticed its appeal (March 9, 2015) until the date on which

16   the Ninth Circuit issues its mandate.

17        This disposes of ECF Nos. 54, 59, and 60.

18        **IT IS SO ORDERED.**

19   Dated: April 17, 2015

20                                    _____

21                                    LAUREL BEELER
                                      United States Magistrate Judge
22

23

24

25

26

27

28

ORDER 14-3616 LB