Douglas J. Melton, Bar No. 161353
Shane M. Cahill, Bar. No. 227972
LONG & LEVIT LLP
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 397-2222
E-mail: dmelton@longlevit.com
scahill@longlevit.com

Attorneys for Defendant
SFBSC Management, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROES 1-2, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC; and DOES 1-200,<br><br>Defendants. | Case No. 3:14-cv-03616-LB<br><br>**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** |

# CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, including Exhibits A through E hereto (collectively "Settlement Agreement" or "Agreement"), is made and entered into by, between, and among Plaintiffs Jane Roe 1 and Jane Roe 3 ("Named Plaintiffs"),[1] on behalf of themselves and the Settlement Class as defined below, on the one hand, and Defendant SFBSC Management, LLC ("SFBSC"), and the entities set forth in Exhibit A (the "Nightclub Entities," with SFBSC and the Nightclub Entities being collectively the "Defendants"), on the other hand. Named Plaintiffs and Defendants (individually, a "Party" and collectively, the "Parties") enter into this Agreement to effect a full and final settlement, resolution, and dismissal with prejudice of all claims in the action of *Jane Roes 1-2, et al. v. SFBSC Management, LLC, et al.*, Case No. 3:13-cv-03616-LB (N.D. Cal.), as amended pursuant to this Agreement (the "Action"), and all claims based on or reasonably related thereto. This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined herein, and on the terms set forth below, and to the fullest extent reflected herein, subject to the approval of the Court.

## I. RECITALS

1. This Agreement is made in consideration of the following:

2. WHEREAS, on August 8, 2014, Plaintiff Jane Roe 1 filed a class action complaint in the United States District Court for the Northern District of California asserting various wage- and expense-related claims against Defendant SFBSC as an alleged joint employer, on behalf of herself and a proposed class of "all individuals who, during the class period, have worked as exotic dancers at nightclubs in California that Defendant has operated, controlled, and where Defendant has dictated employment policies,"[2] thereby initiating the Action (*see Roe* Dkt. 1);

---

[1] On January 12, 2015, the Court issued an order granting Plaintiffs' motion to proceed pseudonymously (*see Roe* Dkt. 32). Jane Roe 2 is not a signatory to this agreement.

[2] The Nightclubs identified in the initial complaint filed in this Action are: Hungry I, Centerfolds, Roaring 20's, Garden of Eden, Larry Flynt's Hustler Club, Little Darlings, Gold Club, Market Street Cinema, New Century, Showgirls (now known as The Penthouse Club) and Condor

3. WHEREAS, on November 28, 2014, Plaintiffs Jane Roe 1 and Jane Roe 2 filed an amended class action complaint asserting similar wage- and expense-related claims on behalf of themselves and the same proposed class (*see Roe* Dkt. 11);

4. WHEREAS, on December 3, 2014, Jane Roe 3 filed a Notice of Consent to Become Party Plaintiff in FLSA Action (*see Roe* Dkt. 14), and, on March 11, 2015, a motion to be added to the action as a proposed class representative (*see Roe* Dkt. 59);

5. WHEREAS, on March 2, 2015, the Court issued an order denying SFBSC's motions to compel arbitration (*see Roe* Dkt. 53), and SFBSC appealed that decision pursuant to 9 U.S.C. § 16;

6. WHEREAS, on April 17, 2015, the Court issued an order denying, without prejudice, Jane Roe 3's motion to be added to the action as a proposed class representative and granting SFBSC's motion to stay as to all current and potential plaintiffs' claims pending the Ninth Circuit's decision on SFBSC's appeal (*see Roe* Dkt. 80);

7. WHEREAS, on July 18, 2016, the Ninth Circuit issued a Memorandum Disposition affirming the Court's order denying SFBSC's motions to compel arbitration (*see* Roe Dkt. 90; Ninth Circuit Case No. 15-15437 [the "Appeal"] Dkt. 45-1);

8. WHEREAS, the Ninth Circuit continued SFBSC's deadline to petition for reconsideration or *en banc* review of its Memorandum Disposition until December 27, 2016 (*see* Appeal Dkt. 50).

9. WHEREAS, on December 21, 2016, the Ninth Circuit granted the Parties' stipulation to dismiss the Appeal without prejudice to its reinstatement in the event the Court denies approval of the Settlement (*see* Appeal Dkt. 52);

10. WHEREAS, the Named Plaintiffs have not filed a motion for class certification, and no litigation class has been certified;

11. WHEREAS, the Named Plaintiffs allege generally that Defendants improperly classified them, and all putative Class Members, as independent contractors rather than

---

Gentleman's Club (*see Roe* Dkt. 1).

employees, and assert derivative claims related thereto;

12. WHEREAS, Defendants deny the allegations in the Action; deny that they have engaged in any wrongdoing; deny that any Class Member is, or ever was, an employee of Defendants; deny that they took tips or gratuities from any Class Member; deny that they took improper or unlawful payments from any Class Member; deny that they were required and/or failed to pay any Class Member a minimum wage to the extent required by applicable law; deny that they were required and/or failed to pay any Class Member overtime wages to the extent required by applicable law; deny that they were required and/or failed to reimburse any Class Member for business expenses to the extent required by applicable law; deny that they were required and/or failed to provide any Class Member with wage statements to the extent required by applicable law; deny that they engaged in unfair competition; deny that they threatened, or engaged in, unlawful retaliation against any Class Member; deny that they are liable for any penalties under California law; deny that the Named Plaintiffs' allegations state valid claims; deny that the arbitration agreements in issue were unenforceable; and state that they are entering into this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

13. WHEREAS, a *bona fide* dispute exists as to whether any amount of wages are due from Defendants to any putative Class Member, and as to whether and penalties are due under California law;

14. WHEREAS, the Parties have engaged in three in-person mediation sessions and multiple telephone conferences with Ninth Circuit Mediator Peter Sherwood during which the Parties exchanged significant facts, documents, and information regarding Class Members' working conditions, performance hours, compensation, and the relative control exercised respectively by the Class Members and Defendants over the manner and means under which Class Members performed at the Nightclubs, before agreeing to the terms of this arm's-length Settlement;

15. WHEREAS, this Settlement Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined herein, and on the

terms set forth below, and to the fullest extent reflected in this Agreement, subject to the approval of the Court;

16. WHEREAS, this Settlement Agreement shall cover all labor law and related "employment" claims and litigation now pending, asserted by amended pleadings to be filed pursuant to the terms of this Agreement, or that could be brought against Defendants (including but not limited to claims related to or arising from alleged employment misclassification; reimbursement claims; tip confiscation claims; overtime claims; minimum wage claims; inaccurate wage statement claims; reporting time claims; payroll recordkeeping claims; claims for timely payment of wages upon discharge; claims for waiting time penalties; claims for payment for all hours worked; claims for working more than six days in seven; claims for improper deduction of wages; claims in court related to payment of workers' compensation; claims related to the provision of paid sick leave, meal and rest breaks; claims under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") for all Class Members who have consented to join in this Action pursuant to 29 U.S.C. § 216(b) as provided for in this Agreement; and claims brought under the California Labor Code Private Attorneys General Act of 2004 codified at Labor Code § 2699 *et seq.* ("PAGA") and/or the California Unfair Competition Law codified at Business & Professions Code § 17200 *et seq.* ("UCL") predicated on or related to any alleged labor law violations, and in particular shall cover the labor law and related claims now pending in the action known as *Nicole Hughes, Angelynn Hermes and Penny Nunez, et al. v. S.A.W. Entertainment, Ltd., et al.,* Case No. 3:16-cv-03371-LB (N.D. Cal.) (the "*Hughes* Action") and *Elana Pera and Sarah Murphy et al. v. S.A.W. Entertainment LTD., d/b/a Condor Gentlemen's Club*, Case No. 3:17-cv-00138-LB (N.D. Cal.) (the "*Pera* Action");

17. WHEREAS, upon execution of this Settlement Agreement, Class Counsel will promptly submit to the Court in concurrence with a motion for preliminary approval of the Settlement an Amended Complaint for Settlement in the Action, without material variation from Exhibit B (the "Amended Complaint for Settlement"), understanding that, in the event that the Court approves the Settlement and the Settlement becomes Final, said Amended Complaint for Settlement shall be deemed timely filed and the operative complaint in the Action. In the event

the Court does not grant Final Approval of the Settlement or the Settlement does not become Final, the Amended Complaint for Settlement shall be null and void *ab initio*;

18. WHEREAS, the Parties agree that this Settlement Agreement, the fact of the anticipated Settlement, any of the terms in the Agreement, and any documents filed in support of the Settlement or approval thereof, shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing on the part of any Party; (ii) any violation of any statute, regulation, ordinance or other law; (iii) any liability on the claims or allegations in the Action, or in any other proceeding—legal, administrative, or arbitral—including but not limited to the *Hughes* Action and *Pera* Action; (iv) the propriety of litigating as opposed to arbitrating the claims in these actions; (v) whether any entertainer at any of the Nightclubs is, should be, or should have been, classified or treated as an employee for any purpose; or (vi) the propriety of certifying a litigation class in the Action, or in any other proceeding, and shall not be used by any Person for any purpose whatsoever in any legal, administrative, or arbitral proceeding. Such matters may only be submitted in a proceeding to enforce the terms of the Settlement Agreement;

19. WHEREAS, there has been no final determination by any court as to the merits of the claims asserted by the Named Plaintiffs or any Class Members against Defendants;

20. WHEREAS, the Named Plaintiffs and Class Counsel believe that the Settlement provides a just, fair, and favorable recovery for the Settlement Class, based on the claims asserted, the evidence developed, and the damages that might be proven against Defendants in the Action, and recognize and acknowledge the significant expense, length, difficulty, and uncertainty of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals. The Named Plaintiffs and Class Counsel have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the Action, as well as the difficulties and delays inherent in any such litigation, are mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice and enjoined as set forth herein;

21. WHEREAS, the Named Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Named Plaintiffs, the claims of the average Class Member, the risks associated with the continued prosecution of the Action, and the likelihood of success on the merits of the Action, and believe that, after considering all the circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Defendants have asserted and could assert, the proposed Settlement set forth in this Agreement is just, fair, reasonable, adequate, is in the best interests of the Named Plaintiffs and the Class Members, and confers substantial benefits upon the Class Members;

22. WHEREAS, the Named Plaintiffs warrant and represent that they are effectuating this Settlement and executing this Agreement after having received full legal advice as to their respective rights and have had the opportunity to obtain independent counsel to review this Agreement;

23. WHEREAS, Defendants dispute that any certification is proper for the purposes of litigating the claims proposed in or flowing from the operative complaint in the Action;

24. WHEREAS, however, for settlement purposes only, Defendants will stipulate to the certification of all class claims in the Action that are subject to the certification requirements of Rule 23 of the Federal Rules of Civil Procedure, with the understanding that in the event the Court does not grant Final Approval of the Settlement or the Settlement does not become Final, such stipulation and certification shall be null and void *ab initio*;

25. And, WHEREAS, also for settlement purposes only, Defendants will stipulate to the certification, for the purpose of transmitting notice, of all claims in the Action that are subject to the collective action requirements of 29 U.S.C. § 216(b), with the understanding that in the event the Court does not grant Final Approval of the Settlement or the Settlement does not become Final, such stipulation and certification shall be null and void *ab initio.*

26. NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Named Plaintiffs, for themselves and on behalf of the Settlement Class, and by

Defendants that, subject to the approval of the Court, the Action shall be settled, resolved, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled, resolved and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Agreement.

## II. DEFINITIONS

27. In addition to the terms defined elsewhere in this Agreement, the following terms, when used in this Agreement, shall have the meanings specified in this Section. Capitalized words and phrases in such definitions, not previously explained, are further defined herein.

28. "Administrative Costs" means the administrative costs of settlement charged by the Settlement Administrator, including but not limited to preparation and copying of Class Notice, mailing of Class Notice, website maintenance, tracking of Class Members who have requested exclusion from the Settlement and the consequent preparation of the Opt-Out List, preparation and submission of the Due Diligence Declaration specified in this Agreement, tracking of Settlement Class Members who have objected to the Settlement, Cash Payment and Dance Fee Payment Claims administration, and any other reasonable fees and costs incurred or charged by the Court-approved Settlement Administrator in connection with the execution of its duties under this Agreement. The Notice and Administration Fund as defined herein is part of the Administrative Costs.

29. "Attorneys' Fees and Expenses" or "Fee and Expense Award" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for their fees, costs, and expenses in connection with the Action and the Settlement.

30. "Bar Date" means the final time and date by which an FLSA Claim Form must be postmarked to the Settlement Administrator in order for a Class Member to be eligible to receive a Cash Payment or Dance Fee Payment. The Bar Date shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

31. "CAFA Notice" means notice sent by Defendants that complies with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*

32. "Cash Payment" means the amount of money to be paid pursuant to the terms of

this Agreement to a Settlement Class Member who elects to receive her monetary compensation of this Settlement in the form of a one-time cash payment. Although the term "cash" is used, Cash Payments will be paid via check.

33. "Cash Payment Claim" means the submission made by a Class Member using the FLSA Claim Form on which she elects to receive a Cash Payment, which shall serve as that Class Member's Consent to Join as a party plaintiff to the FLSA Claims asserted in this Action pursuant to 29 U.S.C. § 216(b).

34. "Cash Payment Claimant" means any Class Member who consents to join as a party plaintiff in the FLSA Claims in this Action by submitting a Properly Completed, valid, and timely FLSA Claim Form that qualifies for a Cash Payment under the terms of this Settlement Agreement.

35. "Claim(s)" means, when used alone herein and not as a part of another specifically defined phrase, any and all past, present and future claims, actions, demands, causes of action, suits, debts, obligations, damages, and rights or other assertions of liability, of any conceivable kind, nature and description whatsoever, whether known or unknown, whether existing or potential, whether fixed or contingent, whether asserted or not, recognized now or hereafter and whether expected or unexpected, pursuant to any theory of recovery and whether at law, in equity or otherwise, including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and whether for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements (including, but not limited to, those incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Attorneys' Fee and Expense Award authorized by this Agreement), that a Person may have up to the Effective Date.

36. "Claim Period" means the time period from the Notice Date through the Bar Date, which is the time period that Settlement Class Members will have to submit an FLSA Claim Form pursuant to this Agreement. The Claim Period shall run for a period of time ordered by the Court, and last until at least sixty (60) days from the Notice Date.

37. "Class" means the group of Entertainers who, during the Class Period, performed at one or more of the Nightclubs, but does not include those individuals who provide or who have provided services as "headliner" or "feature" performers unless such individual was otherwise a party to a Dancer Contract with a Nightclub during the Class Period.

38. "Class Counsel" means The Tidrick Law Firm.

39. "Class Member" means any individual who, during the Class Period, has performed as an Entertainer at one or more of the Nightclubs, but does not include those individuals who provide or who have provided services as "headliner" or "feature" performers unless such individual was otherwise a party to a Dancer Contract with a Nightclub during the Class Period.

40. "Class Notice," or "Notice of Settlement of Class Action," means a notice of settlement of class action to be submitted for review and approval by the Court as part of the motion for preliminary approval.

41. "Class Period" means the period from August 8, 2010, through the Preliminary Approval Date.

42. "Consent to Join" means a Class Member's consent to join as a party plaintiff to the FLSA claims asserted in this Action pursuant to 29 U.S.C. § 216(b). A Settlement Class Member's signed FLSA Claim Form that is timely and validly submitted to the Settlement Administrator shall serve as that Class Member's Consent to Join.

43. "Court" means the United States District Court for the Northern District of California, and the Magistrate Judge assigned to the Action, the Honorable Laurel Beeler.

44. "Dance Fee" means the mandatory, established, and published cost of personal entertainment performances engaged in by Entertainers at the Nightclubs for, and paid by, customers; the division of which between a Nightclub and an Entertainer is established in the Dancer Contract.

45. "Dance Fee Payment" means certain Dance Fees that would otherwise be owned exclusively by a Nightclub pursuant to the terms of a Dancer Contract that the Dance Fee Payment Claimant may retain as her monetary compensation under this Agreement following her

submission of a Valid Claim electing a Dance Fee Payment. Subject to the Plan of Allocation for the Dance Fee Payment Pool set forth herein, a Dance Fee Payment Claimant may receive a total Dance Fee Payment of up to $8,000.00 by retaining up to $5,000.00 in Dance Fees that would otherwise be owned exclusively by the Nightclub she designates on the FLSA Claim Form as her Primary Nightclub and up to $3,000.00 in Dance Fees that would otherwise be owned exclusively by the Nightclub she designates on the FLSA Claim Form as her Secondary Nightclub. After the Dance Fee Payment Pool is allocated among Dance Fee Payment Claimants in the manner set forth herein, Dance Fee Payment Claimants will receive their Dance Fee Payments in future installments by performing during the Dance Fee Payment Redemption Period at the Nightclubs identified on their FLSA Claim Forms and retaining the Dance Fees generated during those performances that would otherwise be owned exclusively by the specified Nightclub(s), pursuant to the terms of the relevant Dancer Contract(s), in the manner described above.

46. “Dance Fee Payment Claimant” means any Class Member who consents to join as a party plaintiff in the FLSA Claims in this Action by submitting a Properly Completed, valid, and timely FLSA Claim Form that specifies an election to receive, and qualifies for, a Dance Fee Payment under the terms of this Settlement Agreement.

47. “Dance Fee Payment Pool” means the total sum of $1,000,000.00 in future Dance Fees that would otherwise be owned exclusively by the Nightclubs pursuant to the terms of Dancer Contracts with Dance Fee Payment Claimants, which will be paid as Dance Fee Payments to Dance Fee Payment Claimants by the Nightclub(s) designated on the Dance Fee Payment Claimants’ valid FLSA Claim Forms as monetary compensation under this Agreement. The Dance Fee Payment Pool will be divided evenly among ten of the eleven Nightclubs (specifically, all of the Nightclubs excluding Market Street Cinema), meaning that up to $100,000.00 in future Dance Fees that would otherwise be owned exclusively by a particular Nightclub will be available for allocation to Dance Fee Payment Claimants, pursuant to the Plan of Allocation, who designate that particular Nightclub as either her Primary Nightclub or Secondary Nightclub. No Nightclub will be required to pay total Dance Fee Payments in excess of $100,000.00.

48. “Dance Fee Payment Redemption Period” means a period of two years

immediately following the last occurrence of the following events: 1) the determination by the Settlement Administrator of the identity of Settlement Class Members who have filed Valid Cash Pool Claims or Dance Fee Payment Claims; 2) the expiration of the Opt-Out Period; 3) the Judgment becoming Final.

49. "Dancer Contract" means a contract entered into between a Settlement Class Member and a Nightclub, which permits the Settlement Class Member to engage in personal dance sales for remuneration at the Nightclub's premises.

50. "Date of Performance" means the date(s) any Settlement Class Member Performs pursuant to a Dancer Contract at a Nightclub in order to obtain a Dance Fee Payment or a Residual Dance Fee Payment. For purposes of this definition, one Date of Performance shall include any connected block of time that a Settlement Class Member is on the premises of a Nightclub in order to Perform, regardless of the fact that the Date of Performance extends over more than one calendar day. By way of illustration only, if a Settlement Class Member commences Performing on a Tuesday night at 9:00 p.m., and completes her Performances at 2:00 a.m. on Wednesday morning and then leaves the Nightclub, that period will be considered for purposes of this Agreement to constitute one Date of Performance. If the same Settlement Class Member then returns to the same Nightclub, or a different Nightclub, on Wednesday evening and again commences Performances (which may carry over to Thursday morning), that will constitute a second Date of Performance.

51. "Defense Counsel" means the law firm of Long & Levit LLP.

52. "Effective Date" means seven (7) days after which both of the following events have occurred: (i) the Final Approval Order has been entered, and (ii) the Final Approval Order and Judgment have become Final.

53. "Enhancement Payment" means the amount approved by the Court to be paid to a Named Plaintiff or other Settlement Class Member identified herein in addition to their respective payments under the Plan of Allocation, in recognition of her/their efforts in coming forward as a Named Plaintiff or in another capacity.

54. "Entertainer(s)" means persons who dance, Perform, and/or entertain, or who have

danced, Performed, or entertained, as exotic dance entertainers on the premises of a Nightclub and who sell personal entertainment performances or services to customers.

55. "Exclusion/Objection Deadline" means the final date, established by and set forth in the Preliminary Approval Order, by which a Class Member may either (i) object to any aspect of the Settlement (pursuant to Section XIV), or (ii) request to be excluded from the Settlement (pursuant to Section XIII).

56. "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (i) entering the Final Approval Order and Judgment and dismissing the Action with prejudice; (ii) determining whether the Settlement should be approved as fair, reasonable, and adequate; (iii) ruling upon an application for Enhancement Payments by the Named Plaintiffs and other individuals; (iv) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (v) entering any orders awarding Attorneys' Fees and Expenses and Enhancement Payments. The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

57. "Final," when referring to the Judgment or to the Settlement, means that (i) the Judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the Judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the Judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by way of appeal, petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the Judgment in its entirety.

58. "Final Approval" means entry by the Court of the Final Approval Order agreed upon by the Parties, in a form that is approved by and acceptable to all Parties.

59. "Final Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, to be agreed upon by the Parties, memorializing the Court's approval of the Settlement. Entry of the Final Approval Order shall constitute the Court's ultimate and

conclusive approval of this Settlement Agreement.

60. "First Tier Cash Pool" means the amount of $2,000,000.00 made available in accordance with the terms of this Agreement that will be used to pay Settlement Class Members who elect to receive their monetary Settlement benefit in the form of a Cash Payment, to pay Attorney's Fees and Expenses, to pay the PAGA Payment, to pay Enhancement Payments, and to pay Administrative Costs.

61. "FLSA Claim Form" means the claim form, as reflected without material variation in Exhibit C, on which Class Members may elect to receive a Cash Payment or Dance Fee Payment. The FLSA Claim Form, if signed by a Settlement Class Member and timely and validly submitted to the Settlement Administrator as set forth herein, shall serve as that Class Member's Consent to Join as a party plaintiff to the FLSA Claims asserted in the Action pursuant to 29 U.S.C. § 216(b); shall authorize Class Counsel to file the Consent to Join with the Court in a manner that is consistent with the privacy protections of the Court's order of January 12, 2015; and shall effect a full and complete release of any and all Claims under the FLSA asserted in the Action or that are reasonably related thereto and could have been brought in the Action. In the event that the Court does not grant Final Approval of the Settlement, or the Settlement does not become Final, any Consent to Join and release of the FLSA Claims filed on behalf of any Class Member shall be null and void *ab initio*.

62. "FLSA Claimants' Released Claims" means all Settlement Class Members' Released Claims as well as any and all Claims against the Released Parties, or against any one or group of them, based on putative violations of, or related to the Claims asserted in this Action, or that could have been asserted in this Action, under the FLSA.

63. "General Released Claims" means any and all Claims against the Released Parties, or against any one or group of them, including unknown Claims covered by California Civil Code § 1542 (as quoted herein), by a General Releasor, arising at any time prior to the Effective Date, for any type of relief that can be released as a matter of law, including, without limitation, Claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or

equitable relief, with the exception of any Claims which cannot be released as a matter of law. Each General Releasor will generally release all known and unknown Claims against the Released Parties conditioned upon Court approval of a General Release Enhancement Payment for her, and waive the application of section 1542 of the California Civil Code by executing the General Release Form, which is attached hereto as Exhibit E, within seven (7) days of the date on which the Court enters the Final Approval Order. The Settlement Administrator will pay the Court approved General Release Enhancement Payment(s) within eight (8) days of the date on which the General Releasor executes the General Release Form if she has not by then revoked her signature. The Claims released pursuant to this paragraph and described in the General Release Form include but are not limited to the Settlement Class Members' Released Claims, as well as any other Claims under any provision of the FLSA, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, and Claims under all state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

64. "General Releasor" means Jane Roe 2, if the Court approves payment to her of a General Release Enhancement Payment and she also signs a General Release Form, and/or Jane Roe 1, if the Court approves payment to her of a General Release Enhancement Payment and she signs a General Release Form.

65. "General Release Enhancement Payment" means the amount approved by the Court, if any, to be paid to Jane Roe 1, Jane Roe 2, or both of them, in addition to their respective payments under the Plan of Allocation and in addition to their respective Enhancement Payments, as consideration for their execution of a General Release Form.

66. "Gross Settlement Value," and also referred to herein as "Settlement

Consideration," shall mean the value of the aggregate financial benefits that Defendants shall make available pursuant to this Agreement. The Gross Settlement Value shall equal (and shall not exceed) $5,000,000.00. That amount includes the value of the First Tier Cash Pool ($2,000,000.00), the Second Tier Cash Pool (up to $1,000,000.00), the Dance Fee Payments and Residual Dance Fee Payments ($1,000,000.00), and the changes to the Defendants' business practices (estimated to confer benefits to class members in excess of $1,000,000.00).[3]

67. "Judgment" means the final judgment to be entered in the Action upon Final Approval of this Settlement, in a form that is approved by and acceptable to all Parties.

68. "Legally Authorized Representative" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Class Member's estate; guardian, conservator, or designated agent of an incapacitated Class Member; or any other legally appointed Person responsible for handling the business affairs of a Class Member.

69. "Net Cash Payment Settlement Fund" means the First Tier Cash Pool and, as applicable, the Second Tier Cash Pool, less the Attorneys' Fees and Expenses, the PAGA Payment, Enhancement Payments, and Administrative Costs approved by the Court and as further provided in this Agreement.

70. "Nightclubs" means the following San Francisco adult entertainment nightclubs, which are owned by the various Nightclub Entities identified in Exhibit A: 1) Hungry I; 2) Centerfolds; 3) Roaring 20's; 4) Garden of Eden; 5) Larry Flynt's Hustler Club; 6) Little Darlings; 7) Gold Club; 8) New Century; 9) The Penthouse Club (formerly known as Showgirls); 10) Condor Gentleman's Club; and 11) Market Street Cinema.

71. "Notice and Administration Fund" means a fund consisting of $50,000.00 advanced by Defendants (which will be considered to be part of the Settlement Consideration in the event that the Settlement becomes Final) to be used by the Settlement Administrator to pay

[3] Defendants will be required to implement all the changed business practices identified in this Agreement, and confer upon Class Members the corresponding benefits associated with those changed business practices, even if the total monetary value of the corresponding benefits exceeds the Parties' estimates.

the costs of preparing and providing Class Notice to Class Members, tracking Class Members who have requested exclusion from the Settlement and the consequent preparation of the Opt-Out List, preparation and submission of the Due Diligence Declaration specified this Agreement, tracking of Settlement Class Members who have objected to the Settlement, soliciting the filing of Cash Payment Claims or Dance Fee Payment Claims by Class Members, and assisting Class Members in making the Cash Payment Claims or Dance Fee Payment Claims. The monies paid into the Notice and Administration Fund is part of the monetary Settlement to be paid by Defendants from the First Tier Cash Pool as part of the Administrative Costs.

72. "Notice Date" means the date of the initial distribution of the Notice of Settlement of Class Action to Settlement Class Members.

73. "Opt-Out List" means the Court-approved list of all Class Members who timely and properly requested exclusion from the Settlement. The contents of the Opt-Out List shall be designated as Confidential Information subject to the terms of the Stipulated Protective Order in the Action (*Roe* Dkt. 14), and shall be held in confidence by the Parties pursuant to the terms of that Order. The Opt-Out List shall not be disclosed through any manner of public filing or other disclosure.

74. "PAGA Claims" mean all penalties sought against the Defendants pursuant to PAGA. The Named Plaintiffs assert PAGA Claims in a representative capacity in their Amended Complaint for Settlement.

75. "PAGA Payment" means the payments made pursuant this Agreement to resolve all PAGA Claims.

76. "Perform(s)," "Performed," "Performing," and "Performances" mean(s) all acts of entertaining, dancing, and/or engaging in entertainment services, and all activities related thereto, at the Nightclubs or at any of them.

77. "Performance Month" means any month during the Settlement Class Period in which a Settlement Class Member had at least one Date of Performance at a Nightclub.

78. "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any

political subdivision thereof, or any other type of business or legal entity.

79. "Plaintiffs" means collectively the Named Plaintiffs and all Settlement Class Members.

80. "Plan of Allocation" means the plan for allocating the Cash Payment settlement fund, and the Dance Fee Payment Pool, the Residual Dance Fee Payment Pool, between and among Cash Payment Claimants, Dance Fee Payment Claimants, and Residual Dance Fee Payment Claimants as approved by the Court.

81. "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement, including the Exhibits thereto, and (ii) enters an order providing for distribution of the Notice of Settlement of Class Action to the Class Members, an opportunity to be excluded, or to "opt out," from the Settlement, an opportunity to submit timely objections to the Settlement, establishing procedures for submitting Cash Payment Claims and Dance Fee Payment Claims, and setting the Fairness Hearing.

82. "Preliminary Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, which shall constitute preliminary approval by the Court of this Settlement Agreement.

83. "Primary Nightclub" means a Nightclub where a Dance Fee Payment Claimant has a valid Dancer Contract and which she designates on the FLSA Claim Form as the Nightclub where she primarily performs for purposes of redeeming Dance Fee Payments.

84. "Properly Complete(d)" means a document dated and personally signed by the Settlement Class Member under penalty of perjury, which provides accurate, to the best of the Class Member's knowledge, answers/responses to all of the information requested in the document.

85. "Released Claims" shall be construed as broadly as possible to effect complete finality over the Action and the Claims asserted therein. "Released Claims" include, as applicable, "General Released Claims," "Settlement Class Members' Released Claims," and "FLSA Claimants' Released Claims." Notwithstanding any other provision of this Agreement,

"Released Claims" do not include claims for personal injuries. Plaintiffs are not releasing any Claims relating to personal injuries. Furthermore, the release of any Claims under the FLSA contemplated by this Settlement shall be effectuated only if and after a Class Member has submitted a Valid Claim before the Bar Date and thereby has consented to join as a party to the FLSA claims asserted in the Action pursuant to 29 U.S.C. § 216(b).

86. "Released Parties" means SFBSC, and each and every one of the Nightclubs and Nightclub Entities identified in Exhibit A, together with each and every one of their respective current, former and future owners (either direct or indirect, including but not limited to partners, shareholders, members, parent companies, holding companies, trusts and/or trustees), officers, directors, managers, employees, agents, representatives, contractors (not including Plaintiffs or Class Members), insurers, reinsurers, attorneys, auditors, accountants, bookkeepers, experts, subsidiaries, affiliates, divisions, licensees, licensors, consultants, heirs, executors, personal representatives, predecessors and successors in interest, and assigns, and any benefit plans sponsored or administered by SFBSC or any of the Nightclubs or Nightclub Entities identified in Exhibit A.

87. "Releasing Parties" means Plaintiffs, and each and every one of their heirs, guardians, executors, administrators, representatives, agents, attorneys, and assigns.

88. "Residual Dance Fee Payment" means a payment of Dance Fees made from the Residual Dance Fee Payment Pool to a Residual Dance Fee Payment Claimant.

89. "Residual Dance Fee Payment Claim" means the submission made by a Class Member using the Residual Dance Fee Payment Claim Form electing to receive Residual Dance Fee Payments as monetary compensation under this Agreement.

90. "Residual Dance Fee Payment Claimant" means a Class Member who has timely submitted a Valid Residual Dance Fee Claim.

91. "Residual Dance Fee Payment Claim Form" means a form in all material respects identical to Exhibit D, which is to be provided to Settlement Class Members at, and which must be returned Properly Completed and within the Dance Fee Payment Redemption Period to, a Nightclub in order for a Settlement Class Member to be entitled to obtain a Residual Dance Fee

Payment.

92. "Residual Dance Fee Payment Pool" means the amount of the Dance Fee Payment Pool remaining at any given Nightclub, if any, that Dance Fee Payment Claimants do not claim during the Claim Period.

93. "Second Tier Cash Pool" means a monetary amount equal to the amount by which the collective sum of the Attorney's Fees and Expenses, Enhancement Payments, the PAGA Payment, the Administrative Costs, and the total amount of Cash Payment Claimants' Cash Payment Claims exceed the First Tier Cash Pool of $2,000,000.00. By way of illustration only, if the sum of Attorney's Fees and Expenses, Enhancement Payments, the PAGA Payment, Administrative Costs, and the total amount of Cash Payment Claimants' Cash Payment Claims equals $2,900,000.00, the Second Tier Cash Pool will consist of $900,000.00. In no event shall the Second Tier Cash Pool exceed the sum of $1,000,000.00.

94. "Secondary Nightclub" means a Nightclub where a Dance Fee Payment Claimant has a valid Dancer Contract which she designates on the FLSA Claim Form as the secondary Nightclub where she performs for purposes of redeeming Dance Fee Payments.

95. "Settlement" means the settlement of the Action between and among the Plaintiffs and Defendants, as set forth in this Agreement, including all attached Exhibits (which are an integral part of this Settlement Agreement and that are incorporated herein in their entirety by reference).

96. "Settlement Administrator" means one of the following neutral, third-party professional settlement administrators to be recommended by Class Counsel and appointed by the Court:

a. Simpluris, Inc.

b. Rust Consulting, Inc.

c. Settlement Services, Inc.

d. CPT Group, Inc.

97. "Settlement Class" means all Persons who, during the Class Period, have Performed as exotic dancers at one or more of the Nightclubs pursuant to a Dancer Contract, and

who have not timely and properly excluded themselves from the Settlement as provided in Section XIII of this Agreement.

98. "Settlement Class Member" means any Class Member who has not timely and properly excluded herself from the Settlement as provided in Section XIII of this Agreement.

99. "Settlement Class Members' Released Claims" means any and all Claims that are based on or reasonably related to the Claims asserted in the Action, with the exception of claims under the FLSA, including as is set forth in the Amended Complaint for Settlement, and specifically including:

a) Claims for unpaid wages (including without limitation claims for minimum wage, regular wages, overtime, final wages, calculation of the correct overtime or regular rate, and meal period and rest period premiums), expense reimbursements, interest, and penalties (including waiting time penalties pursuant to California Labor Code section 203, wage statement penalties pursuant to California Labor Code section 226, and civil penalties pursuant to PAGA (California Labor Code section 2698 *et seq*.));

b) Claims pursuant to California Labor Code sections 200-204, 206.5, 207, 208, 210-214, 216, 218, 218.5, 218.6, 221, 222.5, 223, 225.5, 226, 226.3, 226.7, 226.8, 227, 227.3, 245-249, 351, 353, 432.5, 450, 510, 512, 551-552, 558, 1174, 1174.5, 1182.12, 1194, 1194.2, 1194.3, 1197, 1197.1, 1198, 2698 *et seq*., 2753, 2802, and 2804;

c) Claims pursuant to California Code of Civil Procedure section 1021.5;

d) Claims pursuant to California Code of Regulations, Title 8, sections 11010 and 11040;

e) Claims pursuant to Industrial Welfare Commission Wage Orders;

f) Claims under California Business and Professions Code sections 17200, et seq. and 17500;

g) Claims under California common law to recover any alleged tip or expense;

h) Claims pursuant to the San Francisco Minimum Wage Ordinance (Chapter 12R of the SF Admin. Code);

i) Claims for attorneys' fees and costs;

j) Claims of unfair business practices; and

k) All Claims, including common law claims, arising out of or related to the statutory causes of action described herein.

100. "Stage Name" means the name or pseudonym utilized by a Settlement Class Member while Performing at one or more of the Nightclubs.

101. "Valid Claim(s)" means an FLSA Claim Form Properly Completed and timely submitted (with postmark) by a Class Member to the Settlement Administrator within the Claim Period, demonstrating the Settlement Class Member's election to receive her monetary Settlement benefit in the form of a Cash Payment or Dance Fee Payment.

102. "Valid Residual Dance Fee Claim(s)" means a Residual Dance Fee Payment Claim Form Properly Completed and timely submitted by a Class Member to a Nightclub within the Dance Fee Payment Redemption Period, demonstrating the Settlement Class Member's election to receive her monetary Settlement benefit in the form of a Residual Dance Fee Payment.

## III. SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR REVIEW AND APPROVAL

103. Promptly following execution of this Settlement Agreement, the Named Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement, and shall concurrently submit the Amended Complaint for Settlement (as reflected without material variation from Exhibit B), which Named Plaintiffs shall seek to enter pursuant to the agreement of the Parties. The motion for preliminary approval shall include a proposed plan for the sending of the Notice of Settlement of Class Action to Class Members within twenty-one (21) days after the Preliminary Approval Date, and establishing the Exclusion/Objection Deadline. The Exclusion/Objection Deadline requested shall be sixty (60) days after the Notice Date, and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice. The motion for preliminary approval shall also request that the Fairness Hearing for Final Approval of the Settlement and any determination on the request for Attorneys' Fees and Expenses and the Enhancement Payments, be set for a date no earlier than thirty-five (35) days after the Exclusion/Objection Deadline; that Class Counsel shall file a petition for awards of

Attorneys' Fees and Expenses and Enhancement Payments at least twenty-one (21) days before the Exclusion/Objection Deadline; that the motion for Final Approval be filed at least thirty-five (35) days before the Fairness Hearing; that any oppositions to such motions and petitions be filed at least twenty-one (21) days before the Fairness Hearing; and that any reply briefs on such motions and petitions be filed no later than fourteen (14) days before the Fairness Hearing.

104. No later than 10 days after the Settlement Agreement is filed with the Court for preliminary approval, Defendants participating in the proposed Settlement shall serve upon the appropriate state official of each State in which a Class Member resides and the appropriate Federal official a CAFA Notice as required by 28 U.S.C. § 1715(b).

105. For purposes of settlement only, the Parties agree to seek provisional certification of the Class as a collective action pursuant to 29 U.S.C. § 216(b) and as a Federal Rules of Civil Procedure Rule 23 Class. Each Party agrees that this stipulation shall not be used by any Person for any purpose whatsoever in any other legal, administrative, or arbitral proceeding. Such matters may only be submitted in a proceeding to enforce the terms of this Settlement Agreement.

106. Defendants do not consent to certification of any Class for any purpose other than to effectuate the Settlement of this Action. The Parties acknowledge and agree that Defendants' consent to provisional certification for purposes of settlement only does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Plaintiffs or to any of the Class Members.

107. The Parties agree to submit to the Court for its consideration this Settlement Agreement, including all Exhibits.

108. Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

a) Named Plaintiffs shall seek the Court's permission to file the Amended Complaint for Settlement, without material variation from Exhibit B, and Defendants shall consent to such amendment pursuant to Federal Rule of Civil Procedure 15(a)(2). The Amended Complaint for Settlement shall be submitted concurrently with the submission of the motion for preliminary approval of the Settlement so that such complaint may be filed promptly upon approval of the

Court. Obtaining the Court's approval to file the Amended Complaint for Settlement, and the subsequent prompt entry of the Amended Complaint for Settlement, are material conditions of this Settlement Agreement. The Parties agree that the filing of the Amended Complaint for Settlement will streamline the settlement process and ensure that more money can be paid to Settlement Class Members by saving the costs of multiple notice and approval processes. The Parties further agree and stipulate that Defendants may seek an order from the Court establishing that the allegations in the Amended Complaint for Settlement are deemed fully controverted by the answer previously filed in response to the currently operative complaint in the Action, such that no further responsive pleading from any Defendant is required. If for any reason the Settlement does not become Final or the Effective Date does not occur, the Amended Complaint for Settlement shall be stricken from the record and the operative complaint in the Action shall revert to the filed complaint that preceded the Amended Complaint for Settlement.

b) They jointly request the Court to enter a Preliminary Approval Order preliminarily approving the Settlement and this Agreement. Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Class for settlement purposes only; approve the Named Plaintiffs as class representatives; appoint Class Counsel to represent the Settlement Class and appoint the Settlement Administrator; approve the Notice of Settlement of Class Action and the Class Notice plan embodied in the Settlement Agreement, and approve them as consistent with 29 U.S.C. § 201 *et seq*., Federal Rule of Civil Procedure Rule 23, and due process; set out the requirements for Class Members to be able to exclude themselves from the Settlement and for Settlement Class Members to object to the terms of the Settlement, all as provided for in this Agreement; provide that certification and all actions associated with certification are undertaken on the condition that the certification and other related actions shall be automatically vacated if this Agreement is terminated or if the Settlement does not become Final, all as provided in this Agreement; preliminarily enjoin all Class Members and their Legally Authorized Representatives, unless and until they submit a timely request for exclusion from the Settlement pursuant to this Agreement, from filing or otherwise participating in any other suit or non-administrative proceeding based on the Released Claims, or from attempting to effect an opt-out from the

Settlement as a group, class, or subclass of individuals; and schedule the Fairness Hearing.

109. At the Fairness Hearing, the Named Plaintiffs shall request entry of the Final Approval Order and the Judgment, the terms of which shall be agreed upon by the Parties. The entry of the Final Approval Order and the Judgment by the Court is a material condition of this Settlement Agreement, and shall order, among other things, that the Court:

a) finally approves the Settlement as fair, reasonable, and adequate, within the meaning of Federal Rule of Civil Procedure 23 and due process, and directs its consummation pursuant to the terms of the Settlement Agreement;

b) finds that Class Counsel and the Named Plaintiffs adequately represent the Settlement Class for the purpose of entering into and implementing the Agreement;

c) re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement;

d) finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and their right to exclude themselves from, or object to, the proposed Settlement and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure Rule 23, due process, and any other applicable rules or law;

e) finds that the CAFA Notice sent by Defendants complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

f) approves the Opt-Out List and determines that the Opt-Out List is a complete list of all Class Members who have timely requested exclusion from the Settlement and, accordingly, shall neither share in nor be bound by the Final Approval Order and Judgment;

g) dismisses the Action on the merits and with prejudice, and without fees or costs except as provided in this Agreement;

h) directs that the Final Approval Order and Judgment shall be final and entered forthwith;

i) without affecting the finality of the Final Approval Order and Final Judgment, reserves jurisdiction over the Named Plaintiffs, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

j) adjudges that, as of the Effective Date, the Named Plaintiffs, and all Class Members who have not been excluded from the Settlement as provided in the Opt-Out List approved by the Court, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them, on their behalf, or for their benefit, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled, discharged, and released the General Released Claims (in the case of each General Releasor), the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and the FLSA Claimants' Released Claims (in the case of the Settlement Class Members receiving Enhancement Payments or who opted in to the Action as FLSA Claimants, Cash Payment Claimants, and Dance Fee Payment Claimants) against Defendants and the Released Parties, and are bound by the provisions of this Agreement;

k) declares this Agreement and the Final Approval Order and Judgment to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the General Released Claims, as applicable to any General Releasor, and that are maintained by or on behalf of any General Releasor and/or their heirs, estates, trustees, executors, administrators, beneficiaries, representatives, agents, and assigns, as well as anyone claiming through them or acting or purporting to act for them, on their behalf, or for their benefit; (ii) that encompass the Settlement Class Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member and/or by her heirs, estates, trustees, executors, administrators, beneficiaries, representatives, agents, or assigns, as well as anyone claiming through them or acting or purporting to act for them, on their behalf, or for their benefit, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement Class Members'

Released Claims and even if such Settlement Class Member never received actual notice of the Action or this proposed Settlement; and iii) that encompass the FLSA Claimants' Released Claims and that are maintained by or on behalf of any Cash Payment Claimant, Dance Fee Payment Claimant, or any other Settlement Class Member receiving an Enhancement Payment or who opted in to the Action as an FLSA Claimant and/or by their heirs, estates, trustees, executors, administrators, beneficiaries, representatives, agents, or assigns, as well as anyone claiming through them or acting or purporting to act for them, on their behalf, or for their benefit, regardless of whether the Cash Payment Claimant or Dance Fee Payment Claimant previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the FLSA Claimants' Released Claims;

1) permanently bars and enjoins the Named Plaintiffs and all other Settlement Class Members from: (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the General Released Claims (in the case of any General Releasor), the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and the FLSA Claimants' Released Claims (in the case of the Settlement Class Members' receiving Enhancement Payments or who opted in to the Action as FLSA Claimants, Cash Payment Claimants, and/or Dance Fee Payment Claimants); and (ii) organizing Settlement Class Members or Cash Payment Claimants/Dance Fee Payment Claimants into separate groups, classes, or subclasses for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Settlement Class Members' Released Claims or the FLSA Claimants' Released Claims;

m) determines that the Agreement and the Settlement provided for herein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any

misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement;

n) orders that the certification of the Class and Final Approval of the proposed Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if this Settlement Agreement is terminated or disapproved in whole or in part by the Court, or by any appellate court and/or other court of review, or if Defendants invoke the right to withdraw from the Settlement as provided herein, in which event this Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including, but not limited to, an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class;

o) authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the Final Approval Order and (ii) do not limit the rights of Settlement Class Members; and

p) authorizes such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

110. At the Fairness Hearing, Class Counsel may also request entry of an order approving Class Counsel's application for an award of Attorneys' Fees and Expenses and for Enhancement Payments to the Named Plaintiffs or other Settlement Class Members identified in Paragraph 112(e). In no event shall Defendants otherwise be obligated to pay for any Attorneys' Fees and Expenses or Enhancement Payments. The disposition of Class Counsel's application for a Fee and Expense Award, and for Enhancement Payments, is within the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such applications be granted. Any disapproval or modification of such applications by the Court shall not (i) affect the enforceability of the Settlement Agreement,

(ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on the Defendants to increase the consideration paid in connection with the Settlement.

**IV. SETTLEMENT CONSIDERATION**

111. The settlement consideration consists of Cash Payments, Dance Fee Payments, Residual Dance Fee Payments, and changes to Defendants' business practices that will confer a direct financial benefit on Settlement Class Members as detailed below. Under no circumstances shall Defendants be responsible for making payments or other remunerations of any kind in a manner that confers an aggregate financial benefit in excess of $5,000,000.00 on the Settlement Class Members, on Class Counsel, on the LWDA, and on the Settlement Administrator.

112. The Cash Payments, Dance Fee Payments, Residual Dance Fee Payments, Enhancement Payments, PAGA Payment, Attorneys' Fees and Expenses Award, and Administrative Costs components of the Settlement Consideration shall be funded as follows:

a) First Tier Cash Pool: The sum of $2,000,000.00 will initially be made available by Defendants to provide cash compensation to those Settlement Class Members who elect to receive their Settlement in the form of a monetary payment, and to pay the Attorneys' Fees and Expenses, the Enhancement Payments, the PAGA Payment, and the Administrative Costs (including the Notice and Administration Fund) as provided for herein. Defendants shall deposit $750,000.00 of the First Tier Cash Pool in an escrow account administered by the Settlement Administrator ("Escrow Account") within 30 days of Preliminary Approval; Defendants shall deposit a second payment of $750,000.00 of the First Tier Cash Pool in the Escrow Account within 60 days after Final Approval; Defendants shall deposit the remainder of the funds comprising the First Tier Cash Pool in the Escrow Account within 180 days after the second payment. In the event the Court does not grant Final Approval, the Settlement Administrator shall promptly refund to Defendants the balance of the Escrow Account. The sum of the First Tier Cash Pool remaining after subtracting the amount of Enhancement Payments, the PAGA Payment, and Administrative Costs shall be distributed as set forth in more detail in Section V below, to Settlement Class Members who have timely submitted Valid Claims for Cash

Payments. After payment of all Valid Claims for Cash Payments, Enhancement Payments, the PAGA Payment, and Administrative Costs, any monies that remain in the First Tier Cash Pool shall be allocated to the payment of Attorneys' Fees and Expenses. If, after payment of all Valid Claims for Cash Payments, and the payment of all Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative Costs, any moneys remain in the First Tier Cash Pool, all such remaining sums shall be paid on a *pro rata* basis to the Cash Payment Claimants who submitted Valid Claims for Cash Payments in proportion to the amount they received pursuant to the Plan of Allocation set forth in Paragraph 116. By way of example and for illustration purposes only, if 1,000 Cash Payment Claimants were to each submit a Valid Claim for Cash Payment in the amount of $800.00 and 200 Cash Payment Claimants were to each submit a Valid Claim for Cash Payment in the amount of $500.00, and if $100,000.00 were to remain in the First Tier Cash Pool after payment of all Valid Claims for Cash Payments, and the payment of all Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative Costs, each Cash Payment Claimant who received a Cash Payment in the amount of $800.00 would receive an additional Cash Payment of $88.88 and each Cash Payment Claimant who received a Cash Payment of $500.00 would receive an additional Cash Payment of $55.55. Should any amounts from the First Tier Cash Pool remain in the Escrow Account after sixty (60) days following the distribution of the balance of the Cash Payments for the benefit of the Settlement Class as described above (e.g., should any Cash Payment checks go uncashed), all such unclaimed funds shall be paid to the St. James Infirmary[4], or if that entity is not approved by the Court, The Impact Fund (a public interest law non-profit organization) or another appropriate recipient as approved by the Court.

b) Second Tier Cash Pool: If the sum of the Valid Claims for Cash Payments, Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative

[4] The St. James Infirmary is a non-profit organization located at 234 Eddy Street in San Francisco that provides free, compassionate and nonjudgmental healthcare and social services for sex workers (current or former) of all genders and sexual orientations while preventing occupational illnesses and injuries through a comprehensive continuum of services.

Costs in combination exceed the amount of the First Tier Cash Pool, Defendants will fund a Second Tier Cash Pool in an amount equal to the amount that the sum of the Valid Claims for Cash Payments, Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative Costs exceed the First Tier Cash Pool, up to a maximum of $1,000,000.00 ("the Second Tier Cash Pool Amount"). By way of illustration only, if the sum of the Valid Claims for Cash Payments, Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative Costs equals $2,900,000.00, the Second Tier Cash Pool Amount would be $900,000.00. If the Second Tier Cash Pool amount is $500,000.00 or less, Defendants shall deposit the full Second Tier Cash Pool Amount in the Escrow Account within 90 days after payment of the final First Tier Cash Pool Payment. If the Second Tier Cash Pool amount exceeds $500,000.00, Defendants shall deposit $500,000.00 of the Second Tier Cash Pool Amount in the Escrow Account within 90 days after payment of the final First Tier Cash Pool Payment and the balance of the Second Tier Cash Pool amount within 90 days of the initial Second Tier Cash Pool Payment. The Second Tier Cash Pool shall be used to first pay any remaining unpaid Valid Claims for Cash Payments with the balance thereafter used to pay any remaining unpaid Attorneys' Fees and Expenses.

c) Dance Fee Payment Pool: As an alternative to a Cash Payment Claim, Settlement Class Members may elect to receive a Dance Fee Payment as set forth below. The Dance Fee Payment Pool shall consist of a total of $1,000,000.00 with each of the ten Nightclubs (*i.e.*, each of the Nightclubs excluding Market Street Cinema) making $100,000.00 available to fund Dance Fee Payments to Dance Fee Payment Claimants who elect to receive a Dance Fee Payment and who designate that particular Nightclub on their FLSA Claim Form as either their Primary Nightclub or Secondary Nightclub. The Dance Fee Payment Pool will be divided by each Nightclub equally on a *pro rata* basis to Dance Fee Payment Claimants who submit a Valid Claim indicating their election to receive a Dance Fee Payment; provided, however, that the Dance Fee Payment may not exceed $5,000.00 per Dance Fee Claimant at the Nightclub she designates as her Primary Nightclub and may not exceed $3,000.00 per Dance Fee Claimant at the Nightclub she designates as her Secondary Nightclub. By way of illustration only, if 20

Dance Fee Payment Claimants were to designate the Garden of Eden as their Primary Nightclub and 0 Dance Fee Payment Claimants were to designate the Garden of Eden as their Secondary Nightclub, the total Dance Fee Payment Claims at the Garden of Eden would be $100,000.00 (20 x $5,000.00 = $100,000.00) and each such Dance Fee Payment Claimant would be entitled to a Dance Fee Payment of $5,000.00. By way of illustration only, if 20 Dance Fee Payment Claimants were to designate the Garden of Eden as their Primary Nightclub and 20 Dance Fee Payment Claimants were to designate the Garden of Eden as their Secondary Nightclub, the total Dance Fee Payment Claims at the Garden of Eden would be $160,000.00 (20 x $5,000.00 = $100,000.00; 20 x $3,000.00 = $60,000.00) and each such Dance Fee Payment Claimant's claim would be reduced on a *pro rata* basis such that Dance Fee Payment Claimants who designated Garden of Eden as their Primary Nightclub would each be entitled to a Dance Fee Payment of $3,125.00 and Dance Fee Payment Claimants who designated the Garden of Eden as their Secondary Nightclub would be entitled to a Dance Fee Payment of $1,875.00. By way of illustration only, if 10 Dance Fee Payment Claimants were to designate the Garden of Eden as their Primary Nightclub and 0 Dance Fee Payment Claimants were to designate the Garden of Eden as their Secondary Nightclub, the total Dance Fee Payment Claims at the Garden of Eden would be $50,000.00 (10 x $5,000.00 = $50,000.00) and each such Dance Fee Payment Claimant would be entitled to a Dance Fee Payment of $5,000.00. Under this scenario, the sum of $50,000.00 would remain and be available to pay Residual Dance Fee Payment Claims to Residual Dance Fee Payment Claimants who Perform at the Garden of Eden.

d) Residual Dance Fee Payment Pool: In the event that the sum of Dance Fee Payment Claims as described above equals a sum less than $100,000.00 at any Nightclub(s), such Nightclub(s) shall create a Residual Dance Fee Payment Pool that will consist of the difference between the sum of Dance Fee Payment Claims made to that Nightclub and $100,000.00. By way of example and for illustration purposes only, if at The Condor Club the sum of Valid Dance Fee Payment Claims was $75,000.00, the Condor Club would create a Residual Dance Fee Payment Pool of $25,000.00, which would be available to Settlement Class Members who did not submit an FLSA Claim Form as described below. Claims for the Residual Dance Fee Payment

Pool may be made on a claims-made basis during the Dance Fee Payment Redemption Period or until the Residual Dance Fee Payment Pool is exhausted, whichever occurs first. Settlement Class Members who do not submit an FLSA Claim Form may redeem a Residual Dance Fee Pool Payment in accordance with the provisions set forth in Paragraphs 128-132 below.

e) Enhancement Payments: Defendants shall pay, out of the First Tier Cash Pool, the Enhancement Payments as ordered by the Court in the Final Approval Order. The Enhancement Payments requested by Plaintiffs are to the following Named Plaintiffs and other Settlement Class Members: To Jane Roe 1 and Jane Roe 2 in an amount of $5,000.00 each; and to Jane Roe 3, Jane Roe 10, Jane Roe 11, Jane Roe 12, Jane Roe 13 and Jane Roe 22 in an amount of $3,500.00 each; for a total sum of no more than $31,000.00. Enhancement Payments shall be paid by the Settlement Administrator at the same time the Settlement Administrator pays Cash Payments to Cash Payment Claimants. Enhancement Payments shall be considered non-wage income for which an IRS Form 1099 will be issued to each of the Named Plaintiffs and other Settlement Class Members identified in this Paragraph.

f) General Release Enhancement Payments: Defendants shall pay to Jane Roe 1, Jane Roe 2, or both of them, out of the First Tier Cash Pool, the General Release Enhancement Payments as ordered by the Court in the Final Approval Order contingent upon their execution of the General Release Form as further described herein. The General Release Enhancement Payments requested are to Jane Roe 1 and Jane Roe 2 each in an amount not to exceed $20,000 for a total sum of $40,000.

g) The PAGA Payment: Named Plaintiffs' PAGA Claims include an allegation that Defendants violated California Labor Code §558, which Named Plaintiffs contend entitles them to recover, as a penalty under PAGA, unpaid wages on behalf of Class Members. The Parties understand and agree that Defendants' payment of the Cash Payments, Dance Fee Payments and Residual Dance Fee Payments resolve the PAGA Claims premised on California Labor Code §558.[5] In addition, the sum of $100,000.00 will be paid out of the First Tier Cash Pool to resolve

[5] "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action

all PAGA Claims premised on other alleged Labor Code violations. From the PAGA Payment, seventy-five percent (75%), or $75,000.00, shall be paid to the LWDA as civil penalties pursuant to PAGA and twenty-five percent (25%), or $25,000.00, shall be distributed to Cash Payment Claimants and Dance Fee Payment Claimants in an equal amount to each Claimant.

h) Fee and Expense Award: Defendants agree not to object to a request of a Fee and Expense Award that does not exceed twenty-five percent (25%) of the Gross Settlement Value. Defendants shall pay to Class Counsel, out of the First Tier Cash Pool and/or, as appropriate, out of the Second Tier Cash Pool, the amount, not to exceed $1,000,000.00, as ordered by the Court in the Final Approval Order to compensate Class Counsel for its fees, costs, and expenses incurred in connection with the Action and the Settlement.

i) Administrative Costs: Defendants shall pay, out of the First Tier Cash Pool, the sum of fifty thousand dollars ($50,000.00) to the Settlement Administrator for the administrative costs of settlement, including but not limited to the preparation and copying of Class Notice, mailing of the Class Notice, tracking Class Members who have requested exclusion from the Settlement and the consequent preparation of the Opt-Out List, preparation and submission of the Due Diligence Declaration specified in this Agreement, tracking of Settlement Class Members who have objected to the Settlement, website maintenance, and Cash Payment Claims administration, and any other reasonable fees and costs incurred or charged by a jointly approved Settlement Administrator in connection with the execution of its duties under this Agreement. In the event that the Administrative Costs exceed $50,000.00, any additional monies for Administrative Costs shall be paid solely from the First Tier Cash Pool, and/or, as appropriate, out of the Second Tier Cash Pool, and nothing in this Agreement requires that Defendants pay any amount over and above the amounts established for the Settlement Consideration as set forth

---

may likewise recover underpaid wages as a civil penalty under section 558." (*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1148 (2012).) Such underpaid wages "go[] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." (*Id.* at 1145 (2012).)

in this Agreement. In the event that the Administrative Costs do not reach $50,000.00, the remaining amount of the Notice and Administration Fund shall revert to the Net Cash Payment Settlement Fund. If for any reason the Settlement does not become Final or the Effective Date does not occur, the remaining money deposited into the Notice and Administration Fund shall be expeditiously returned to Defendants.

113. Class Member Election: Members of the Class will be mailed the Notice of Settlement of Class Action to their last known address as reflected on the most recent Dancer Contract they executed at the last Nightclub at which they Performed prior to the entry of the Preliminary Approval Order, except that before the first mailing to the Class, the Settlement Administrator shall run a National Change of Address (NCOA) database search on all addresses, and if the Settlement Administrator determines that the NCOA database shows that a Class Member's address has changed, the Settlement Administrator shall use the Class Member's current address as reflected in the NCOA database. Settlement Class Members who elect to receive a Cash Payment or Dance Fee Payment are required to opt-in pursuant to the provisions of § 216(b) of the FLSA by completing and timely submitting the FLSA Claim Form attached hereto as Exhibit C. Those Class Members who do not elect to receive a Cash Payment or Dance Fee Payment during the Claim Period and who are nevertheless Settlement Class Members, are eligible to participate in the Residual Dance Fee Payment Pool and to receive Residual Dance Fee Payments as set forth below. In no event may a Settlement Class Member elect more than one of the following forms of monetary compensation under this Agreement: a Cash Payment, a Dance Fee Payment, or a Residual Dance Fee Payment.

## V. PLAN OF ALLOCATION AND DISBURSEMENT OF CASH PAYMENTS

114. To receive a Cash Payment, a Settlement Class Member or her Legally Authorized Representative must Properly Complete and timely submit an FLSA Claim Form on which she indicates an election to receive a Cash Payment. The FLSA Claim Form shall require the Class Member who elects a Cash Payment, to attest, to the best of her knowledge, to the total number of her Performance Months, and to provide all other information requested on the Claim Form. Each Settlement Class Member who satisfies these criteria is a Cash Payment Claimant.

115. An FLSA Claim Form for a Cash Payment is timely if it is postmarked by the Bar Date and mailed to the Settlement Administrator at the address in the Notice of Settlement of Class Action.

116. Cash Payments shall be calculated in accordance with the following Plan of Allocation, which shall be reduced on a *pro rata* basis if the First Tier Cash Pool and Second Tier Cash Pool are depleted:

a. $800.00 for Cash Payment Claimants who accrued 24 or more Performance Months during the Class Period;

b. $700.00 for Cash Payment Claimants who accrued between 12 and 23 Performance Months during the Class Period;

c. $500.00 for Cash Payment Claimants who accrued between 6 and 11 Performance Months during the Class Period; and

d. $350.00 for Cash Payment Claimants who accrued fewer than 6 Performance Months during the Class Period.

117. If, after payment of all Valid Claims for Cash Payments, and the payment of all Attorneys' Fees and Expenses, Enhancement Payments, the PAGA Payment, and Administrative Costs, any moneys remain in the First Tier Cash Pool, all such remaining sums shall be paid to the Cash Payment Claimants who submitted Valid Claims for Cash Payments in proportion to the amount they received under the total amounts received in the Plan of Allocation set forth in Paragraph 116 and as further described in Paragraph 112(a).

118. Settlement checks shall be delivered to the mailing address that the Cash Payment Claimant provides on the FLSA Claim Form. It shall be the Cash Payment Claimant's responsibility to ensure that the mailing address information provided is current and accurate at the time the Cash Payment is issued. A Cash Payment Claimant may update her mailing information after submitting a Claim Form by informing the Settlement Administrator of any changes in writing via email or mail.

119. In the event that the Settlement Administrator receives, prior to the expiration of the Claim Period, an FLSA Claim Form for a Cash Payment from a Class Member that is not

Properly Completed, the Settlement Administrator shall immediately email a copy of that FLSA Claim Form to both Class Counsel and to Defense Counsel, who shall be required to cooperate in order to determine whether enough information has been provided, or can be provided, to render the Claim Form a Valid Claim for a Cash Payment. If additional information is needed, the Settlement Administrator shall immediately request the same from the Class Member. Nevertheless, unless Class Counsel and Defense Counsel jointly conclude, before the expiration of the Claim Period, that the Class Member has provided sufficient information to have the document constitute a Properly Completed FLSA Claim Form, or the Settlement Administrator receives additional information so as to permit the document to constitute a Valid Claim for a Cash Payment, the FLSA Claim Form shall be deemed invalid for all purposes hereunder and such Class Member shall not be entitled to a Cash Payment.

120. At the end of the Claim Period, the Settlement Administrator shall furnish to Class Counsel a list of all Cash Payment Claimants who filed a Valid Claim for a Cash Payment and the number of their Performance Months claimed. Defendants, if they choose to contest the number of Performance Months claimed by a particular Cash Payment Claimant, shall request from the applicable Nightclub(s) a statement of the number of Performance Months reflected in the Nightclub's records to enable a determination to be made of the amount of the Net Cash Payment Settlement Fund to which the Cash Payment Claimant may be entitled, along with a print out of the supporting data upon which the Nightclub(s) rely. The Nightclub(s) shall furnish its (their) records to the Settlement Administrator within a maximum thirty (30) days of receiving the Class Member's claim information from the Settlement Administrator. The Settlement Administrator will thereafter be empowered to make a determination based on the record of the total number of disputed Performance Months.

121. The Settlement Administrator shall disburse Cash Payments for Valid Claims for Cash Payments by direct payment by check via first-class mail. For those Cash Payments for which the Settlement Administrator attempts payment by check but such check is returned as undeliverable, the Settlement Administrator shall make a diligent effort to obtain updated mailing addresses and attempt a second disbursement if the Cash Payment is greater than two hundred

dollars ($200.00). Likewise, the Settlement Administrator shall engage in reasonable follow-up for any Cash Payment Claimants who have submitted Claim Forms that are not Properly Completed.

122. Cash Payment Claimants and Dance Fee Payment Claimants acknowledge and agree that neither Cash Payments nor Dance Fee Payments constitute "wages" within the meaning of § 3111(a) of the Internal Revenue Code, any other applicable provisions therein, or any applicable state tax or revenue code. Cash Payment Claimants and Dance Fee Payment Claimants shall be solely responsible for the timely payment in full of all federal, state, and municipal income taxes owed on the Cash Payments or Dance Fee Payments. The FLSA Claim Form shall require Cash Payment Claimants and Dance Fee Payment Claimants to acknowledge: (i) that she understands that obtaining a Cash Payment or Dance Fee Payment may constitute a taxable event and that if the Settlement Administrator or Consolidated Bookkeeping, Inc., as appropriate, deems it required under the Internal Revenue Code, it will issue Form 1099-MISC's to such Cash Payment Claimant or Dance Fee Payment Claimant; and (ii) she is not receiving any tax advice from Class Counsel, Defense Counsel or Defendants. Neither Party has made any representation to the other Party as to the taxability or tax implications of any Cash Payments, Dance Fee Payments, or other payments pursuant to this Agreement.

123. Any checks issued to Cash Payment Claimants shall remain valid and negotiable for sixty (60) days from the date of their mailing. Within seven (7) business days of the conclusion of the 60-day check cashing period, the Settlement Administrator shall inform the Parties regarding the status of any uncashed checks, including the amount, and the identity of the corresponding Cash Payment Claimant with an uncashed check.

## VI. PLAN OF ALLOCATION AND DISBURSEMENT OF DANCE FEE PAYMENTS

124. Dance Fee Payment Pool: Dance Fee Payments may be obtained by a Dance Fee Payment Claimant only at a Nightclub where she has a current Dancer Contract.

125. Dance Fee Payment Claimants shall be entitled to retain 100% of the Dance Fees generated by their sales of entertainment services, rather than the stated contract division set forth in the applicable Dancer Contract, on Dates of Performance during the Dance Fee Payment

Redemption Period selected by the Dance Fee Payment Claimant, until the Dance Fee Claimant's Dance Fee Payment amount, as determined by the Settlement Administrator, is satisfied. The Dance Fee Payment Pool will be made available to Dance Fee Payment Claimants on a *pro rata* basis based on the number of Dance Fee Payment Claimants at each Nightclub, but will not exceed $5,000.00 per Dance Fee Payment Claimant at the Nightclub where the Dance Fee Payment Claimant primarily performs and will not exceed $3,000.00 per Dance Fee Payment Claimant at one secondary Nightclub where the Dance Fee Payment Claimant also performs.

126. To redeem Dance Fee Payments, a Dance Fee Payment Claimant must schedule a Date of Performance during the Dance Fee Redemption Period at either her Primary or Secondary Nightclub and notify the Nightclub of her intent to retain her Dance Fee Payment at least three (3) business days before she desires to Perform and retain 100% of her Dance Fees in order to allow the Nightclub time to confirm the Dance Fee Payment Claimant's entitlement to such Dance Fee Payment, that she has Dance Fee Payments remaining, and the existence of a valid Dancer Contract between the Dance Fee Payment Claimant and the Nightclub. The Dance Fee Payment Claimant may continue to schedule Dates of Performance during which she retains 100% of her Dance Fees pursuant to the procedure described above until she has retained in the aggregate all the Dance Fee Payments to which the Settlement Administrator has determined she is entitled, or until the expiration of the Dance Fee Payment Redemption Period, whichever occurs first.

127. Regardless of whether a Dance Fee Payment Claimant has fully obtained and exhausted the Dance Fee Payments to which she was entitled under this Agreement, her ability to redeem Dance Fee Payments shall terminate at the expiration of the Dance Fee Redemption Period.

128. Residual Dance Fee Payment Pool: To make a claim to the Residual Dance Fee Payment Pool, the Settlement Class Member must submit to the Nightclub a Properly Completed Residual Dance Fee Payment Claim Form, which shall require the Settlement Class Member to acknowledge that during the Claim Period she did not submit an FLSA Claim Form for a Cash Payment or Dance Fee Payment pursuant to the Settlement Agreement.

129. A Settlement Class Member electing to obtain a Residual Dance Fee Payment is

required to schedule a Date of Performance at a Nightclub where she has a current Dancer Contract and notify the Nightclub of her intent to retain her Dance Fees at least three (3) business days before she desires to Perform and obtain 100% of her Dance Fees in order to allow the Nightclub time to confirm the Settlement Class Member's entitlement to such Residual Dance Fee Payment, that the Residual Dance Fee Payment Pool has not been exhausted, and the existence of a valid Dancer Contract between the Settlement Class Member and the Nightclub.

130. Residual Dance Fee Payment Claimants shall be entitled to retain 100% of the Dance Fees generated by their sales of entertainment services, rather than the stated contract division set forth in the applicable Dancer Contract, on two Dates of Performance selected by the Residual Dance Fee Payment Claimant.

131. Regardless of whether the Settlement Class Members have fully obtained and exhausted the Residual Dance Fee Payment Pool(s), if any, under this Agreement, the ability of Settlement Class Members to obtain Residual Dance Fee Payments shall terminate at the expiration of the Dance Fee Payment Redemption Period.

132. Each Nightclub's obligation to provide Residual Dance Fee Payments shall be satisfied if the Residual Dance Fee Payment Pool at that Nightclub is exhausted.

133. A Settlement Class Member who desires to Perform at a Nightclub in order to obtain a Residual Dance Fee Payment must either be a party to a current Dancer Contract or execute a Dancer Contract prior to Performing and receiving a Residual Dance Fee Payment.

134. Throughout the Dance Fee Payment Redemption Period, Class Counsel shall be provided reasonable access to data and records used to determine any Settlement Class Member's eligibility to obtain Dance Fee Payments or Residual Dance Fee Payments, the amount of individual Dance Fee Payments or Residual Dance Fee Payments obtained and remaining, and the total amount of the Dance Fee Payment Pool or Residual Dance Fee Payment Pool used and remaining.

135. The accounting for, and administration of, the Dance Fee Payment Pool and Residual Dance Fee Payment Pool shall be performed by Consolidated Bookkeeping and Management Services, Inc., a full service payroll and tax service accounting firm located at 2341

Eastlake Avenue East in Seattle, Washington. Defendants shall pay Consolidated Bookkeeping and Management Services, Inc. for charges for work relating to the Dance Fee Payment Pool and Residual Dance Fee Payment Pool. The Settlement Administrator shall determine the proper allocation of the Dance Fee Payment Pool among Dance Fee Payment Claimants. Thereafter, the Settlement Administrator shall have no further obligations or duties related to the accounting for, administration of, allocation of, or payment through, the Dance Fee Payment Pool or Residual Dance Fee Payment Pool.

## VII. DEFENDANTS' CHANGED BUSINESS PRACTICES

136. Enhanced Offer of Employee Status. Following the Judgment becoming Final, each Entertainer who continues to perform at a Nightclub, and each Person who applies to be able to Perform as an Entertainer at a Nightclub ("Entertainer Applicant"), shall be offered the opportunity to Perform either as an employee of the Nightclub or as an Independent Professional Entertainer ("IPE") under the terms set forth in this Agreement.

137. The Plaintiffs, Class Counsel, and Defense Counsel all acknowledge that employees may not waive or contract away their rights under applicable labor laws (except as may be specifically permitted therein), including but not limited to those set forth in the FLSA, the California Labor Code, or other applicable law, and that workers who meet the legal standard for employment status may not contract to work under a business arrangement or structure that does not provide for the legal protections and benefits to which employees are otherwise entitled. The purpose of offering Entertainers the opportunity to perform at the Nightclubs either as employees or as IPEs is not to circumvent or negate those legal principles, but rather to: 1) delineate parameters, as recognized by Class Counsel, Defense Counsel, and the Court, under which Entertainers may lawfully perform in the Nightclubs as other than employees if they so desire; 2) establish legally enforceable rights, as granted through this Agreement and specifically by way of the injunctive relief afforded hereunder, for the protection of such Entertainers who desire to lawfully perform as IPE's so that the Nightclubs do not in the future compromise or impinge upon the independence and control to which such IPEs are entitled under applicable law; and; 3) provide for certain employment benefits -- beyond those as are afforded under statutory

law -- for Entertainers who choose to perform at the Nightclubs as employees.

138. Management staff at the Nightclubs shall take no position as to, and shall not in any manner attempt to influence, the choice that an Entertainer or Entertainer Applicant should make.

139. The Nightclubs shall provide to the Entertainers and Entertainer Applicants an enhanced employment offer, which shall be as follows:

a) The Nightclub will place Entertainers who decide to become employees on its payroll, and pay them an hourly rate of $15.00.

b) Such Entertainers shall be entitled to a commission of 20% on Entertainer's sales of private dances for all sales that exceed $150.00 per Date of Performance.

c) The Nightclub will provide such Entertainers one logo costume per month to wear while Performing.

d) Such Entertainers shall be entitled to all of the rights, benefits and privileges of, and subject to all of the obligations and policies that apply to, all other non-managerial Nightclub employees.

140. Following the Judgment becoming Final, each Nightclub shall provide a document summarizing the terms of the employment offer and the differences between performing at the Nightclub as an employee versus an IPE ("the Selection Document"). The contents of the Selection Document shall be agreed upon by Class Counsel and Defense Counsel, and may be modified by the Defendants without approval from Class Counsel in order to comply with changes of the applicable laws.

141. No Entertainer or Entertainer Applicant shall be required to make a selection before she has had an opportunity to fully review the Selection Document, and before she has been afforded an opportunity to have the Selection Document reviewed by professionals (accountants, attorneys, etc.) of her choice.

142. Nightclub personnel shall not permit an Entertainer or Entertainer Applicant to make a choice on the Selection Document while she is intoxicated, otherwise impaired or in a state of nudity or semi-nudity.

143. Any Entertainer performing as an IPE at any Nightclub shall be entitled, at any time, to notify Nightclub management, in writing, of her desire to terminate her IPE contract and to be hired as an employee. The Nightclub shall, within three business days thereafter, terminate such Entertainer's IPE contract and hire the Entertainer as an employee in accordance with the terms as set forth above.

144. Employee Entertainers shall be at-will employees. Nothing in this Agreement shall preclude any Nightclub from terminating the employment of any Entertainer for any reason not prohibited by law.

145. For Entertainers or Entertainer Applicants who select to perform as IPE's at a Nightclub:

a) The Nightclub shall not control the manner, means, or details of the IPE Entertainers' entertainment services except to ensure: a) compliance with all applicable laws and regulations; b) that no damage to the Nightclub's property occurs; and c) the premises are used in a safe fashion for all those present.

b) The Nightclub shall not be permitted to impose any work schedule upon IPEs in regard to the Dates of Performance during which they appear to Perform (although the Nightclub may require an IPE to provide the Nightclub with the schedule she selects to perform).

c) The Nightclub shall not require IPEs to share tips or pool tips with any employee of the Nightclub.

d) The Nightclub shall not exert control over the clothing and costumes worn by IPEs while performing other than to require that such wearing apparel complies with applicable law.

146. Prior to the Fairness Hearing, Defense Counsel shall create a training video that explains the employee and IPE option for Entertainers and Entertainer Applicants set forth above (the "Training Video"). Prior to use in the Nightclubs, the Training Video shall be reviewed and approved by Class Counsel, and shall be submitted to the Court for review prior to the Fairness Hearing. Each manager employed by a Nightclub, and each Nightclub personnel tasked to engage in Entertainer Applicant onboarding, shall be required to fully review the Training Video. Any person hired as a manager by a Nightclub after the Effective Date, and each person hired by

a Nightclub after the Effective Date whose job responsibilities shall include Entertainer Applicant onboarding, shall be required to review the Training Video prior to engaging in his or her employment duties. Each Nightclub manager and each person hired by a Nightclub whose job responsibilities shall include Entertainer Applicant onboarding shall comply at all times with the provisions of this section and with the contents of the Training Video. The Training Video may be modified from time to time for legal compliance purposes. Prior to use in the Nightclubs, such a revised Training Video shall be reviewed and approved for use by Class Counsel.

147. IPE Guaranteed Average Earnings. The Nightclubs shall also provide to the Entertainers and Entertainer Applicants certain guaranteed average earnings for those Entertainers who select to Perform, or who select to continue to Perform, as IPE's, which shall be as follows:

a) For a period of two years from the Effective Date, Defendants agree to guarantee that such IPE Entertainers earn in Dance Fee payments from the Nightclub(s) at which they are Performing, a minimum of $14.00 per performance hour, such amounts being averaged over each preceding 30 day period (the "Pay Guarantee").

b) To effectuate such Pay Guarantee, the Nightclubs will process "Minimum Pay Guarantee Claim Forms," which shall be submitted by a claiming IPE Entertainer at the end of any month for which she claims payment of any shortfall in the Pay Guarantee.

c) Minimum Pay Guarantee Claim Forms are to be accompanied by the Entertainer's contract pay receipts for the month she is claiming entitlement to a Pay Guarantee.

d) Each Minimum Pay Guarantee Claim Form shall be evaluated by Defendants for accuracy, and on confirmation that the IPE Entertainer did not earn, on average, the amount of the Pay Guarantee during the past calendar month (30 day period), the applicable Nightclub shall pay her for such shortfall within 10 days of her claim.

e) Minimum Pay Guarantee Claim Forms not accompanied by the Entertainer's receipts shall be reimbursed within 30 days of the submission of her Minimum Pay Guarantee Claim Form.

f) By signing a Minimum Pay Guarantee Claim Form, the Entertainer shall acknowledge that she understands that: (i) such payments do not constitute wages paid to her; (ii)

such Pay Guarantee payments constitute a taxable event and that she will be issued a Form 1099-MISC that includes such payments; and (iii) she is not receiving any tax advice from Class Counsel, Defense Counsel or Defendants.

148. In recognition of the fact that the business and regulatory landscape may significantly change over time, the Parties agree that the provisions of the Agreement set forth at Paragraphs 136-147, including all subparagraphs thereof, shall expire upon the earliest of the following two dates: (i) two years after Final Approval; or (ii) the date upon which there are changes to any applicable statute, regulation, or other law that Defendants reasonably believe would require a modification to any of the provisions of the agreement set forth at Paragraphs 134-145, including all subparagraphs thereof, in order to comply with the applicable statute, regulation, or law.

149. Defendants maintain the right to make further changes to their business practices so long as such changes do not materially and adversely undermine the non-monetary terms set forth in Paragraphs 136-147. In addition, Defendants maintain the right to make changes to any of the non-monetary terms set forth in Paragraphs 136-147 if changes to those terms are warranted by a significant change in statutory or common law that is material to the classification of independent contractors or employees.

## VIII. <u>SETTLEMENT NEGOTIATIONS</u>

150. The terms of this Agreement relating to the Fee and Expense Award and Enhancement Payments were not negotiated by the Parties before full agreement was reached as to all other material terms of the proposed Settlement, including, but not limited to, any terms relating to the relief to the Settlement Class. The Parties agree that Plaintiffs may apply to the Court for Enhancement Payments to the Named Plaintiffs and other Settlement Class Members who contributed meaningfully to the litigation of this Action and the Parties further agree that the combined sum of all Enhancement Payments should not exceed $71,000.00 as set forth in Paragraph 112(e) herein. Named Plaintiffs acknowledge and understand that they may receive no Enhancement Payments, and their agreement to the Settlement is not conditioned on the possibility of receiving Enhancement Payments.

151. Class Counsel agrees not to seek a Fee and Expense Award from the Court in excess of twenty-five percent (25%) of the Gross Settlement Value. Defendants agree to pay the amount of Fee and Expense Award (if any) determined by the Court up to a maximum of $1,000,000.00 so long as it is within the limitations as set forth in this Agreement. Subject to approval by the Court, that amount shall be the only compensation paid by Defendants or the Released Parties for attorneys' fees and costs associated with the prosecution and administration of this Action and the consummation of the Settlement. Neither Class Counsel, nor Named Plaintiffs, nor any Settlement Class Member, shall apply to the Court for any payment of attorneys' fees or costs that are in addition to the foregoing. The Parties agree that, over and above the Court-approved Fee and Expense Award, each of the Parties, including all Settlement Class Members, shall bear their own fees and costs, including, but not limited to, those relative to the investigation, filing, prosecution or settlement of this Action; the negotiation, execution, or implementation of this Settlement Agreement; and/or the process of obtaining, administering or challenging a certification order and/or Final Approval of Settlement. If Class Counsel appeals the Court's ruling on their application for a Fee and Expense Award, the ruling of the appellate court (regardless of its substance) shall not constitute a material alteration of a term of this Settlement Agreement. All claims for attorneys' fees and costs or expenses that Class Counsel, Named Plaintiffs, and the Settlement Class Members may possess against Defendants or the Released Parties have been compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Class Counsel may file.

## IX. <u>DISSEMINATION OF CLASS NOTICE</u>

152. Within five (5) days after the entry of the Preliminary Approval Order, the Defendants shall deposit with the Settlement Administrator the full sum of the Notice and Administration Fund.

153. Within fourteen (14) days after entry of the Preliminary Approval Order, but subject to the Settlement Administrator providing adequate and contractual assurances with respect to confidentiality and data security, Defendants will provide the Settlement Administrator the names and last-known mailing addresses of Class Members that they are able to identify

following a good-faith search. The data provided to the Settlement Administrator will remain confidential and will not be disclosed to anyone, except as required by applicable tax authorities, pursuant to the express written consent of Defendants, or by order of the Court. The data provided under this Section shall be used only for the purpose of administering this Settlement.

154. All Class Members' names and postal mail addresses shall be protected as confidential and not used for purposes other than the providing of the Notice of Settlement of Class Action and administration of this Settlement.

155. The Settlement Administrator shall send a copy of the Notice of Settlement of Class Action by mail to each Class Member, as well as to Class Counsel and Defense Counsel.

156. If any Notice of Settlement of Class Action sent to any Class Member is undeliverable, the Settlement Administrator shall promptly log each such Notice of Settlement of Class Action and provide copies of the log to Class Counsel and Defense Counsel, as requested. If the postal mailing is returned with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address. For any remaining returned postal mailings, the Settlement Administrator shall make a further search of the NCOA database, and postal mailings shall be forwarded to any new postal mailing address obtained through such a search. In the event that any Notice of Settlement of Class Action is returned as undeliverable after completing the steps specified herein, no further postal mailings shall be required.

157. The Parties agree that the procedures set forth in this Section constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Class Members such that no additional efforts to do so shall be required.

158. The Settlement Administrator will provide Class Notice by first-class mail (where available) and maintain and manage a content-neutral settlement website, approved by counsel for the Parties, which will contain further information about the Settlement and Cash Payment Claims and Dance Fee Payment Claims processes, including relevant pleadings. The Class Notice shall comply with Federal Rule of Civil Procedure Rule 23 and due process.

159. The Class Notice shall inform Class Members that Cash Payments will be made by

check via first-class mail. The Settlement Administrator shall provide an opportunity for Class Members to submit updated postal mailing addresses.

160. At least twenty-one (21) days before the Fairness Hearing, the Settlement Administrator shall prepare, and shall serve upon Class Counsel and Defense Counsel, a declaration of due diligence and proof of dissemination with regard to the mailing of the Class Notice, its attempts to locate Class Members, its receipt of valid FLSA Claim Forms (indicated by number of Cash Payment Claimants and Dance Fee Payment Claimants), its receipt of valid requests for exclusion from Settlement, and its inability to deliver the Class Notice to certain Class Members due to invalid addresses ("Due Diligence Declaration"). Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

161. If the Final Approval Order and Judgment are not entered by the Court, or if they are overturned or modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement, or if the Effective Date otherwise does not occur, the balance of the Notice and Administration Fund which has not been expended pursuant to this Agreement, and the balance of the Escrow Account, including all earned or accrued interest, shall be returned to Defendants within five (5) days after such circumstances become known.

162. If any individual whose name does not appear on the list of Class Members that Defendants provide to the Settlement Administrator (and who has not previously opted out of the Settlement), believes that she is a Settlement Class Member, she shall have the opportunity to dispute her exclusion from the Settlement Class. If an individual believes she is a Settlement Class Member, she must notify the Settlement Administrator within a reasonable amount of time after the first mailing of the Notice of Settlement of Class Action. The Parties shall then meet and confer regarding any such individuals in an attempt to reach an agreement as to whether any such individual should be regarded as a Settlement Class Member. If the Parties so agree, the Settlement Administrator shall mail a Notice of Settlement of Class Action and an FLSA Claim Form to the individual, and treat the individual as a Settlement Class Member for all other purposes. Such an individual will have all of the same rights as any other Settlement Class Member under this Agreement. In the event that the initial disbursement of Cash Payments has

begun (in accordance with this Settlement Agreement) at the time that the Parties agree that such individual should be regarded as a Settlement Class Member and if such individual submits a Valid Claim for a Cash Payment, the Cash Payment to such individual shall be disbursed from the First Tier Cash Pool or, as appropriate, the Second Tier Cash Pool.

## X. RELEASES

163. The Released Claims against each and all of the Released Parties shall be released and dismissed with prejudice and on the merits (without an award of fees or costs to any Party other than as provided in this Agreement) upon entry of the Final Approval Order and Judgment becoming Final, provided that a Dance Fee Payment Claimant's and Cash Payment Claimant's FLSA claims shall be released and dismissed with prejudice on the merits (without an award of fees or costs to any party other than as provided in this Agreement) only if that Dance Fee Payment Claimant's or Cash Payment Claimant's Consent to Join has been filed with the Court (which shall be filed in a manner that is consistent with the privacy protections of the Court's order of January 12, 2015).

164. As of the Effective Date, the Named Plaintiffs, and all Settlement Class Members, individually and on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents, successors, and assigns, and anyone claiming through them, or acting or purporting to act on their behalf or for their benefit, agree to forever release, relinquish, acquit, discharge, hold harmless, and covenant not to sue, each and all of the Released Parties from each and all of the General Released Claims (in the case of General Releasor(s)), the Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and the FLSA Claimants' Released Claims (in the case of the Settlement Class Members receiving Enhancement Payments or who opted in to the Action as FLSA Claimants, Cash Payment Claimants, and Dance Fee Payment Claimants), and by operation of the Judgment becoming Final shall have fully and finally released, relinquished, acquitted and discharged all such Claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any General Released Claims (in the case of General Releasor(s)), any Settlement Class Members' Released Claims (in the case of the Settlement

Class Members), and any FLSA Claimants' Released Claims (in the case of the Settlement Class Members receiving Enhancement Payments or who opted in to the Action as FLSA Claimants, Cash Payment Claimants, and Dance Fee Payment Claimants) against the Released Parties or against any one or group of them in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body. Without in any way limiting the scope of the releases described in Paragraphs 62, 63, and 99 (and subparts), or in the remainder of this Section, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or Settlement Class Members, or by the Named Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, any other action or proceeding, the administration of the Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement.

165. As of the Effective Date, the Named Plaintiffs, all Settlement Class Members and all Cash Payment Claimants and Dance Fee Payment Claimants, shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties or against any one or group of them, in any federal or state court or before any administrative body, tribunal, arbitration panel, or other adjudicating body, any and all of the General Released Claims (in the case of General Releasor(s)), any Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and any FLSA Claimants' Released Claims (in the case of the Settlement Class Members receiving Enhancement Payments or who opted in to the Action as FLSA Claimants, Cash Payment Claimants, and Dance Fee Payment Claimants), as further provided in Paragraphs 62, 63, and 99 (and subparts).

166. With respect to those Claims that could be asserted under the FLSA, a Dance Fee Payment Claimant's or Cash Payment Claimant's submission of a Valid Claim shall be deemed as that Dance Fee Payment Claimant's or Cash Payment Claimant's Consent to Join. The filing of the FLSA Claim Form with the Court (which shall be filed in a manner that is consistent with the privacy protections of the Court's order of January 12, 2015) shall fully, finally and forever settle and release all such FLSA Claims and matters as of the Effective Date for Dance Fee

Payment Claimants and Cash Payment Claimants.

167. Each General Releasor expressly acknowledges that she is familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

168. Each General Releaseor shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits she may otherwise have or have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein. Each General Releasor further acknowledges that she is aware that she may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which she now know or believe to be true with respect to matters released herein. Nevertheless, each General Releasor acknowledges that a portion of the General Release Enhancement Payment is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and states that it is her intention in agreeing to this release to fully, finally, and forever to settle and release all matters and all Claims that exist, may exist (currently or hereafter), or might have existed (whether or not previously or currently asserted in any action or proceeding), constituting the General Released Claims.

169. Each General Releaseor further acknowledges, agrees, and understands that: (i) she has read and understands the terms of this Agreement; (ii) she has been advised in writing to consult with an attorney before executing this Agreement; (iii) she has obtained and considered such legal counsel as he deems necessary; (iv) she has been given twenty-one (21) days to consider whether or not to enter into this Agreement (although she may elect not to use the full 21 day period at his/her option).

170. Each General Releasor further acknowledges, agrees, and understands that she is expressly, knowingly, and voluntarily waiving and relinquishing, to the fullest extent permitted

by law, all rights or claims arising under the Age Discrimination in Employment Act of 1967. Each General Releasor may each revoke her acceptance of the General Release Enhancement Payment in consideration for the General Released Claims within seven (7) days after the date she signs the General Release Form. Any revocation must be in writing and sent to, and received by, Defense Counsel.

171. Subject to Court approval, the Named Plaintiffs and all Settlement Class Members shall be bound by this Settlement Agreement, and all of their Claims, except for those specifically preserved herein, shall be dismissed with prejudice and fully and forever released, even if such Persons never received actual notice of the Action or this Settlement.

## XI. ADMINISTRATION OF THE NOTICE AND ADMINISTRATION FUND AND ESCROW ACCOUNT

172. The Settlement Administrator or its authorized agents, in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall administer and identify Cash Payment Claims submitted by Settlement Class Members, and shall calculate the allocation, and oversee the distribution, of such Cash Payment Claims to Cash Payment Claimants.

173. The Notice and Administration Fund and funds deposited in the Escrow Account shall be applied as follows:

a) to pay the Settlement Administrator for all costs and expenses incurred in connection with the preparation of and the providing of Class Notice to Class Members, processing FLSA Claim Forms and any objections, challenges, and requests for exclusion, administering and distributing the Cash Payments to the Cash Payment Claimants;

b) to pay Cash Payment Claims;

c) subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 112(e), to pay Enhancement Payments;

d) subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 112(f), to pay the PAGA Payment;

e) subject to the approval and further order(s) of the Court, and according to the

terms of Paragraph 112(g), to pay the Fee and Expense Award as ordered by the Court.

174. Should any amounts from the First Tier Cash Pool remain in the Escrow Account after sixty (60) days following the distribution of the balance of the Cash Payments for the benefit of the Settlement Class, the Settlement Administrator shall direct all such unclaimed funds to be paid to the St. James Infirmary, or if that entity is not approved by the Court, The Impact Fund (a public interest law non-profit organization) or another appropriate recipient as approved by the Court.

175. Class Members who are not on the Opt-Out List approved by the Court shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Judgment with respect to all Settlement Class Members' Released Claims, regardless of whether they seek or obtain any distribution from the First or Second Tier Cash Pools, the Dance Fee Payment Pool, or the Residual Dance Fee Payment Pool.

176. Defendants shall bear no responsibility for the costs, fees, or expenses related to the administration and distribution of the First and Second Tier Cash Pools beyond the funding of the Administrative Costs as set forth in this Agreement. Neither Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the providing of any notice, the receipt of any FLSA Claim Forms or requests for exclusion from the Settlement, or the processing or administration of Cash Payment Claims, the calculations or disbursements of Cash Payments, or for any losses incurred in connection with any such matters.

177. The Settlement Administrator shall be responsible for issuing copies of IRS Form 1099 for the Named Plaintiffs and for all Settlement Class Members who receive Enhancement Payments or Cash Payments and for whom such form is required.

178. The Settlement Administrator shall be responsible for reporting payment of Enhancement Payments and Cash Payments to all required taxing and other authorities.

179. Neither Defendants nor Plaintiffs nor their respective counsel shall have any liability concerning the appointment of the Settlement Administrator or for any of its actions.

180. Payments from the First and Second Tier Cash Pools, the Dance Fee Payment Pool or the Residual Dance Fee Payment Pool made pursuant to and in the manner set forth herein

shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class Members.

181. No Settlement Class Member shall have any claim or cause of action against the Named Plaintiffs, Class Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court. No Settlement Class Member shall have any claim or cause of action against Defendants, or any one or group of them, or their counsel relating to distributions made under this Settlement.

## XII. EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

182. If the Court does not approve the Settlement as set forth in this Agreement, or does not enter the Final Approval Order and Judgment in forms that will be agreed upon by the Parties, or if the Court enters the Judgment and appellate review is sought, and on such review the entry of Judgment is vacated, modified in any way, or reversed, or if the Final Approval Order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated and the Parties are released from their obligations under the Agreement, unless all Parties, in their sole discretion within thirty (30) days from the date of such ruling, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Judgment as it may be modified by the Court or any appellate or reviewing court.

183. Defendants shall have the right to withdraw from the Settlement if leave to file the Amended Complaint for Settlement is not granted on the Preliminary Approval Date or if the Amended Complaint for Settlement does not become the operative complaint in the Action promptly thereafter. If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, they must do so within thirty (30) days of the Preliminary Approval Date, by providing written notice to Class Counsel.

184. Defendants shall also have the right to withdraw from the Settlement if the number of Class Members who attempt to exclude themselves from the Settlement Class equals or exceeds 5% of Class Members. If Defendants choose, in their sole and absolute discretion, to exercise this right, they must do so within fourteen (14) days of receipt of the Settlement

Administrator's Opt-Out List by providing written notice to Class Counsel.

185. In the event that (i) this Settlement does not obtain Final Approval, or (ii) if the terms of Settlement as set forth in this Agreement are materially modified by the Court, or (iii) if The Final Approval of this Settlement and/or the Judgment is overturned, or is materially modified on appeal or by any other reviewing court, or (iv) if the Judgment does not become Final, or (v) if this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, the following apply:

a) Within five (5) business days after written notice is sent by Class Counsel or Defense Counsel to all Parties hereto and the Settlement Administrator, the Notice and Administration Fund, less any funds paid or expenses incurred but not yet paid, the Settlement Fund, and any other cash deposited by Defendants pursuant to this Agreement shall be refunded to Defendants, including all interest earned or accrued;

b) The Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of this Paragraph 185 and all of its subparagraphs, which shall remain effective and enforceable;

c) The Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the date of the filing of this Agreement in the District Court, including with respect to any Court-imposed deadlines;

d) All orders entered in connection with the Settlement, including the approval for filing of the Amended Complaint for Settlement, shall be vacated without prejudice to any Party's position on the issue of class certification, the issue of amending the complaint, or any other issue, in this Action or in any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of this Agreement;

e) All orders certifying the Class for purposes of effecting this Settlement Agreement, and all preliminary and/or final findings regarding the Class certification order, shall be automatically vacated upon notice to the Court, and the Action shall proceed as though the Class had never been certified pursuant to this Agreement and as though such findings had never been made. The Action shall then revert *nunc pro tunc* to the procedural status quo as of the date

of the filing of this Agreement in the District Court. Moreover, Class Counsel shall not refer to or invoke the vacated findings and/or order relating to Class certification in the event the Action continues to be litigated and Defendants contest class certification under Rule 23 of the Federal Rules of Civil Procedure or certification under 29 U.S.C. § 216(b) of the FLSA. Defendants do not agree or consent to certification of any Class for any purpose other than to effectuate the Settlement of the Action; and

f) The Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement. The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, their existence, or their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement, shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or in any other action or proceedings. This subparagraph shall be liberally construed to effectuate the broad purpose of exclusion intended;

g) For the purposes of this Paragraph 185 and all of its subparagraphs, "material modifications" to the Settlement include any changes that any Party deems to be unacceptable. However, decisions by the Court to award an Enhancement Payment to an eligible Person below the maximum amount set forth in this Settlement, or to decline to award an Enhancement Payment to an eligible Person entirely, or to award Class Counsel fees and costs below the requested amounts for the same, shall not be considered to be "material modifications."

## XIII. PROCEDURES FOR REQUESTS FOR EXCLUSION FROM THE SETTLEMENT

186. Class Members (with the exception of the Named Plaintiffs) may exclude themselves from the Settlement. Those who wish to do so (or to "opt-out" of the Settlement)

must submit timely, written requests for exclusion. To be effective, such a request must include the Class Member's name, address, and telephone number; a clear and unequivocal statement that the Class Member wishes to be excluded from the Settlement and that the Class Member understands that he or she is still bound by the release of PAGA Claims upon the issuance of the Final Approval Order and Final Judgment; and the signature of the Class Member or the Legally Authorized Representative of the Class Member. The request must be mailed to the Settlement Administrator at the address provided in the Notice of Settlement of Class Action and must be postmarked no later than the Exclusion/Objection Deadline. The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Requests for exclusion must be exercised individually by the Class Member, not as or on behalf of a group, class, or subclass, except that such individual exclusion requests may be submitted by a Class Member's Legally Authorized Representative. All requests for exclusion must be submitted by the requesting Class Member (or her Legally Authorized Representative) even if the Class Member is represented by counsel.

187. The Settlement Administrator shall promptly log each request for exclusion from Settlement that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and Defense Counsel, as requested.

188. The Settlement Administrator shall prepare the Opt-Out List of all Persons who timely and properly requested exclusion from the Settlement and shall, before the Fairness Hearing, submit a declaration to the Court attesting to the accuracy of the Opt-Out List.

189. All Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their state law claims (including but not limited to PAGA Claims) shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

190. The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion from Settlement was timely submitted. The Settlement Administrator's decision shall be final, binding, and non-appealable.

191. The Named Plaintiffs agree not to request exclusion from the Settlement.

192. Class Members may object to or opt out of the Settlement, but may not do both. Any Class Member who submits a timely request for exclusion from Settlement may not file an objection to the Settlement, may not submit a Cash Payment Claim or a Dance Fee Payment Claim, or receive a Cash Payment, Dance Fee Payment, or Residual Dance Fee Payment, and shall be deemed to have waived any and all rights or benefits under this Settlement Agreement.

193. Notwithstanding the submission of a timely request for exclusion from Settlement, Class Members will still be bound by the settlement and release of all PAGA Claims or remedies under the Judgment pursuant to *Arias v. Superior Court*, 46 Cal.4th 969 (2009). Requests for exclusion from Settlement do not apply to PAGA Claims.

194. No later than five (5) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete Opt-Out List together with copies of the opt-out requests.

## XIV. PROCEDURES FOR OBJECTIONS

195. Any Class Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must file with the Court a timely statement of the objection as set forth below.

196. To be timely, the objection must be postmarked and mailed to the Settlement Administrator, and filed with the Court, no later than by the Exclusion/Objection Deadline. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether an objection has been timely submitted.

197. The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual basis for each objection; and (iv) a statement whether the objecting Person intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. All objections shall be signed by the objecting Settlement Class Member (or her Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.

198. Any Settlement Class Member, any attorney who is representing or assisting a Settlement Class Member in connection with any objection to the Settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member), or any attorney working for a governmental entity, who wishes to appear in the Action to object to the Settlement must provide to the Settlement Administrator (who shall forward it to Class Counsel and Defense Counsel) and file with the Clerk of the Court a notice of appearance no later than by the Exclusion/Objection Deadline.

199. The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member or his attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

200. Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section XIV shall waive the right to object or to be heard at the Fairness Hearing, and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the PAGA Payment, the Fee and Expense Award, the Administrative Costs, and the Enhancement Payments. Settlement Class Members who object to the proposed Settlement shall remain Settlement Class Members, and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Defendants and the Released Parties. To the extent any Settlement Class Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval Order and Judgment.

201. In the event that any Person objects to or opposes the Settlement, or attempts to intervene in or otherwise enter the Action, the Parties agree to use their best efforts to cooperate in the defense of the Settlement. Notwithstanding the foregoing, it shall be Class Counsel's sole responsibility to respond to any objections made with respect to any application for the Fee and Expense Award and the Enhancement Payments.

## XV. <u>MISCELLANEOUS PROVISIONS</u>

202. Each Settlement Class Member shall be obligated to obtain her own independent

tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration she receives or obtains pursuant to this Agreement, and shall further assume the responsibility of remitting to the Internal Revenue Service and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Agreement, without any contribution whatsoever from any of the Released Defendants for Class Counsel. Nothing in this Agreement shall be construed as Class Counsel, Defense Counsel, or Defendants providing any advice regarding the payment of taxes for the tax consequences of a Settlement Class Member's participation in any portion of this Agreement.

203. In the event that one or more of the Parties to this Settlement Agreement institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Settlement Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

204. Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and the Settlement Class:
Steven G. Tidrick, Esq.
The Tidrick Law Firm
2039 Shattuck Ave., Suite 308
Berkeley, CA 94704

To Defendants:
Douglas J. Melton
Long & Levit, LLP
465 California Street, 5th Floor
San Francisco, CA 94104

205. All of the Exhibits to this Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

206. The Parties agree that the recitals herein are contractual in nature and form a material part of this Settlement Agreement.

207. This Settlement Agreement, including its accompanying Exhibits, set forth the entire understanding of the Parties. No change or modification of this Agreement shall be effective unless in writing and signed by Class Counsel and Defense Counsel. No extrinsic evidence or parole evidence shall be used to interpret this Agreement.

208. This Settlement Agreement supersedes all prior negotiations, understandings and agreements among the Parties, and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

209. Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Agreement, whether written or oral, are superseded and hereby revoked by this Settlement Agreement. The Parties expressly agree that the terms and conditions of this Settlement Agreement will control over any other written or oral agreements.

210. The Named Plaintiffs and Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and, apart from the limited discovery described in the next sentence, hereby waive any right to conduct further discovery to assess or confirm the Settlement. Notwithstanding the prior sentence, the Parties agree to reasonably cooperate with respect to limited confirmatory discovery to be agreed upon related to the last-known addresses of Class Members.

211. Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

212. The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement. Such extensions must be in writing to be enforceable.

213. This Agreement, the Settlement, the fact of the Settlement's existence, the terms of this Settlement Agreement, any press release or other statement or report by the Parties or by others concerning the Settlement Agreement or the Settlement, and/or any negotiations,

proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute, an admission or evidence of the validity of any of the Released Claims or of any liability, culpability, negligence or wrongdoing on the part of the Released Parties or any one or group of them; and (ii) may not be deemed to be, may not be used as, and do not constitute, an admission or evidence of any fault, wrongdoing, or omission by the Released Parties, or by any one or group of them, in any trial of the Action or in any other action or proceedings in any court (civil, criminal or otherwise), administrative agency, arbitration forum, or other tribunal.

214. The Released Parties shall have the right to file this Settlement Agreement, the Final Approval Order and the Judgment, and any other documents or evidence relating to the Settlement, in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, payment, accord and satisfaction, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

215. The Parties to the Agreement agree that the considerations to be paid hereby and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from several in-person mediation sessions before Ninth Circuit Mediator Peter Sherwood, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

216. The Named Plaintiffs and Class Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims and causes of action that the Named Plaintiffs asserted, and will assert pursuant to the Amended Complaint for Settlement, against Defendants, including the claims and causes of action on behalf, and/or for the benefit, of the Settlement Class, and that it promotes the best interests of the Settlement Class.

217. To the extent permitted by law, all agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive the execution and Final Approval of this Settlement Agreement.

218. The Parties agree that the Plaintiffs and Class Counsel are not required to return

any documents produced by Defendants until the final resolution of the Action, by the Judgment becoming Final. Within sixty (60) days following the Effective Date, Class Counsel shall return to Defendants all documents produced in the Action and all copies thereof, or confirm in writing that all such documents have been destroyed, in a manner consistent with the terms of any applicable protective order in the Action.

219. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

220. This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Agreement and its Exhibits.

221. This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument. The date of execution shall be the latest date on which any Party signs this Agreement.

222. This Settlement Agreement may be signed with a facsimile or .PDF signature and in counterparts, each of which shall constitute a duplicate original.

223. The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Agreement.

224. This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties, the Settlement Class Members, Class Counsel and Defense Counsel, as well as their respective heirs, executors, personal representatives, predecessors and successors in interest, and assigns, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize, each of which is entitled to enforce this Agreement.

225. This Settlement Agreement has been negotiated and drafted by Class Counsel and Defense Counsel. Named Plaintiffs, Settlement Class Members, and Defendants shall not be

deemed to be the drafters of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. Accordingly, this Agreement should not be construed in favor of or against one Party as to the drafter, and the Parties agree that the provisions of California Civil Code § 1654 and common law principles of construing ambiguities against the drafter shall have no application. All Parties agree that counsel for the Parties jointly drafted this Settlement Agreement during extensive arm's-length negotiations. No parole or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

226. Except where this Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Agreement.

227. This Agreement shall be governed by federal law. To the extent that federal law does not apply, this Agreement shall be governed by and construed under the laws of the State of California, without regard to choice of law principles. Any action based on this Agreement, or to enforce any of its terms, shall be venued in the United States District Court for the Northern District of California, which shall retain jurisdiction over all such disputes. All Parties to and all Persons bound by this Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of California for all purposes related to this Agreement.

228. The Court shall retain continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of the administration and enforcement of its terms.

229. The headings used in this Agreement are inserted merely for the convenience of the reader, and shall not affect the meaning or interpretation of this Settlement Agreement.

230. In construing this Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

231. All of the Parties warrant and represent that they are agreeing to the terms of this Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Agreement with their attorneys, and that they fully

understand and voluntarily accept the terms and conditions of this document.

232. Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set forth below.

Dated: March 8, 2017

JANE ROE 1

By: Roe 1

Dated: March _____, 2017

JANE ROE 3

By: ______________________

Dated: March _____, 2017

SFBSC MANAGEMENT, LLC

By: ______________________
Joseph Carouba

Dated: March _____, 2017

SAW ENTERTAINMENT, LTD
(HUSTLER AND CONDOR)

By: ______________________
Francesco Fusco

Dated: March _____, 2017

BT CALIFORNIA, LLC
(PENTHOUSE)

By: ______________________
Mark Calcagni

understand and voluntarily accept the terms and conditions of this document.

232. Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set forth below.

Dated: March _____, 2017 JANE ROE 1

By: ______________________________

Dated: March 8, 2017 JANE ROE 3

By: Jane Roe 3

Dated: March _____, 2017 SFBSC MANAGEMENT, LLC

By: ______________________________
Joseph Carouba

Dated: March _____, 2017 SAW ENTERTAINMENT, LTD (HUSTLER AND CONDOR)

By: ______________________________
Francesco Fusco

Dated: March _____, 2017 BT CALIFORNIA, LLC (PENTHOUSE)

By: ______________________________
Mark Calcagni

understand and voluntarily accept the terms and conditions of this document.

232. Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California.

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set forth below.

Dated: March _____, 2017

JANE ROE 1

By: ______________________________

Dated: March _____, 2017

JANE ROE 3

By: ______________________________

Dated: March 7, 2017

SFBSC MANAGEMENT, LLC

By: ______________________________
Joseph Carouba

Dated: March 7, 2017

SAW ENTERTAINMENT, LTD
(HUSTLER AND CONDOR)

By: ______________________________
Francesco Fusco

Dated: March 7, 2017

BT CALIFORNIA, LLC
(PENTHOUSE)

By: ______________________________
Mark Calcagni

Dated: March 7, 2017

GOLD CLUB-SF, LLC
(GOLD CLUB)

By: Craig Bordeau
Craig Bordeau

Dated: March 07, 2017

CHOWDER HOUSE, INC.
(HUNGRY I)

By: ______________
Harley Hall

Dated: March 07, 2017

SF ROARING 20'S, LLC
(ROARING 20'S)

By: ______________
Jonathan Morataya

Dated: March 7, 2017

DEJA VU-SAN FRANCISCO, LLC
(CENTERFOLDS)

By: ______________
Sherry Cooper

Dated: March 7, 2017

DEJA VU SHOWGIRLS OF SAN FRANCISCO, LLC
(LITTLE DARLINGS)

By: ______________
Delando Garrett

Dated: March 7, 2017

SF GARDEN OF EDEN, LLC
(GARDEN OF EDEN)

By: ______________
George Britton

Dated: March 7, 2017

BIJOU-CENTURY, LLC
(NEW CENTURY)

By: ______________________
Ken Johnson

**APPROVED AS TO FORM AND CONTENT**

Dated: March _____, 2017

LONG & LEVIT LLP

By: /s/ *Douglas J. Melton*
DOUGLAS J. MELTON
Attorneys for Defendant
SFBSC MANAGEMENT, LLC

Dated: March ______, 2017

THE TIDRICK LAW FIRM

By: /s/ *Steven G. Tidrick*
STEVEN G. TIDRICK
Attorneys for Plaintiffs

DOCS\S0301-204\820117.12

# Exhibit A

# Exhibit A

| **Nightclubs** | **Nightclub Entities** |
|---|---|
| Chowder House, Inc. | Owner of San Francisco nightclub known as "Hungry I" |
| Déjà Vu San Francisco, LLC | Owner of San Francisco nightclub known as "Centerfolds" |
| SF Roaring 20's, LLC | Owner of San Francisco nightclub known as "Roaring 20's" |
| SF Garden of Eden, LLC | Owner of San Francisco nightclub known as "Garden of Eden" |
| SAW Entertainment, Ltd. | Owner of San Francisco nightclubs known as "Larry Flynt's Hustler Club" and "The Condor Club" |
| Déjà Vu Showgirls of San Francisco, LLC | Owner of San Francisco nightclub known as "Little Darlings" |
| Gold Club-SF, LLC | Owner of San Francisco nightclub known as "Gold Club" |
| Bijou-Century, LLC | Owner of San Francisco nightclub known as "New Century Theater" |
| BT California, LLC | Owner of San Francisco nightclub known as "The Penthouse Club" (formerly known as "Showgirls") |

# Exhibit B

THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Plaintiffs JANE ROES 1-2 *et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANE ROES 1-2 *et al.*,

Plaintiffs,

v.

SFBSC MANAGEMENT, LLC; CHOWDER HOUSE, INC.; DEJA VU - SAN FRANCISCO, LLC; ROARING 20'S, LLC; GARDEN OF EDEN, LLC; S.A.W. ENTERTAINMENT LIMITED; DEJA VU SHOWGIRLS OF SAN FRANCISCO, LLC; GOLD CLUB - S.F., LLC; MARKET ST. CINEMA, LLC; BIJOU - CENTURY, LLC; BT CALIFORNIA, LLC; and DOES 1-200,

Defendants.

Civil Case No. 14-cv-03616-LB

**SECOND AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT FOR SETTLEMENT FOR VIOLATIONS AND/OR RECOVERY OF:**
**(1) FAIR LABOR STANDARDS ACT;**
**(2) CALIFORNIA LABOR CODE;**
**(3) SAN FRANCISCO ADMINISTRATIVE CODE;**
**(4) CALIFORNIA INDUSTRIAL WELFARE COMMISSION WAGE ORDERS;**
**(5) CALIFORNIA'S UNFAIR COMPETITION ACT, BUS. & PROF. CODE §§ 17200 *et seq.*; and**
**(6) PENALTIES UNDER THE LABOR CODE PRIVATE ATTORNEYS GENERAL ACT OF 2004, CALIFORNIA LABOR CODE § 2699(a),(f) ("PAGA" CLAIMS)**

**JURY TRIAL DEMANDED**

Plaintiffs Jane Roes 1, 2, 3, 9, and 10 allege as follows:

## I. NATURE OF THE CASE

1. Plaintiffs each formerly worked for SFBSC Management, LLC ("Defendant") as an "exotic dancer." As described in more detail below, Plaintiffs specified herein seek to represent classes consisting of all individuals who, during the relevant class periods, have worked as exotic dancers at nightclubs in California that Defendant has operated and controlled, and where Defendant has dictated employment policies. All class members have

been denied fundamental rights under federal, state, and local wage and hour laws in a similar and uniform way. Defendant has misclassified Plaintiffs and class members as independent contractors, as opposed to employees, at all times when they have worked as exotic dancers. Defendant has failed to pay Plaintiffs and class members the minimum wages and other benefits to which they were entitled under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the California Labor Code, California Industrial Welfare Commission Wage Orders, and the San Francisco Minimum Wage Ordinance ("SFMWO"). Additionally, Defendant has engaged in unlawful tip-splitting by requiring Plaintiffs and class members, who receive gratuities from customers, to split and share those gratuities with Defendant, its Nightclubs, and its other workers, such as managers, doormen, and disc jockeys (DJs). This collective and class action seeks damages, back pay, restitution, liquidated damages, applicable civil penalties, prejudgment interest, reasonable attorneys' fees and costs, civil penalties, declaratory and injunctive relief, and all other relief that the Court deems just, reasonable, and equitable. This action is also prosecuted under the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. ("PAGA"), individually and on behalf of others who currently and formerly have worked for Defendant as exotic dancers, to recover civil penalties for Defendant's violations of law, pursuant to the procedures in Labor Code § 2699.3.

## II. JURISDICTION AND VENUE

2. The FLSA authorizes private rights of action to recover damages for violations of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the California state law claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because all of the actions alleged herein occurred within the Northern District of California.

4. Intradistrict Assignment. The events set forth in this Complaint occurred within

the City and County of San Francisco, and it is therefore properly assigned to the San Francisco or Oakland division of this Court pursuant to Civil Local Rule 3-2(c) and (d).

## III. PARTIES

5. Plaintiff Jane Roe No. 1 ("Roe No. 1") worked as an exotic dancer for Defendant in San Francisco, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 1 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 1 sues on her own behalf, as a proposed class representative on behalf of similarly situated individuals, and as a PAGA representative plaintiff on behalf of other current and former employees. She sues under a fictitious name, Jane Roe No. 1, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

6. Plaintiff Jane Roe No. 2 ("Roe No. 2") worked as an exotic dancer for Defendant in San Francisco, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 2 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 2 sues on her own behalf. She sues under a fictitious name, Jane Roe No. 2, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

7. Plaintiff Jane Roe No. 3 ("Roe No. 3") worked as an exotic dancer for Defendant in San Francisco, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 3 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 3 sues on her own behalf, as a proposed class representative on behalf of similarly situated individuals, and as a PAGA

representative plaintiff on behalf of other current and former employees. She sues under a fictitious name, Jane Roe No. 3, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

8. Plaintiff Jane Roe No. 9 ("Roe No. 9") worked as an exotic dancer for Defendant in San Francisco, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 9 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 9 sues on her own behalf and as a PAGA representative plaintiff on behalf of other current and former employees. She sues under a fictitious name, Jane Roe No. 9, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

9. Plaintiff Jane Roe No. 10 ("Roe No. 10") worked as an exotic dancer for Defendant in San Francisco, California during the class period and is a member of the proposed class. Like other class members, when Roe No. 10 worked in that capacity, she was: (1) misclassified as an independent contractor, and as a result was not paid any wages (or provided other benefits and rights) to which she was entitled as an employee; and (2) required to split tip income as described more fully below. Roe No. 10 sues on her own behalf, as a proposed class representative on behalf of similarly situated individuals, and as a PAGA representative plaintiff on behalf of other current and former employees. She sues under a fictitious name, Jane Roe No. 10, due to the highly sensitive and personal nature of the details about Plaintiffs in this action, and for additional reasons described below.

10. Plaintiffs sue under fictitious names due to the highly sensitive and personal nature of the details about Plaintiffs in this action and because (1) there is a significant social stigma associated with the nude and semi-nude "dancing" that exotic dancers, also known as "strippers," perform; (2) there are risks inherent in working as an exotic dancer, including risk of injury by current or former customers of Defendant if an exotic dancer's name or address is disclosed; (3) Plaintiffs would be hesistant to maintain this action enforcing fundamental

employee rights if their names were to be forever associated with Defendant's Nightclubs, which could affect their prospects for future employment by others; and (4) Plaintiffs wish to protect their rights to privacy. Plaintiffs' concerns are reasonable and justified. At the Nightclubs, it is customary for the exotic dancers to use pseudonyms or stage names for privacy and personal safety reasons. *See generally Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-1068 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.' . . . We join our sister circuits and hold that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity.").

11. Plaintiffs have filed Consents to Become Party Plaintiff executed by similarly situated individuals, and intend to file additional consents as they are secured. Many similarly situated individuals, however, will be afraid to join the lawsuit as party plaintiffs because of reasonable fears relating to privacy, personal safety, and/or the potential for retaliation. In order to allow them to pursue their rights under the FLSA without jeopardizing their privacy, personal safety, or income, Plaintiffs pray that the Court permit party plaintiffs to keep their names and addresses concealed. *See generally Does I thru XXIII*, 214 F.3d at 1071 ("complaining employees are more effectively protected from retaliation by concealing their identities than by relying on the deterrent effect of *post hoc* remedies under FLSA's anti-retaliation provision").

12. Defendant SFBSC Management, LLC maintains ownership, recruitment, and/or operational interests in various nightclubs featuring nude or semi-nude dancing in California, including but not limited to nightclubs doing business as Hungry I, Centerfolds (also known as DejaVu Centerfolds San Francisco), Roaring 20's, Garden of Eden, Larry Flynt's Hustler Club (also known as Larry Flynt's World Famous Hustler Club San Francisco), Little Darlings, Gold Club, Market Street Cinema (which was also known as MSC), New Century, The Penthouse Club (formerly known as Showgirls or Broadway

Showgirls Cabaret), and Condor Gentlemen's Club (also known as The Condor Club) (collectively, the "Nightclubs").

13. Defendant Chowder House, Inc. ("Hungry I") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation, Hungry I.

14. Defendant Deja Vu – San Francisco, LLC ("Centerfolds") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Centerfolds; (b) DejaVu Centerfolds San Francisco; and (c) DejaVu Centerfolds San Francisco.

15. Defendant Roaring 20's, LLC ("Roaring 20's") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Roaring 20's; (b) Roaring 20s; (c) Roaring 20's San Francisco; (d) Roaring 20s SF; and (e) San Francisco Roaring 20's.

16. Defendant Garden of Eden, LLC ("Garden of Eden") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Garden of Eden; (b) Garden of Eden San Francisco; (c) San Francisco Garden of Eden; and (d) Garden of Eden SF.

17. Defendant S.A.W. Entertainment Limited ("S.A.W. Entertainment") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Larry Flynt's Hustler Club; (b) Larry Flynt's World Famous Hustler Club; and (c) Larry Flynt's World Famous Hustler Club San Francisco.

18. Defendant Deja Vu Showgirls of San Francisco, LLC ("Little Darlings") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Little Darlings; (b) Little Darlings San Francisco; (c) Temptations/Little Darlings; (d) Temptations; and (d) Deja Vu Showgirls of San Francisco.

19. Defendant Gold Club - S.F., LLC ("Gold Club") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without

limitation: (a) The Gold Club San Francisco; (b) Gold Club SF; (c) GoldClub [sic] SF; (d) Gold Club SF, LLC; (e) Gold Club-SF, LLC; (f) GOLD CLUB; and (g) Gold Club San Francisco.

20. Defendant Market St. Cinema, LLC ("Market Street Cinema") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Market Street Cinema; (b) Market St. Cinema; and (c) MSC.

21. Defendant Bijou - Century, LLC ("New Century") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Century Theatre; and (b) New Century.

22. Defendant BT California, LLC ("The Penthouse Club") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) The Penthouse Club; (b) Showgirls; (c) Broadway Showgirls Cabaret; and (d) Broadway Showgirls.

23. Defendant S.A.W. Entertainment Limited ("S.A.W. Entertainment") operates a nightclub featuring nude or semi-nude dancing in San Francisco, California, doing business as, including without limitation: (a) Condor; (b) Condor Gentlemen's Club; (c) The Condor Club; and (d) Condor Club San Francisco; (e) The Condor Night Club; (f) The Condor; and (g) Condor SF.

24. The following Defendants are referred to herein as the "Nightclub Defendants": Defendant Chowder House, Inc., Defendant Deja Vu – San Francisco, LLC, Defendant Roaring 20's, LLC, Defendant Garden of Eden, LLC, Defendant S.A.W. Entertainment Limited, Defendant Deja Vu Showgirls of San Francisco, LLC, Defendant Gold Club - S.F., LLC, Defendant Market St. Cinema, LLC, Defendant Bijou - Century, LLC, and Defendant BT California, LLC.

25. The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as DOES are unknown to Plaintiffs at this time and therefore said Defendants are sued by such fictitious names. Plaintiffs will

amend this Complaint to show their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each Defendant designated herein as a DOE defendant is legally responsible in some manner for the events and happenings herein alleged and in such manner proximately caused damages to Plaintiffs as hereinafter further alleged.

26. Plaintiffs are informed and believe and thereon allege that each of the Defendants was acting as the agent, employee, partner, or servant of each of the remaining Defendants and was acting within the course and scope of that relationship, and gave consent to, ratified, and authorized the acts alleged herein to each of the remaining Defendants.

27. On information and belief, Plaintiffs anticipate naming, and possibly substituting, additional business entities or individuals because Defendant owns, operates, and/or controls local nightclubs while maintaining shell corporations and/or sham agreements to create the appearance that it does not have ownership and/or control of the nightclubs.

## IV. <u>GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS</u>

28. Each of the Nightclubs is controlled by senior management of Defendant, whose management controls the employment status, classification, and treatment of exotic dancers. Each Nightclub has a distinct business location where Defendant operates and conducts business with the public. Employees, executives, and officers of Defendant make corporate decisions and execute contractual agreements and legal documents on behalf of the Nightclubs, and otherwise control operations of the Nightclubs. Moreover, the Nightclubs share with Defendant certain officers, directors, managers, and employees, who control material matters pertinent to the exotic dancers' work at the Nightclubs.

29. At all relevant times Defendant employed and/or jointly employed all exotic dancers working in the Nightclubs, and managed, directed and controlled the exotic dancers in each Nightclub, including but not limited to the following policies, practices, and decisions: (1) to misclassify exotic dancers as independent contractors, as opposed to employees; (2) to require that exotic dancers split their table dance tips with Nightclubs; (3) to require that exotic dancers further split their table dance tips with Nightclubs' managers, doormen, floor walkers, DJs and other workers who do not usually receive tips, by paying "tip-outs;" (4) to

not pay exotic dancers any wages; (5) to demand improper and unlawful payments from exotic dancers; (6) to adopt and implement employment policies which violate the FLSA, California Labor Code, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), and SFMWO; and/or (7) to threaten retaliation against any exotic dancer attempting to assert her statutory rights to be classified as an employee. Defendant and its principals created the uniform business model employed at each Nightclub regarding exotic dancer classification and tip splitting and require that it continue to be employed.

30. Defendant has agreed and conspired with others unlawfully: (1) to misclassify exotic dancers as independent contractors, as opposed to employees at each Nightclub; (2) to require that exotic dancers split their table dance tips with Nightclubs; (3) to require that exotic dancers split their table dance tips with Defendant's managers, doormen, floor walkers, DJs and other workers who do not usually receive tips, by paying "tip-outs;" (4) not pay exotic dancers any wages; (5) demand improper and unlawful payments from exotic dancers; (6) adopt and implement employment policies and practices that violate the FLSA, the California Labor Code, the UCL, the SFMWO, and/or other laws; and/or (7) threaten retaliation against any exotic dancer attempting to assert her statutory rights to be treated as an employee. The unlawful agreements in the enterprise were entered into in California as part of a strategy to maximize the revenues and profits Defendant and its co-conspirators by disregarding applicable wage and hour laws and engaging in the other unlawful conduct described. The agreements were made when the Nightclubs were formed, began operations, and/or when Defendant undertook to manage, direct, and operate the Nightclubs.

31. At all relevant times, Defendant has owned and operated nightclub businesses (the Nightclubs) engaged in interstate commerce and utilizing goods that have moved in interstate commerce. For example, goods sold at the Nightclubs are moved in interstate commerce. Defendant owns, manages and/or controls the business operations at numerous Nightclubs. During the relevant time period, the annual gross revenues of Defendant have exceeded $500,000 per year.

32. The foregoing facts demonstrate that Defendant, along with its Nightclubs and

the persons who directly and indirectly hold ownership interest in and/or control those entities, were at all relevant times an "enterprise engaged in commerce" as defined in 29 U.S.C. §203(r) and §203(s). Defendant, its Nightclubs, and the owners and operators constitute an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform "related activities" through a "unified operation" exercising "common control" for a "common business purpose." At relevant times, Plaintiffs and class members were jointly employed by Defendant's enterprise engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

33. Defendant controls the adult entertainment industry in the San Francisco area, inasmuch as it operates approximately 11 of the 17 adult nightclubs in the City, and operates all but one of the large nightclubs. Further, because Defendant has increasing control of this industry in San Francisco, and because of the concomitantly diminishing alternatives that exotic dancers have for such work, Defendant has the economic power to prohibit exotic dancers from engaging in collective bargaining – or from bargaining at all – and requires exotic dancers to work under illegal and unconscionable terms.

34. The FLSA, the California Labor Code, and the SFMWO applied to the class members when they worked at the Nightclubs. No exceptions to the application of the FLSA, the California Labor Code, and/or the SFMWO apply to Plaintiffs and the class. The exotic dancing performed by class members while working at the Nightclubs does not require invention, imagination, or talent in a recognized field of artistic endeavor, and class members have never been compensated by Defendant on a set salary, wage, or fee basis. Rather, class members' sole source of income while working at the Nightclubs has been a portion of tips given to them by customers (*e.g.,* table dance tips and stage dance tips).

35. At relevant times, Plaintiffs and class members are or were employees of Defendant under the FLSA, the California Labor Code, and the SFMWO, but misclassified as independent contractors. During the relevant time period, over 500 women have worked as exotic dancers at Defendant's Nightclubs without being paid any minimum wages, and have been denied other rights and benefits of employees. Each of Defendant's Nightclubs averages

approximately 30 to 40 class members working on any given day.

36. At relevant times, Defendant has been the employer of Plaintiffs and class members under the FLSA, the California Labor Code, and SFMWO. Defendant suffered or permitted class members to work. Defendant has directly or indirectly employed, and exercised significant control over the wages, hours, and working conditions of, Plaintiffs and class members.

37. At all relevant times, Defendant has been a joint employer of Plaintiffs and class members under the FLSA, the California Labor Code, and SFMWO. Plaintiffs' and class members' employment by Defendant is not completely disassociated from employment by others. Defendant does not act entirely independently of others and is not completely dissociated with respect to the employment of Plaintiffs and the class members. Defendant maintains significant control over the work performed at the Nightclubs by Plaintiffs and class members. Defendant plays significant roles in establishing, maintaining, and directing the employment policies that are applied to class members. Defendant benefits financially from the work that class members perform at the Nightclubs. Additionally, the joint employers have acted directly or indirectly in their joint interests in relation to supervision over, and control of, Plaintiffs and class members. As a joint employer of Plaintiffs and class members, Defendant is responsible both individually and jointly for compliance with all applicable provisions of the FLSA, the California Labor Code, and/or the SFMWO.

38. During the relevant time period, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to the other class members who worked as exotic dancers at Defendant's Nightclubs.

39. Throughout the relevant time period, Defendant's policies and procedures regarding the classification of all exotic dancers (including Plaintiffs) at its Nightclubs and treatment of dance tips were the same in all material respects. As a matter of uniform policy, Defendant has systematically misclassified Plaintiffs and all class members as independent contractors, as opposed to employees. Defendant's classification of Plaintiffs and class members as independent contractors was not due to any unique factor related to the exotic

dancers' employment by or relationship with Defendant. Rather, as a matter of its uniform business policy, Defendant has routinely misclassified all exotic dancers as independent contractors as opposed to employees. All of Defendant's Nightclubs have used the same or materially identical purported contract attempting to classify exotic dancers as independent contractors and confirming these uniform employment policies and procedures. As a result of this uniform practice of misclassification, Plaintiffs and the class members have not been paid the minimum wages under the FLSA, the California Labor Code, and/or the SFMWO, and have been deprived of other statutory rights and benefits. Therefore, they have suffered harm, injury, and have incurred financial loss.

40. Plaintiffs and class members have incurred financial loss, injury, and damage as a result of Defendant's common policies and practices of misclassifying them as independent contractors and failing to pay them minimum wages in addition to the tips that they were given by customers. The named Plaintiffs' injuries and financial losses have been caused by Defendant's application of those common policies and practices in the same manner as Defendant has applied them to absent class members.

41. During the relevant time period, no class member has received any wages or other compensation from Defendant. Members of the class have generated income solely through tips received from customers when they have performed exotic table, chair, couch, lap, and/or VIP room "dances" (hereinafter collectively referred to as "table dance tips").

42. All monies that class members such as Plaintiffs have received from customers when they performed "dances" were tips, not wages or service fees. Tips belong to the person to whom they are given. Table dance tips were given by customers directly to the class members and therefore belong to the class members, not Defendant.

43. The full amount that class members are given by customers for exotic "dances" they perform are not taken into Defendant's gross receipts with a portion paid out to the exotic dancers. Defendant does not issue W-2 forms, 1099 forms, or any other documentation to class members indicating any amounts paid from gross receipts to class members as wages.

44. Plaintiffs and class members are tipped employees as they are engaged in an

occupation in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. *See* California Labor Code § 351. Therefore, as employees of Defendant, class members are entitled (i) to receive the full minimum wages due under the California Labor Code and/or the SFMWO, without any tip credit, and (ii) to retain the full amount of any table dance tips and monies given to them by customers when they perform exotic "dances."

45. Defendant's misclassification of Plaintiffs and class members as independent contractors was designed to deny class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to class member by customers, and done to enhance Defendant's profits at the expense of the class.

46. Defendant's misclassification of Plaintiffs and class members was willful. Defendant knew or should have known that Plaintiffs and class members performing the "exotic dancing" job functions were improperly misclassified as independent contractors.

47. Employment is defined with "striking breadth" in the wage and hour laws. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 325-26, 112 S.Ct. 1344, 1349-50 (1992). The determining factors as to whether exotic dancers such as Plaintiffs are employees or independent contractors under the FLSA or the California Labor Code are not the exotic dancer's purported "election," any subjective intent, or any purported contract. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726-29 (1947); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 784, 754-55 (9th Cir. 1979); *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal. 3d 341, 356-57 & n.7 (1989). Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test. Under that test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment by others.

48. Any purported contract that Defendant may impose in an attempt to have workers in the class waive, limit or abridge their statutory rights to be treated as employees under the FLSA, the California Labor Code, and/or the SFMWO is void, unenforceable,

unconscionable, and contrary to public policy. Workers in the class cannot validly "elect" or "choose" between being treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the class agree to be paid less than the minimum wage.

49. Despite this, Defendant unfairly, unlawfully, fraudulently, and unconscionably has attempted to coerce class members to waive their rights under the FLSA, the California Labor Code, and/or the SFMWO and "elect" to be treated as independent contractors. Defendant threatens to penalize and discriminate against exotic dancers and/or potential exotic dancers if they assert their rights under the FLSA, the California Labor Code, and/or the SFMWO, such as through termination, confiscation of all table dance tips, and other adverse decisions, conditions, and retaliations. Any actual or threatened retaliation against an employee for the assertion of wage and hour law claims violates the state's fundamental public policy to protect the payment of wages and employees' rights.

50. Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They include the following: (i) the degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

51. The totality of circumstances surrounding the employment relationship between Defendant and the class establishes economic dependence by the class on Defendant and the class members' employee status. The economic reality is that Plaintiffs and class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in others, namely Defendant. The class members are not engaged in occupations of businesses distinct from that of Defendant. Rather, their work is the basis for Defendant's business. Defendant obtains the customers who desire exotic dance entertainment and Defendant provides the customers with its workers, the class members. The class members conduct the exotic dance "services" on

behalf of Defendant. Defendant retains pervasive control over the nightclub operations as a whole, and the exotic dancers' duties are an integral part of Defendant's operations.

**A. Degree of Control – Plaintiffs and The Other Exotic Dancers Exercise No Control Over Their "Own" or Their Employers' Business**

52. Plaintiffs and the class members do not exert control over a meaningful part of the Defendant's nightclub business and do not stand as separate economic entities from Defendant. Defendant exercises control over all aspects of the working relationship with Plaintiffs and class members.

53. Class members' economic status is inextricably linked to those conditions over which Defendant has complete control. Plaintiffs and the other exotic dancers are completely dependent on Defendant's Nightclubs for their earnings. Defendant controls all of the advertising and promotion without which the exotic dancers could not survive economically. Moreover, Defendant creates and controls the working conditions, atmosphere, and surroundings at the Nightclubs, the existence of which dictates the flow of customers. The exotic dancers have no control over the customer volume or the working conditions.

54. Defendant has maintained guidelines and rules dictating the way in which exotic dancers such as Plaintiffs must conduct themselves while working at the Nightclubs. Defendant sets the hours of operation; length of shifts the exotic dancers must work; the show times during which an exotic dancer may perform; minimum table dance tips; the sequence in which an exotic dancer may perform on stage during her stage rotation; the format and themes of exotic dancers' performance (including their apparel and appearance); theme nights; conduct while at work (*e.g.*, that they be on the floor as much as possible when not on stage and mingle with customers in a manner that supports Defendant's general business plan); pay tip-splits; pay "tip-outs" to managers, doormen and other employees who do not normally receive tips from customers; require that exotic dancers help sell a minimum number of drinks to customers (or be penalized and have to buy the drinks themselves); and all other terms and conditions of employment.

55. Defendant requires that Plaintiffs and the other class members schedule work

shifts. Defendant requires that each shift worked by an exotic dancer be of a minimum number of hours. Further, Defendant requires exotic dancers such as Plaintiffs to clock in and clock out (or otherwise check in or report) at the beginning and end of each shift. If late or absent for a shift, an exotic dancer is subject to fine, penalty, or reprimand by Defendant. Once a shift starts, an exotic dancer is required to complete the shift and cannot leave early without penalty or reprimand.

56. While working at the Nightclubs, Plaintiffs and class members perform exotic table, chair, couch, lap and/or VIP room "dances" for customers offering them tips (referred to herein "table dance tips" or "tips"). Defendant, not the exotic dancers, sets the minimum tip amount that exotic dancers must collect from customers when performing exotic "dances." Defendant announces the minimum tip amounts to customers in the nightclub desiring table "dances."

57. Defendant dictates the manner and procedure in which table dance tips are collected from customers and tracked. Each time a class member has performed an exotic table dance for a customer and received a table dance tip, the class member has been required to immediately account to Defendant for the time and any table dance tip given to her by the customer. Additionally, Defendant employs other workers called "checkers," doormen, and/or "floor walkers" to watch exotic dancers work, count private "dances" they perform, and record the amount of any table dance tips received. At the end of a work shift, exotic dancers are required to clock out and account to Defendant for all "dances" performed for the customers of the nightclub. Then, in addition to any base "rent" payment, the exotic dancer is required to pay over to the Defendant as "rent" a portion of each table dance tip given to them by customers. The "rent" payment typically exceeds 30% of each table dance tip.

58. The entire sum that an exotic dancer receives from the customer for the table dance is not given to Defendant (and/or its Nightclubs) and taken into its gross receipts. Rather, the exotic dancers keep their share of the payment under the tip share policy and only pay over to Defendant and/or the Nightclubs the portion they demand as "rent" (*e.g.*, $7 from each $20 table dance tip received). As a result, there is no payout by Defendant to the exotic

dancer of any wage. Defendant issues no 1099 forms, W-2 forms, or other documentation to exotic dancers showing any sums being paid to exotic dancers as wages.

59. Defendant establishes the split of percentage that each exotic dancer is required to pay it for each type of dance that the exotic dancer receives in table dance tips during the work shift. In addition, per-dance amounts of "tip-outs" must be paid by exotic dancers to the Defendant's nightclub managers, dance checkers, DJs, bouncers, door staff, and/or other workers as part of Defendant's tip-splitting policy. The foregoing facts demonstrate that Defendant controls and sets the terms and conditions of all work by the exotic dancers. This is the hallmark of economic dependence and control.

**B. Skill and Initiative of a Person in Business for Herself**

60. Plaintiffs, like all other class members, do not exercise the skills and initiative of a person in business for themselves.

61. Plaintiffs, like all other class members, are not required to have any specialized or unusual skills to work at Defendant's Nightclubs. Prior dance experience is not required to perform at Defendant's Nightclubs. Exotic dancers are not required to attain a certain level of specialized or unusual skill in order to work at Defendant's Nightclubs.

62. Plaintiffs and class members do not have the opportunity to exercise business skills and initiative necessary to elevate their status to that of independent contractors. Plaintiffs and class members own no enterprise. They exercise no business management skills. They maintain no separate business structures or facilities. They exercise no control over the customer volume, working conditions, or atmosphere at Defendant's Nightclubs. They do not actively participate in any effort to increase the Defendant's customer base, enhance goodwill, or establish contracting possibilities. The scope of an exotic dancer's initiative is restricted to what apparel, if any, to wear (within Defendant's strict guidelines) or how provocatively to dance, a scope of initiative that is consistent with the status of an employee as opposed to the status of an independent contractor.

63. Plaintiffs and Class members are not permitted to hire or subcontract other qualified individuals to provide additional "dances" to customers and increase their revenues,

as an independent contractor in business for themselves would.

**C. Relative Investment**

64. Plaintiffs' and class members' relative investment is minor when compared to the investments made by Defendant. Plaintiffs and class members have made no capital investment in the facilities, advertising, maintenance, sound system and lights, food, beverage, and other inventory, or staffing, of Defendant's Nightclubs. Defendant provides investment and risk capital. Plaintiffs and class members do not. Other than their time and labor, any investment by Plaintiffs and class members has been limited to expenditures on some apparel and make-up. But for Defendant's provision of the nightclub environment that Defendant has designed to please its customers (an environment that presents the exotic dancers to customers in a manner that Defendant has designed to increase Defendant's own profits), Plaintiffs and the class members would earn nothing from their relatively minor expenditures.

**D. Opportunity for Profit and Loss**

65. Defendant, not the class members, manages all aspects of the business operation including attracting investors, establishing the hours of operation, setting the working conditions and atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, bouncers/doormen, etc.). Defendant, not the class members, takes the true business risks for the Nightclubs. Defendant, not the class members, has responsibility for attracting investors required to provide the capital necessary to open, operate, and expand the nightclub business.

66. Plaintiffs and class members do not control the key determinants of profit and loss of a successful enterprise. Plaintiffs and class members are not responsible for any aspect of the enterprise's on-going business risk. For example, Defendant, not the class members, has responsibility for financing, the acquisition and/or lease of the physical facilities and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses), and obtaining appropriate business insurance and licenses. Defendant, not the exotic dancers, establishes the minimum table dance tip amounts to be collected from customers for "dances." Even with respect to any "rent" payments, the exotic dancers do not

truly pay "rent" for exclusive use of space. Rather, the term "rent" is a misnomer or subterfuge for tip-splitting. Defendant demands a set portion (approximately 35%) of each table dance tip given to an exotic dancer.

67. The extent of the immediate financial risk that Plaintiffs and class members bear is the loss of any "base rent" fee that Defendant collects after each exotic dancer's shift. Defendant, not the exotic dancers, bears the risk of loss. For example, the table dance tips the exotic dancers receive are not a return for risk on capital investment. They are a gratitude for services rendered. Thus, it is clear that an exotic dancer's "return on investment" (*i.e.*, tips) is illusory, and no different than that of a waiter who serves food during a customer's meal at a restaurant.

**E. Permanency**

68. Certain class members have worked at Defendant's Nightclubs as exotic dancers for significant periods of time.

**F. Integral Part of Employer's Business**

69. Plaintiffs and the class members are essential to the success of Defendant's Nightclubs. The continued success of Defendant's Nightclubs depends to a significant degree upon the provision of exotic "dances" by class members for Defendant's customers. The primary reason that the Nightclubs exist is to showcase the exotic dancers' physical attributes for customers and for the exotic dancers to perform "lap dances" for customers. The primary "product" or "good" that Defendant is in business to sell to customers that come to its Nightclubs are the class members' bodies and the "lap dances" that the class members perform. Defendant recruits class members to work in its Nightclubs and instructs them to work in specific ways.

70. At least some of Defendant's Nightclubs do not serve alcohol and therefore are not truly in direct competition with others in the nightclub, tavern, or bar business. Absent the performance of exotic "dances" by exotic dancers, a nightclub serving only non-alcoholic beverages would have difficulty remaining in business. Moreover, Defendant is able to charge admission prices and a much higher price for drinks (*e.g.*, $10 for a single soft drink)

than establishments without exotic dancers are able to charge, because the exotic dancers are the main attraction of Defendant's Nightclubs. In other words, the exotic dancers attract customers who are willing to pay more in order to enjoy the exotic dancers. As a result, the exotic dancers are an integral part of Defendant's nightclub business.

71. The foregoing facts demonstrate that exotic dancers such as Plaintiffs and the class members are economically dependent on Defendant and subject to significant control by Defendant. Therefore, Plaintiffs and class members have been misclassified by Defendant as independent contractors and should have been paid minimum wages at all times when they have worked at Defendant's Nightclubs and otherwise should have been afforded all rights and benefits of employees under federal, state, and local wage and hour laws.

**G. Defendant's Intent**

72. All of Defendant's actions and agreements as described herein were willful, intentional, and not the result of mistake or inadvertence.

73. Defendant was aware that the FLSA, the California Labor Code, and the SFMWO applied to its operation of the Nightclubs at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, it misclassified the exotic dancers as independent contractors. Defendant was subject to, or aware of, previous litigation and enforcement actions that successfully challenged the misclassification of exotic dancers as independent contractors. Further Defendant was aware, and on actual or constructive notice, that California Labor Code § 350(e), § 351, and A.B. 2509 rendered all table dance tips the exotic dancer's sole property, and rendered Defendant's tip-share, rent, and tip-out policies unlawful. Despite being on notice of its violations, Defendant intentionally chose to continue to misclassify the exotic dancers, withhold payment of minimum wages, and require the exotic dancers to split their tips with Defendant and its other workers, in order to enhance its profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

**H. Injury and Damage**

74. Plaintiffs and all class members have suffered injury, have been harmed, and

have incurred damage and financial loss as a result of Defendant's conduct complained of herein. Among other things, Plaintiffs and the class have been entitled to minimum wages and have been entitled to retain all of the table dance tips and other tips they were given by customers, but Defendant has denied them these rights, and thereby has injured Plaintiffs and the class members, and caused them financial loss, harm, injury, and damage.

**COLLECTIVE AND CLASS ACTION ALLEGATIONS**

75. Plaintiffs Jane Roes 1, 3, 9, and 10 bring the First Cause of Action (for violations of the FLSA) as an "opt-in" collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of themselves and a proposed collection of similarly situated individuals defined as follows, and hereinafter referred to as the "FLSA Collection":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this action.

76. Plaintiffs Jane Roes 1, 3, 9, and 10, individually and on behalf of all others similarly situated as defined above, seek relief on a collective basis challenging Defendant's policy and practice of failing to pay for all hours worked plus applicable overtime and failing to accurately record all hours worked. Plaintiffs and the FLSA Collection are similarly situated, have performed substantially similar duties for Defendant, and have been uniformly subject to Defendant's uniform, class-wide payroll practices that are ongoing, including Defendant's policy of and practice of not compensating class members for compensable time as described herein. The number and identity of other similarly situated persons yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendant, and potential opt-ins may be easily and quickly notified of the pendency of this action.

77. The names and addresses of the individuals who comprise the FLSA Collection are available from Defendant. Accordingly, Plaintiffs herein pray for an Order requiring Defendant to provide the names and all available locating information for all members of the FLSA Collection, so that notice can be provided regarding the pendency of this action, and of such individuals' right to opt-in to this action as party plaintiffs.

78. Plaintiffs Jane Roes 1, 3, 9, and 10 bring the Second through Ninth Causes of Action (the California state law claims) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23, defined initially as follows, and hereinafter referred to as the "California Class":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three (3) years before the filing of this action.

Excluded from the California Class is anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this action is assigned and his or her immediate family members.

79. Plaintiffs Jane Roes 1, 3, 9, and 10 bring the Tenth Cause of Action (the claims under § 17200 *et seq*.) as an "opt-out" class action pursuant to Federal Rule of Civil Procedure 23, defined initially as follows, and hereinafter referred to as the "Section 17200 Class":

> All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date four (4) years before the filing of this action.

Excluded from the class is anyone employed by counsel for Plaintiffs in this action, and any Judge to whom this action is assigned and his or her immediate family members.

80. <u>Numerosity</u>. Defendant has employed hundreds of individuals as exotic dancers during the relevant time periods.

81. <u>Existence and Predominance of Common Questions</u>. Common questions of law and/or fact exist as to the members of the proposed classes and, in addition, common questions of law and/or fact predominate over questions affecting only individual members of the proposed classes. The common questions include the following:

a. Whether Defendant's policy and practice of not paying exotic dancers the minimum wage and/or at one-and-a-half (1.5) times the regular rate of pay (*i.e.*, time-and-a-half) for all hours worked in excess of forty hours in a week or eight hours in a day violates the FLSA, California labor laws, and/or the SFMWO;

b. Whether Defendant's payroll policies and practices have violated California law;

c. Whether Defendant's practices have violated the UCL;

d. Whether the class members are entitled to unpaid wages, waiting time penalties, and other relief;

e. Whether Defendant's affirmative defenses, if any, raise common issues of fact or law as to Plaintiffs and the class members; and

f. Whether Plaintiffs and the proposed classes are entitled to damages and equitable relief, including, but not limited to, restitution and a preliminary and/or permanent injunction, and if so, the proper measure and formulation of such relief.

82. Typicality. Plaintiffs' claims are typical of the claims of the proposed classes. Defendant's common course of conduct in violation of law as alleged herein has caused Plaintiffs and the proposed classes to sustain the same or similar injuries and damages. Plaintiffs' claims are therefore representative of and co-extensive with the claims of the proposed classes.

83. Adequacy. Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the proposed classes.

84. Superiority. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the proposed classes, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device

presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

85. In the alternative, the proposed classes may be certified because the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication with respect to individual members of the proposed classes that would establish incompatible standards of conduct for Defendant; and Defendant has acted and/or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## PRIVATE ATTORNEY GENERAL ALLEGATIONS

86. In addition to asserting class action claims in this action, Plaintiffs Jane Roes 1, 3, 9, and 10 assert claims as a private attorney general action on behalf of members of the general public pursuant to the UCL. The purpose of such claims is to require Defendant to disgorge and restore all monies wrongfully obtained by Defendant through its unlawful business acts and practices. A private attorney general action is necessary and appropriate because Defendant has engaged in the wrongful acts described herein as a general business practice. Under the UCL, Plaintiffs pursue said representative claims and seeks relief on behalf of themselves and the proposed classes pursuant to Federal Rule of Civil Procedure 23.

## FIRST CAUSE OF ACTION

**Violations of the Fair Labor Standards Act**

**(By JANE ROES 1, 2, 3, 9, and 10 and the FLSA Collection Against Defendant SFBSC MANAGEMENT, LLC)**

87. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

88. This particular claim presents a collective cause of action under the Fair Labor Standards Act by Plaintiffs, as well as any similarly situated individuals who "opt in" to this action under 29 U.S.C. § 216.

89. The Fair Labor Standards Act provides that a private civil action may be

brought for the non-payment of federal minimum wages and for an equal amount in liquidated damages in any court of competent jurisdiction by any employee on behalf of himself or herself and others employees similarly situated pursuant to 29 U.S.C. § 216(b). Moreover, Plaintiffs may recover the attorneys' fees incurred pursuant to 29 U.S.C. § 216(b). Federal district courts further have the authority to fashion injunctive relief pursuant to 29 U.S.C. § 217.

90. As set forth above, Defendant avoids its legal obligation to provide its exotic dancers basic employee rights such as wages and workers compensation by employing them under sham "independent contractor" agreements.

91. Defendant does this by presenting exotic dancers and/or potential exotic dancers with non-negotiable employment "options": an independent contractor "option" and an employee "option." Virtually all, if not all, exotic dancers necessarily choose the independent contractor "option" because it is the only real "option." In other words, the Defendant's purported "choice" for exotic dancers to decide whether to work as "employees" or "independent contractors" is not a choice at all. It is a sham.

92. Notwithstanding the legal principle that independent contractors have greater control over their work than employees, Defendant does not, as a matter of practice, observe any real distinction between "independent contractor" exotic dancers and "employee" exotic dancers, other than to refuse, terminate, retaliate against, and/or not hire any woman who requests "employee" status. Defendant exercises great control over all exotic dancers, regardless of classification.

93. Defendant's control over its exotic dancers is sufficient to render all of them employees. Defendant uses sham "independent contractor" agreements to avoid its duties to pay wages. Further, as described above, Defendant actually has used its sham "independent contractor" agreements to require exotic dancers to pay to work.

94. Defendant's failure to pay the exotic dancers an hourly rate of at least the federal minimum wage violates 29 U.S.C. § 206(a)(1)(c). That failure is willful, intentional, and in bad faith, as alleged in more detail herein.

95. Therefore, Plaintiffs seek, on behalf of themselves, and Jane Roes 1, 3, 9, and 10, on behalf of all others who "opt in" to this cause of action under 29 U.S.C. § 216, unpaid wages, including minimum wages and overtime wages, reimbursement of stage fees, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Plaintiffs further seek injunctive relief to compel Defendant to recognize exotic dancers' employee status, to provide all wages guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

96. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

## SECOND CAUSE OF ACTION

**Failure to Pay All Straight Time Worked in Violation of Calif. Labor Code § 1194, 1194.2, 1197, 1197.1, 1198**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

97. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

98. California Labor Code §§ 1194, 1194.2, 1194.5, 1197, 1197.1 and 1198 provide for a private right of action for nonpayment of wages, and further provides that a plaintiff may recover the unpaid balance of the full amount of such wages, together with costs of suit, as well as liquidated damages, interest thereon, injunctive relief, and the attorneys' fees and costs incurred.

99. At all relevant times, Defendant has been required to pay the exotic dancers minimum wages under California law, including without limitation pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but has not done so. Defendant has willfully failed to pay Plaintiffs and class members any wages whatsoever. By failing to compensate them for all hours worked, Defendant has violated IWC Wage Order Nos. 4, 5, and/or 10 and/or California Labor Code §§ 1182.12, 1194, 1194.2, 1194.5, 1197, 1197.1, and 1198.

100. Therefore, Plaintiffs seek, on behalf of themselves, and Jane Roes 1, 3, 9, and 10 on behalf of all others similarly situated, unpaid wages at the required legal rate, reimbursement of stage fees, liquidated damages, interest, attorneys' fees and costs, and all other costs and penalties allowed by law. Plaintiffs further seek injunctive relief to compel Defendant to recognize exotic dancers' employee status, to provide all payment guaranteed by law, and for this Court's continuing jurisdiction to enforce compliance.

101. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

## <u>THIRD CAUSE OF ACTION</u>

**Failure to Pay the Minimum Wage for All Hours Worked in Violation of San Francisco Administrative Code Chapter 12R**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

102. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

103. During the class period, Defendant has employed Plaintiffs and the class members, but has willfully failed to treat them as employees or pay them any wages whatsoever.

104. Pursuant to the San Francisco Administrative Code, Chapter 12R (the SFMWO), Plaintiffs and the proposed California Class are entitled to recover in a civil action the unpaid balance of the full amount of straight time owed to them, including interest thereon, plus liquidated damages, plus reasonable attorneys' fees and costs.

105. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

## <u>FOURTH CAUSE OF ACTION</u>

**Failure to Pay Overtime as Required by State Law**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

106. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

107. At all times relevant to the Complaint, Wage Order Nos. 4, 5 and 10 have required the payment of an overtime premium for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, or on the seventh day worked in a single workweek.

108. During the relevant time period, Plaintiffs and the class members were employed by Defendant within California but were not paid overtime wages for overtime hours worked.

109. Defendant's failure to pay overtime wages violates, inter alia, California Labor Code §§ 510, 558, 1194, and 1198, and the above-referenced Wage Orders.

110. Plaintiffs request that Defendant be required to pay them, and all those similarly situated, all overtime wages illegally withheld, penalties as provided under the California Labor Code including §§ 201-203, 510 and 1194.1(a) *et seq*., punitive/exemplary damages, and attorneys' fees and costs under California Labor Code § 218.5 and 1194(a).

111. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**<u>FIFTH CAUSE OF ACTION</u>**

**Failure to Provide Itemized Wage Statements in Violation of California Labor Code § 226 and IWC Wage Orders**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

112. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

113. California Labor Code § 226(a) requires: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a

detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California."

114. Defendant has failed, and continues to fail, to provide timely, accurate itemized wage statements to Plaintiffs and California Class members in accordance with California Labor Code § 226 and Wage Order Nos. 4, 5, and 10. The wage statements that Defendant has provided to its exotic dancers, including Plaintiffs and the proposed California Class members, do not accurately reflect the actual hours worked and/or wages earned.

115. Defendant's failure to provide timely, accurate, itemized wage statements to Plaintiffs and members of the proposed California Class in accordance with the California

Labor Code and the California Wage Orders has been knowing and intentional. Accordingly, Defendant is liable for damages and penalties under California Labor Code § 226.

116. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**SIXTH CAUSE OF ACTION**

**Waiting Time Penalties Under California Labor Code §§ 201, 202, and 203**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

117. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

118. California Labor Code § 201(a) requires an employer who discharges an employee to pay compensation due and owing to said employee upon discharge. California Labor Code § 202(a) requires an employer to pay compensation due and owing within seventy-two (72) hours of an employee's termination of employment by resignation. California Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under §§ 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty (30) work days.

119. Certain members of the proposed California Class are no longer employed by Defendant but have not been paid full compensation for all hours worked, as alleged above. They are entitled to unpaid compensation for all hours worked, and overtime, for which to date they have not received compensation, and any applicable overtime.

120. Defendant has failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages and compensation to Plaintiffs and members of the proposed California Class whose employment with Defendant have terminated, as required by California Labor Code §§ 201 and 202. As a direct and proximate result, Defendant is liable to all such California Class members for up to thirty (30) days of waiting time penalties

pursuant to California Labor Code § 203, together with interest thereon.

121. WHEREFORE, pursuant to Labor Code §§ 218, 218.5, and 218.6, Plaintiffs and Class members are entitled to recover the full amount of their unpaid wages, continuation wages under § 203, interest thereon, reasonable attorneys' fees, and costs of suit.

122. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

## SEVENTH CAUSE OF ACTION

**Failure To Pay all Wages Owed Every Pay Period Under California Labor Code § 204**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

123. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

124. During the relevant time period, Plaintiffs and class members have been employees of Defendant covered by Labor Code § 204 but have been misclassified and not treated as employees.

125. Pursuant to Labor Code § 204, Plaintiffs and class members were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

126. Defendant has failed to pay Plaintiffs and class members all wages earned each pay period. On information and belief, at all times during the proposed class period, Defendant has maintained a policy or practice of not paying Plaintiffs and class members overtime wages for all overtime hours worked.

127. As a result of Defendant's unlawful conduct, Plaintiffs and class members have suffered damages in an amount, subject to proof, to the extent they were not paid all wages and/or compensation and/or penalties each pay period. The precise amounts of unpaid wages, compensation, and/or penalties are not presently known to Plaintiffs but can be determined directly from Defendant's records or indirectly based on information from Defendant's records and/or information known by class members.

128. WHEREFORE, pursuant to Labor Code §§ 218, 218.5 and 218.6, Plaintiffs and class members are entitled to recover the full amount of their unpaid wages, interest thereon, reasonable attorneys' fees and costs of suit.

129. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**EIGHTH CAUSE OF ACTION**

**Common Law Conversion**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

130. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

131. Defendant's failure to give class members gratuities from customers that were given and/or left for class members, as alleged above, constitutes common law conversion.

132. Defendant has assumed control and ownership over the above-referenced gratuities, and applied them to its own use.

133. Plaintiffs and class members had a right of ownership and possession over the above-referenced gratuities.

134. Defendant's theft and retention of the above-referenced gratuities, without consent, have caused Plaintiffs and class members significant financial harm.

135. In failing to pay said monies to Plaintiffs and class members and retaining that money for its own use, Defendant has acted with malice, oppression, and/or conscious disregard for the statutory rights of Plaintiffs and class members. Such wrongful and intentional acts, given the number of victims and the number of acts and previous claims and/or lawsuits relative to similar acts, justify awarding Plaintiffs and class members punitive damages pursuant to California Civil Code § 3294 *et seq.* in an amount sufficient to deter future similar conduct by Defendant.

136. In addition and/or in the alternative, and as further described in paragraph 154

below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**NINTH CAUSE OF ACTION**

**Failure to Reimburse for Expenses in Violation of Cal. Labor Code §§ 450, 2802**

**(By JANE ROES 1, 2, 3, 9, and 10 and the California Class Against Defendant SFBSC MANAGEMENT, LLC)**

137. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

138. Defendant's conduct, as alleged above, violates California Labor Code §§ 450, 2802, insofar as Defendant has misclassified Plaintiffs and class members as independent contractors, and has failed to reimburse them for expenses that they paid that should have been paid by their employer.

139. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**TENTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.***

**(By JANE ROES 1, 2, 3, 9, and 10 and the Section 17200 Class Against Defendant SFBSC MANAGEMENT, LLC)**

140. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

141. Plaintiffs bring this claim on behalf of themselves, and Jane Roes 1, 3, 9, and 10, on behalf of all others similarly situated in their representative capacities as private attorneys general against Defendant and Does 1 through 200 for their unlawful business acts and/or practices pursuant to the UCL, which prohibits all unlawful business acts/or practices.

142. Plaintiffs Jane Roes 1, 3, 9, and 10, assert these claims as representatives of an aggrieved group and as private attorneys general on behalf of the general public and other persons who have been exposed to Defendant's unlawful acts and/or practices and are owed

wages that the Defendant should be required to pay or reimburse under the restitutionary remedy provided by the UCL.

143. As set forth herein, Defendant is engaging in numerous illegal business practices that constitute unlawful and/or unfair and/or fraudulent business acts and/or practices within the meaning of the UCL, including but not limited to imposing sham, non-negotiable "independent contractor" agreements on exotic dancers to avoid its legal obligation to provide basic employee rights, failing to give exotic dancers gratuities from customers that were given and/or left for exotic dancers, as alleged above, in violation of California Labor Code § 351, failing to pay for all hours worked including minimum wage and overtime, failing to pay all wages when they were due and upon termination, failing to provide accurate and itemized wage statements, and failing to reimburse business expenses.

144. Defendant's conduct constitutes one or more unfair business practices as defined in the UCL. Defendant's conduct was and is unfair within the meaning of the UCL because it is unlawful, causes significant harm to Plaintiffs and similarly situated individuals, and is in no way counterbalanced by any legitimate utility to Defendant. In addition, the conduct offends established legislatively declared public policy and has been immoral, unethical, oppressive, and unscrupulous. Plaintiffs and the Class members have been injured by Defendant's illegal activities, which have deprived them of their rights as employees, including wages. They have suffered injury in fact, losing money and property, including without limitation in the form of unpaid wages, in the form of misappropriated gratuities, and in the form of money spent on business expenses that should have been borne by the employer. Plaintiffs and Class members are entitled to restitution of monies due, disgorgement of the ill-gotten gains of Defendant, declaratory relief, a preliminary and permanent injunction enjoining Defendant from continuing the unlawful and unfair practices described herein, and to such other equitable relief as is appropriate under the UCL, including the fees, costs, and expenses incurred in vindicating their rights and the public interest generally, pursuant to California Business and Professions Code § 17203, California Code of Civil Procedure §1021.1, and any other applicable law.

145. In addition and/or in the alternative, and as further described in paragraph 154 below, Plaintiff Jane Roe 10 asserts this cause of action, on behalf of herself and all others similarly situated, against the Nightclub Defendants.

**ELEVENTH CAUSE OF ACTION**

**PAGA CLAIMS**

**Cal. Lab. Code § 2699(a), (f)**

**(By JANE ROES 1, 2, 3, 9, and 10 Against Defendant SFBSC MANAGEMENT, LLC)**

**(By JANE ROES 9-10 Against the Nightclub Defendants)**

146. Plaintiffs incorporate by reference the above listed paragraphs as if fully set forth herein.

147. To enforce California law, Plaintiffs prosecute this cause of action under the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq*. ("PAGA"), on behalf of themselves, and Jane Roes 1, 3, 9, and 10, on behalf of others currently and formerly employed by Defendant as exotic dancers, to recover civil penalties for Defendant's violations of law, pursuant to the procedures in Labor Code § 2699.3.

148. "The purpose of the PAGA is . . . to create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code." *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011).

149. PAGA provides: "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." California Labor Code § 2699(a).

150. PAGA also provides: "For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: (1) If, at the time of the alleged violation, the person does not

employ one or more employees, the civil penalty is five hundred dollars ($500). (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." California Labor Code § 2699(f)(1)-(2).

151. "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) (quoting Cal. Lab. Code § 2699, subd. (i)). "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012). "[T]he language of section 558, subdivision (a) . . . provid[es] a civil penalty that consists of both the $50 or $100 penalty amount and any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Id.* at 1145.

152. PAGA also provides: "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." California Labor Code § 2699(g)(1).

153. Plaintiffs Jane Roes 1, 2, 3, 9, and 10 bring this action under PAGA against SFBSC Management, LLC individually and Jane Roes 1, 3, 9, and 10 also bring this action as a representative suit on behalf of all current and former employees pursuant to the procedures in California Labor Code § 2699.3 or in the alternative as a class action as alleged above.

154. Plaintiffs Jane Roes 9 and 10 bring this action under PAGA against the Nightclub Defendants individually and as a representative suit on behalf of all current and former employees pursuant to the procedures in California Labor Code § 2699.3.

155. The factual allegations in this complaint against Defendant SFBSC

Management, LLC are also alleged, either in addition or in the alternative, against the Nightclub Defendants by Plaintiffs Jane Roes 9 and 10, and Jane Roe 10 asserts the first cause of action through the tenth cause of action against the Nightclub Defendants.

**COMPLIANCE WITH NOTICE AND EXHAUSTION REQUIREMENTS**

156. Plaintiffs incorporate by reference the above listed paragraphs as if fully set forth herein.

157. The LWDA and Defendant SFBSC Management, LLC were notified about violations of law by letter dated August 11, 2014, which was mailed by certified mail on that date to SFBSC MANAGEMENT, LLC, PO BOX 2602, SEATTLE WA 98111 and to the LWDA. The exhaustion requirement was satisfied by waiting until November 28, 2014 to file the amended complaint in this Court alleging PAGA claims. The facts and theories set forth in the letter qualified as sufficient notice.

158. The LWDA and Defendant SFBSC Management, LLC were notified about violations of law by letter dated December 10, 2014, which was mailed by certified mail on that date to SFBSC MANAGEMENT, LLC, PO BOX 2602, SEATTLE WA 98111 and to the LWDA. The letter specifically identified all of the Nightclubs by name. The facts and theories set forth in the letter qualified as sufficient notice

159. The LWDA, Defendant SFBSC Management, LLC, and the Nightclub Defendants were notified about violations of law by letter dated December 7, 2016, which was mailed by certified mail on that date to SFBSC Management, LLC, the Nightclub Defendants, and the LWDA.

**PRIVATE ATTORNEY GENERAL ALLEGATIONS**

160. Plaintiffs incorporate by reference the above listed paragraphs as if fully set forth herein.

161. As alleged herein and above, Defendants SFBSC Management, LLC and/or the Nightclub Defendants have violated several provisions of the California Labor Code for which Plaintiffs are seeking recovery of civil penalties, including but not limited to Labor Code §§ 201, 202, 204, 210, 223, 226, 226.3, 226.8, 245-249, 351, 353, 432.5, 450, 510, 558,

1174, 1194, 1194.2, 1194.5, 1197, 1197.1, 1198, 1199, 2753, 2802, 3700, 3700.5, 3712, 3715, and Wage Order Nos. 4, 5, and/or 10.

**CALIFORNIA LABOR CODE VIOLATIONS**

**Willful Misclassification in Violation of Labor Code § 226.8**

162. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

163. California Labor Code 226.8(a) provides: "It is unlawful for any person or employer to engage in any of the following activities: (1) Willful misclassification of an individual as an independent contractor. (2) Charging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose, including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified."

164. California Labor Code 226.8(b) provides that if the "court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a), the person or employer shall be subject to a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation, in addition to any other penalties or fines permitted by law."

165. California Labor Code 226.8(c) provides that if the "court issues a determination that a person or employer has engaged in any of the enumerated violations of subdivision (a) and the person or employer has engaged in or is engaging in a pattern or practice of these violations, the person or employer shall be subject to a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law."

166. The California Court of Appeal has stated: "Nothing in our analysis precludes plaintiffs from pursuing enforcement of section 226.8 through their PAGA claim." *Noe v. Superior Court*, 237 Cal. App. 4th 316, 341 n.15 (2015). *See also Johnson v. Serenity*

*Transp., Inc.*, 2015 U.S. Dist. LEXIS 108227, at *10-11 (N.D. Cal. Aug. 17, 2015) ("at least one California court has suggested that plaintiffs may bring a PAGA claim predicated on a Section 226.8 violation") (citing *Noe*).

167. Defendants are jointly and severally liable, pursuant to Labor Code § 2753, for advising an employer to misclassify an employee, in exchange for valuable consideration.

168. Defendants have violated California Labor Code § 226.8 through their conduct described herein, and therefore Plaintiffs seeks recovery of the penalties specified herein.

**Failure to Pay Minimum Wages as Required by State Law**

169. Plaintiffs incorporate by reference all paragraphs above as if fully set forth herein.

170. California Labor Code § 1197.1(a) provides: "Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows: (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203. (3) Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee."

171. California Labor Code § 558 provides, in relevant part: "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section

of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee. . . . (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

172. The California Court of Appeal has held: "We disagree that section 558 provides for a civil penalty of $50 or $100 only, and that it clearly excludes underpaid wages from the civil penalty. In our view, the language of section 558, subdivision (a), is more reasonably construed as providing a civil penalty that consists of both the $50 or $100 penalty amount and any underpaid wages, with the underpaid wages going entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112, 1145 (2012).

173. At all relevant times, Defendants have willfully failed to pay Plaintiffs and other exotic dancers any wages whatsoever.

174. At all relevant times, Defendants have been required to pay the exotic dancers minimum wages under California law, including without limitation pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but has not done so.

175. "[T]he Legislature . . . authorized the LWDA to recover underpaid wages on behalf employees in the form of a civil penalty under section 558. Accordingly, an aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112, 1148 (2012).

176. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiffs seek recovery pursuant to Labor Code § 558 of either fifty dollars ($50) or one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

177. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiffs also seek recovery pursuant to Labor Code § 1197.1(a) of either one hundred dollars ($100) or two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

178. In addition, on behalf of themselves and the other current and former employees, Plaintiffs seek recovery of the underpaid wages going entirely to the affected employees, as a civil penalty pursuant to Labor Code § 558.

179. PAGA also allows for recovery with respect to Labor Code § 1194 for "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1194). Therefore, because of Defendants' failure to pay the legal minimum wage as required by state law, as alleged herein, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

180. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, because of Defendants' violations of one or more IWC wage orders, as alleged herein, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Pay Overtime as Required by State Law**

181. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully

set forth herein.

182. At all relevant times, Defendants have willfully failed to treat the exotic dancers as employees and has not paid them overtime wages for overtime hours worked.

183. At all relevant times, Defendants have been required to pay the exotic dancers an overtime premium for hours worked in excess of eight (8) hours in a workday, forty (40) hours in a workweek, or on the seventh consecutive day of work in a workweek pursuant to IWC Wage Order Nos. 4, 5, and/or 10, but have not done so.

184. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiffs seek recovery pursuant to Labor Code § 558 of either fifty dollars ($50) or one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

185. Based on the violations set forth herein, on behalf of themselves and the other current and former employees, Plaintiffs also seek recovery pursuant to Labor Code § 1197.1(a) of either one hundred dollars ($100) or two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid, to be distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees.

186. In addition, on behalf of themselves and the other current and former employees, Plaintiffs seek recovery of the underpaid wages going entirely to the affected employees, as a civil penalty pursuant to Labor Code § 558.

187. PAGA also allows for recovery with respect to Labor Code § 1194 for "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1194). Therefore, because of Defendant's failure to pay overtime as required by state law, as alleged herein, to the extent that § 1194's provision for recovery of "the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon" constitutes "civil penalties" recoverable under Labor Code § 2699(a) or "underpaid wages"

recoverable as a civil penalty (*cf. Thurman v. Bayshore Transit Management, Inc.*, 203 Cal. App. 4th 1112, 1148 (2012)), Defendant is liable for such civil penalties, or in the alternative, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

188. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, because of Defendants' violations of one or more IWC wage orders, as alleged herein, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Provide Itemized Wage Statements in Violation of Labor Code § 226 and IWC Wage Orders**

189. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

190. The California Court of Appeal has held: "For employers who violate section 226(a), civil penalties are assessed as provided in section 226.3." *Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement*, 192 Cal. App. 4th 75, 81 (2011).

191. California Labor Code § 226.3 provides: "Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226. . . . In enforcing this section, the Labor Commissioner shall take into consideration whether the violation was inadvertent, and in his or her discretion, may decide not to penalize an employer for a first violation when that violation was due to a clerical error or inadvertent mistake."

192. Defendants' failure to provide timely, accurate, itemized wage statements to Plaintiffs and the other current and former employees in accordance with the California Labor

Code and the Wage Orders has been knowing and intentional.

193. Based on the violations set forth herein, Defendants are liable for civil penalties pursuant to Labor Code § 226.3.

194. PAGA also allows for recovery with respect to Labor Code § 1198 which provides, in relevant part: "The employment of any employee . . . under conditions of labor prohibited by the order [of the IWC] is unlawful." *See* Labor Code § 2699.5 (listing, *inter alia*, § 1198). Therefore, Defendant is liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period

**Violations of Labor Code §§ 201, 202, and 203 ("Waiting Time")**

195. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

196. California Labor Code 203(a) provides, in relevant part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

197. Plaintiffs and certain of the other aggrieved individuals were not paid full compensation, including overtime, for all hours worked, as alleged above, and were not paid that compensation that was due and owing upon discharge and/or within seventy-two (72) hours of the employee's termination of employment by resignation. Thus, Defendants have failed and refused, and continue to willfully fail and refuse, to timely pay compensation and wages and compensation in violation of California Labor Code §§ 201, 202, and 203.

198. Because of Defendants' violations of California Labor Code § 201, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

199. Because of Defendants' violations of California Labor Code § 202, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved

employee per pay period.

200. Because of Defendants' violations of California Labor Code § 203, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure To Pay All Wages Owed Every Pay Period In Violation of Labor Code § 204**

201. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

202. During the relevant time period, Plaintiffs and other current and former aggrieved employees have been employees covered by Labor Code § 204 but have been misclassified and not treated as employees.

203. Pursuant to Labor Code § 204, Plaintiffs and other current and former aggrieved employees were entitled to receive on regular paydays all wages earned for the pay period corresponding to the payday.

204. During the relevant time period, Defendants have failed to pay Plaintiffs and the other current and former employees all wages earned each pay period. That violates Labor Code § 204.

205. During the relevant time period, Defendants have maintained a policy and/or practice of not paying Plaintiffs and other current and former aggrieved employees overtime wages for all overtime hours worked. That violates Labor Code § 204.

206. Because of Defendants' violations of Labor Code § 204, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period, and under Labor Code § 210 for each aggrieved employee per pay period.

**Tip Splitting in Violation of Labor Code § 351**

207. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

208. Defendants' tip splitting practices violate California Labor Code § 351.

209. Defendants' failure to keep records of all gratuities received violates California Labor Code § 353.

210. Because of Defendants' violations of Labor Code §§ 351 and 353, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Reimburse for Expenses in Violation of Labor Code §§ 450 and 2802**

211. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

212. Defendants' conduct, as alleged above, violates California Labor Code §§ 450 and 2802, insofar as Defendants have misclassified Plaintiffs and class members as independent contractors, and have failed to reimburse them for expenses that they paid that should have been paid by their employer.

213. Because of Defendants' violations of Labor Code §§ 450 and 2802, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Compelling Illegal Purported Agreements in Violation of Labor Code § 432.5**

214. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

215. Defendants' conduct, as alleged above, violates California Labor Code § 432.5, insofar as Defendants have required exotic dancers to enter into written purported agreements that contain numerous illegal provisions.

216. Because of Defendants' violations of Labor Code § 432.5, Defendants are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Violations of Paid Sick Day Requirements, Labor Code §§ 245-249**

217. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

218. Defendants violated Labor Code § 246 by not having policies and procedures for exotic dancers to accrue and take paid sick days.

219. Because of Defendants' violations of the paid sick day requirements,

Defendants are liable for civil penalties under California Labor Code § 248.5 in an amount equal to "the dollar amount of paid sick days withheld from the employee multiplied by three; or two hundred fifty dollars ($250), whichever amount is greater . . . ."

220. Because of Defendants' violations of the paid sick day requirements under California law, Defendants are also liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

221. Because of Defendants' violations of the paid sick day requirements, Defendants are also liable for civil penalties pursuant to California Labor Code § 558 as follows: "(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee. . . . (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

**Failure to Secure Compensation in Violation of Labor Code § 3700 *et seq.***

222. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

223. Defendants did not secure workers' compensation for exotic dancers, in violation of Labor Code §§ 3700, 3700.5, 3712, 3715.

224. Because of Defendants' violations of the above-referenced statutes, Defendants are subject to the penalties and fines per Labor Code § 3700.5 and are liable for civil penalties under California Labor Code § 2699(f)(1)-(2) for each aggrieved employee per pay period.

**Failure to Maintain Payroll Records in Violation of Labor Code § 1174**

225. Plaintiffs incorporate by reference all paragraphs in this complaint as if fully set forth herein.

226. California Labor Code § 1174(d) requires: "Every person employing labor in this state shall: . . . "Keep, at a central location in the state or at the plants or establishments at

which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years."

227. Defendants' conduct described herein constitutes a willful failure to maintain accurate and complete payroll records in violation of California Labor Code § 1174(d). Accordingly, Defendants are liable for civil penalties under California Labor Code § 1174.5, which provides: "Any person employing labor who willfully fails to maintain . . . accurate and complete records required by subdivision (d) of Section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500)."

228. WHEREFORE, for all of the violations specified in this cause of action, Plaintiffs seek civil penalties, attorneys' fees, costs of suit, and any further relief that the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually, and Plaintiffs Jane Roe 1, Jane Roe 3, Jane Roe 9, and Jane Roe 10 as a representative suit on behalf of all current and former employees pray for relief against Defendant SFBSC MANAGEMENT, LLC (and in addition and/or in the alternative, by Jane Roe 10, individually and as a representative suit on behalf of all current and former employees, against the Nightclub Defendants) as follows:

a) For an order certifying that the First Cause of Action of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b) and requiring that Defendant identify all members of the FLSA Collection and provide all locating information for members of the FLSA Collection, and that notice be provided to all members of the FLSA Collection apprising them of the pendency of this action and the opportunity to file Consents to Become Party Plaintiff thereto;

b) For an order certifying that the Second through Tenth Causes of Action of this Complaint may be maintained as a class action pursuant to Federal Rule of Civil

Procedure 23 on behalf of the classes as defined herein and that notice of the pendency of this action be provided to members of the proposed classes;

c) For an order designating certain of the named Plaintiffs, as identified herein, as class representatives for both the FLSA and California state law claims and Plaintiffs' attorneys as counsel for the FLSA Collection and the proposed classes;

d) For an order awarding Plaintiffs, the FLSA Collection, and the proposed classes compensatory damages and statutory damages, including unpaid wages, overtime compensation, liquidated damages, and all other sums of money owed, together with interest on these amounts;

e) For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant and its officers and agents from committing the violations of law herein alleged in the future;

f) For a declaratory judgment that Defendant has violated the FLSA, California labor law, SFMWO, PAGA, and public policy as alleged herein;

g) For an order imposing all statutory and/or civil penalties provided by law, including without limitation penalties under the California Labor Code, SFMWO, and PAGA;

h) For exemplary and punitive damages, as appropriate and available under each cause of action, pursuant to California Civil Code § 3294;

i) For all unpaid overtime wages due to Plaintiffs and each class member;

j) For an order enjoining Defendant from further unfair and unlawful business practices in violation of the UCL;

k) Disgorgement of profits;

l) For an order awarding restitution of the unpaid regular, overtime, and premium wages due to Plaintiffs and class members;

m) For pre- and post-judgment interest;

n) For an award of reasonable attorneys' fees as provided by the FLSA, California Labor Code §§ 226(e) and 1194, California Code of Civil Procedure § 1021.5,

SFMWO, PAGA, and/or other applicable law;

o) For all straight time owed, including interest thereon, plus liquidated damages and penalties, pursuant to the SFMWO;

p) For all costs of suit; and

q) For such other and further relief as the Court deems just and proper.

WHEREFORE, under PAGA, Plaintiffs Jane Roe 9 and Jane Roe 10 individually and as a representative suit on behalf of all current and former employees pray for relief against the Nightclub Defendants as follows:

a) Civil penalties as alleged herein;

b) Reasonable attorneys' fees and costs of suit as allowed under PAGA, Labor Code § 2699(g)(1); and

c) Any further relief that the Court deems just and proper.

DATED: March 9, 2017

Respectfully submitted,

THE TIDRICK LAW FIRM

By: ______________________

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Plaintiffs JANE ROES 1-2 *et al.*

**JURY DEMAND**

Plaintiffs in the above-referenced action, on their own behalf and on behalf of all persons they seek to represent, hereby demand a trial by jury on all counts.

DATED: March 9, 2017

Respectfully submitted,

THE TIDRICK LAW FIRM

By: ____________________

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Plaintiffs JANE ROES 1-2 *et al.*

# Exhibit C

*ROE v. SFBSC MANAGEMENT, LLC* CLASS ACTION
[NAME OF SETTLEMENT ADMINISTRATOR]
[ADDRESS]
[CITY, STATE, ZIP]
**IMPORTANT LEGAL MATERIALS**

| | | |
|---|---|---|
| <<NAME1>><br><<ADDRESS1>><br><<ADDRESS2>><br><<CITY>> <<STATE>><br><<ZIP>><br><<COUNTRY>> | ☐ | If the pre-printed information to the left is not correct or if there is no pre-printed information, please check the box and complete the information below:<br>Name: ______________________________<br>Address: ____________________________<br>City: _______________________________<br>State:_______Zip Code: _______________ |

# FLSA CLAIM FORM

*Jane Roes 1-2 v. SFBSC Management, LLC*
United States District Court for the Northern District of California
Case No. 3-14-CV-03161 LB

## OVERVIEW

As the result of a settlement of the class-action referenced above, you have the option to make a claim for a one-time **Cash Payment** of between $350.00 and $800.00 depending on the number of months you performed between August 8, 2010 and [date of Preliminary Approval Order]. Depending on the number of people who make a claim for a Cash Payment, you may receive more or less.

Alternatively, you may elect to receive future **Dance Fee Payments** for 100% of your total dance sales on future performance dates. The amount in Dance Fee Payments to which you would be entitled would depend on the number of people who make such claims, but the most you would be entitled to receive in Dance Fee Payments is $5,000 at the Nightclub where you primarily perform and $3,000 at one other Nightclub where you perform. If you elect to receive a Dance Fee Payment, you will be paid 100% of your dance sales up to the maximum amount authorized by the Settlement Agreement rather than the percentage of sales stated in your Performer Contract.

You may not claim both a Cash Payment and Dance Fee Payment. If you initial below to receive both a Cash Payment and Dance Fee Payment, or if you complete both Section 2 and Section 3 of this form, you will receive a Cash Payment only.

## ELECTION TO RECEIVE EITHER A CASH PAYMENT OR DANCE FEE PAYMENTS

If you wish to receive a one-time **Cash Payment**, initial here ______ and complete **Section 1 and 2** only.

If you wish to receive a future **Dance Fee Payment**, initial here ______and complete **Section 1 and 3** only.

In order to make a claim for either a one-time Cash Payment or future Dance Fee Payments, you must provide all of the information requested and return this form, no later than ________________, to the Settlement Administrator at: *ROE v. SFBSC MANAGEMENT, LLC* CLASS ACTION, [NAME OF SETTLEMENT ADMINISTRATOR, Address, City, State, Zip Code]. Forms postmarked after that date will not be accepted and you will receive nothing.

## CLAIMANT INFORMATION – SECTION 1

If you are making a claim for either a Cash Payment or Dance Fee Payment, complete this section.

1. Name ______________________________________________
2. Phone number ________________________________________
3. E-mail address ________________________________________
4. Social Security Number: __________________________________
5. Stage Name(s): ________________________________________

## CASH PAYMENT INFORMATION – SECTION 2

If you are making a claim for a one-time Cash Payment, check the box next to the name of each Nightclub where you performed between August 2010 and [month, year of Preliminary Approval Order] and, next to each Nightclub name, specify the months when you performed at that Nightclub (e.g., if you performed at Hungry I in April, May and June of 2012, check the box next to Hungry I and write “4/12, 5/12, 6/12” on the adjacent line).

☐ Hungry I ______________________________________________

☐ Centerfolds ____________________________________________

☐ Roaring 20’s ___________________________________________

☐ Garden of Eden _________________________________________

☐ Larry Flynt’s Hustler Club _________________________________

☐ Little Darlings _________________________________________

☐ Gold Club _____________________________________________

☐ New Century Theatre____________________________________

☐ Showgirls _____________________________________________

☐ Condor Gentleman’s Club _________________________________

If you do not remember the specific months when you performed, your Cash Payment amount will be calculated based either on your estimates or, if disputed, then on the Nightclub’s records. If you have actual receipts from the dates you performed, submit those with this Claim Form, and the Settlement Administrator will use this information to verify your benefits pursuant to the terms of the Settlement Agreement.

## DANCE FEE PAYMENT – SECTION 3

If you are making a claim for Dance Fee Payments, identify your Primary Nightclub and (if appropriate) Secondary Nightclub below.

Primary Nightclub: On the line below, identify one of the ten Nightclubs above with which you presently have a valid performer contract and which you would like to designate as your primary Nightclub where you may retain up to $5,000 in Dance Fee Payments that would otherwise be owned by the Nightclub.

______________________________________________________________________

Secondary Nightclub: On the line below, identify one of the ten Nightclubs above with which you presently have a valid performer contract and which you would like to designate as your secondary Nightclub where you may retain up to $3,000 in Dance Fee Payments that would otherwise be owned by the Nightclub.

______________________________________________________________________

To redeem your Dance Fee Payments, you must schedule a Date of Performance at either your primary or secondary Nightclub and notify the Nightclub of your intent to retain your Dance Fee Payment at least three (3) business days before you perform in order to allow the Nightclub time to confirm your entitlement to the Dance Fee Payment.

**Tax Advisory**: An IRS Form 1099-MISC may be issued to you for the amount of the Cash Payment or Dance Fee Payment issued to you. You are responsible for obtaining your own tax advice and paying any taxes incurred as a result of the payment.

**I have read this form, understand it, and declare that above information is true and correct to the best of my knowledge.**

By executing this form, I consent to join the collective action known as *Roe et al. v. SFBSC Management, LLC, et al.*, United States District Court Case No. 3:14-cv-03616-LB.

DATE: __________________ SIGNATURE: ______________________________________

# Exhibit D

# RESIDUAL DANCE FEE PAYMENT CLAIM FORM

## *ROE v. SFBSC MANAGEMENT, LLC* CLASS ACTION

As the result of a recent class-action settlement, you may be entitled to retain 100% of your total dance fee sales, rather than the percentage of sales stated in your Performer Contract, on two future performance dates at a Nightclub where you have a valid Performer Contract ("Residual Dance Fee Claim"). You may not submit a Residual Dance Fee Claim if you previously submitted an FLSA Claim Form for a Cash Payment or Dance Fee Payment.

To make a Residual Dance Fee Claim, fully and accurately complete this form and give it to management at a Nightclub where you have a valid Performer Contract and at which you intend to perform and retain 100% of your dance fee sales on two performance dates. You must allow at least one week for processing.

Upon confirmation that you qualify, you will be issued two "Residual Dance Fee Entitlement Cards," which you can use at the Nightclub where you submitted this form on two performance dates of your choice. Simply give the Entitlement Card to management and you will be paid 100% of your dance sales on that performance date (unless the available Residual Dance Fee Payment Pool has by then been exhausted by other claimants). You may wish to keep a signed copy of your Entitlement Cards for your records.

Residual Dance Fee Claims will be paid on a first come first serve basis. A finite sum of money is available to pay Residual Dance Fee Claims and once that sum is exhausted no further Residual Dance Fee Claims will be paid. So it is to your advantage to use your Residual Dance Fee Entitlement Cards as soon as possible after they are issued to you.

**PLEASE PRINT LEGIBLY**

1. Legal Name: ________________________________________ Stage Name: __________________
2. Address: _________________________ City/State: ____________________ Zip Code: ________
3. Phone number/e-mail address: __________________________ ______________________________
4. Social Security Number: ______________________________
5. Identify the Nightclub with which you have a valid contract and where you wish to use your 100% Entitlement Card: ____________________________________________
6. I have **not** made a Cash Payment Claim _____ (initials)

**I ACKNOLWEDGE THAT OBTAINING DANCE FEE PAYMENTS AS SET FORTH HEREIN MAY CONSTITUTE A TAXABLE EVENT.** If required under the Internal Revenue Code, I understand the Nightclub will issue a Form 1099-MISC. I further acknowledge that the Nightclub is not giving me any tax advice.

I HAVE READ AND UNDERSTAND THIS FORM AND WISH TO SUBMIT IT TO RECEIVE MY TWO ENTITLEMENT CARDS. I DECLARE THAT THE ABOVE INFORMATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

DATE: __________ SIGNATURE: _____________________________________

# Exhibit E

# GENERAL RELEASE

This General Release ("Release") is entered into between Plaintiff____________ ("Plaintiff"), on the one hand, and Defendants SFBSC Management, LLC ("SFBSC"), and the entities set forth in Exhibit A (the "Nightclubs," with SFBSC and the Nightclubs being collectively the "Defendants"), on the other hand (Plaintiff and Defendants are collectively referred to herein as the "Parties), as part of the Class Action Settlement Agreement (the "Settlement Agreement") in *Jane Roes 1-2, et al. v. SFBSC Management, LLC, et al.*, Case No. 3:13-cv-03616-LB (N.D. Cal.) (the "Action"). The Parties enter into this Release in consideration for the promises set forth in the Settlement Agreement.

## 1. Release of Claims

1.1 In exchange for the consideration set forth in the Settlement Agreement, Plaintiff and each and every one of her heirs, guardians, executors, administrators, representatives, agents, attorneys, assigns, and all others claiming through or by her, hereby release and forever discharge Defendants together with each and every one of their respective current, former and future owners (either direct or indirect, including but not limited to partners, shareholders, members, parent companies, holding companies, trusts and/or trustees), officers, directors, managers, employees, agents, representatives, contractors (not including Plaintiff), insurers, reinsurers, attorneys, auditors, accountants, bookkeepers, experts, subsidiaries, affiliates, divisions, licensees, licensors, consultants, heirs, executors, personal representatives, predecessors and successors in interest, and assigns, and any benefit plans sponsored or administered Defendants (collectively, the "Releasees") from any and all past, present and future claims, actions, demands, causes of action, suits, debts, obligations, damages, and rights or other assertions of liability, of any conceivable kind, nature and description whatsoever, whether known or unknown, whether existing or potential, whether fixed or contingent, whether asserted or not, recognized now or hereafter and whether expected or unexpected, pursuant to any theory of recovery and whether at law, in equity or otherwise, including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, regulation, and whether for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements arising during the period from the beginning of the Plaintiff's first interaction with any of the Releasees to the date on which the Court enters an order finally approving the Settlement Agreement.

1.2 Without limitation to the generality of paragraph 1.1, Plaintiff's Release of Claims includes, but is not limited to, any claims or disputes Plaintiff has or may have against Releases arising out of or related to the Fair Labor Standards Act, the California Fair Employment and Housing Act (including California Gov't Code § 12940 *et seq*.), Family Medical Leave Act, the California Labor Code (including the California Private Attorney General Act ["PAGA"]), California Family Rights Act, the Unruh Civil Rights Act, the California Constitution, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act of 1967, Consolidated Omnibus Budget Reconciliation Act of 1985, Employee Retirement Income Security Act of 1974, Wage Orders of the Industrial Welfare Commission, National Labor Relations Act and all of their implementing regulations and interpretive

guidelines, the San Francisco Minimum Wage Ordinance, or any other applicable law, statute or ordinance concerning independent contractors, employment, wages and hours, or civil rights.

1.3 The Parties understand and agree that this release includes Plaintiff's claim for wages and related penalties as alleged in the Action, which claims Defendants specifically dispute. Accordingly, the Parties understand and agree that the provisions of Labor Code § 206.5, which preclude a release of undisputed wage claims, do not apply to the claims for wages released hereunder.

1.4 Plaintiff expressly acknowledges she has been advised by her attorneys with respect to this release and is familiar with the provisions of California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing this release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiff expressly acknowledges her awareness of the foregoing provision and that it is her intention to waive her rights under that provision and any other provision, statute, rule or legal doctrine in this or any other jurisdiction of similar import for any and all matters released herein. In waiving the provisions of section 1542, and similar provisions, Plaintiff expressly acknowledges and understands she may hereafter discover facts in addition to, or different from, those that she now believes to be true with respect to the subject matter of the matters released herein, but expressly agrees that she has taken these possibilities into account in executing this Release.

## 2. No Other Claims or Lawsuits

2.1 Other than the Action, Plaintiff represents and warrants that, as of the date of this Release, she has not filed any claims, complaints, or charges with any court or governmental agency against Releases arising out of or related to the released claims. Plaintiff agrees that she will not bring any complaints, charges, or claims in any court or governmental agency on behalf of herself or others against Releases that relate to or arise from the claims released herein.

2.2 Plaintiff represents and warrants that she has not assigned or transferred to any person or entity any rights, causes of action, or claims released herein. Plaintiff agrees to defend, indemnify, and hold Releasees harmless from and against any and all claims based on or arising out of any such assignment or transfer or purported assignment or transfer of any such claim or any portion thereof or interest therein.

## 3. No Admission of Fault, Liability, or Wrongdoing

3.1 The Parties agree that, in entering into the Settlement Agreement and this Release, no party is admitting any fault, liability or wrongdoing, or any matter of fact, nor shall the Settlement Agreement or this Release ever be construed as such.

**4. Non-Disparagement**

4.1 Plaintiff agrees that she will refrain from making any derogatory, disparaging, and/or detrimental statements, either orally or in writing, to any other person or third parties, or on social media, about the Releasees.

**5. Enforcement**

5.1 The Parties agree that this Release may be enforced, as permitted by federal law, in the United States District Court for the Northern District of California, which shall have continuing jurisdiction to interpret and enforce this Release.

5.2 In any legal action solely and specifically for breach of the Parties' respective obligations herein, the prevailing party shall be entitled to have its/her costs and reasonable experts' and attorneys' fees paid by the losing party.

**6. Integration**

6.1 This Release represents the complete understanding between Plaintiff, on the one hand, and Defendants, on the other, regarding the subject matter herein. No other promises or agreements shall be binding on the Parties or shall modify this Release unless it is in writing and signed by the Parties.

6.2 The Settlement Agreement and this Release shall be construed together and supersede any prior agreements between the Parties, and shall be binding upon the Parties as to the subject matter herein. The Parties represent that they have not relied upon any promise or representation not contained in the Settlement Agreement and this Release in executing it.

**7. Construction**

7.1 The Parties have reviewed and approved the content of this Release and acknowledge that its terms were arrived at through voluntary negotiation between the Parties, and that the Parties had an opportunity to review this Release with and involve counsel of their respective choosing. Therefore, the normal rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the writing shall not apply to any action on this Release.

7.2 This Release is made in the State of California and shall be construed and interpreted in accordance with its laws without regard to its principles of conflicts of law.

**8. Severability**

8.1 If any provision or clause of this Release is declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, that provision will immediately become null and void, leaving the remainder of the Release in full force and effect, unless the unenforceable provision is of such material effect that the Release cannot be enforced in accordance with the Parties' intent in its absence.

**9. Voluntary and Knowing Nature of Settlement**

The Parties have carefully read this entire Release. The Parties have had their attorneys fully explain its contents to them. The Parties fully understand the final and binding effect of this Release. The Parties hereby acknowledge that they are signing this Release voluntarily and freely and without pressure or undue influence from any other party.

**10. Execution**

10.1 This Release may be executed by the Parties in counterparts with each counterpart to be deemed an original as to the party executing it. Facsimile and .pdf copies of the Parties' signatures shall have the same effect as originals.

**PLAINTIFF**

By signing below, Plaintiff acknowledges having carefully read the contents of this Release and having had the opportunity to consult with counsel regarding this Release. Plaintiff understands the contents of this Release and signs the same as a free act.

PLAINTIFF

DATED: _______________, 2017

_________________________________
(Name)

**Approved as to form and content.**

DATED: _______________, 2017

THE TIDRICK LAW FIRM

By: _________________________________
STEVEN G. TIDRICK

**DEFENDANTS**

By signing below, Defendants acknowledge having carefully read the contents of this Release and having had the opportunity to consult with counsel regarding this Release. Defendants understand the contents of this Release, are authorized to execute this Release, and sign the same as a free act.

DATED: ___________, 2017

SFBSC Management LLC

By: ________________________________
***

DATED: ___________, 2017

*******

By: ________________________________
*****

DATED: ___________, 2017

*******

By: ________________________________
*****

**Approved as to form and content.**

DATED: ___________, 2016

LONG & LEVIT, LLP

By: ________________________________
DOUGLAS J. MELTON