UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

JANE ROE, et al.,

          Plaintiffs,

    v.

SFBSC MANAGEMENT, LLC, et al.,

          Defendants.

Case No. 14-cv-03616-LB

**PRELIMINARY APPROVAL ORDER**

e: ECF No. 127

## INTRODUCTION

    This is a dispute under federal and California labor law. It is a putative collective action under

the Fair Labor Standards Act (29 U.S.C. §§ 201-19) and a putative class action under Rule 23.[1]

The plaintiffs are or were exotic dancers suing the company — defendant SFBSC, LLC — that

(broadly speaking) managed the nightclubs where they worked. The court previously granted their

motion to proceed anonymously.[2] It denied SFBSC's motion to compel arbitration on the ground

of unconscionability,[3] and SFBSC appealed. The Ninth Circuit affirmed, holding that SFBSC

lacked standing because it was not a party to the performer contracts and had not established that it

---

[1] Am. Compl. – ECF No. 11 at 1–2, ¶ 1; Record citations refer to material in the Electronic Case File
("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] ECF Nos. 17, 32.

[3] ECF No. 53.

was the nightclubs' principal or alter ego. *Roes v. SFBSC Mgmt., LLC*, No. 15-15437, mem. op., ECF No. 90 (9th Cir. Jul. 18, 2016). The parties then settled their case, and the plaintiffs moved for preliminary approval of the proposed class-action settlement, which includes the nightclubs (added as defendants by a proposed amended complaint).[4] The court grants the motion.

## STATEMENT

### 1. Other Information About the Lawsuit to Date

During their appeal, the parties had three in-person mediations and multiple telephone conferences with Ninth Circuit Mediator Peter Sherwood, exchanging information about working conditions, hours worked, compensation, and the parties' relative control over their work, among other matters; ultimately the parties executed a settlement agreement.[5] The Ninth Circuit — based on the parties' stipulation — dismissed the appeal without prejudice to its reinstatement if this court did not approve the parties' settlement. *Roes v. SFBSC Mgmt.*, No. 15-15437, order, ECF No. 52 (9th Cir. Dec. 21, 2016). As part of the settlement, and for settlement purposes only, the plaintiffs submit a proposed second amended complaint that adds the following nightclubs as named defendants: SFBSC Management, LLC; Chowder House, Inc.; Déjà Vu San Francisco, LLC; Roaring 20's, LLC; SF Garden of Eden, LLC; SAW Entertainment, Ltd.; Déjà Vu Showgirls of San Francisco, LLC; Gold Club–SF, LLC; Bijou–Century, LLC; and BT California, LLC.

During this process, two new lawsuits were filed: (1) *Hughes v. S.A.W. Entm't, Ltd.*, No. 16-cv-03371-LB (filed 6/16/2016), a lawsuit by exotic dancers against S.A.W. doing business as Larry Flynt's Hustler Club sand the Gold Club; and (2) *Pera v. Entm't, Ltd.*, No. 17-cv-00138-LB (filed 1/1/2017), a lawsuit by exotic dancers against S.A.W. doing business as Condor's Gentlemen's Club. The plaintiffs in the new lawsuits are represented by Lichten & Liss-Riordan; Long & Leavitt represent all defendants in all lawsuits. The cases involve the same substantive claims for wage-and-hours violations, but the new lawsuits named the nightclubs themselves as defendants.

---

[4] Settlement Agreement – ECF No. 126; Motion – ECF No. 127.

[5] ECF No. 126; ECF No. 127 at 5; Tidrick Decl. – ECF No. 128, ¶¶ 2–3.

On March 24, 2017, plaintiffs' counsel in *Hughes* and *Pera* — on behalf of dancers at several of the clubs — filed objections to the settlement.[6] Three dancers submitted declarations in support of the objections: two named plaintiffs in *Hughes* and a named plaintiff in *Pera*.[7]

## 2. Proposed Settlement

The parties agreed to the following class definitions for settlement purposes only:

> "Settlement Class Member" means any Class Member who has not timely and properly excluded herself from the Settlement as provided in Section XIII of this Agreement.

> "Class" means the group of Entertainers who, during the class period, performed at one or more of the Nightclubs, but does not include those individuals who provide or have provided services as "headliner" or "feature" performers unless such individual was otherwise party to a Dancer Contract with a Nightclub during the Class Period.

> "Class Member" means any individual who, during the Class Period, has performed as an Entertainer at one or more of the Nightclubs, but does not include those individuals who provide or have provided services as "headliner" or "feature" performs unless such individual was otherwise party to a Dancer Contract with a Nightclub during the Class Period.

> "Entertainer(s)" means persons who dance, Perform, and/or entertain, or who have danced, Performed, or entertained, as exotic dance entertainers on the premises of a Nightclub and who sell personal entertainment performances or services to customers.

> "Perform(s)," "Performed," "Performing," and "Performances" mean(s) all acts of entertaining, dancing, and /or engaging in entertainment services, and all activities related thereto, at the Nightclubs or at any of them.

> "Dancer Contract" means a contract entered into between a Settlement Class Member and a Nightclub, which permits the Settlement Class Member to engage in personal dance sales for remuneration at the Nightclub's premises.

> "Class Period" means the period from August 8, 2010, through the Preliminary Approval Date.[8]

The Nightclubs[9] are defined in paragraph 70 of the Settlement Agreement, listed in Exhibit A, and named as the defendants in the proposed amended complaint (and listed *supra*).[10] There are

---

[6] Objection to Proposed Settlement – ECF No. 133.

[7] ECF Nos. 131-21 to -23.

[8] Settlement Agreement – ECF No. 126, ¶¶ 37, 39, 41, 49, 54, 76, 98.

[9] Capitalized terms throughout this order have the definitions given them in the Settlement Agreement.

nine Nightclubs reflecting ten Nightclub Entities, which are the commercial names for the clubs themselves (sometimes the same name, but sometimes a different name, such as "the Hungry I" for the owner/defendant "Chowder House").[11]

In summary form, the settlement agreement is as follows.

The settlement consideration includes Cash Payments, Dance Fee Payments, Residual Dance Fee Payments, and changes to the defendants' business practices that will confer a direct financial benefit on class members.[12] The Gross Settlement Value is $5 million, broken into tiers: (1) First Tier Cash Pool: $2 million; (2) Second Tier Cash Pool: up to $1 million; (3) Dance Fee Payments and Residual Dance Fee Payments: $1 million; and (4) changes to the defendants' business practices (estimated to confer benefits to class members in excess of $1 million).[13]

### 2.1 First-Tier and Second-Tier Cash Pools: Cash Payments, Fees, Costs, and Awards

The First Tier Cash Pool of $2 million will be used first for (1) cash compensation to Settlement Class Members who elect to receive a cash payment, then for (2) attorney's fees and expenses and the enhancement payments, then for (3) the PAGA[14] payment, and finally for (4) administrative costs.[15] After subtracting enhancement payments, the PAGA payment, and administrative costs, the fund will be distributed to class members who submitted timely requests for cash payments.[16] If the sum of the claims, enhancement payments, PAGA payment, and administrative costs exceeds $2 million, the defendants will fund the Second Tier Cash Pool of up to $1 million to cover the sum of the valid claims for cash payment, the attorney's fees and expenses, the Enhancement Payments, the PAGA payment, and administrative costs.[17]

---

[10] *Id.* ¶ 70 & Exs. A & B – ECF No. 126 at 71, 73.

[11] *Id.*, Ex. A.

[12] *Id.* ¶ 111.

[13] *Id.* ¶¶ 111–12.

[14] PAGA is California's Private Attorneys General Act (Cal. Labor Code §§ 2698–99.5).

[15] ECF No. 126 at 29–30, ¶ 112(a).

[16] *Id.*

[17] *Id.* ¶ 112(b).

The following is a summary of how settlement funds are distributed for Cash Payments.

To receive a Cash Payment, a Settlement Class Member must submit an FLSA claim form with her Performance Months (identified to the best of her knowledge). Cash Payments are calculated as follows, reduced *pro rata* if the First Tier Cash Pool and the Second Tier Cash Pool are depleted:

a. $800 for Cash Payment Claimants who accrued 24 or more Performance Months during the Class Period;

b. $700 for Cash Payment Claimants who accrued between 12 and 23 Performance Months during the Class Period;

c. $500 for Cash Payment Claimants who accrued between 6 and 11 Performance Months during the Class Period; and

d. $350 for Cash Payment Claimants who accrued fewer than 6 Performance Months during the Class Period.[18]

Performance Month means any month during the class period when the Settlement Class Member had at least one Date of Performance at the Nightclub.[19] If funds remain after payment of valid claims for cash payments, attorney's fees and costs, enhancement payments, and administrative costs, then the remaining funds will be paid to Cash Payment Claimants in proportion to the amount they received.[20]

The enhancement payments, payable from the First Tier Cash Pool, are: (1) $5,000 each to Jane Roes 1 and 2; (2) $3,500 each to Jane Roes 3, 10–13, and 22; (3) for a total sum of no more than $31,000, considered non-wage income and reflected on an IRS Form 1099.[21] There are General Release Enhancement Payments, payable from the First Tier Cash Pool to Jane Roe 1 or 2 or both, contingent on their execution of the general release, of an amount not to exceed $20,000 for a total sum of $40,000.[22]

---

[18] *Id.* ¶ 116.

[19] *Id.* ¶ 77.

[20] *Id.* ¶ 117.

[21] *Id.* ¶ 112(e).

[22] *Id.* ¶ 112(f).

The PAGA payment is $100,000, payable from the First Tier Cash Pool, with 75% ($75,000) paid to the California Labor and Workforce Development Agency ("LWDA") and 25% ($25,000) distributed equally to Cash Payment Claimants and Dance Fee Payment Claimants.[23]

The defendants will not object to an attorney's fees-and-expense award not to exceed 25% of the Gross Settlement Value.[24] The defendants will pay the amount (not to exceed $1 million) to Class Counsel from the First Tier Cash Pool and, as appropriate, from the Second Tier Cash Pool, to pay fees and costs that the court awards in its final approval order.[25]

The Administrative Costs are $50,000, payable from the First Tier Cash Pool, for a third-party administrator to manage the class notice, website, distribution of funds, and other administration of the settlement.[26] The parties identify four potential administrators: Simpluris, Rust Consulting, Settlement Services, or CPT Group.[27] At the hearing, they identified Rust Consulting as the administrator with the most cost-effective bid.

### 2.2 Dance Fee and Residual Dance Fee Payments

As an alternative to a Cash Payment Claim, settlement class members may elect to receive a "Dance Fee Payment," which is the mandatory and published cost of personal entertainment performances owned by the Nightclubs under the "Dancer Contracts."[28] The "Dance Fee Payment Pool" is $1 million.[29] The ten nightclubs in Exhibit A each fund $100,000 to fund "Dance Fee Payments" to claimants who elect that payment and who designate that Nightclub on their claim form as their Primary or Secondary Nightclub.[30] The Nightclubs divide the $1-million pool *pro rata* to claimants; the payment cannot exceed $5,000 per claimant for that claimant's Primary

---

[23] *Id.* ¶ 112(h).

[24] *Id.* ¶ 66.

[25] *Id.* ¶ 112(g).

[26] *Id.* ¶ 112(i).

[27] *Id.* ¶ 96.

[28] *Id.* ¶¶ 112(c), 125.

[29] *Id.* ¶ 112(c).

[30] *Id.*

Nightclub and $3,000 per claimant for the Nightclub she designates as her Secondary Nightclub.[31] The dancer must schedule a Date of Performance during the Dance Fee Redemption Period at her Primary or Secondary Nightclub at least three business days before the performance and then can retain 100% of the Dance Fees capped at these amounts.[32]

If the claims for Dance Fee Payments are less than $100,000 for any Nightclub, the Nightclub will create a Residual Dance Fee Payment Pool for the residual amounts, which are available to Settlement Class Members who do not submit an FLSA claim form but who submit a Residual Dance Fee Claim Form, available from management at the clubs, and that contains an acknowledgment that the claimant did not submit an FLSA claim.[33]

### 2.3 Changed Business Practices

The Nightclubs have changed their business practices, as set forth in paragraphs 136 to 144 of the Settlement Agreement. Dancers now can be employees of a Nightclub or Independent Professional Entertainers ("IPEs"); this does not waive any rights under any labor laws except as those laws specifically permit.[34] Managers will not influence dancers' choices. The Nightclubs will provide Entertainers and Entertainer Applicants enhanced employment offers that provide for an hourly rate of $15 plus 20% commissions for sales of private dances greater than $150.[35] The settlement agreement has other changed business practices about review of choices, context for making choices (*e.g.*, not while intoxicated or in a nude or semi-nude state), provisions for changing status to an employee, clothing choices, a prohibition against tip-sharing, training videos, and guaranteed average earnings for IPEs.[36]

---

[31] *Id.*

[32] *Id.* ¶ 126.

[33] *Id.* ¶ 112(d).

[34] *Id.* ¶ 137.

[35] *Id.* ¶ 139.

[36] *Id.* ¶¶ 137–47.

### 2.4  Release

In return for the settlement relief, the settlement agreement has release provisions.

If a class member does not submit an FLSA claim form and does not exclude herself from the settlement, the release generally is for all claims that are or could have been asserted in this action (as described in the Second Amended Collective and Class Action Complaint) except claims under the FLSA, and specifically including wage-and-hours claims.[37] The plaintiffs are not releasing any personal-injury claims.[38]

If a class member submits an FLSA claim form (or has consented to be an FLSA party plaintiff and does not exclude herself from the settlement), she releases claims as described in the previous section and also any claims that are or could have been asserted in the action under the FLSA.[39]

For "General Releasors" (defined as Jane Roe 1 and 2 — on certain conditions),[40] the release is of known and unknown claims under California Code § 1542 (except claims that cannot be released as a matter of law).[41]

### 2.5 Administration

The administrator will send class notice to class members at their last known address on their most recent contract (but will first run a National Change of Address database search on all addresses and use any current address).[42] Other administration procedures — including notice, administration, procedures for exclusion, and procedures for objections — are set forth in the settlement agreement.[43] Settlement Class Members who elect a cash payment must "opt in" under 29 U.S.C. § 216(b) by submitting a timely FLSA claim form (Exhibit C to the Settlement

---

[37] *Id.* ¶¶ 62, 85, 164.

[38] *Id.* ¶ 85.

[39] *Id.* ¶¶ 62, 165, 186.

[40] *Id.* ¶ 63, 164.

[41] *Id.* ¶ 63, 168–69.

[42] *Id.* ¶ 113.

[43] *Id.* ¶¶ 172–81, 186–201.

1 Agreement). Settlement Class Members who do not opt in are eligible to participate in the

2 Residual Dance Fee Payment Pool and to receive Residual Dance Fee Payments.[44] A Settlement

3 Class Member may not elect more than one of the following forms of monetary compensation: a

4 Cash Payment; a Dance Fee Payment; or a Residual Dance Fee Payment.[45]

## ANALYSIS

### 1. Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction over the California state-law claims.

### 2. Conditional Certification of Settlement Class

The court determines whether the Settlement Class meets the requirements for class certification first under Rule 23 and then under the FLSA.

#### 2.1 Rule 23 Requirements

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or

---

[44] *Id.*

[45] *Id.*

defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953.

The court finds preliminarily (for settlement purposes only) that the proposed settlement class meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy.

First, there are approximately 4,691 class members;[46] the class is so numerous that joinder of all members is impracticable.

Second, there are questions of law and fact common to the class. All class members worked for one of the defendant nightclubs as dancers. Common questions include whether they were classified properly as independent contractors and whether the defendants' practice of not paying minimum wage and not paying overtime violated federal state or local law. The claims depend on common contentions that — true or false — will resolve an issue central to the validity of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct 2541, 2551 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03546-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

Third, the claims of the representative parties are typical of the claims of the class. All have worked as dancers for the defendants during the class period, and all class members allege wage-and-hours violations based on similar facts. All representatives possess the same interest and suffer from the same injury. *Betorina*, 2017 WL 1278758, at *4.

Fourth, the representative parties will fairly and adequately protect the interests of the class. There are no conflicts of interest, and the named plaintiffs and counsel will vigorously prosecute the case. *See Hanlon*, 150 F.3d at 1020.

The court also finds preliminarily (and for settlement purposes only) that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Brown v. Hain Celestial Group, Inc.*, No. 11-cv-03082-LB, 2014 WL 6483216, at *15–20 (N.D. Cal. Nov. 18, 2014). All claims arise

---

[46] ECF No. 127 at 17.

from the defendants' uniform practices, and thus liability can be determined on a class-wide basis. *See Betorina*, 2017 WL 1278758, at \*5.

The court thus conditionally certifies the class for settlement purposes only and for the purposes of giving the class notice of the settlement and conducting a final approval hearing.

### 2.2 FLSA Class

The FLSA authorizes "opt-in" representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Hoffman-LaRoche v. Sperling*, 493 U.S. 16 (1989). Here, all class members have worked as dancers for one or more defendants during the class period, and their wage-and-hours claims — and related issues such as independent-contractor status — present common fact and law questions under federal and California law. The court certifies the FLSA class for settlement purposes only.

### 3. Preliminary Approval of Settlement and Leave to File Amended Complaint

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

"Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010); *see, e.g., Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . ."); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that preliminary approval is appropriate.

First, the plaintiffs represent that the settlement is fair because the cash payments correlate with the months that a dancer worked with one or more defendants, and the dance-fee payments — as an alternative to cash payments — are a fair alternative.[47] The fees also are capped at 25%.[48]

Second, the plaintiffs provide examples of settlements in other districts that show that the settlement is in the "range of possible approval," a relevant consideration at the preliminary approval stage.[49] *See Betorina*, 2017 WL 1278758, at *6 (considerations include whether the settlement (1) is the product of serious, informed, non-collusive negotiations, (2) has no obvious deficiencies; (3) does not grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval; court also fully considered the *Hanlon* factors because the settlement was reached before class certification).

Third, the plaintiffs point out that a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.[50]

---

[47] Motion – ECF No. 127 at 21; Settlement Agreement – ECF No. 126, ¶¶ 116, 123–27.

[48] Motion – ECF No. 127 at 21.

[49] *Id.* at 26; Reply – ECF No. 138 at 8.

[50] Motion – ECF No. 127 at 27 (citing *Local Jnt. Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

Fourth, litigation poses risk. If the defendants convinced a trier of fact that the plaintiffs were not misclassified, then their recovery would be zero. If the plaintiffs prevailed, then damages could fall within a wide range, depending on issues such as days worked, the statute of limitations, and punitive damages. For example, without a finding that a violation is willful, the third year of the statute of limitations for the FLSA claims could be eliminated. The plaintiffs observe that these factors make estimating damages difficult.[51] The plaintiffs point to risk associated with the certification process and on the merits.[52] There is the risk of being compelled to arbitration.[53] Class counsel are experienced class-action litigators and anticipate years of litigation and appeal; they — well versed in wage-and-hours law — believe that they arrived at a reasonable resolution through a protracted and arm's-length mediation process with the Ninth Circuit's mediator.[54]

Fifth, the PAGA provisions seem reasonable. *See Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1145 (2012) (general rule regarding 75/25 split to LWDA and claimants).

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator at the Ninth Circuit.

The named plaintiffs in the *Hughes* and *Pera* cases — who are class members — object to preliminary approval. Preliminarily, the plaintiffs point out that class members' objections are deferred to the final fairness review; they are not intervenors and their arguments are premature.[55] Under the circumstances, the court considers the objectors' arguments, which do not change the court's decision to preliminarily approve the settlement.

The objectors' main argument is that the settlement is not fair because the recovery is inadequate.[56] They point to settlements that they have achieved in individual arbitrations.[57] More

---

[51] *Id.* at 25.

[52] Reply – ECF No. 138 at 15–16.

[53] Motion – ECF No. 127 at 28.

[54] *Id.*

[55] Reply – ECF No. 138 at 18.

[56] *See* Objections – ECF No. 133 at 8–11.

[57] *Id.* at 23.

usefully, they identify settlements with average recoveries that they say exceed the recoveries here.[58]

| Case | Recovery |
|------|----------|
| *Dittus v. K.E.G., Inc.*, No. 14-300 (D.S.C.) | $14,000 for dancers working for four years to $2,000 for dancers working for four months or less. |
| *Alvarez v. KWLT*, No. 14-7075 (E.D. Pa.) | $5,916 per class member |
| *Hart v. RCI Hosp. Holdings*, 2015 WL 5577713 at *5, *11 (S.D.N.Y. Sept. 22, 2015) | $15 million cash/66% of recovery on wage claims; average $4,225; 34 received more than $10,000. |
| *Clincy v. Garlardi*, No. 09-2082 (N.D. Ga.) | $1,550,000 million cash for 80 dancers. |
| *Eley v. Stadium Grp.*, 2017 WL 663525, at * 2 (D.D.C. Feb. 17, 2017) | $1,700 to $17,200 per class member |
| *In Re Penthouse Exec. Club Comp. Litig.*, No. 10-cv-1145 (S.D.N.Y.) | $3,727 for first year, $988 for years after that; average settlement $4,666.94 |
| *Jones v. JGC Dallas*, 2014 WL 7332551 & 2014 WL 7336889 (N.D. Tex. Dec. 24, 2010) | $2.3 million for 194 participants with average payment of $7,900. |

Based on her familiarity with the claims here and in other cases, plaintiffs' counsel estimates damages to be $40 million just for the Hustler and Condor clubs.[59] And she discounts the plaintiffs' examples of other settlements: they are "not a basis for this Court to turn a blind eye to the serious issues presented here."[60] She concludes that the claimants here would receive a maximum of $800 for releasing SFBSC and the nightclubs — an unreasonable sum.[61]

The plaintiffs respond that the gross settlement value is larger than, or similar to, other exotic-dancer class settlements.[62] They note that the objectors' own damages assessment supports this conclusion, based in part on the following: the objectors looked at two of ten nightclubs and estimated damages for possible claims; 34.5% of the settlement class worked at the two nightclubs; extrapolating to all ten clubs yields estimated class damages (which the plaintiffs calculate is approximately $116 million[63]); the Gross Settlement Value here is 4.3% of that amount

---

[58] *Id.*

[59] *Id.* at 24.

[60] *Id.* at 25.

[61] *Id.*

[62] Reply – ECF No. 138 at 8.

[63] *Id.* at 8–9.

United States District Court
Northern District of California

—within the range that the objectors identify as reasonable settlement ranges.[64] That is better than settlements that courts have approved.[65] They identify the following settlements:

| Case | Recovery |
|---|---|
| *Strube v. Am. Equity Inv. Life Ins. Co.*, 266 F.R.D. 688, 698 (M.D. Fla. 2005) | 2.5% of estimated potential recovery |
| *In Re Toys R Us-Del., Inc.*, 295 F.R.D. 438, 453–54 (C.D. Cal. 2014) | 3% of possible recovery |
| *Reed v. 1-800 Contacts Inc.*, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) | 1.7% of possible recovery |
| *In Re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) | 2.5 of highest damages estimate |

The plaintiffs observe that in *Cotter v. Lyft,* the objectors' counsel argued that the second and third cases in this chart (*Toys-R-Us* and *Reed*) supported the conclusion that the settlement value "was within the range of possible approval"[66] and that a settlement representing less than two percent of maximum recovery "may be justifiable" based on "defenses that increase the risk of litigation."[67] And as described above, in their motion and reply brief the plaintiffs point to settlements with recovery ranges less than the recoveries here.

The plaintiffs quarrel too with the objectors' overall damages estimate, citing an accounting analysis about average earnings of exotic dancers that — while it does not directly correspond to the wage shortfall during the settlement period — suggests that "the potential value of the classwide claims could be magnitudes less than the Objectors posit."[68] They disagree with the objectors' limiting possible claims to $800 each and $800,000 in the aggregate: if the claims are few, claimants receive more, and if the claims are many, then the Second Tier Pool is triggered, adding an extra $1 million. They conclude that the objectors do not raise obvious defects that

---

[64] *Id.*

[65] *Id.* at 9 (collecting settlements).

[66] *Id.* at 9–10 (quoting objectors' counsel motion in *Cotter v. Lyft, Inc.*, No. 3:13-cv-04065, ECF No. 169 at 36 (N.D. Cal. Jan. 26, 2016)).

[67] *Id*.

[68] *Id.* at 10.

should derail the settlement[69] at the preliminary approval stage.[70] The objectors counter that the plaintiffs provide no meaningful calculation about potential class recovery, and their failure to provide that analysis means that the court should deny preliminary approval.[71]

The recoveries here are adequate to justify preliminary approval. Given other comparable settlements, and the litigation risks identified above, the settlement amount at least preliminarily appears fair. The objectors point out that exotic dancers are relatively transient workers; that may affect the hit rate for claimants, and it may affect the attorney's fees. But Tier One funds are not reversionary, and if the hit rate is substantial enough, then Tier Two funds are available. The court cannot discern how to fully evaluate these issues without seeing what the claim response is. Individual and smaller-group recoveries in wage-and-hour cases also differ from the appropriate per-member relief afforded to a class. The two modes of recovery do not correlate perfectly. And the parties essentially agree that pursuing individual recoveries is difficult partly because class members are reluctant to come forward. The court again emphasizes litigation risk in wage-and-hours cases. Indeed, the issue of whether exotic dancers were misclassified was decided in favor of one of the defendant nightclubs (Chowder House, Inc., doing business as Hungry I). *Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) (affirming jury verdict).[72]

The objectors cite *Custom LED,* supra, to support the conclusion that when plaintiffs fail to provide a detailed analysis of the value of the claims, the court can deny approval.[73] The argument does not change the outcome. The *Custom LED* court denied certification based on several obvious defects: an overbroad release, a deficient notice, the parties' failure to describe why issuing credits as the default payment method was appropriate, the parties' failure to establish the appropriateness of the *cy pres* award recipient, the parties' failure to explain why the distribution

---

[69] *Id.* at 12 (citing Settlement Agreement ¶ 112(a)–(b)).

[70] *Id.* at 10.

[71] Surreply, ECF No. 144-1 at 7–8 (citing *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2013 WL 4552789, at *9 (N.D. Cal. Aug. 27, 2013).

[72] Reply – ECF No. 138 at 15–16 (discussing risk in more detail).

[73] *Id.* at 9–10.

of funds was bifurcated by time period, and the parties' failure to provide information about the potential range of recovery or the number of claimants (as opposed to eBay user IDs). *Custom LED*, 2013 WL 4552789, at \*6–9. By contrast, the asserted deficiency here is the amount of the recovery. Given the landscape that the court has described, the objectors' disagreements do not render the settlement unfair at this stage.

The objectors say that the lawsuit releases claims not pleaded in the lawsuit.[74] By this, they clarified at the hearing, they meant that the amended complaint adds the nightclubs (an addition that the class notice reflects). As the court said at the hearing, this case always was aimed at the nightclubs (by way of the entity — defendant SFBSC — that allegedly manages them). In any event, the objectors' argument that total value is unfair already captures this objection. The court did not deem it sufficient to deny preliminary approval.

A perhaps related argument is that the plaintiffs' valuation does not account for other claims pleaded in the lawsuit, such as the gratuity and expense claims.[75] At the hearing, the objectors clarified that their objection was not to the release of the gratuity and expense claims but rather to the overall fairness of the dollar amounts.

The objectors also characterize the Dance Fee Payments as objectionable "coupon payments" that, among other drawbacks, require dancers to work at the clubs.[76] This too is no reason to deny preliminary approval. As the plaintiffs point out, courts approve similar settlements, which convey a tangible monetary benefit; also, the benefit remains available to claimants for two years and costs the employers.[77] And given that the workforce is transient, the benefit apparently maximizes recovery to the class as a whole.

The objectors minimize the non-monetary relief, characterizing it as inconsequential, generally because dancers are properly classified as either employees or independent contractors.[78] The

---

[74] *Id.* at 7.

[75] *Id.* at 9.

[76] Objections – ECF No. 133 at 18.

[77] Reply – ECF No. 138 at 12.

[78] Objections – ECF No. 133 at 19–20.

plaintiffs respond that a major goal of the lawsuit was changing industry practices.[79] The Enhanced Offer of Employee Status and the Minimum Pay Guarantee for independent contractors are real benefits, as are the mandates regarding treatment and the procedures for new exotic dancers.[80] The court also finds persuasive the reasons advanced in defendants' counsel's declaration at ECF No. 139. On this record, the changed business practices — which locally are almost industry-wide (this settlement covers 10 out of the apparently 12 such nightclubs in San Francisco) — will allow an alternative business model for the industry, providing employees with a guaranteed hourly rate, commissions, and benefits, among other changed practices.[81] And preliminarily, there is an economic value that attaches to this portion of the settlement.[82]

The objectors also suggest that their exclusion from the settlement proceedings raises a red flag and that the settlement is the result of a "reverse auction."[83] The court disagrees. First, the parties sought input from the objectors' counsel, who provided only limited feedback.[84] Second, the court does not doubt the diligence and effectiveness of counsel for the plaintiffs and the defendants, for the reasons described on the record.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that preliminary approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court thus approves the settlement agreement preliminarily and authorizes notice to the class.

The court also grants leave to file the second amended complaint (filed at ECF No. 126 at 73–123) and finds preliminarily that it relates back to the filing date of the original complaint.

---

[79] Reply – ECF No. 138 at 11.

[80] *Id.* at 11–12 (citing Settlement Agreement, ¶¶ 136–47).

[81] ECF No. 139, ¶¶ 8–14.

[82] *Id.* ¶ 18.

[83] Objections – ECF No. 133 at 28–29.

[84] Tidrick Decl. – ECF No. 138-1, ¶¶ 3–6.

The court will address the issue of attorney's fees at the final fairness hearing. *See Hanlon*, 150 F.3d at 1029 (twenty-five percent is a benchmark in common fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (twenty-five percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings). The court will address the appropriateness of the incentive payments then too. The objectors' arguments about the PAGA allocation[85] do not affect the court's decision to preliminarily approve the settlement.

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court appoints the plaintiffs Jane Roe 1 and Jane Roe 3 as the settlement class representatives. The court finds provisionally that they have claims that are typical of members of the class generally and that they are adequate representatives of the other members of the proposed classes.

The court appoints Steven G. Tidrick and Joel Young of The Tidrick Law Firm as Settlement Class Counsel. The court finds that they have sufficient qualifications, experience, and expertise in prosecuting class actions.

The court designates and approves Rust Consulting as the claims administrator. It will administer the settlement subject to the oversight of the parties and this court, as described in the settlement agreement.

### 5. Class Notice

The court approves the class notice and plan. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. The forms of notice fairly, plainly, accurately, and reasonably provides class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the

---

[85] Objections – ECF No. 133 at 10 n.13.

settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[86]

The objectors argue that the notice should inform class members that they may "either choose to accept the settlement or instead join another case through which they may seek greater relief."[87] As the plaintiffs point out, that notice sounds like marketing, not notice.[88] And the objectors do not respond in their surreply to the plaintiffs' argument. In their initial objections, they cite *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) to support their argument that notice is required,[89] but *Cotter* does not compel that result. There the proposed settlement released claims raised in a different lawsuit (called *Zamora v. Lyft*). *Cotter*, 193 F. Supp. 3d at 1033–34. The *Zamora* suit alleged that Lyft had deprived its drivers of certain gratuities or payments meant for them, in violation of California law. *Id.* at 1034. Specifically, when Lyft imposed a "Prime Time" surcharge during peak hours, it kept 20% (just as it takes 20% of the regular fare), allegedly in violation of California law that provides that gratuities belong solely to employees (and thereby prohibits employers from taking part of the gratuities). *Id.* The trial judge described the *Zamora* gratuity claims as "not . . . very strong," generally because the surcharge would not appear to the "reasonable rider . . . as a mandatory gratuity, as opposed to simply a price increase. . . ." *Id.* at 1038–39. The court concluded that the plaintiffs' failure to identify and include the Prime Time gratuity claims did not render the settlement unfair, unreasonable, or inadequate under Rule 23(e)(2). *Id.* at 1040. But it required the plaintiffs to revise the class notice to include a description of the *Zamora* lawsuit and the settlement agreement's release of the *Zamora* plaintiffs' gratuity claims. *Id.*

---

[86] ECF No. 128 at 414–27.

[87] Objections – ECF No. 133 at 31.

[88] Reply – ECF No. 138 at 16–17.

[89] Objections – ECF No. 133 at 31.

That result makes sense: a notice ought to include a description of the claims released by the lawsuit. This notice does. But whether a notice must describe a later-filed lawsuit that potentially gives plaintiffs another avenue at recompense for the same claims is a different inquiry. Given the record before it, amending the notice is not informative. The objectors provide no explanation about the *Bokanoski* notice that compels a contrary result.[90]

## 6. Compliance with Class Action Fairness Act

The plaintiffs will provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

## 7. Procedures for Final Approval Hearing

### 7.1 Deadlines and Hearing

| Event | Date |
|---|---|
| Defendants provide addresses to administrator | 14 days after preliminary approval |
| Last day to opt out or object | 60 days from mailing of notice |
| File motion for enhancement awards and fees | 39 days from mailing of notice |
| File motion for final approval | 112 days after preliminary approval |
| Due Diligence Declaration for Administrator | 21 days before fairness hearing |
| Final fairness/ approval hearing | September 14, 2017, at 9:30 a.m. |

### 7.2 Final Approval Hearing

At the hearing, the court will consider whether to: (1) grant final certification of the settlement class; (2) finally approve the settlement agreement and the releases in it; (3) finally approve the enhancement awards; and (4) award attorney's fees and costs to class counsel. The court may, for

---

[90] *See* ECF No. 138 at 31.

good cause, extend any of the deadlines in this order or continue the final approval hearing without further notice to the settlement-class members.

### 7.3 Requests for Exclusion From the Settlement

Under the terms of the settlement agreement, class members (except the named plaintiffs) may opt out of the settlement by sending a signed, written request for exclusion, postmarked no later than the date set forth above[91] after the mailing date of the notice, to the address in the class notice. The request must include: (a) the member's full name, address, and telephone number; (b) a clear and unequivocal statement that the class member wants to be excluded from the settlement but understands that she is still bound by the release of the PAGA claims upon issuance of a final approval order for the settlement; and (c) the signature of the class member or her legally authorized representative. Failure to request exclusion means that the class member will be deemed a class member and will be bound by the settlement agreement, if the court approves it, and any orders and judgment entered by the court.

### 7.4 Objections to the Settlement

Any person who has not requested exclusion from the class, and who is legally entitled to object to the approval of the proposed settlement or to the judgment, may object to the class settlement in writing or by appearing at the final approval hearing, with or without the presence of an attorney. Written objections must identify the case name and number and must be mailed to the claims administrator at the above address on or before the dates set forth in the chart above. They also may be filed with the court at the following address: Clerk of the Court, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102.

---

[91] This gives class members sufficient time to consider their options and make a fully informed decision. *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

**7.5 Other Orders**

Pending the final determination of whether the settlement should be approved, all proceedings in this action, except as may be necessary to implement the settlement or comply with the terms of the Settlement, are hereby stayed.

Pending the final determination of whether the settlement should be approved, the Named Plaintiffs and Class Members are hereby preliminarily enjoined — until they submit a timely request for exclusion from the Settlement — from filing or otherwise participating in any other suit or non-administrative proceeding based on the Released Claims, or from attempting to effect an opt-out from the settlement as a group, class, or subclass of individuals. The injunction shall remain in force until final approval or until such time as the parties notify the court that the settlement has been terminated.[92]

**CONCLUSION**

The court (1) conditionally certifies the class for settlement purposes only, (2) preliminarily approves the settlement and authorizes notice as set forth in this order, (3) approves the notice plan, (4) appoints the class representatives, class counsel, and claims administrator, (5) orders the procedures in this order (including all dates in the chart), and (6) orders the parties and the claims administrator to carry out their obligations in the settlement agreement.

This disposes of ECF No. 127.

**IT IS SO ORDERED.**

Dated: April 14, 2017

_____
LAUREL BEELER
United States Magistrate Judge

---

[92] Settlement Agreement – ECF No. 126 at 24–25, ¶ 108(b).