THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Plaintiffs Jane Roes 1-2 *et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROES 1-2, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC *et al.*,<br><br>Defendants. | Civil Case No. 14-cv-03616-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Laurel Beeler<br><br>Date: September 14, 2017<br>Time: 9:30 A.M.<br>Courtroom: Courtroom C, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, California<br>Judge: The Honorable Laurel Beeler |

**NOTICE OF MOTION AND MOTION**

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on September 14, 2017, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C of the Northern District of California, San Francisco Division, located on the 15th Floor at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Jane Roe 1 and Jane Roe 3 (collectively "Plaintiffs"), whom the Court appointed as the Settlement Class Representatives in its Preliminary Approval Order, will and hereby do move the Court, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23(c) and (e) of the Federal Rules of Civil Procedure, for final approval of the Class Action Settlement Agreement and Release ("Settlement Agreement") (ECF No. 126), and for entry of the proposed order filed herewith.

DATED: August 4, 2017

Respectfully submitted,

THE TIDRICK LAW FIRM

By: /s/ Steven G. Tidrick

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION AND SUMMARY**

In this motion, Plaintiffs seek final approval of a proposed class settlement and certification of a class and collective action for settlement purposes. The parties reached settlement through arm's-length bargaining with the assistance of both experienced counsel and an impartial mediator, Peter Sherwood, the Circuit Mediator appointed by the U.S. Court of Appeals for the Ninth Circuit, while this case was on appeal to the Ninth Circuit. The settlement will result in significant financial benefit to class members. The applicable notices clearly apprised class members of their rights to participate in, object to, or opt out of the settlement. There is no suggestion of anything other than good faith and fair dealing on all material issues related to the resolution of the action. Therefore, Plaintiffs respectfully submit that the proposed

settlement warrants final approval.

## II. NATURE OF THE CASE AND PROCEDURAL HISTORY

Plaintiffs incorporate by reference the discussion of the Nature of the Case and Procedural History set forth in Plaintiffs' Motion for Preliminary Approval of Class Settlement (ECF No. 127, at 4:8-6:24).[1] The Court granted Plaintiffs' Motion for Preliminary Approval of Class Settlement on April 14, 2017 (ECF No. 151).

## III. KEY FACTS SINCE PRELIMINARY APPROVAL

The following are key events that have transpired, and new information that is available, since the Court granted preliminary approval of the class settlement on April 14, 2017.

### A. Noticed Was Mailed to the Settlement Class

Pursuant to the Court's order of preliminary approval, the Court-appointed settlement administrator, Rust Consulting, Inc., mailed the Court-approved class notice to the 4,681 Settlement Class members on May 4, 2017. Consistent with the Court's order of preliminary approval, the class notice specified a deadline (postmark date) of July 3, 2017 for claim forms, exclusions (opt-outs), and objections. *See id*. Rust Consulting, Inc., is scheduled to file a due diligence declaration 21 days before the September 14, 2017 fairness hearing, *i.e.*, on August 24, 2017, in accordance with the Court-ordered schedule. *See* ECF No. 151 at 21:19-20.

### B. Online Posting of the Settlement Agreement, Complaint, and Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards

As stated in the notice that was mailed to class members, a full copy of the Settlement Agreement and the operative complaint are online at http://www.tidrick.com/SFBSC-Settlement, and has been since May 4, 2017 (*i.e.*, for the entire time since the class notice was mailed to the class members). *See* Declaration of Steven G. Tidrick, Esq. in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Tidrick Decl."), ¶ 14. Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs and Service Awards on June 12, 2017 (ECF No. 159), in compliance with the schedule that the Court specified in its order granting preliminary approval

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

(*i.e.*, 39 days from mailing of notice), *see* ECF No. 151 at 21:17-18, and within a few hours of that filing, that motion and the supporting declarations were posted online at that same URL. *Id*.

**C. Positive Response by Settlement Class Members**

The response of Settlement Class members has been positive overall. As of August 2, 2017, 852 class members, *i.e.*, eighteen percent (18.2%) of the 4,681 class members, had submitted claims for either cash payments or dance fee payments. In contrast, only fourteen (14) of the 4,681 class members (three-tenths of one percent of the class), requested exclusion from the Settlement Class. The proposed order filed herewith excludes them from the settlement. *See* Proposed Order, ¶ 15. Only one objection to the Settlement was filed. Attorney Shannon Liss-Riordan filed it on behalf of three (3) of the putative class members, specifically, Sarah Murphy, Poohrawn Mehraban, and Devon Locke. *See* ECF No. 162.

**D. Class Counsel Have Requested an Attorneys' Fees Award Less Than the Amount Allowed by the Settlement**

The Settlement gives the Court discretion to award Attorneys' Fees and Expenses to compensate Class Counsel for its fees, costs, and expenses incurred in connection with the Action, for which Defendants shall pay no more than $1,000,000.00. *See* Settlement Agreement ¶ 112(h). Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs and Service Awards on June 12, 2017 (ECF No. 159), in compliance with the Court-ordered schedule (*i.e.*, 39 days from mailing of notice). *See* ECF No. 151 at 21:17-18. Class counsel have requested attorneys' fees of $950,000, *i.e.*, $50,000 less than the Settlement allows. *See* ECF No. 159.

**E. The Projected Average Payment Is $1,419**

The projected average payment to class members who made claims is $1,419. The projected average cash payment is $1,079. The projected average dance fee payment is $5,000.

**1. Cash Payments**

Cash payments are projected to be significantly higher than the amounts that were specified in the notices mailed to the Settlement Class. The notices included a summary of how settlement funds will be distributed, if approved by the Court, and stated, in relevant part:

Cash Payments: Cash Payments shall be calculated in accordance with the following Plan of Allocation, which shall be reduced on a *pro rata* basis if the First Tier Cash Pool and Second Tier Cash Pool (defined below) are depleted:

i. **$800.00** for Cash Payment Claimants who accrued 24 or more Performance Months during the Class Period;

ii. **$700.00** for Cash Payment Claimants who accrued between 12 and 23 Performance Months during the Class Period;

iii. **$500.00** for Cash Payment Claimants who accrued between 6 and 11 Performance Months during the Class Period; and

iv. **$350.00** for Cash Payment Claimants who accrued fewer than 6 Performance Months during the Class Period.

*See* ECF No. 128, at 414-427 (Exhibit 7 to the Declaration of Steven G. Tidrick, Esq. in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement) (emphasis added). As of August 2, 2017, the settlement administrator had received a total of 778 claim forms seeking cash payments, including 41 that were postmarked after the July 3, 2017 deadline. If the Court allows those late claims to be treated as valid, and if the Court approves (a) the requested attorneys' fees award of $950,000, (b) the requested expense reimbursement of $4,884.21, (c) the requested service awards to eight (8) individuals totaling $71,000, (d) the PAGA payments totaling $100,000, and (e) payment to the settlement administrator, Rust Consulting, Inc., of $35,000, then the remainder of the First Tier Cash Pool, $839,115.79, would be distributed as follows:

i. **$1,523.24** for Cash Payment Claimants who accrued 24 or more Performance Months during the Class Period;

ii. **$1,332.84** for Cash Payment Claimants who accrued between 12 and 23 Performance Months during the Class Period;

iii. **$952.03** for Cash Payment Claimants who accrued between 6 and 11 Performance Months during the Class Period; and

iv. **$666.42** for Cash Payment Claimants who accrued fewer than 6 Performance Months during the Class Period.

*See* Declaration of Steven G. Tidrick, Esq. in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Tidrick Decl."), ¶ 13. Accordingly, Cash Payment Claimants are projected to receive significantly more than the amounts specified in the class notice that was mailed to the class. Moreover, the amounts above do not include the additional amount that each Cash Payment Claimant and Dance Fee Payment Claimant will receive as a result of distributing $25,000 of the $100,000 PAGA payment, projected to be an additional $29.34 for each claimant. *See id.*

### 2. Dance Fee Payments

As of August 2, 2017, a total of 74 class members have claimed $370,000 of the $1,000,000 Dance Fee Payment Pool. *See* Tidrick Decl., ¶ 13. The average dance fee payment to

those 74 claimants is $5,000. *Id*. As noted in the paragraph above, this does not include the additional estimated $29.34 that each Cash Payment Claimant and Dance Fee Payment Claimant will receive as a result of distributing $25,000 of the $100,000 PAGA payment. The remainder of the Dance Fee Payment Pool, $630,000, will be available to be claimed by class members for at least two years after the Judgment becomes final. *See* Settlement Agreement ¶ 48.

## IV. KEY TERMS OF THE CLASS SETTLEMENT

Plaintiffs incorporate by reference the discussion of the Key Terms of Proposed Class Settlement set forth in Plaintiffs' Motion for Preliminary Approval of Class Settlement. *See* ECF No. 127 at 6:25-14:16.

## V. LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS SETTLEMENT

### A. Class Claims Settled Under Rule 23

#### 1. Criteria

Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement of the claims of a certified class is subject to the court's approval. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto* v. *GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

That principle is subject to certain limitations when the parties to a class action agree to settle before a class is certified. To ensure that the proposed class is appropriate and protect the interests of absent members of the class, courts are required to "pay" undiluted, even heightened, attention "to class certification requirements" and consider whether the proposed settlement "taken as a whole" "is fundamentally fair, adequate, and reasonable." *Staton* v. *Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) and quoting *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019, 1026 (9th Cir. 1998)). Thus, before it can approve the proposed settlement, the Court must determine whether the class satisfies all four criteria of Federal Rule of Civil Procedure 23(a) and one prong of Rule 23(b). *Alberto*, 252 F.R.D. at 659. The Court must also determine whether the proposed

settlement terms are fair to the class as a whole, reasonable, and adequate. *Id.*

**2. Procedure**

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted). *See also* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004) ("MANUAL FOR COMPLEX LITIGATION") (summarizing "preliminary fairness review"). In this case, the first stage has been completed.

Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out. *Alberto,* 252 F.R.D. at 659 (citations omitted). At or after the fairness hearing, taking into account the responses of class members and any additional information gained, the court reaches a final determination about whether the proposed settlement should be approved. *Id.*

**B. Standards for Class Settlement of FLSA Claims**

Employee claims under the FLSA may not be settled without supervision of either the Secretary of Labor or a district court. The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness. In reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, at *6 (N.D. Cal. Dec. 19, 2012). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v. Wang's Rest.,* 2007 U.S. Dist. LEXIS 60683, at *2-4 (N.D. Cal. Aug. 8, 2007) (citations omitted, brackets in original); *accord Stevens v. Safeway Inc.,* 2008 U.S. Dist. LEXIS

17119, at *12-13 (C.D. Cal. Feb. 25, 2008). The standard for approving a proposed settlement of FLSA claims "is similar to that used in evaluating settlements under Rule 23(e)": "the district court's role ... 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Stevens,* 2008 U.S. Dist. LEXIS 17119, at *13-14 (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219 (1983)).

## VI. THE COURT SHOULD GRANT FINAL APPROVAL

### A. Conditional Certification of the Class for Settlement Purposes Is Warranted

The Court conditionally certified the class in its order granting preliminary approval of the settlement. *See* Docket No. 151 at 11:3-4. For the same reasons set forth in Plaintiffs' motion for preliminary approval, Plaintiffs request that the Court enter the proposed order filed herewith granting final approval of the settlement, including the certification of the Settlement Class as a collective action under the FLSA and certification of the class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* Plaintiffs' Motion for Preliminary Approval (Docket No. 285), at 14:17-29:12.

### B. The Proposed Settlement Is Fair, Reasonable, and Adequate

#### 1. The Court Already Granted Preliminary Approval

The Court granted preliminary approval of the settlement on April 14, 2017 (ECF No. 151). At that stage, the question was whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also* MANUAL FOR COMPLEX LITIGATION § 21.632. "Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

#### 2. The Class Supports the Settlement

The Court-approved notice was mailed to the 4,681 Settlement Class members on May 4, 2017 regarding the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out or object to the settlement. As noted, only fourteen (14) of the 4,681 putative class members (three-tenths of one percent of the class) requested to be excluded. Only three (3) of the class members, represented collectively by attorney Shannon Liss-Riordan, filed an objection. No other objections have been filed.

The low number of opt-outs and objections demonstrates a general acceptance of the Settlement by Class Members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. Thus, the Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *18-19 (N.D. Cal. June 27, 2014) (citations and internal quotations omitted). *See also Corson v. Toyota Motor Sales U.S.A.*, 2016 U.S. Dist. LEXIS 46757, at *22-23 (C.D. Cal. Apr. 4, 2016) ("Here, KCC has received only one objection to the Settlement Agreement and 99 timely requests for exclusion. Given the small number of opt-outs and objections, the Court finds that this factor weighs in favor of final approval.") (citation omitted); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("Clearly, the number of objectors in this case fell well below the four percent of objectors paraded in *Petrovic*. The district court has a duty to the silent majority as well as the vocal minority. While we agree that these vocal objectors should also be considered, we do not believe that disapproval of the settlement is warranted in this case.") (citations omitted) (citing *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999), *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995), *cert denied*, 517 U.S. 1156, 134 L. Ed. 2d 648, 116 S. Ct. 1544 (1996)). *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (approving settlement where "only" 29 objections were made in a 281-member class); *Marshall v. NFL*, 787 F.3d 502, 513 (8th Cir. 2015) ("We have previously approved class-action settlements even when almost half the class objected to it."); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-27 (8th Cir. 1982) (finding no abuse of discretion even though both named plaintiffs objected to it and

790 of approximately 3,000 members objected); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (180 of 400 inmates objecting).

In contrast to the low number of opt-outs and objections, a total of 852 class members (18.2% of the class) have submitted claim forms as of August 2, 2017. Clearly, many class members support the settlement. The claims rate here is well above rates that other courts have deemed to be sufficient for final approval. *See, e.g., Moore v. Verizon Communs., Inc.*, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement in which the claims rate was three percent (3%)); *Touhey v. United States*, 2011 U.S. Dist. LEXIS 81308 (C.D. Cal. Jul. 25, 2011) (finding that a two percent (2%) response rate did not render settlement unfair); *Bower v. Cycle Gear, Inc.*, 2016 WL 4439875 (N.D. Cal. 2016) (15.20% opt-in rate); *Rodriguez v. D.M. Camp & Sons*, 2013 WL2146927 (E.D. Cal. 2013) (15.05% claims rate); *Scott v. Aetna Services, Inc.*, 201 F.R.D. 261, 266-67 (D. Conn. 2002) (7.8% opt-in rate); *Jankowski v. Castaldi*, 2006 WL 118973 (E.D.N.Y. 2006) (8.9% opt in rate). *See also* Andrew Brundsen, Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts, BERKELEY J. EMP. & LAB. L., 269, Vol. 29, p. 294 (2008) (empirical data for 21 collective actions and concluding that the average opt-in participation rate was 15.71%); *McGreevy v. Life Alert Emergency Response, Inc.*, 2017 WL 1534452, at *5 (S.D.N.Y. April 28, 2017) (citing MCLAUGHLIN ON CLASS ACTIONS § 6:24 (13th ed. 2016 Supp. Oct. 2016) ("Claims-made settlements typically have a participation rate in the 10-15% range.")); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009) (citing usual opt-in rates "between 5% and 20%). Moreover, the claims rate understates the number of class members who stand to benefit from the settlement, given that (a) class members are able to make claims from the Dance Fee Payment Pool for up to two years after the judgment becomes final regardless of whether they previously submitted a claim form, *see* Settlement Agreement, ¶ 48, and (b) one need not submit a claim form to benefit from the changed business practices.

**3. All Other Relevant Factors Also Support Final Approval**

Factors relevant to whether a proposed class settlement should be approved include:

"(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Another consideration is whether the settlement is "the product of collusion among the negotiating parties." *Id*. at 576.

<u>The Strength of the Plaintiffs' Case</u>

If the case were to proceed to trial and Defendants convinced the finder of fact that Plaintiffs were not misclassified, the total damages for the class members could be zero. If Plaintiffs were to prevail on liability at trial, then the amount of damages awarded could fall within a wide range, based on the number of workdays in which a class member's pay fell below the minimum wage, the statute of limitations, and the potential punitive damages, among other factors. For example, if Defendants established that any violation was not willful, the third year of the statute of limitations would be eliminated for the FLSA claims. If, on the other hand, Plaintiffs convinced the finder of fact that class members were entitled to many hours per week of overtime pay, and succeeded in obtaining a three year statute of limitations under the FLSA, the total classwide damages would be higher.

Because the variables in a wage-and-hour damage analysis cause the numbers to vary so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in a wage-and-hour case such as this one. The proposed settlement is clearly substantial. This is not a settlement where the aggregate value is large simply because the size of the class is in the tens or hundreds of thousands. Instead, class members are eligible to recover significant financial benefit. These considerations indicate that the proposed settlement is adequate and reasonable. This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including risk associated with the pending appellate proceeding and the possibility of further appellate proceedings. In light of Plaintiffs'

counsel's analysis of the estimated value of the claims, the gross settlement amount is adequate and reasonable.

While Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand that the outcome of the pending appeal, Plaintiffs' anticipated motion to certify the class, Defendants anticipated motion to decertify the class, trial, and any further appeals were inherently uncertain, as well as likely to consume many more months, even years. Having extensively investigated the facts and researched the pivotal legal and factual issues, counsel for the parties, experienced class action litigators well versed in wage and hour law, arrived at a reasonable resolution through a protracted and arm's-length mediation and negotiation process, which continued into all details of the settlement agreement and the proposed class notice.

The Risk, Expense, Complexity, And Likely Duration of Further Litigation

The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Officers for Justice,* 688 F.2d at 625; *Young v. Katz,* 447 F.2d 431, 433-34 (5th Cir. 1971). The policy that favors settlement of class actions and other complex cases applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive and time-consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement. The settlement, on the other hand, provides to all class members substantial relief, promptly and efficiently. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *Van Bronkhorst* v. *Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (citing cases).

Indeed, there are significant risks that the putative class would face if the litigation were to continue.

First, although the Plaintiffs prevailed before the Ninth Circuit panel, Defendant could still file a motion for reconsideration or for en banc review in the Ninth Circuit. Moreover, even if Plaintiffs ultimately prevailed before the Ninth Circuit, Defendant could file a petition for a writ

of certiorari in the United States Supreme Court, which could reverse the Ninth Circuit.

Second, there is the risk that no FLSA collective or Rule 23 class would be certified, the risk that an order certifying an FLSA collective or a Rule 23 class would be overturned on appeal, and the risk that a certified class would later be decertified, each of which is a significant risk in a case such as this. *See, e.g., Tijerino v. Stetson Desert Project LLC*, No. CV-15-2563-PHX-SMM (D. Ariz. June 21, 2017) (order in case alleging exotic dancer misclassification denying plaintiff's renewed motion for conditional certification under the FLSA, and accordingly not authorizing notice to potential FLSA opt-ins); *David v. Bankers Life & Cas. Co.*, 2015 WL 3994975, at *8 (W.D. Wash. June 30, 2015) (granting defendant's motion to decertify class in case alleging misclassification of insurance agents as independent contractors, reasoning that "individualized fact questions" as to each agent's work experience would "predominate over common ones."); *Collins v. Barney's Barn, Inc.*, 2013 WL 1668984, at *1 (E.D. Ark. Apr. 17, 2013) (denying motion for conditional certification of an FLSA collective in a case alleging that exotic dancers were misclassified as independent contractors); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 189 (S.D.N.Y. 2010) (declining to certify class of workers claiming to be employees where case required "an individualized assessment of [defendant's] relationship" with each worker); *Carter v. Figueroa Grp., Inc.*, 2013 WL 5945725, at *3 (Cal. Ct. App. Nov. 7, 2013) (affirming denial of plaintiff's motion for class certification in a case alleging misclassification of exotic dancers as independent contractors where "the weight of the evidence showed [the club] did not control the manner and means by which the dancers' work was performed, and determined appellant failed to show 'that common questions can be used to determine the degree of control exercised by Defendant over the dancers.'"); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1350, 1354 (2009) (affirming trial court's order denying motion for class certification in case alleging misclassification of taxi drivers as independent contractors, reasoning that "[a]lthough the leases and training manuals [were] uniform, the [trial] court reasonably found the testimony of putative class members would be required on the issues of employment and fact of damage").

Third, there is the risk that Plaintiffs could lose on the merits, either on summary

judgment or at trial. In many exotic dancer misclassification cases, plaintiffs have lost on the merits. For example, in *Tijerino v. Stetson Desert Project LLC*, No. CV-15-2563-PHX-SMM, Judge Stephen McNamee of the United States District Court for the District of Arizona recently ruled that exotic dancers at Le Girls Gentlemen's Club in Phoenix failed to establish that they were employees and thus denied conditional certification of their FLSA claim. While Judge McNamee acknowledged several cases in which Courts found that exotic dancers had been misclassified, he also found that the issue must be determined on a case-by-case basis. *Id.* at p. 3:17-4:18. Notably, based on the evidence produced and arguments made by Defendants throughout this litigation, they may be able to draw several comparisons to the facts in *Tijerino*. Moreover, the question of whether exotic dancers are misclassified has been litigated in San Francisco and was decided in the favor of one of the very same nightclubs in this case (Chowder House, Inc. d/b/a/ Hungry I). *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm."). *See also Marlar v United States*, 151 F.3d 962, 966 (9th Cir. 1998) ("[t]he government has never contended that the dancers are employees as a matter of law, and for good reason: because the dancers have discretion in deciding for whom, when and how to perform, there is a serious question as to whether they are employees."); *Matson v. 7455, Inc.*, 2000 WL 1132110, at *4 (D. Or. Jan. 14, 2000) ("the plaintiff has failed to establish any material fact disputing her status as an independent contractor. Accordingly, her F.L.S.A. claim cannot survive summary judgment."); *Hilborn v. Prime Time Club, Inc.*, 2012 WL 9187581, at *1 (E.D. Ark. July 12, 2012) (finding that exotic dancers were not "employees" under the FLSA or state law, and granting summary judgment in favor of the defendant). In this case, numerous affirmative defenses have been pleaded that, if successful, could bar any recovery. ECF No. 63 (Answer to First Amended Complaint).

The above-described risks favor final approval.

<u>The Risk of Maintaining Class Action Status Throughout The Trial</u>

As discussed above, there is the risk that no FLSA collective or Rule 23 class would be

certified, the risk that an order certifying an FLSA collective or a Rule 23 class would be overturned on appeal, and the risk that a certified class would later be decertified, each of which is a significant risk in a case such as this. Plaintiffs have argued, and would continue to argue if the case were to proceed, that class action status is warranted in this case. Nevertheless, the risk of decertification is a factor that favors approval of the settlement. *See generally Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (district court may decertify a class at any time). Accordingly, this factor favors final approval.

<u>The Amount Offered in Settlement</u>

In an analogous class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis "because of the disparity between their litigation costs and what they hope to recover." *Local Joint Executive Bd.,* 244 F.3d at 1163.

The recovery provided through the settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney* v. *Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than many years down the road, if ever. *See City of Detroit* v. *Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the probability of lengthy litigation in the absence of a settlement, the risk of not prevailing at trial or on appeal, and the risk of being compelled to arbitration, it is no exaggeration to predict that without using the class action process, the relief that individual members of the class were likely to achieve ranged from negligible to zero. Consequently, the settlement satisfies the criterion of adequacy. *See* MANUAL FOR COMPLEX LITIGATION § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

A comparison of this settlement to the settlements in other wage-and-hour cases alleging misclassification of exotic dancers provides an additional basis for finding that the settlement is adequate.

First, in *Jane Doe v. Cin-Lan, Inc.*, Case No. 2:08-CV-12719 (E.D. Mich.), the court approved a classwide settlement of $11.3 million for a settlement class consisting of 22,087 exotic dancers. That settlement provided for a maximum of $1,333,333 for dancer cash claims out of a cash pool of $2 million, distributed to claimants in an amount of $50 per performance date up to a maximum of $500 per claimant, subject to the limitation that if claims exceeded $1,333,333, the payments would be reduced on *pro rata* basis to $1,333,333 total. *See* ECF No. 128 at 6-90 (Ex. 1) (settlement), §§ 5.2.1, 5.4.4, 5.5. That settlement also provided for a "Dancer Rent Credit Pool" of $9 million that could be claimed by class members who do not submit cash claims and do not opt out, subject to maximums of $100 for class members who performed 10 or fewer performance dates, $500 for class members who performed 11 to 24 performance dates, and $1,000 for class members who performed more than 24 performance dates. *Id*. §§ 3.20, 5.2.2, 5.6, 5.6.1, 5.6.3. *See also* ECF No. 128 at 91-97 (Ex. 2) (order granting final approval).

Second, in *Nuno v. Shac, LLC et al.*, Case No. A-09-602800-C (Clark County Nevada), the court approved a classwide settlement of $6 million for a settlement class of approximately 10,000 exotic dancers. *See* ECF No. 128 at 98-118 (Ex. 3) (settlement); ECF No. 128 at 119-132 (Ex. 4) (docket reflecting order granting final approval).

Third, in *Trauth v. Spearmint Rhino Companies Worldwide*, Case No. 5:09-cv-01316 (C.D. Cal.) (Phillips, J.), the court approved a classwide settlement of $12.97 million for a settlement class of more than 11,000 exotic dancers. *See* ECF No. 128 at 133-314 (Ex. 5) (settlement agreement). *See also Trauth v. Spearmint Rhino Cos. Worldwide*, 2012 U.S. Dist. LEXIS 144816 (C.D. Cal. Oct. 5, 2012) (order granting final approval).

Fourth, in *Does 1-2 v. Déjà Vu Services, Inc.*, Case No. 2:16-cv-10877 (E.D. Mich.), the court has granted final approval to a settlement of $6.5 million for a class consisting of "[b]etween 45,000 and 50,000 dancers at 64 clubs nationwide." *See* ECF No. 128 at 315-412 (Ex. 6). *See also Doe v. Deja Vu Servs.*, 2017 U.S. Dist. LEXIS 18369, at *4 (E.D. Mich. Feb. 9,

2017) ("The Court has granted preliminary approval to the parties' settlement agreement and found the settlement terms reasonable, fair, and adequate."); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017) ("The Court finds the settlement is the result of a bona-fide dispute, and the terms established in the settlement are a fair, reasonable, and adequate resolution of the claims.") (overruling objections and granting final approval).

The value of the settlement should also be weighed against the risk of no recovery. It bears noting that, in 2004, when the question of whether exotic dancers are misclassified was litigated in San Francisco against one of the very same nightclubs in this case, the jury returned a verdict in the favor of the defendant, awarding *nothing* to the plaintiff (Chowder House, Inc. d/b/a/ Hungry I). *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm.").

A comparison of the amount obtained through settlement with Plaintiffs' admittedly aggressive estimates of the value of the classwide claims, *see* Tidrick Decl. ¶ 8, and a review of an accountant's analysis, *id.* ¶ 9, further demonstrates that the amount of the settlement is adequate. A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice,* 688 F.2d at 628) (internal quotation marks omitted). *See, e.g., Strube v. Am. Equity Investment Life Ins. Co*., 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting 3% of possible recovery); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5% of the highest damages estimate as "within the range of

reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation"); *City of Detroit,* 495 F.2d at 455 n.2 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

In addition, the participation of the Ninth Circuit Mediator in the settlement negotiation makes it more likely that the parties reached the limits of compromise. *See Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp*., 654 F.3d 242, 263 (2d Cir. N.Y. 2011) ("The participation of mediator Feinberg in this case, while by no means ensuring fully adequate representation, does make it more likely that the parties reached the limits of compromise.").

Moreover, as discussed above, the cash payments that will be mailed to class members will be higher than the amounts that were estimated in the notices that were mailed.

Accordingly, this factor favors final approval.

<u>The Extent of Discovery Completed and The Stage of the Proceedings</u>

Plaintiffs' counsel conducted an extensive investigation of the claims and defenses in this case, including reviewing payroll data for the nightclubs at issue. As a result, Plaintiffs' counsel was in a position to make informed decisions regarding settlement. This favors final approval.

<u>The Experience and Views of Counsel</u>

Plaintiffs' counsel are experienced class action litigators, and they recommend the settlement. This factor favors final approval.

<u>The Presence of a Governmental Participant</u>

The fact that the parties reached settlement through arm's-length bargaining with the assistance of Peter Sherwood, the Circuit Mediator employed and appointed by the U.S. Court of Appeals for the Ninth Circuit while this case was on appeal to the Ninth Circuit, favors final approval. *See generally San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1031-1032 (N.D. Cal. 1999); *Touhey*, 2011 U.S. Dist. LEXIS 81308, at *20-2.

<u>The Reaction of the Class Members to The Proposed Settlement</u>

As described above, the overall reaction of the class members reflects support of the settlement. This favors final approval.

The Proposed Settlement Is Not The Product of Collusion

The Ninth Circuit Mediator, Peter Sherwood, mediated the settlement negotiations, which were at arm's length. This favors final approval. *See generally D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("This Court has noted that a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Satchell v. Fed. Exp. Corp.*, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

For all the above reasons, and the for the reasons set forth in the filings that that Court considered in granting preliminary approval of the settlement, Plaintiffs respectfully request that the Court find that the Settlement Agreement is fair and reasonable, grant final approval, and enter the proposed order filed herewith.

## VII. THE PAGA PROVISIONS ARE REASONABLE

The provision that Defendants' payment of the Cash Payments, Dance Fee Payments and Residual Dance Fee Payments resolve the PAGA Claims premised on California Labor Code §558, Settlement Agreement ¶ 111(g), is consistent with California case law. "[A]n aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558." *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1148 (2012). Such underpaid wages "go[] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees (§ 2699, subd. (i))." *Id.* at 1145. Moreover, the settlement's provision that a sum of $100,000.00 will be paid out of the First Tier Cash Pool to resolve all PAGA Claims premised on other alleged Labor Code violations, and the distribution of that sum (75% to the LWDA, and 25% to Cash Payment Claimants and Dance Fee Payment Claimants) is both reasonable and fair. *See generally Thurman*, 203 Cal. App. 4th at 1148 (discussing the "general rule" regarding the 75/25 split); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, at *25-*31 (N.D. Cal. Oct. 11, 2016) (Chen, J.) (finding that, in the

context of a $6 million settlement, a PAGA payment of $20,000 was reasonable); *Williams v. Brinderson Constructors, Inc.*, 2017 WL 490901, at *13-*14 (C.D. Cal. Feb. 6, 2017) (finding that, in the context of a $300,000 settlement, a PAGA payment of $10,000 was reasonable); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at *41-*42 (E.D. Cal. Nov. 27, 2012) (finding that, in the context of a $2.5 million settlement, a PAGA payment of $10,000 was reasonable and in line with settlement approval of PAGA awards in other cases) (citing cases); *Nikmanesh v. Wal-Mart Stores Inc.*, 2016 WL 6236446, at *4 (C.D. Cal. Oct. 17, 2016) (granting preliminary approval of $800,000 settlement that included PAGA payment of $5,000). In this case, the settlement's allocation of $100,000 for resolution of the non-section 558 PAGA claims reflects a reasonable valuation of those PAGA claims relative to the other claims in the action, and is in line with PAGA payments in other settlements that courts have approved.

## VIII. THE COURT IS TO SELECT THE *CY PRES* RECIPIENT

The Settlement Agreement provides: "Should any amounts from the First Tier Cash Pool remain in the Escrow Account after sixty (60) days following the distribution of the balance of the Cash Payments for the benefit of the Settlement Class as described above (*e.g.*, should any Cash Payment checks go uncashed), all such unclaimed funds shall be paid to the St. James Infirmary, or if that entity is not approved by the Court, The Impact Fund (a public interest law non-profit organization) or another appropriate recipient as approved by the Court." *See* Settlement Agreement, ¶ 112(a).

The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1307–08 (9th Cir. 1990)). "*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *See id.*

"Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between

the plaintiff class and the *cy pres* beneficiaries." *Id*. (quoting *Nachshin*, 663 F.3d at 1038). "A *cy pres* award . . . must not benefit a group too remote from the plaintiff class . . . ." *Id*. (quoting *Six Mexican Workers,* 904 F.2d at 1308).

In this case, the Settlement Class members live in the following states: 3,933 (84.0%) in California, 175 in Nevada (3.7%), 72 in Texas (1.5%), 63 in Oregon (1.3%), 44 in Washington State (0.9%), 30 in New York (0.6%), and the remainder (smaller numbers) in other states.

As noted in the Settlement Agreement, "The St. James Infirmary is a non-profit organization located at 234 Eddy Street in San Francisco that provides free, compassionate and nonjudgmental healthcare and social services for sex workers (current or former) of all genders and sexual orientations while preventing occupational illnesses and injuries through a comprehensive continuum of services." ECF No. 126 at 30:26-28 n.4.

The Impact Fund is a public interest law non-profit organization. The mission of the organization is to provide support for public interest litigation to achieve economic, environmental, and social justice throughout the United States. The Impact Fund provides grants, technical support, and training on issues that arise in impact litigation, particularly class action litigation. The Impact Fund also serves as co-counsel and amicus counsel in select class action and impact litigation. *See* Declaration of Jocelyn D. Larkin, filed herewith.

Plaintiffs respectfully request that the Court select an appropriate *cy pres* recipient in light of the factors set forth in the case law cited above, and order that unclaimed funds be paid to that organization as provided in paragraph 112(a) of the Settlement Agreement.

## IX. CONCLUSION

Plaintiffs respectfully request that the Court enter the proposed order filed herewith.

DATED: August 4, 2017

Respectfully submitted,

THE TIDRICK LAW FIRM

By: /s/ Steven G. Tidrick

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

Attorneys for Plaintiffs