THE TIDRICK LAW FIRM
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
2039 Shattuck Avenue, Suite 308
Berkeley, California 94704
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Attorneys for Plaintiffs Jane Roes 1-2 *et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROES 1-2, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC *et al.*,<br><br>Defendants. | Civil Case No. 14-cv-03616-LB<br><br>**[PROPOSED] ORDER OF FINAL APPROVAL GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; AND (2) PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS; JUDGMENT**<br><br>The Honorable Laurel Beeler<br><br>Date: September 14, 2017<br>Time: 9:30 A.M.<br>Courtroom: Courtroom C, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, California<br>Judge: The Honorable Laurel Beeler |

Plaintiffs' Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards (the "Motions") came on regularly for hearing on September 14, 2017, at 9:30 a.m., in the United States District Court for the Northern District of California, The Honorable Laurel Beeler presiding. All parties were represented by counsel.

Having considered the memoranda and declarations, oral arguments of counsel, and the relevant statutory and case law, the Court GRANTS Plaintiffs' Motions and orders and finds as follows, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and

Rule 23(c) and (e) of the Federal Rules of Civil Procedure ("Rule 23"):

## Introduction

1. On April 14, 2017, the Court granted preliminary approval of the Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (ECF No. 126). See ECF No. 151 (Preliminary Approval Order).[1] The Court hereby incorporates by reference that order's summary of the lawsuit and the proposed Settlement. Capitalized terms throughout this order have the definitions given them in the Settlement Agreement.

## Operative Complaint

2. In the Preliminary Approval Order, the Court granted leave to file the second amended complaint (filed at ECF No. 126 at 73-123), and found preliminarily that it relates back to the filing date of the original complaint. *See* ECF No. 151 at 18:20-21. The Court confirms that finding. That complaint was filed on April 16, 2017, and is the operative complaint. *See* ECF No. 153.

## Jurisdiction

3. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the California state law claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution. *See* Second Amended Collective and Class Action Complaint, ECF No. 153, ¶ 2.

## Notice to the Class

4. The Court previously approved the class notice and plan, and made various findings relating to that class notice and plan. *See* ECF No. 151 (Preliminary Approval Order), at 19:21-20:5 ("The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. The forms of notice fairly, plainly, accurately, and reasonably provides class members with all required information,

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards."). The Court confirms those findings. The Court finds that the notice provided constituted the best notice practicable under the circumstances and met the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

**Certification of Class**

5. The Court confirms its previous certification of the Settlement Class as defined in the Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (ECF No. 126), for settlement purposes only pursuant to Federal Rules of Civil Procedure 23 and 29 U.S.C. § 216(b).

**Class Representatives, Class Counsel, and Claims Administrator**

6. The Court confirms its previous appointment of Plaintiffs Jane Roe 1 and Jane Roe 3 as the Settlement Class Representatives, finding that they have claims that are typical of members of the class generally and that they are adequate representatives of the other members of the class. *See* ECF No. 151 (Preliminary Approval Order), at 19:9-12 (same finding and order).

7. The Court confirms its previous appointment of Steven G. Tidrick and Joel Young of The Tidrick Law Firm as Settlement Class Counsel, finding that they have sufficient qualifications, experience, and expertise in prosecuting class actions. *See* ECF No. 151 (Preliminary Approval Order), at 19:13-15 (same finding and order). The Court finds that they have represented the Settlement Class adequately for purposes of entering into and implementing the Settlement.

8. The Court confirms its previous appointment of Rust Consulting, Inc. as the settlement administrator. *See* ECF No. 151 (Preliminary Approval Order), at 19:16-18.

**Objection to the Settlement**

9. Only one objection to the Settlement was filed. Attorney Shannon Liss-Riordan filed it on behalf of three (3) of the putative class members, specifically, Sarah Murphy, Poohrawn Mehraban, and Devon Locke. *See* ECF No. 162 ("Objection to Proposed Class Action Settlement"). The objection is unpersuasive, and the Court overrules it.

**Final Approval of Settlement**

10. The Class Action Settlement Agreement and Release ("Settlement Agreement" or "Settlement") (ECF No. 126), which the Court preliminarily approved as fair, adequate, and reasonable, and within the range of possible approval, *see* ECF No. 151 (Preliminary Approval Order), is approved, and the definitions used therein are adopted for use herein as fair and reasonable as set forth herein.

11. This ruling is based on federal common and statutory law, including 29 U.S.C. § 216(b) and the Federal Rules of Civil Procedure, as well as federal and other authority, including the Federal Judicial Center's MANUAL FOR COMPLEX LITIGATION (4th ed. 2004).

12. Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: 1) the strength of the plaintiff's case; 2) the risk, expense, complexity, and likely duration of further litigation; 3) the risk of maintaining class-action status throughout trial; 4) the amount offered in settlement; 5) the extent of discovery completed and the stage of the proceeding; 6) the experience and views of counsel; 7) the presence of a government participant; and 8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted). *See also Churchill Village, LLC v. General*

*Electric*, 361 F.3d 566, 575 (9th Cir. 2004). In determining whether the Settlement should be approved, the Court has considered those factors. The Court also has considered whether the Settlement is "the product of collusion among the negotiating parties." *Id*. at 576.

13. The Court finds that the Settlement is a fair and reasonable resolution of a *bona fide* dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, at *6 (N.D. Cal. Dec. 19, 2012); *Yue Zhou v. Wang's Rest.,* 2007 U.S. Dist. LEXIS 60683, at *2-4 (N.D. Cal. Aug. 8, 2007). *Accord Stevens v. Safeway Inc.,* 2008 U.S. Dist. LEXIS 17119, at *12-13 (C.D. Cal. Feb. 25, 2008).

14. The proposed Settlement is fair, adequate, and reasonable and therefore approved. The Court directs that the Settlement be consummated in accordance with the terms and conditions set forth in the Settlement Agreement. The Settlement Agreement is hereby incorporated by reference.

**Requests for Exclusion**

15. Only fourteen (14) of the 4,681 putative class members (only three-tenths of one percent of the class), specifically, Jane Roe 4284, Jane Roe 3485, Jane Roe 536, Jane Roe 1891, Jane Roe 4738, Jane Roe 2068, Jane Roe 4313, Jane Roe 4656, Jane Roe 1292, Jane Roe 1961, Jane Roe 2275, Jane Roe 4648, Jane Roe 377, and Jane Roe 4475, requested exclusion from the Settlement Class. Their requests for exclusion were timely. They are hereby excluded.

**Attorneys' Fees and Costs**

16. Under Federal Rules of Civil Procedure 23(h)(1) and Rule 54(d)(2), Plaintiffs in this class action have moved for an award of attorneys' fees and costs and service awards. Pursuant to Rule 23(h)(3), the Court must make findings of fact and state its conclusions of law.

17. This class action settlement resolves a wage-and-hour dispute on a class-wide basis.

18. The Court's April 14, 2017 order granted preliminary approval of the class-wide settlement agreement, an agreement which gives the Court discretion to award Attorneys' Fees and Expenses to compensate Class Counsel for its fees, costs, and expenses incurred in

connection with the Action, for which Defendants shall pay no more than $1,000,000.00. *See* Settlement Agreement ¶ 112(h).

19. Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement." The Rule further provides that "[a] claim for an award must be made by motion under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable manner" and that the Court "must find the facts and state its legal conclusions under Rule 52(a)." Fed. R. Civ. P. 23(h)(1) & (3). In turn, Rule 54(d)(2) requires a claim for fees to be made by motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the movant to the award" and "the amount sought." Fed. R. Civ. P. 54(d)(2)(B).

20. Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs and Service Awards on June 12, 2017 (ECF No. 159), in compliance with the schedule that the Court ordered (*i.e.*, 39 days from mailing of notice). *See* ECF No. 151 at 21:17-18. Notice of that motion was provided in the class notice.

21. When counsel recovers a common fund that confers a "substantial benefit" on a class of beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Taylor v. Meadowbrook Meat Co., Inc.*, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016).

22. When "the settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" of calculating attorneys' fees awards. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

23. Under the percentage-of-the-fund method, it is appropriate to base the percentage calculation on the gross settlement amount. *See generally Boeing v. Gemert*, 444 U.S. 472, 479, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980); *Williams v. MGM-Pathe Commc'ns Co*., 129 F.3d 1026, 1027 (9th Cir. 1997). Indeed, "[w]here the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement." *Taylor v. Meadowbrook*

*Meat Co., Inc.*, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016)

24. The Court adopts the percentage-of-the-fund approach here and finds that the fee-and-expense amount is reasonable. The Ninth Circuit has stated that "25 percent of the fund [i]s the 'benchmark' award that should be given in common fund cases." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). That said, "the exact percentage varies depending on the facts of the case, and in 'most common fund cases, the award exceeds that benchmark.'" *Johnson v. General Mills, Inc.*, 2013 U.S. Dist. LEXIS 90338, at *20 (C.D. Cal. June 17, 2013) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). Thirty percent is within the "usual range." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). *See also In re Activision Sec. Litig*., 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (stating that "nearly all common fund awards range around 30%"). *See also Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d 373, 379 (9th Cir. 1995) (same). When the Court awards fees above or below the benchmark, the "record must indicate the Court's reasons for doing so." *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *44 (N.D. Cal. Jan. 26, 2007) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000)).

25. Courts diverge from the 25% benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Taylor v. Meadowbrook Meat Co., Inc.*, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016). Indeed, among the circumstances that the Ninth Circuit has considered relevant in assessing reasonableness of a percentage fee award are: (1) the results achieved; (2) the riskiness of prosecuting the litigation; (3) whether counsel obtained benefits for the Class above and beyond the cash settlement fund itself; and (4) the financial burden carried by Class Counsel in prosecuting the case on a contingency basis. *Vizcaino*, 290

F.3d 1043 at 1048-50. In this case, all of those factors favor a finding that an attorneys' fee award of up to 32% is reasonable. *See* ECF No. 159 at 6:10-10:15.

26. "When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *Bergman v. Thelen LLP*, 2016 WL 7178529, at *8, 2016 U.S. Dist. LEXIS 170861 (N.D. Cal. Dec. 9, 2016); *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *7, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 17, 2016) (same); *Taylor v. Meadowbrook Meat Co., Inc.*, 2016 WL 4916955, at *5, 2016 U.S. Dist. LEXIS 125895 (N.D. Cal. Sept. 15, 2016) (same). *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Pokorny v. Quixtar, Inc.*, 2013 U.S. Dist. LEXIS 100791, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig*., 2013 U.S. Dist. LEXIS 37286, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the cy pres method of distribution, and the injunctive relief").

27. Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *23, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)); *Taylor v. Meadowbrook Meat Co., Inc.*, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016).

28. This settlement confers substantial monetary benefits, including a First Tier Cash Pool of $2,000,000 (which will be fully distributed, as described in more detail below) and a Dance Fee Payment Pool of $1,000,000 (of which $370,000 had been claimed as of August 2, 2017, and the remainder of which, $630,000, will be available to be claimed for at least two years after the Judgment becomes final, *see* Settlement Agreement ¶ 48). The settlement also provides for a Second Tier Cash Pool of up to $1,000,000 (which was made available but not claimed).

29. This settlement also confers non-monetary benefits. Specifically, the settlement includes reforms to Defendants' business practices, including an enhanced offer of employee

status, described at ¶¶ 136-144 of the Settlement Agreement, as well as a pay guarantee described at ¶ 147 of the Settlement Agreement. The changes to the Defendants' business practices are estimated to confer benefits to class members in excess of $1,000,000.00. See Settlement Agreement ¶ 66; Declaration of Maria Montie (ECF No. 129). Defendants will be required to implement all the changed business practices, and confer upon Class Members the corresponding benefits associated with those changed business practices, even if the total monetary value of the corresponding benefits exceeds the Parties' estimates. *Id*. at ¶ 66 & n.3. The Court finds that the valuation of the settlement's non-monetary benefits at $1,000,000 is conservative and reasonable.

30. Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Service Awards correctly analyzes potential percentage-of-the-fund calculations as follows: "In this case, the Gross Settlement Value is $5,000,000. The requested fee award of $950,000 represents 19% of that amount. If one were to subtract the second tier cash pool of $1,000,000 from the Gross Settlement Amount, and calculated the requested fee award as a percentage of $4,000,000, the requested fee award of $950,000 would represent 23.75% of that amount. If one were to further subtract the value of the changed business practices (valued conservatively at $1,000,000), and calculated the requested fee award as a percentage of $3,000,000, the requested fee award of $950,000 would represent 31.67% of that amount." *See* ECF No. 159 at 6:3-9.

31. In light of the analysis set forth in the paragraphs above, the Court finds that the Gross Settlement Value may reasonably (and conservatively) be valued at **[$4,000,000 or $5,000,000]**. The requested fee award of $950,000 represents **[23.75% or 19%]** of that amount.

32. In terms of a lodestar cross-check, the attorneys' fees requested, $950,000, is about 88% of the lodestar amount of $1,078,324. *See* ECF No. 159 at 13:1-3. The Court finds that Class Counsel's hours and hourly rates are reasonable. The facts here would warrant a positive multiplier. The fact that the requested fee award results in a "negative multiplier" supports a finding that the requested percentage of the fund is reasonable and fair.

33. Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses that would typically be billed to paying clients in

non-contingency matters.); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Jefferson v. H&M Hennes & Mauritz, L.P.*, 2013 U.S. Dist. LEXIS 2875 at *9 (C.D. Cal. Jan. 7, 2013) (quoting 1 ALBA CONTE, ATTORNEY FEE AWARDS § 2:08 at 50-51). To date, Plaintiffs' counsel have advanced all costs incurred in this case. Plaintiffs' counsel's total incurred litigation expenses were $4,884.21, and do not include the modest, but real, expenses that will be incurred in the future. *See* ECF No. 159 at 13:1-3. These costs are reasonable.

**Payment to the Settlement Administrator**

34. The Court approves payment to Rust Consulting of $35,000 for its administration of the notice and settlement. That amount is $15,000 less than the Notice and Administration Fund of $50,000 that Defendants advanced. Therefore, pursuant to the Settlement Agreement, the sum of $15,000 of the Notice and Administration Fund shall revert to the Net Cash Payment Settlement Fund. *See* Settlement Agreement, ¶ 112(i) (Dkt 126 at ECF page 35:1-3).

**Enhancement Payments**

35. The Settlement Agreement gives the Court discretion to award enhancement payments to certain class members. *See* Settlement Agreement, ¶ 112(e) (ECF No. 126 at 33:5-14); Motion for Award of Attorneys' Fees and Costs and Service Awards (ECF No. 159 at 14:26-18:7). The requested enhancement payments to certain class members for their service and assistance to the Class, and in the case of Jane Roe 1 and Jane Roe 2, for broader releases, are warranted: To Jane Roe 1 and Jane Roe 2, in the amount of $25,000.00 each (including $5,000 each for their service, and $20,000 each for general releases); and to Jane Roe 3, Jane Roe 10, Jane Roe 11, Jane Roe 12, Jane Roe 13, and Jane Roe 22, in the amount of $3,500.00 each. *See* ECF No. 159 at 14:26-18:7.

**The *Cy Pres* Recipient**

36. The Settlement Agreement provides: "Should any amounts from the First Tier Cash Pool remain in the Escrow Account after sixty (60) days following the distribution of the

balance of the Cash Payments for the benefit of the Settlement Class as described above (e.g., should any Cash Payment checks go uncashed), all such unclaimed funds shall be paid to the St. James Infirmary, or if that entity is not approved by the Court, The Impact Fund (a public interest law non-profit organization) or another appropriate recipient as approved by the Court." *See* Settlement Agreement, ¶ 112(a).

37. "The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1307–08 (9th Cir. 1990)). "*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *See id.*

38. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id*. (quoting *Nachshin*, 663 F.3d at 1038). "A *cy pres* award . . . must not benefit a group too remote from the plaintiff class . . . ." *Id*. (quoting *Six Mexican Workers,* 904 F.2d at 1308).

39. Having considered the factors set forth in the case law cited above, the Court finds that **[St. James Infirmary OR The Impact Fund OR _________]** is an appropriate *cy pres* recipient in this case, and accordingly orders that unclaimed funds be paid to that organization as provided in paragraph 112(a) of the Settlement Agreement.

**Conclusion**

40. In accordance with the findings above, from the First Tier Cash Pool of $2,000,000, the Court orders an award of $950,000 in attorneys' fees and $4,884.21 in incurred litigation costs to The Tidrick Law Firm (to be distributed with Public Justice), enhancement payments to Jane Roe 1 and Jane Roe 2 in the amount of $25,000.00 each (including $5,000 each for their service, and $20,000 each for general releases), and to Jane Roe 3, Jane Roe 10, Jane Roe 11, Jane Roe 12, Jane Roe 13, and Jane Roe 22, in the amount of $3,500.00 each; $35,000 to

the settlement administrator, Rust Consulting; PAGA payments consisting of (a) $75,000 to the LWDA and (b) $25,000 distributed to Cash Payment Claimants and Dance Fee Payment Claimants in an equal amount to each Claimant, as specified in the Settlement Agreement ¶ 112(g); and the remainder, $839,115.79, to be paid on a *pro rata* basis to the Cash Payment Claimants who submitted Valid Claims for Cash Payments in proportion to the amount they received pursuant to the Plan of Allocation set forth in Paragraph 116 of the Settlement Agreement, as specified in the Settlement Agreement, ¶ 112(a).

41. The Dance Fee Payment Pool of $1,000,000, to the extent that it has not already been claimed, shall remain available to be claimed for at least two years after the Judgment becomes final, as provided in the Settlement Agreement. *See* Settlement Agreement ¶ 48.

42. The Settlement Administrator shall distribute the settlement funds as specified in in accordance with the Settlement Agreement.

43. Without further approval from the Court, the Parties are authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement, including all Exhibits thereto, as (i) shall be consistent in all material respects with this order and final Judgment and (ii) do not limit the rights of Settlement Class Members. By way of example only, the Parties are authorized to agree to treat late-submitted claims for Cash Payments as valid.

44. Except as otherwise provided by this order, the parties and objectors will bear their own costs and attorneys' fees.

45. The above-titled action is hereby dismissed, and the claims are released as provided in the Settlement Agreement. Without affecting the finality of this final order and judgment in any way, this Court retains jurisdiction over: (a) effectuating and implementing the Settlement Agreement and its terms; (b) supervising all aspects of the administration of the Settlement Agreement; (c) determining whether, in the event that an appeal is taken from any aspect of this final order and judgment, whether to require the appellant to post a bond or provide other security, and such other matters as the Court may order; (d) enforcing and administering the Settlement Agreement, including any releases executed in connection therewith, and the provisions of this final order and judgment; (e) adjudicating any disputes that arise under the

Settlement Agreement; and (f) any other matters related or ancillary to the foregoing.

46. The Court hereby enters judgment in accordance with the foregoing. This Judgment is a final judgment in the suit. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court expressly finds that there is no just reason for delay. This final order and judgment shall be deemed a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The Court directs Judgment and immediate entry by the Clerk of the Court. The Clerk shall close the file.

It is so ORDERED, ADJUDGED, AND DECREED.

DATE:__________________, 2017.

___________________________________
The Honorable Laurel Beeler
United States District Court