SHANNON LISS-RIORDAN (State Bar No. 310719)
sliss@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

Attorneys for Plaintiffs in Civil Action No.'s
16-cv-03371, 17-cv-00138, and 17-cv-05288

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROE, et al.<br><br>Plaintifs,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC, et al.,<br><br>Defendants.<br><br>---<br><br>NICOLE HUGHES, et al.<br><br>Plaintiffs,<br><br>v.<br><br>S.A.W. ENTERTAINMENT, LTD., et al.,<br><br>Defendants.<br><br>---<br><br>ELANA PERA, et al.<br><br>Plaintiffs,<br><br>v.<br><br>S.A.W. ENTERTAINMENT, LTD., et al.,<br><br>Defendants. | Civil Case No. 14-cv-03616-LB<br><br>Related Cases: 16-cv-03371-LB, 17-cv-00138-LB, 17-cv-05288-LB 17-cv-06971-LB, 19-cv-03960-LB<br><br>The Honorable Laurel Beeler<br>Date: March 24, 2022<br>Time: 9:30 a.m. |

POOHRAWN MEHRABAN,

Plaintiffs,

v.

BT California, LLC, et al.,

Defendants.

ELAINE GOMEZ-ORTEGA, et al.

Plaintiffs,

v.

DÉJÀ VU – SAN FRANCISCO, LLC, et al.,

Defendants.

JANE ROES 1 AND 2, et al.

Plaintiffs,

v.

DÉJÀ VU SERVICES, INC., et al.,

Defendants.

## I. INTRODUCTION

Before the Court is a motion for preliminary approval of a class action settlement of two related cases - Jane Roes 1-2 v. SFBSC Management, LLC, No. 3:14-cv-03616-LB ("Roe San Francisco") and Jane Roe 1 and 2 v. Deja Vu Services, Inc., et al., No. 19-cv-03960-LB ("Roe San Diego"). Previously, two separate class action settlements have been rejected in these cases. The Ninth Circuit rejected the proposed settlement in the Roe San Francisco action, which was presented by counsel as a five-million-dollar class action settlement. See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035 (9th Cir. 2019). The California Superior Court rejected the Roe San Diego settlement valued at $1.5 million. See Roe v. Deja vu Services, Inc., No. 37-2018-00028044, slip op. (Cal. Super. Ct. Nov. 30, 2018), attached hereto as Exhibit 1. Thus, the settlements that were previously rejected were touted as providing a combined $6.5 million benefit to the class members.

Following the decisions rejecting these settlements, the Roe San Francisco plaintiffs and Roe San Diego plaintiffs were given an additional ***two years*** to renegotiate a better deal, during which time Plaintiff Diana Tejada (one of the Plaintiffs in the Hughes Action) and other plaintiffs had their non-arbitrable wage claims stayed. Now after two years, the Roe San Francisco and Roe San Diego parties have presented a settlement that they value at "$4,500,000" plus an additional "$1,000,000 in enhanced employment benefits." Roe San Francisco, Dkt. 239 at p.1. On its face, this appears to be at least one million dollars less than the total consideration that the Defendants were willing to pay in the two prior settlements (both of which were rejected). As a result, the new combined settlement suffers from the same defects as the prior proposals. Preliminary approval should be denied, and the stay of the pending related cases should be lifted so that Plaintiff Tejada and others can pursue their claims that have been put on hold for more than two years.

## II. BACKGROUND

There have been many twists and turns in this litigation, but the most basic facts related to the proposed settlement are straightforward.

The Roe San Francisco case was filed in 2014. The Court denied the defendant's motion to compel arbitration. See Roe San Francisco, Dkt. 52. That decision was appealed to Ninth Circuit and the court affirmed. See Roes v. SFBSC Mgmt., LLC, 656 F. App'x 828 (9th Cir. 2016). Following the Ninth Circuit's decision, the Roe San Francisco plaintiffs entered into a proposed class action settlement by which they proposed to expand the scope of the release and add new defendants to the case who were already named as Defendants in the two other pending wage cases, Hughes and Pera. Defendants thereafter obtained a stay and an injunction of the Hughes and Pera matters while the Roe San Francisco approval process was completed.

The Roe San Francisco settlement was rejected by the Ninth Circuit on December 11, 2019. See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035 (9th Cir. 2019). The Roe San Francisco plaintiffs valued their settlement at five million dollars. See Roe San Francisco, Dkt. 239-2 at para. 4.

Even if the Roe San Francisco settlement had been approved, there remained thousands of dancers who worked at Defendants' related clubs in California *after the release period* in Roe San Francisco who still had viable and valuable wage claims that post-dated and fell outside of the class period of that case. The Hughes and Pera Plaintiffs had the first-filed claims covering this class. The state law wage claims of this group are particularly strong given that the California Supreme Court's issued its landmark decision in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903 (2018), in which it held that "employment status" for purposes of the California Labor Code is governed by the Massachusetts "ABC" test - widely recognized to be the most stringent test in the country.

Despite the pending Hughes and Pera matters, another group of lawyers filed the Roe San Diego matter on May 31, 2018 as a copycat action to Hughes and Pera for violations of the California Labor Code and the federal Fair Labor Standards Act (FLSA). Almost immediately after filing, plaintiffs' counsel for the new Roe San Diego plaintiffs informed the undersigned counsel in Hughes and Pera that the case had been resolved and that they intended to seek approval of a classwide settlement that would extinguish the Hughes and Pera claims that were being actively pursued in this District. On October 11, 2018, the Roe San Diego plaintiffs filed an

assented-to motion asking that the Superior Court approve a settlement that Defendants and the Roe San Diego counsel had negotiated that would provide Defendants a release of all state wage and hour claims of all dancers whose claims fell outside the Roe v. SFBSC release period (which encompassed the claims that the Hughes and Pera Plaintiffs had been pursuing in this Court for approximately two years) and sought to resolve all remaining claims in California for between 3% and 5% of their potential value. The settlement was valued at $1.5 million. On October 19, 2018, the Defendants also moved for an order compelling arbitration of the plaintiffs' claims in Roe San Diego.

On November 30, 2018, the Superior Court denied approval of the Roe San Diego settlement. See Exhibit 1. Defendants then pursued their motion to compel arbitration. On January 18, 2019, the Superior Court denied the motion to compel arbitration. See Roes v. Deja Vu Services, Inc., No. 37-2018-00028044-CU-OE-CTL, Minute Order at p. 3, (Cal. Super. Ct. Jan. 18, 2019), attached hereto as Exhibit 2.

The Roe San Diego Action was later removed to federal court and then transferred to the Northern District and related to Hughes, Pera, and Roe San Francisco in 2019.

Since the date that the cases were transferred and related here in the Northern District, neither the Roe San Francisco nor the Roe San Diego plaintiffs have taken a single step to actually litigate their claims before this Court, despite the fact that there are binding orders in each case denying the defendants' motions to compel arbitration. In that same time period, Plaintiff Diana Tejada in the Hughes case has sought to issue FLSA notice to others similarly situated and litigate the merits of her non-arbitrable state and federal wage claims (which the Court declined to compel to arbitration on May 9, 2019). See Hughes, Dkt 171. She has been prevented from doing so for more than two years while the Roe San Francisco and Roe San Diego parties purported to be negotiating improvements to their previously rejected settlements.

## III. THE *ROE* PARTIES' NEWLY PROPOSED, COMBINED SETTLEMENT

The Roe parties' newly proposed settlement covers approximately 8,400 dancers. At full participation, the settlement would pay an average share of $274 to each class member. This is significantly less than the average share proposed in the prior Roe San Francisco settlement, which

was rejected by the Ninth Circuit, and in which the low participation rate would have resulted in an average share of $1,079. See Roe v. SFBSC Mgmt., LLC, 2017 WL 4073809, at *6 (N.D. Cal. Sept. 14, 2017). This is also less than the average settlement share in the prior Roe San Diego settlement. See Exhibit 1 (order denying preliminary approval in Roe San Diego where amount per dancer was $303.07).

The settlement is comprised of $4,000,000 in cash, $500,000 in dance fee coupons, and an alleged $1,000,000 in illusory enhanced employee benefits to class members who continue to work at the club as employees.[1] For purposes of their proposed 35% fee award, the Roe San Francisco and Roe San Diego value the settlement at $5.5 million, thus seeking nearly half of the cash pool – or as much as 1,925,000 – in attorney's fees.[2]

Roe San Diego counsel explains that the "[p]otential exposure for the Settlement Class's claims could exceed $45.8 million" in the current combined cases. See Dkt. 239-1 at para. 111. However, in the previous Roe San Diego Superior Court action the claims of the Roe San Diego plaintiffs alone were valued at $32 million. See Ex. 1 (decision denying preliminary approval in Roe San Diego and describing $32,029,352.45 in potential damages). In the Roe San Francisco action, the potential recovery was estimated to be $116 million. See Roe v. SFBSC Mgmt., LLC, 2017 WL 4073809, at *10 (N.D. Cal. Sept. 14, 2017) (describing plaintiffs' methodology to arrive at their $116 classwide damages amount in Roe San Francisco). Specifically, Roe San Francisco counsel estimated at final approval that the minimum wage claims alone in that case were valued at $75.8 million. See Roe San Francisco, Dkt. 163-1 at para. 8 (Declaration of Tidrick). It is not clear how the Roe plaintiffs' combined potential damages in the prior two cases were at least $150

---

[1] The clubs unilaterally decided to convert all dancers to employees in November 2018 following the decision in Dynamex. It is not clear how the club's voluntary decision to change its business model approximately three years ago constitutes a benefit derived from the current settlement.

[2] As discussed above, the prior Roe San Francisco and Roe San Diego settlements were valued by the same parties at a combined $6.5 million.

million, while they now consider the potential recovery to be less than one-third of that amount.[3] Based on the Roe San Francisco and Roe San Diego plaintiffs' previous estimates of the value of their combine cases ($148 million), the current $4.5 million settlement consideration is 3% of the potential recovery to plaintiffs (before accounting for the requested 35% in attorney's fees).

## IV. PRELIMINARY APPROVAL SHOULD BE DENIED BECAUSE THE CURRENT SETTLEMENT SUFFERS FROM THE SAME DEFECTS AS THE TWO PREVIOUSLY REJECTED SETTLEMENTS

### A. The Settlement Provides Minimal Compensation for the Valuable Claims of Class Members

Just like the previously rejected Roe San Francisco and Roe San Diego settlements, the proposed relief here pales in comparison to what has been achieved in similar cases. See Newberg on Class Actions § 13:49 (5th ed.) ("In setting the value of particular outcomes, recoveries in similar or related cases that have gone to trial or reached settlement are a useful benchmark"). Similar cases throughout the country demonstrate that recovery here could potentially be substantial. Numerous courts have addressed whether exotic dancers are employees and "[n]early without exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." Hart v. Rick's Cabaret Int'l, Inc., 2013 WL 4822199, at *5 (S.D.N.Y. Sept. 10, 2013) (internal quotation omitted).[4] Under the Dynamex ABC test, exotic

---

[3] One issue is likely that the damages analysis in the recent filing fails to account for what is likely the strongest claim in the case -- the claim to recover house fees and stage fees, which are amounts that dancers paid out-of-pocket to work a shift at the clubs. This is often the strongest claim in litigation brought on behalf of dancers and it does not appear to be valued at all in the recent papers. See Hart v. Rick's Cabaret Int'l, Inc., 60 F. Supp. 3d 447, 478 (S.D.N.Y. 2014) (permitting recovery of all fees paid by dancers to club). The house fees paid by dancers in this case were substantial. See Hughes Dkt. 31-1 at para. 13 (describing house fees between $40 to $150). Yet this still does not explain how the projected $75.8 million in minimum wage damages in Roe San Francisco is ignored in the most recent filing.

[4] Other cases holding exotic dancers to be employees include: McFeeley v. Jackson St. Entm't, LLC, 825 F.3d 235, 244 (4th Cir. 2016); Reich v. Circle C. Invest., Inc., 998 F.2d 324, 329 (5th Cir.1993); Lester v. Agment LLC, 2016 WL 1588654, at *7 (N.D. Ohio Apr. 20, 2016); Butler v. PP & G, Inc., 2013 WL 5964476 (D. Md. Nov. 7, 2013); Thornton v. Crazy Horse, Inc., 2012 WL 2175753 (D. Alaska June 14, 2012); Clincy v. Galardi S. Enters., Inc., 808 F. Supp. 2d 1326, 1343 (N.D. Ga. 2011); Thompson v. Linda and A. Inc., 779 F. Supp. 2d 139, 151 (D.D.C. 2011)); Morse v. Mer Corp., 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010); Harrell v.

dancers have been held to be employees of the clubs at which they performed. See Johnson v. VCG-IS, LLC, No. 30-2015-00802813 (Super Ct. Cal. July 18, 2018) (attached hereto as Exhibit 3).[5] In their prior pleadings, the Hughes Plaintiffs have fully described the substantial settlements, arbitration awards, and jury verdicts that have been obtained by dancers pursuing wage claims, where settlement payments and damages awards often amount to tens of thousands of dollars per person. See Roe San Francisco, Dkt. 131 at para. 25-26. The average share at full participation in this case is $274. See Dkt. 239 at p. 20. This is less than the average share projected in the prior San Francisco settlement and Roe San Diego settlements, both of which were rejected. See Exhibit 1 (order denying preliminary approval in Roe San Diego where amount per dancer was $303.07); see also Roe v. SFBSC Mgmt., LLC, 2017 WL 4073809, at *6 (N.D. Cal. Sept. 14, 2017) (average payout in Roe San Francisco was $1,079).

In order to justify this dismal recovery, the parties cite to several nonexistent risks. First, they state that Dynamex may not be retroactive, an argument that is a nonstarter. See Vazquez v. Jan-Pro Franchising Int'l, Inc., 10 Cal. 5th 944, 478 P.3d 1207 (2021) (holding that Dynamex applies retroactively). Next the parties reference the possibility of individual arbitration. See Dkt. 239 at p. 27. This ignores the fact that the Defendants' motions to compel arbitration in Roe San Francisco and Roe San Diego have already been denied. Moreover, the damages "offset" argument that Defendants intended to assert has been rejected in countless cases. See, e.g., Hart v.

---

Diamond A Entm't, Inc., 992 F. Supp. 1343, 1348 (M.D. Fla. 1997); Reich v. Priba Corp., 890 F. Supp. 586, 594 (N.D. Tex. 1995); Martin v. Priba Corp., 1992 WL 486911, at *5 (N.D. Tex. Nov. 6 1992); Shaw v. The Set Enterprises, Inc., No. 15-62152 (S.D. Fla. Mar. 17, 2017); Lewis v. L.B. Dynasty, 411 S.C. 637, 639, 770 S.E.2d 393, 394 (2015); Terry v. Sapphire Gentlemen's Club, 336 P.3d 951 (Nev. 2014); Monteiro, 29 Mass. L. Rptr. 203 (Super. Ct. Nov. 23, 2011); Chaves v. King Arthur's Lounge, 2009 WL 3188948 (Mass. Super. July 30, 2009); Cusick v. The 15 Lagrange Street Corp. d/b/a The Glass Slipper, Suffolk Civ. A. No. 10-4127 (Mass. Super. Aug. 8, 2013); Cruz v. Dartmouth Clubs, Inc. d/b/a King's Inn ("King's Inn"), Bristol Civ. A. No. 10-1042 (Mass. Super. Aug. 16, 2012); Cruz v. Manlo Enterprises, Inc. d/b/a/ Mario's Showplace, Worcester Civ. A. 10-1931 (Mass. Super. June 9, 2011); Jeffcoat v. Alaska Dep't of Labor, 732 P.2d 1073 (Alaska 1987).

[5] The Johnson case – which faced the same COVID-related challenges and obstacles as the instant matter – resolved for a settlement fund of $2,500,000 in cash and covered only a single club. Here, the settlement pays only slightly more and covers dancers at more than twenty clubs.

Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 932 (S.D.N.Y. 2013); Thornton v. Crazy Horse, Inc., 2012 WL 2175753, at *1 (D. Alaska June 14, 2012).

None of these "risks" justify such a significant discount and a recovery of (at most) 3% of the potential damages and none of the defenses or alleged "risks" are unique to this case (as opposed to the dozens of other dancer settlements where class members achieved far greater success).

**B. The Settlement Continues to Utilize Dance Fee Coupons**

The prior Roe San Francisco settlement provided a portion of the settlement benefits in the form of dance fee coupons. On appeal, the Ninth Circuit expressed serious doubts about the propriety of this type of relief for a number of reasons, among them that the coupons required "class members to do business with defendants again in order to redeem the dance fee payments." Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1051-53 (9th Cir. 2019). Nevertheless, the same type of relief is provided in the current settlement. Just as in the prior case, the parties fail to explain how these future wages paid to dancers for future services constitute a tangible settlement benefit to class members. Counsel for the Roe San Diego plaintiffs has already entered into two similar settlements involving these Defendants that provided for relief in the form of dance fee coupons. See Doe v. Cin-Lan, Inc., No. 08-12719, Dkt.189-2 (D. Mich.) (class settlement of Roe San Diego counsel against these same defendants providing a purported $9,000,000 in dance fee coupons); Does 1-2 v. Déjà vu Services, Inc., No. 16-10877 (D. Mich.) (class settlement of Roe San Diego counsel involving the same clubs providing a purported $4,500,000 in dance fee coupons to class members). Thus, Roe San Diego counsel could easily come forward with complete information about how the dance fee coupon system functioned in those prior cases, the value of dance fee coupons that were redeemed and unredeemed, and all other available data regarding the use of the coupons. They have failed to do so, likely because - as the Ninth Circuit anticipated - the system is nothing more than a sham.

**C. The Settlement Purports to Provide Non-Monetary Benefits Based on the Clubs' Voluntary Decision to Reclassify Dancers as Employees**

Roe San Francisco and Roe San Diego plaintiffs purport to have negotiated an employee model that the defendant clubs will adopt for twelve-months following settlement approval, which they value at precisely $1 million.[6] However, there is nothing new to this employee model. In November 2018, the defendant clubs converted all dancers to employees. Given that this policy was unilaterally implemented by Defendants following the Dynamex decision to comply with the law three years ago, there is no "value" provided by settlement terms by which the club merely commits to its preferred business practices for another year. See Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1080 (9th Cir. 2017) (holding that non-monetary relief in class settlement was "of no real value," because the defendant had chosen to adopt the business practices "for its own business reasons (presumably to avoid further litigation risk), not because of any court- or settlement-imposed obligation."). The same is true here with the club's purported conversion of entertainers to employees.

According to the Ninth Circuit, the parties must explain "why the value of the injunctive relief's benefits to individual class members [is] readily quantifiable and worth $1 million." Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1056 (9th Cir. 2019); see also Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir. 2003). Just as in the prior Roe settlements, the parties have failed to offer such an explanation.

## IV. CONCLUSION

The Court should deny preliminary approval of the class action settlement because the proposed settlement is neither fair, reasonable, nor adequate, nor is it likely to warrant final approval. The proposed settlement does not cure the major defects of the prior settlements that

---

[6] Coincidentally, the "employee option" negotiated as part of the first Roe San Francisco settlement was also valued at exactly $1 million, even though it covered fewer dancers and fewer clubs and contained different payments terms. The Ninth Circuit looked unfavorably upon the purported value of this portion of the settlement. See Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d at 1055-56. As the Ninth Circuit explained, this type of overstated non-monetary relief is often used as a tool to obtain a larger fee award for plaintiffs' counsel without providing any corresponding benefit to the class. See id.

were already rejected and the settlement is an outlier in this field because it provides minimal relief to class members for their release of valuable wage claims.

Dated: February 25, 2022

Respectfully submitted,
DIANA TEJADA, et al., on behalf of themselves and all other similarly situated,

By their attorneys,

*/s/ Shannon Liss-Riordan*

Shannon Liss-Riordan (State Bar No. 310719)
sliss@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by electronic filing on February 25, 2022, on all counsel of record.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riorda