**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 11/30/2018 TIME: 01:30:00 PM DEPT: C-72

JUDICIAL OFFICER PRESIDING: Timothy Taylor
CLERK: Kelly Breckenridge
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: O. Godoy

CASE NO: **37-2018-00028044-CU-OE-CTL** CASE INIT.DATE: 05/31/2018
CASE TITLE: **ROE vs Deja Vu Services Inc [EFILE]**
CASE CATEGORY: Civil - Unlimited CASE TYPE: Other employment

---

**EVENT TYPE**: Civil Case Management Conference

---

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: Sarah Murphy, Penny Nunez, Gypsy Vidal, Angelynn Hermes, Elana Pera, Nicole Hughes, Poohrawn Mehraban
CAUSAL DOCUMENT/DATE FILED: Motion for Leave to Intervene, 11/01/2018

---

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: Jane Roe 2, Jane Roe 1
CAUSAL DOCUMENT/DATE FILED: Motion for Approval of Class Settlement, 10/11/2018

---

**APPEARANCES**
Jason J Thompson, counsel, present for Plaintiff(s).
Tammara N Bokmuller, counsel, present for Defendant(s).
Shannon Liss-Riordan, counsel, is present for Interested Party Elena Pera.

---

The Court hears oral argument and CONFIRMS (Motion for Leave to Intervene is NOT confirmed) the tentative ruling as follows:

**Rulings on Motions for Leave to Intervene and for Preliminary Approval of Class Action Settlement**

*Roes v. Deja Vu*, Case No. 2018-28044

November 30, 2018, 1:30 p.m., Dept. 72

**1. <u>Overview and Procedural Posture</u>.**

This is an employment action brought on behalf of a class of exotic nude dancers at the defendant topless bars throughout California. Plaintiffs assert they were misclassified as independent contractors instead of employees, and that consequently defendants have violated the applicable wage and hour laws. ROA 1, paragraph 3. Plaintiffs also assert that defendants engaged in unlawful tip-sharing arrangements with the class. *Ibid*. The eight count complaint was filed in May of 2018. There are several other lawsuits involving the same parties and similar issues in other jurisdictions; these other cases are in various procedural postures (including two cases on appeal to the 9th Circuit).

The proposed class reps and the defendants now seek preliminary approval of a class action settlement. ROA 26-32. The motion was initially set for hearing on November 2, 2018. No timely opposition to the motion was filed. On October 30, 2018, the court published a tentative ruling proposing to grant preliminary approval of the settlement. ROA 36. On November 1, 2018, seven putative class members involved in the aforementioned related litigation filed a motion for leave to intervene, set for today; they also filed a very tardy opposition to the motion for preliminary approval. ROA 38-42, 48-50.

Proposed intervenors argue that the settlement should not be approved because the settling parties have not provided adequate information about the value of the claims; the settlement is unreasonably small compared to that achieved in other cases; there is the appearance of collusion; and the non-monetary relief afforded the proposed class (reclassification as employees going forward) is not attributable to this settlement. Chiefly because the tardiness of the proposed intervenors' arrival on the scene did not allow the settling parties to address these contentions, the court continued the hearing on preliminary approval. November 2, 2018 minute order, ROA 43. The court also allowed plaintiffs to file an amended complaint. *Ibid*, p. 6. An amended complaint is not reflected in the ROA. The court directs class counsel to bring an ink original of the first amended complaint (FAC) attached to the motion to the November 30, 2018 hearing so that it may handed up and ordered filed. The FAC will be deemed filed and served on all appearing parties as of November 30, 2018.

Reply papers were then filed with respect to the motion for preliminary approval. ROA 79-88. Opposition and reply papers were filed with respect to the motion for leave to intervene. ROA 52-54, 63-71, 93-94. The court has reviewed the papers.

The case is also set for a continued CMC. ROA 45.

**2. Applicable Standards for Intervention.**

Many cases set forth the standards to be applied by courts in ruling on intervention requests. *See e.g., Lindelli v. Town of Anselmo* (2006) 139 Cal.App.4th 1499, 1504 ("A third party may intervene (1) where the proposed intervener has a direct interest, (2) intervention will not enlarge the issues in the litigation, and (3) the reasons for the intervention outweigh any opposition by the present parties. [Citation.] 'The purpose of allowing intervention is to promote fairness by involving all parties potentially affected by a judgment.' ") *See also* Code of Civil Procedure § 387.

A copy of the proposed complaint in intervention or answer in intervention should be attached to the motion for leave to intervene. *See e.g.*, Weil & Brown et al., *Cal. Prac. Guide: Civ. Pro. Before Trial* (The Rutter Group 2018), § 2:441 ("A nonparty may seek leave to intervene by ex parte application to the court ...; or by a regular noticed motion served on the existing parties. In either event, copies of the proposed complaint in intervention or answer in intervention ... should be attached to the application.")

**3. Applicable Standards for Class Certification.**

"Under Code of Civil Procedure section 382, a class action is permitted 'when the question is one of a common or general interest, or many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. . . .' Class certification requires both an ascertainable class and a well-defined community of interest among class members." (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575.) " 'The "community of interest" requirement embodies three factors: (1) predominant questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Ibid.*)

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. . . . [I]n the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation].' [Citation.] Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 (*Linder*).

"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 80 ["Under the abuse of discretion standard, 'a reviewing court should not disturb the exercise of a trial court's discretion unless it appears there has been a miscarriage of justice.' "].

No better statement of the principles guiding class certification can be found than the one made by a unanimous Supreme Court in May of 2014 in *Duran v. U.S. Bank*:

a. *Predominance of Common Issues*

"A class action may be maintained if there is an ascertainable class and a well-defined community of interest among the class members. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 (*Washington Mutual*); see Code Civ. Proc., § 382.) As part of the community of interest requirement, the party seeking certification must show that issues of law or fact common to the class predominate. (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)

"We have observed that the ultimate question for predominance is whether the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants. (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238; see *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104-1105, 1108.) ―The answer hinges on whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (*Sav–On*, [*supra*, 34 Cal.4th] at p. 327.).

"As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.] (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021-1022 (*Brinker*); see also *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809, 815.) However, we have cautioned that class treatment is not appropriate if every member of the alleged class would be required to litigate numerous and substantial questions

determining his individual right to recover following the class judgment on common issues. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459.)

"The granting of class certification thus requires a determination that group, rather than individual, issues predominate. Such a finding, however, does not preclude the consideration of individual issues at trial when those issues legitimately touch upon relevant aspects of the case being litigated.

b. *Manageability of Individual Issues*

"Although predominance of common issues is often a major factor in a certification analysis, it is not the only consideration. In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently. (*Washington Mutual*, *supra*, 24 Cal.4th at pp. 922-923.) [W]hether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues. [Citation.] (*Brinker*, *supra*, 53 Cal.4th at p. 1054 (conc. opn. of Werdegar, J.).) In wage and hour cases where a party seeks class certification based on allegations that the employer consistently imposed a uniform policy or de facto practice on class members, the party must still demonstrate that the illegal effects of this conduct can be proven efficiently and manageably within a class setting. (*Brinker*, at p. 1033; *Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 989.)

"After a class has been certified, the court's obligation to manage individual issues does not disappear. [O]nce the issues common to the class have been tried, and assuming some individual issues remain, each plaintiff must still by some means prove up his or her claim, allowing the defendant an opportunity to contest each individual claim on any ground not resolved in the trial of common issues. (*Johnson v. Ford Motor Co.* (2005) 35 Cal.4th 1191, 1210.) In *Sav-On*, *supra*, 34 Cal. 4th at page 332, we upheld the certification of an overtime class action even though the defendant complained that calculation of each class member's recovery would likely 'degenerate into a multitude of mini-trials[.]' There, we found substantial evidence of common issues based on class members' allegations that they were all required to work overtime and perform nonexempt tasks pursuant to uniform company policies and practices. (*Id*. at pp. 327-328.) We upheld the trial court's certification order even as we acknowledged that individualized proof of class members' nonexempt status and overtime amounts might ultimately be required. (*Id*. at pp. 332-334.) In so doing, we stressed that ―[i]ndividual issues do not render class certification inappropriate *so long as* such issues may effectively be managed." (*Id*. at p. 334, italics added.)

"Trial courts must pay careful attention to manageability when deciding whether to certify a class action. In considering whether a class action is a superior device for resolving a controversy, the manageability of individual issues is just as important as the existence of common questions uniting the proposed class. If the court makes a reasoned, informed decision about manageability at the certification stage, the litigants can plan accordingly and the court will have less need to intervene later to control the proceedings.

"Trial courts also have the obligation to decertify a class action if individual issues prove unmanageable. (*Sav-On*, *supra*, 34 Cal.4th at p. 335; *Washington Mutual*, *supra*, 24 Cal.4th at p. 927.) In the context of overtime class actions, some courts have decertified when individual issues related to an exemption defense threaten to overwhelm the litigation. For example, in *Walsh v. IKON Office Solutions, Inc.*, *supra*, 148 Cal.App.4th at pages 1445-1448, the court certified an overtime class action involving the outside salesperson exemption. It later decertified the class when discovery revealed that the circumstances of each class member's employment differed significantly. The Court of Appeal affirmed this ruling, noting

that differences in time spent on sales activities and work outside the office meant that adjudication of the exemption would require individual hearings on liability and damages. (*Id*. at p. 1456.) Similarly, *Keller v. Tuesday Morning, Inc.* (2009) 179 Cal.App.4th 1389 upheld the decertification of an overtime class action brought by retail store managers. Although the trial court initially certified a class based on our opinion in *Sav-On*, two years later it determined that individual inquiries concerning how managers spent their time would overwhelm the issues susceptible to classwide proof. (*Keller*, at p. 1399.)"

*Duran v. U.S. Bank* (2014) 59 Cal.4th 1, 28-30.

**4. <u>Standards for Analysis of Class Settlement</u>.**

There are numerous cases suggesting judicial approaches to approval of class action settlements, including *In re Microsoft I-V Cases* (2006) 135 Cal.App.4th 706, 723; *Dunk v. Ford Motor Co*. (1996) 48 Cal.App.4th 1794, 1801; *Wershba v. Apple Computer*, (2001) 91 Cal.App.4th 224, 240; and *Kullar v. Foot Locker Retail, Inc*. (2008) 168 Cal.App.4th 116.

Under these cases, the factors considered by the court include:

- Strength of Plaintiff's case. This is the most important factor.
- Expense associated with taking the case to trial, *i.e.,* the avoided cost of further litigation.
- Amount or value offered in settlement.
- Extent of discovery completed and state of proceedings.
- Experience and views of counsel.
- Presence of a governmental participant.
- Reaction of class members to proposed settlement.

Some appellate courts are automatically suspicious of settlements reached without extensive and expensive formal discovery. *See, e.g. Molski v. Atlantic Richfield* (9th Cir. 2003) 318 F.3d 937. This court does not share that view.

Under Labor Code section 2699(l)(2), the court must "review and approve any settlement of any civil action pursuant to this part." The criteria for review and approval is not well developed in the California case law. There are some federal district court cases that are not particularly helpful.

**5. <u>Discussion of Foregoing Factors Based on Showing Contained in Moving Papers</u>.**

A. <u>Strength of Case</u>: The Supreme Court's recent adoption of the so-called ABC test [*Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, *reh'g denied* (June 20, 2018)] certainly suggests this is potentially a case of some merit. Note, however, the limitations on *Dynamex* suggested in Justice Dato's thoughtful decision in *Garcia v. Border Transportation Group* (October 22, 2018) 28 Cal.App.5th 558. And, defendants have claimed the ABC test cannot be used retroactively. Plaintiffs projected that the total damages for the Settlement Class was approximately $32,029,352.45 ($5,522.30 per dancer x 5800 Class Members), if plaintiffs were successful at trial. Accordingly, the Settlement Fund represents approximately 4 to 5% of the full verdict value of the claims being released. On the other hand, there is no guarantee the case would ultimately be certified as a class action,* and certainly no guarantee of complete success on all claims at trial. The court is keenly aware of an immutable fact of civil litigation: the essence of a settlement is compromise - the "yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242. Yet a settlement in the low single digit range ($1.5 million vs. $32 million) at a minimum serves to focus attention on the

non-monetary aspects of the case. Of this more below.

B. Avoided Expenses and Other Avoided Risks: The court can well imagine at least $100,000.00 being spent by plaintiffs' counsel getting the case teed up for a class certification motion, and potentially much more (particularly now that there is a struggle for the hearts and minds of the class). In addition, defendants have filed a motion to compel arbitration (ROA 89-92), representing another hurdle for plaintiffs.

C. Amount Offered in Settlement/Settlement Fund:

Gross Settlement: The gross settlement amount is $1.5 million, non-reversionary. In addition, defendants agree to convert all class members to regular employee status. Whether this agreement came as the result of this action being filed, or whether something else was the catalyst, is at present insufficiently developed in the moving papers. The Krontz Declaration (ROA 83), offered in reply, does not address the chronology of the decision-making process with respect to conversion. The Marlin Declaration (ROA 85), also offered in reply, devotes exactly one sentence to this subject. In addition, the value of this change in business practice is not sufficiently developed in the moving papers. The Thompson Declaration (ROA 27) is quite explicit in this regard: at paragraph 25, he states that the "cost to convert" was detailed by defendants' CPA "and can be addressed in great detail if necessary." It *is* necessary. Also necessary is further development (by reference to case law and as a matter of economic theory) of whether and to what extent this cost is properly regarded as part of the consideration offered in settlement of this case. The Cohen declaration (ROA 86) does develop some of these areas – but of course this was offed in reply, and thus the opposing parties did not have the chance to meet these factual assertions. As the court held in the summary judgment context in *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316, consideration of evidence offered for the first time in a reply violates the non-moving party's right to know "what issues it was to meet in order to oppose the motion." It is noteworthy that the same rule applies in federal court, *see Zamani v. Carnes* (9th Cir. 2007) 491 F.3d 990, 997 ("the district court need not consider arguments raised for the first time in a reply brief"), and in the courts of appeal, *see American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 ("[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"); *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 (" '[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' ").

Net settlement: In the neighborhood of $900,000. The settlement agreement contemplates a detailed allocation methodology. Counsel contend the average payout will be $303.07.

Class size: approx. 5800

Class period: Dancers who worked from April 15, 2017 to present if they worked in a San Francisco club, or from February 8, 2017 to the present if they worked in a club located in a California city other than San Francisco.

Attorneys' fees, litigation costs, costs of administration: To be determined by future motion, not to exceed $500,000.00.

Class rep incentive payment: $20,000.00, consisting of two components for each of the two class representatives.

D. Extent of Discovery: Formal and informal discovery in the prior litigation involving the same parties and similar claims. Extensive document production and depositions, although none in this case.

E. Experience and Views of Counsel: Counsel are quite experienced with dancer/FLSA litigation in particular, and with class action litigation in particular. Counsel recommend the settlement. It appeared to the court when it drafted the initial tentative ruling an objection to the settlement was anticipated, and this has now come to pass.

F. Presence of a governmental participant: Not really a factor here. LWDA did nothing to assist these aggrieved workers. Nevertheless, LWDA would receive a check in the amount of $15,000.00 (75% of the $20,000.00 settlement allocated to the PAGA claims).

G. Reaction of class members to proposed settlement: This, of course, will not be fully known until notice of the proposed settlement has been given to the class. But we know for certain that at least Ms. Liss-Riordan's clients will object.

H. Form of notice. First class US Mail, email, website, and posting at each "club."

**6. Ruling on Intervention.**

The motion for leave to file a complaint in intervention is granted. (This ruling is NOT confirmed.)

The proposed intervenors make a sufficient showing for permissive intervention under Code of Civil Procedure section 387. They have a direct and immediate interest in the outcome given that they contend they are members of the proposed class and the proposed settlement will extinguish their wage and PAGA claims. Also, assuming the proposed intervenors worked outside the settlement class period (in 2015 and 2016) as contended by the opposition, they appear to be members of the putative class pled in the complaint. *See* complaint, paragraph 85 (FLSA Collective: "All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date three years before the filing of this action"); *see also* complaint, paragraph 87 (California Class: "All individuals who have worked in California for Defendant(s) as an exotic dancer at any time on or after the date four years before the filing of this action.") Further, they contend that they do not plan to assert any new claims in this litigation. In addition, they contend that their interests will not be adequately represented by plaintiffs and their counsel in this case. Moreover, intervention allows the proposed intervenors to have standing to appeal in the event their objections to the court's decisions cause them to be aggrieved.

Moving counsel must bring an ink original of the complaint in intervention attached to the motion to the November 30, 2018 hearing so that it may handed up and ordered filed. It will be deemed filed and served on all appearing parties as of November 30, 2018.

**7. Ruling on Motion for Preliminary Approval of Class Action Settlement.**

The motion for preliminary approval is denied without prejudice. Given the small percentage recovery referenced in part 5A and part 5C above, and the lack of detail regarding the non-monetary aspects of the settlement, the court cannot say today that it is likely that if notice to the class is given the settlement will ultimately be approved. As proposed, the average class member gets $303.07 plus a status change she may be entitled to anyway under the law, while the class reps get up to $20,000.00 and the lawyers get up to $500,000.00. If the court is going to approve a settlement with these basic facts, there will

have to be an enhanced showing. The court is also eager to avoid the confusion which may ensue if class notice is ordered today, only to be superseded later. The court is not without experience in approving class settlements over objection where the showing of benefit to the class is thorough and complete. *See Lockabey v. American Honda,* Case No. 2010-00087755. Nor is the court a rubber stamp for every settlement that is brought into Dept. 72 (even when unopposed). *See Corona v. Permatex*, Case No. 2017-42923. Here, the court discerns the need for additional work before notice to the class is contemplated.

**8. CMC.**

The case is also set for a continued CMC. ROA 45. The court will set a date for a class certification hearing, probably next summer. Counsel must be prepared to assist the court in this regard.

**IT IS SO ORDERED.**

*The Krontz and Marlin declarations (ROA 83 and 85) are suggestive of significant individualized issues.

---

The Court requests further briefing on the Motion for Leave to Intervene. Briefs due by 12/21/18, not to exceed 10 pages.

Civil Case Management Conference is continued pursuant to Court's motion to 10/25/2019 at 01:30PM before Judge Timothy Taylor.

The Motion Hearing to Certify/Decertify Class Action is scheduled for 10/25/2019 at 01:30PM before Judge Timothy Taylor.

Judge Timothy Taylor