THE TIDRICK LAW FIRM LLP
STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 788-5100
Facsimile: (510) 291-3226
E-mail: sgt@tidricklaw.com
E-mail: jby@tidricklaw.com

Jason J. Thompson, Esq. (*Pro Hac Vice*)
jthompson@sommerspc.com
SOMMERS SCHWARTZ, PC
One Town Square, Suite 1700
Southfield, MI 48076
Telephone: 248-784-6613
Facsimile: 248-936-2143

*Attorneys for Plaintiffs and the Putative Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE ROES 1-2 *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SFBSC MANAGEMENT, LLC, *et al.*,<br><br>Defendants.<br><br>---<br><br>JANE ROES 1-2 *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DÉJÀ VU SERVICES, INC., *et al.*,<br><br>Defendants. | Civil Case No. 14-cv-03616-LB<br><br>Related Cases:<br>16-cv-03371-LB<br>17-cv-00138-LB<br>17-cv-05288-LB<br>17-cv-06971-LB<br>19-cv-03960-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Laurel Beeler<br><br>Date: November 17, 2022<br>Time: 9:30 A.M.<br>Courtroom: Courtroom C, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, California |

## TABLE OF CONTENTS


| | | |
|---|---|---|
| NOTICE OF MOTION AND MOTION | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 2 |
| I. | Introduction | 2 |
| II. | Nature of The Case and Procedural History, and Summary of Key Terms of The Settlement Agreement | 2 |
| III. | Key Facts Since Preliminary Approval | 2 |
| | A. Notice Was Sent to the Settlement Class | 2 |
| | B. Online Posting of the Settlement Agreement and Operative Complaints | 4 |
| | C. Other Online Postings | 4 |
| | D. Positive Response by Settlement Class Members | 4 |
| IV. | Legal Standards for Certification of Settlement Class and Final Approval of Class Settlement | 4 |
| | A. Class Claims Settled Under Rule 23 | 4 |
| | 1. Criteria | 4 |
| | 2. Procedure | 5 |
| | B. Standards for Class Settlement of FLSA Claims | 5 |
| V. | The Court Should Grant Final Approval | 6 |
| | A. Conditional Certification of the Class for Settlement Purposes Is Warranted | 6 |
| | B. The Proposed Settlement Is Fair, Reasonable, and Adequate | 6 |
| | 1. The Court Already Granted Preliminary Approval | 6 |
| | 2. The Class Supports the Settlement | 7 |
| | 3. All Other Relevant Factors Also Support Final Approval | 8 |
| VI. | The PAGA Provisions Are Reasonable | 17 |
| VII. | Conclusion | 17 |

## TABLE OF AUTHORITIES


**CASES** **PAGE(S)**

*Alberto* v. *GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ........ 4, 5

*Ali v. U.S.A. Cab Ltd*., 176 Cal. App. 4th 1333 (2009) ........ 11

*Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591, 117 S. Ct. 2231 (1997) ........ 5

*Browning v. Yahoo! Inc.*, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........ 16

*Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ........ 11, 12, 14

*Carter v. Figueroa Grp., Inc.*, 2013 WL 5945725 (Cal. Ct. App. Nov. 7, 2013) ........ 11

*Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) ........ 7

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ........ 8

*City of Detroit* v. *Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) ........ 13, 15

*Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ........ 4, 5

*Collins v. Barney's Barn, Inc.*, 2013 WL 1668984 (E.D. Ark. Apr. 17, 2013) ........ 10

*Corson v. Toyota Motor Sales U.S.A.*, 2016 U.S. Dist. LEXIS 46757 (C.D. Cal. Apr. 4, 2016) ........ 7

*David v. Bankers Life & Cas. Co.*, 2015 WL 3994975 (W.D. Wash. June 30, 2015) ........ 10

*DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995) ........ 8

*Doe v. Deja Vu Servs.*, 2017 U.S. Dist. LEXIS 18369 (E.D. Mich. Feb. 9, 2017) ........ 14

*Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101 (E.D. Mich. June 19, 2017) ........ 14

*Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181 (S.D.N.Y. 2010) ........ 11

*Elliott v. Sperry Rand Corp.*, 680 F.2d 1225 (8th Cir. 1982) .......... 8

*Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) .......... 17

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .......... 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......... 5

*Hilborn v. Prime Time Club, Inc.*, 2012 WL 9187581 (E.D. Ark. July 12, 2012) .......... 12

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .......... 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013) .......... 15

*In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .......... 15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) .......... 7, 8

*Linney* v. *Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 1998). .......... 13

*Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) .......... 12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .......... 6

*Marlar v United States*, 151 F.3d 962 (9th Cir. 1998) .......... 12

*Matson v. 7455, Inc.*, 2000 WL 1132110 (D. Or. Jan. 14, 2000) .......... 12

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635 (N.D. Cal. Dec. 19, 2012) .......... 6

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) .......... 7

*Nikmanesh v. Wal-Mart Stores Inc.*, 2016 WL 6236446 (C.D. Cal. Oct. 17, 2016) .......... 17

*Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 688 F.2d 615 (9th Cir. 1982) .......... *passim*

*Petrovic v. AMOCO Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ........ 8

*Reed v. 1-800 Contacts, Inc.*,
2014 U.S. Dist. LEXIS 255, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ........ 15

*Shvager v. ViaSat, Inc.*,
2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) ........ 16

*Staton* v. *Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 5

*Stevens v. Safeway Inc.,*
2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ........ 6

*Stoetzner v. U.S. Steel Corp*.,
897 F.2d 115 (3d Cir. 1990) ........ 8

*Strube v. Am. Equity Investment Life Ins. Co*.,
226 F.R.D. 688 (M.D. Fla. 2005) ........ 15

*Thurman v. Bayshore Transit Mgmt., Inc.*,
203 Cal. App. 4th 1112 (2012). ........ 17

*Tijerino v. Stetson Desert Project LLC*,
2017 U.S. Dist. LEXIS 150438 (D. Ariz. June 21, 2017) ........ 10, 11

*Trauth v. Spearmint Rhino Cos. Worldwide*,
2012 U.S. Dist. LEXIS 144816 (C.D. Cal. Oct. 5, 2012) ........ 14

*Van Bronkhorst* v. *Safeco Corp.,*
529 F.2d 943 (9th Cir. 1976) ........ 10

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) ........ 8

*Viceral v. Mistras Group, Inc.*,
2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ........ 15, 17

*Williams v. Brinderson Constructors, Inc.*,
2017 WL 490901 (C.D. Cal. Feb. 6, 2017) ........ 17

*Young v. Katz,*
447 F .2d 431 (5th Cir. 1971) ........ 10

*Yue Zhou v. Wang's Rest.,*
2007 U.S. Dist. LEXIS 60683 (N.D. Cal. Aug. 8, 2007) ........ 6

*ZB, N.A. v. Superior Ct.*,
8 Cal. 5th 175, 448 P.3d 239 (2019) ........................................................................... ... 17

STATUTES AND REGULATIONS

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") .......................................... 17

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) .................................................. *passim*

RULES

Fed. R. Civ. Proc. 23.......................................................................................................... 4, 5

TREATISES

MANUAL FOR COMPLEX LITIGATION ........................................................................... 5, 7

NEWBERG ON CLASS ACTIONS (4th ed. 2002) ……………………………………… 10

**NOTICE OF MOTION AND MOTION**

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on November 17, 2022, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C of the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco on the 15th Floor, Plaintiffs Jane Roe 1 and Jane Roe 3 in *Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB (San Francisco Action) and Plaintiffs Jane Roe 1 and Jane Roe 2 in *Roe 1 and 2 v. Déjà Vu Services, Inc.*, No. 19-cv-03960-LB (San Diego Action transferred to this district) (collectively, "Plaintiffs"), whom the Court appointed as the Settlement Class Representatives in its Preliminary Approval Order, will and hereby do move the Court jointly, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Rule 23(c) and (e) of the Federal Rules of Civil Procedure, for final approval of the Release and Settlement Agreement, as amended (*see* Ex. B to ECF 239-1, at ECF page 47 *et seq.* and ECF 263-1 at Ex. 1) (the "Agreement" or the "Settlement"). The motion will be based on this Notice, the following Memorandum of Points and Authorities, the declaration of Mary Butler filed herewith, the other records, pleadings, and papers filed in this action, and any evidence or argument presented at the hearing on this motion.

DATED: September 6, 2022

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By: ______________________

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

*Attorneys for Plaintiffs and the Putative Class*

SOMMERS SCHWARTZ, PC

By: /s/ Jason J. Thompson

Jason J. Thompson, Esq. (*Pro Hac Vice*)

*Attorneys for Plaintiffs and the Putative Class*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Through this motion, Plaintiffs seek final approval of a proposed class settlement and certification of a class and collective action for settlement purposes. The parties reached settlement through arm's-length bargaining. The settlement will result in significant financial benefit to class members. The applicable notices clearly apprised class members of their rights to participate in, object to, or opt out of the settlement. There is no suggestion of anything other than good faith and fair dealing on all material issues related to the resolution of the action. Therefore, Plaintiffs respectfully submit that the proposed settlement warrants final approval.

## II. NATURE OF THE CASE AND PROCEDURAL HISTORY, AND SUMMARY OF KEY TERMS OF THE SETTLEMENT AGREEMENT

In the interests of efficiency, Plaintiffs refer the Court to (1) Plaintiffs' motion for preliminary approval of settlement, and (2) the Court's order that preliminarily approved the settlement, both of which describe the case and its procedural history. *See* Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, ECF No. 239 at 12:1-19:4; Preliminary Approval Order, ECF No. 268 at 2:9-7:16.[1] That motion and order also include summaries of the terms of the settlement agreement. *See* Plaintiffs' Motion for Preliminary Approval, ECF No. 239 at 19:5-24:24; Preliminary Approval Order, ECF No. 268 at 7:18-15:16; Release and Settlement Agreement, as amended (see Ex. B to ECF 239-1, at 47 *et seq.* and ECF No. 263-1 at Ex. 1) (the "Settlement Agreement," "Agreement," or "Settlement").

## III. KEY FACTS SINCE PRELIMINARY APPROVAL

The following are key events that have transpired, and new information that is available, since the Court granted preliminary approval of the class settlement on June 30, 2022.

### A. Notice Was Sent to the Settlement Class

Pursuant to the Court's order of preliminary approval, on June 30, 2022, Defendants' counsel provided the Court-appointed settlement administrator, Simpluris, Inc. ("Simpluris"),

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

with a mailing list containing each Settlement Class Member's legal name, most recent mailing address if available, email address if available, phone numbers if available, Social Security Numbers if available, and the amount of Form 1099 payments paid to each Class Member. See Declaration of Mary Butler Regarding Notice and Settlement Administration ("Butler Decl."), filed herewith, ¶ 5. The Class List contained data for 8,402 unique Class Members. *Id*.

On August 19, 2022, Simpluris sent a physical copy of the Court-approved Notice Packet, via the U.S. Postal Service, to 8,261 Settlement Class Members with a valid address. *Id.* ¶ 6. Prior to the mailing, Simpluris processed and updated the addresses utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* The NCOA contains changes of address filed with the U.S. Postal Service. *Id*. For any individual who had filed a change of address request with the U.S. Postal Service, Simpluris mailed the Notice Packet to the address listed with the NCOA. *Id*. For the 141 Settlement Class Members who did not have a valid address, Simpluris performed a skip trace search through Lexis Nexis (Accurint) and was unable to locate a valid address for these members and therefore a physical Notice Packet was not mailed to these 141 Settlement Class Members. *Id*. Of the 8,261 Notice Packets mailed, a total of 2,259 Notice Packets were returned to Simpluris. *Id*. Through advanced address searches (skip-trace), Simpluris located 1,770 updated addresses and promptly mailed a Notice Packet to those updated addresses. *Id*. As of the most recent reporting, there are 483 Notice Packets that remain undeliverable via USPS, reflecting 5.84% of the total Settlement Class. *Id.*

On August 19, 2022, Simpluris also sent the Court-approved notice via e-mail to 643 Settlement Class Members with a valid e-mail address. *Id*. Of the 643 emails sent, 14 were undeliverable. *Id*. ¶ 7.

To summarize, as of the most recent reporting, the notice has been successfully delivered to 92.57% of the Settlement Class by physical mailing and to 7.49% of the Settlement Class by e-mail. After accounting for individuals who were sent notice via both methods (*i.e.*, by physical mail and by e-mail), the notice has been successfully delivered to 93.78% of the Settlement Class. *Id*. ¶ 8.

Consistent with the Court's order of preliminary approval, the class notice specified a

deadline (postmark date) of October 17, 2022 for exclusions (opt-outs), objections, and for submission of dance fee payment election forms. *See id*. at ¶ 6, Ex. A.

Simpluris will submit an updated declaration after that deadline has passed (*i.e.*, after October 17, 2022) prior to the November 17, 2022 hearing on final approval. *Id*. ¶ 17.

**B. Online Posting of the Settlement Agreement and Operative Complaints**

As stated in the notice that was mailed and e-mailed to class members on August 19, 2022, a full copy of the Settlement Agreement and the operative complaints are online at [www.SFBSCsettlement.com](www.SFBSCsettlement.com) and have been since August 19, 2022 (*i.e.*, for the entire time since the class notice was mailed to the class members). *Id.* ¶ 14.

**C. Other Online Postings**

Information about the settlement has also been posted online at StripperWeb.com, on the IEAU website, and has also been distributed via Facebook, as detailed in the Settlement Administrator's declaration. *Id.* ¶ 15 & Exs. D-F.

**D. Positive Response by Settlement Class Members**

The response of Settlement Class members has been positive overall. As of the most recent reporting, only one class member had requested exclusion from the Settlement Class. *Id.* ¶ 11. The Settlement Administrator has not received any objections. *Id*. ¶ 12. Objections that had previously been filed were withdrawn prior to the Court's order granting preliminary approval, as the Court discussed in that order. *See* ECF No. 268 at 7.

## IV. LEGAL STANDARDS FOR CERTIFICATION OF SETTLEMENT CLASS AND FINAL APPROVAL OF CLASS SETTLEMENT

### A. Class Claims Settled Under Rule 23

#### 1. Criteria

Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement of the claims of a certified class is subject to the court's approval. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *Alberto* v. *GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs* v. *City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)).

That principle is subject to certain limitations when the parties to a class action agree to settle before a class is certified. To ensure that the proposed class is appropriate and protect the interests of absent members of the class, courts are required to "pay" undiluted, even heightened, attention "to class certification requirements" and consider whether the proposed settlement "taken as a whole" "is fundamentally fair, adequate, and reasonable." *Staton* v. *Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Amchem Prods. Inc.* v. *Windsor,* 521 U.S. 591, 620, 117 S. Ct. 2231 (1997) and quoting *Hanlon* v. *Chrysler Corp.,* 150 F.3d 1011, 1019, 1026 (9th Cir. 1998)). Thus, before it can approve the proposed settlement, the Court must determine whether the class satisfies all four criteria of Federal Rule of Civil Procedure 23(a) and one prong of Rule 23(b). *Alberto*, 252 F.R.D. at 659. The Court must also determine whether the proposed settlement terms are fair to the class as a whole, reasonable, and adequate. *Id.*

**2. Procedure**

Procedurally, the reviewing court's evaluation is conducted in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, the court conditionally certifies a class for settlement purposes, preliminarily approves the settlement pending the "fairness hearing," and authorizes notice of the proposed class settlement to be given to the class. *Id.* (citations omitted). *See also* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004) ("MANUAL FOR COMPLEX LITIGATION") (summarizing "preliminary fairness review"). In this case, the first stage has been completed.

Stage two is the fairness hearing, set for a time after notice has been provided to the class and class members have had an opportunity to submit claims or objections to the proposed settlement or to opt out. *Alberto,* 252 F.R.D. at 659 (citations omitted). At or after the fairness hearing, taking into account the responses of class members and any additional information gained, the court reaches a final determination about whether the proposed settlement should be approved. *Id*.

**B. Standards for Class Settlement of FLSA Claims**

Employee claims under the FLSA may not be settled without supervision of either the Secretary of Labor or a district court. The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon

which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness. In reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, at *6 (N.D. Cal. Dec. 19, 2012). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Yue Zhou v. Wang's Rest.,* 2007 U.S. Dist. LEXIS 60683, at *2-4 (N.D. Cal. Aug. 8, 2007) (citations omitted, brackets in original); *accord Stevens v. Safeway Inc.,* 2008 U.S. Dist. LEXIS 17119, at *12-13 (C.D. Cal. Feb. 25, 2008). The standard for approving a proposed settlement of FLSA claims "is similar to that used in evaluating settlements under Rule 23(e)": "the district court's role ... 'must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Stevens,* 2008 U.S. Dist. LEXIS 17119, at *l3-14 (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217, 103 S.Ct. 1219 (1983)).

## V. THE COURT SHOULD GRANT FINAL APPROVAL

### A. Conditional Certification of the Class for Settlement Purposes Is Warranted

The Court conditionally certified the class in its order granting preliminary approval of the settlement. *See* ECF No. 268 at 17:23-24. For the same reasons set forth in Plaintiffs' motion for preliminary approval, Plaintiffs request that the Court grant final approval of the settlement, including the certification of the Settlement Class as a collective action under the FLSA and certification of the class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* Plaintiffs' Motion for Preliminary Approval, ECF No. 239 at 25-42.

### B. The Proposed Settlement Is Fair, Reasonable, and Adequate

#### 1. The Court Already Granted Preliminary Approval

The Court granted preliminary approval of the settlement on June 30, 2022 (ECF No. 268). At that stage, the question was whether the proposed settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to class members informing them about the proposed settlement and their options for responding and participating. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also* MANUAL FOR COMPLEX LITIGATION § 21.632. "Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness and adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

**2. The Class Supports the Settlement**

The Court-approved notice was sent to the Settlement Class members on August 19, 2022. That notice informs the Settlement Class members regarding the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out or object to the settlement. While the deadline for exclusions and objections has not yet elapsed, the Settlement Administrator has reported that so far, only one (1) of the 8,402 putative class members have requested to be excluded, and no objections have been received. Objections that had previously been filed were withdrawn prior to the Court's order granting preliminary approval. *See* ECF No. 268 at 7.

The absence of a large number of opt-outs and objections demonstrates a general acceptance of the Settlement by Class Members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. Thus, the Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ching v. Siemens Indus.*, 2014 U.S. Dist. LEXIS 89002, at *18-19 (N.D. Cal. June 27, 2014) (citations and internal quotations omitted). *See also Corson v. Toyota Motor Sales U.S.A.*, 2016 U.S. Dist. LEXIS 46757, at *22-23 (C.D. Cal. Apr. 4, 2016) ("Here, KCC has received only one objection to the Settlement Agreement and 99 timely requests for exclusion. Given the small number of opt-outs and objections, the Court finds that this factor weighs in favor of final approval.") (citation omitted); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("Clearly, the number of objectors in this case fell well below the

four percent of objectors paraded in *Petrovic*. The district court has a duty to the silent majority as well as the vocal minority. While we agree that these vocal objectors should also be considered, we do not believe that disapproval of the settlement is warranted in this case.") (citations omitted) (citing *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999), *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995), *cert denied*, 517 U.S. 1156, 134 L. Ed. 2d 648, 116 S. Ct. 1544 (1996)). *See, e.g., Stoetzner v. U.S. Steel Corp*., 897 F.2d 115, 118-19 (3d Cir. 1990) (approving settlement where "only" 29 objections were made in a 281-member class); *Marshall v. NFL*, 787 F.3d 502, 513 (8th Cir. 2015) ("We have previously approved class-action settlements even when almost half the class objected to it."); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225, 1226-27 (8th Cir. 1982) (finding no abuse of discretion even though both named plaintiffs objected to it and 790 of approximately 3,000 members objected); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (180 of 400 inmates objecting).

**3. All Other Relevant Factors Also Support Final Approval**

Factors relevant to whether a proposed class settlement should be approved include: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). Another consideration is whether the settlement is "the product of collusion among the negotiating parties." *Id*. at 576.

<u>The Strength of the Plaintiffs' Case</u>

If the case were to proceed to trial and Defendants convinced the finder of fact that Plaintiffs were not misclassified, the total damages for the class members could be zero. If Plaintiffs were to prevail on liability at trial, then the amount of damages awarded could fall within a wide range, based on the number of workdays in which a class member's pay fell below the minimum wage, the statute of limitations, and the potential punitive damages, among other factors. For example, if Defendants established that any violation was not

willful, the third year of the statute of limitations would be eliminated for the FLSA claims. If, on the other hand, Plaintiffs convinced the finder of fact that class members were entitled to many hours per week of overtime pay, and succeeded in obtaining a three-year statute of limitations under the FLSA, the total classwide damages would be higher.

Because the variables in a wage-and-hour damage analysis cause the numbers to vary so widely, as shown above, it is often difficult to pinpoint a realistic "potential recovery" in a wage-and-hour case such as this one. Plaintiffs' best-case damages estimate is $45.8 million.[2] Accordingly, the proposed settlement, the value of which is at least $6.5 million, is clearly substantial.[3] This is not a settlement where the aggregate value is large simply because the size of the class is in the tens or hundreds of thousands. Instead, class members are eligible to recover significant financial benefit. These considerations indicate that the proposed settlement is adequate and reasonable. This conclusion is reinforced by considering such factors as the risk that a class might not be certified or might be significantly smaller than proposed, and the time, expense, and complexity of the litigation, including risk associated with the pending appellate proceeding and the possibility of further appellate proceedings. In light of Plaintiffs' counsel's analysis of the estimated value of the claims, the gross settlement amount is adequate and reasonable.

While Class Counsel believe that Plaintiffs' claims are meritorious, they are experienced class action litigators, and understand that the outcome of Plaintiffs' anticipated motion to certify the class, Defendants' anticipated motion to decertify the class, trial, and any further appeals were inherently uncertain, as well as likely to consume many more months, even years. Having extensively investigated the facts and researched the pivotal legal and factual issues, counsel for the parties, experienced class action litigators well versed in wage and hour law, arrived at a

[2] *See* Preliminary Approval Order of June 30, 2022, ECF No. 268 at 19 & n.68 (citing Thompson Decl., *id*. – ECF No. 239-1 at 8–10 (¶¶ 26–34), 31–32 (¶ 113)).

[3] *See* Preliminary Approval Order of June 30, 2022, ECF No. 268 at 9:9-11 ("The total Settlement Consideration is at least $6.5 million (all non-reversionary), divided into a Cash Pool of $4 million, a Dance Fee Pool of $500,000, and changed business practices valued at a minimum of $2,000,000."). *See* Supplemental Brief, ECF No. 263 at 4:28-5:4.

reasonable resolution through a protracted and arm's-length mediation and negotiation process, which continued into all details of the settlement agreement and the proposed class notice.

The Risk, Expense, Complexity, And Likely Duration of Further Litigation

The Court must weigh the benefits of the proposed settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *See, e.g., Officers for Justice,* 688 F.2d at 625; *Young v. Katz,* 447 F.2d 431, 433-34 (5th Cir. 1971). The policy that favors settlement of class actions and other complex cases applies with particular force here. Employment cases, and specifically wage and hour cases, are expensive and time-consuming. That this is a class action further amplifies the economies of time, effort, and expense achieved by the settlement. The settlement, on the other hand, provides to all class members substantial relief, promptly and efficiently. The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *Van Bronkhorst* v. *Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also* 4 NEWBERG ON CLASS ACTIONS § 11.41 (citing cases).

Indeed, there are significant risks that the putative class would face if the litigation were to continue.

First, there is the risk that no FLSA collective or Rule 23 class would be certified, the risk that an order certifying an FLSA collective or a Rule 23 class would be overturned on appeal, and the risk that a certified class would later be decertified, each of which is a significant risk in a case such as this. *See, e.g., Tijerino v. Stetson Desert Project LLC*, No. CV-15-2563-PHX-SMM, 2017 U.S. Dist. LEXIS 150438 (D. Ariz. June 21, 2017) (order in case alleging exotic dancer misclassification denying plaintiff's renewed motion for conditional certification under the FLSA, and accordingly not authorizing notice to potential FLSA opt-ins); *David v. Bankers Life & Cas. Co.*, 2015 WL 3994975, at *8 (W.D. Wash. June 30, 2015) (granting defendant's motion to decertify class in case alleging misclassification of insurance agents as independent contractors, reasoning that "individualized fact questions" as to each agent's work experience would "predominate over common ones."); *Collins v. Barney's Barn, Inc.*, 2013 WL 1668984, at *1 (E.D. Ark. Apr. 17, 2013) (denying motion for conditional certification of an FLSA collective in

a case alleging that exotic dancers were misclassified as independent contractors); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 189 (S.D.N.Y. 2010) (declining to certify class of workers claiming to be employees where case required "an individualized assessment of [defendant's] relationship" with each worker); *Carter v. Figueroa Grp., Inc.*, 2013 WL 5945725, at *3 (Cal. Ct. App. Nov. 7, 2013) (affirming denial of plaintiff's motion for class certification in a case alleging misclassification of exotic dancers as independent contractors where "the weight of the evidence showed [the club] did not control the manner and means by which the dancers' work was performed, and determined appellant failed to show 'that common questions can be used to determine the degree of control exercised by Defendant over the dancers.'"); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1350, 1354 (2009) (affirming trial court's order denying motion for class certification in case alleging misclassification of taxi drivers as independent contractors, reasoning that "[a]lthough the leases and training manuals [were] uniform, the [trial] court reasonably found the testimony of putative class members would be required on the issues of employment and fact of damage").

Second, there is the risk that Plaintiffs could lose on the merits, either on summary judgment or at trial. In many exotic dancer misclassification cases, plaintiffs have lost on the merits. In *Tijerino v. Stetson Desert Project LLC*, No. CV-15-2563-PHX-SMM, 2017 U.S. Dist. LEXIS 150438 (D. Ariz. June 21, 2017), Judge Stephen McNamee of the United States District Court for the District of Arizona ruled that exotic dancers at Le Girls Gentlemen's Club in Phoenix failed to establish that they were employees and thus denied conditional certification of their FLSA claim. While Judge McNamee acknowledged several cases in which Courts found that exotic dancers had been misclassified, he also found that the issue must be determined on a case-by-case basis. Id. at *5-6. Notably, based on the evidence produced and arguments made by Defendants throughout this litigation, they may be able to draw several comparisons to the facts in *Tijerino*. Moreover, the question of whether exotic dancers are misclassified has been litigated in San Francisco and was decided in the favor of one of the very same nightclubs in this case (Chowder House, Inc. d/b/a/ Hungry I). *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an

independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm.”). *See also Marlar v United States*, 151 F.3d 962, 966 (9th Cir. 1998) (“[t]he government has never contended that the dancers are employees as a matter of law, and for good reason: because the dancers have discretion in deciding for whom, when and how to perform, there is a serious question as to whether they are employees.”); *Matson v. 7455, Inc.*, 2000 WL 1132110, at *4 (D. Or. Jan. 14, 2000) (“the plaintiff has failed to establish any material fact disputing her status as an independent contractor. Accordingly, her F.L.S.A. claim cannot survive summary judgment.”); *Hilborn v. Prime Time Club, Inc.*, 2012 WL 9187581, at *1 (E.D. Ark. July 12, 2012) (finding that exotic dancers were not “employees” under the FLSA or state law, and granting summary judgment in favor of the defendant). In this case, numerous affirmative defenses have been pleaded that, if successful, could bar any recovery. ECF No. 63 (Answer to First Amended Complaint).

The above-described risks favor final approval.

<u>The Risk of Maintaining Class Action Status Throughout The Trial</u>

As discussed above, there is the risk that no FLSA collective or Rule 23 class would be certified, the risk that an order certifying an FLSA collective or a Rule 23 class would be overturned on appeal, and the risk that a certified class would later be decertified, each of which is a significant risk in a case such as this. Plaintiffs have argued, and would continue to argue if the case were to proceed, that class action status is warranted in this case. Nevertheless, the risk of decertification is a factor that favors approval of the settlement. *See generally Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (district court may decertify a class at any time). Accordingly, this factor favors final approval.

<u>The Amount Offered in Settlement</u>

In an analogous class action, the court aptly observed that it would have been irrational for most, and probably all, class members to pursue their claims on an individual basis “because of the disparity between their litigation costs and what they hope to recover.” *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (noting that “[t]his case involves multiple claims for relatively small individual sums”).

The recovery provided through the settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ...." *Officers for Justice,* 688 F.2d at 634 (citation omitted). Accordingly, the settlement is not to be judged against a speculative measure of what might have been achieved. *Linney* v. *Cellular Alaska P'ship,* 151 F .3d 1234, 1242 (9th Cir. 1998). An additional consideration is that the settlement provides for payment to the class now, rather than many years down the road, if ever. *See City of Detroit* v. *Grinnell Corp.,* 495 F .2d 448, 463 (2d Cir. 1974).

Thus, considering the probability of lengthy litigation in the absence of a settlement, the risk of not prevailing at trial or on appeal, and the risk of being compelled to arbitration, it is no exaggeration to predict that without using the class action process, the relief that individual members of the class were likely to achieve ranged from negligible to zero. Consequently, the settlement satisfies the criterion of adequacy. *See* MANUAL FOR COMPLEX LITIGATION § 21.62 ("Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.").

A comparison of this settlement to the settlements in other wage-and-hour cases alleging misclassification of exotic dancers provides an additional basis for finding that the settlement is adequate.

<u>First</u>, in *Jane Doe v. Cin-Lan, Inc.*, Case No. 2:08-CV-12719 (E.D. Mich.), the court approved a classwide settlement of $11.3 million for a settlement class consisting of 22,087 exotic dancers. That settlement provided for a maximum of $1,333,333 for dancer cash claims out of a cash pool of $2 million, distributed to claimants in an amount of $50 per performance date up to a maximum of $500 per claimant, subject to the limitation that if claims exceeded $1,333,333, the payments would be reduced on *pro rata* basis to $1,333,333 total. *See* ECF No. 128 at 6-90 (Ex. 1) (settlement), §§ 5.2.1, 5.4.4, 5.5. That settlement also provided for a "Dancer Rent Credit Pool" of $9 million that could be claimed by class members who do not submit cash claims and do not opt out, subject to maximums of $100 for class members who performed 10 or fewer

performance dates, $500 for class members who performed 11 to 24 performance dates, and $1,000 for class members who performed more than 24 performance dates. *Id*. §§ 3.20, 5.2.2, 5.6, 5.6.1, 5.6.3. *See also* ECF No. 128 at 91-97 (Ex. 2) (order granting final approval).

Second, in *Nuno v. Shac, LLC et al*., Case No. A-09-602800-C (Clark County Nevada), the court approved a classwide settlement of $6 million for a settlement class of approximately 10,000 exotic dancers. *See* ECF No. 128 at 98-118 (Ex. 3) (settlement); ECF No. 128 at 119-132 (Ex. 4) (docket reflecting order granting final approval).

Third, in *Trauth v. Spearmint Rhino Companies Worldwide*, Case No. 5:09-cv-01316 (C.D. Cal.), the court approved a classwide settlement of $12.97 million for a settlement class of more than 11,000 exotic dancers. *See* ECF No. 128 at 133-314 (Ex. 5) (settlement agreement). *See also Trauth v. Spearmint Rhino Cos. Worldwide*, 2012 U.S. Dist. LEXIS 144816 (C.D. Cal. Oct. 5, 2012) (order granting final approval).

Fourth, in *Does 1-2 v. Déjà Vu Services, Inc.*, Case No. 2:16-cv-10877 (E.D. Mich.), the court granted final approval to a settlement of $6.5 million for a class consisting of "[b]etween 45,000 and 50,000 dancers at 64 clubs nationwide." *See* ECF No. 128 at 315-412 (Ex. 6). *See also Doe v. Deja Vu Servs.*, 2017 U.S. Dist. LEXIS 18369, at *4 (E.D. Mich. Feb. 9, 2017) ("The Court has granted preliminary approval to the parties' settlement agreement and found the settlement terms reasonable, fair, and adequate."); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *8 (E.D. Mich. June 19, 2017) ("The Court finds the settlement is the result of a bona-fide dispute, and the terms established in the settlement are a fair, reasonable, and adequate resolution of the claims.") (overruling objections and granting final approval).

The value of the settlement should also be weighed against the risk of no recovery. It bears noting that, in 2004, when the question of whether exotic dancers are misclassified was litigated in San Francisco against one of the very same nightclubs in this case, the jury returned a verdict in the favor of the defendant, awarding *nothing* to the plaintiff (Chowder House, Inc. d/b/a/ Hungry I). *See Buel v. Chowder House, Inc.*, 2006 WL 1545860 (Cal. App. June 7, 2006) ("On appeal, Buel contends that the jury erred in finding her to be an independent contractor. We conclude that the jury verdict was supported by substantial evidence and affirm.").

A comparison of the amount obtained through settlement with Plaintiffs' best-case damages estimate of $45.8 million further demonstrates that the amount of the settlement is adequate.[4] As the Court stated in its order granting preliminary approval: "Courts routinely assess a class's recovery by comparing the gross rather than net settlement amount to the best-case damages scenario, *see, e.g., Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *2, *7–8 (N.D. Cal. Oct. 11, 2016), and twelve percent of the best-case scenario is within the range courts approve." *See* ECF No. 268 at 19-20 (citing cases). Indeed, a "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice,* 688 F.2d at 628) (internal quotation marks omitted). *See, e.g., Strube v. Am. Equity Investment Life Ins. Co*., 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Toys R Us-Del., Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) (granting final approval of a settlement providing for consideration reflecting 3% of possible recovery); *Reed v. 1-800 Contacts, Inc.*, 2014 U.S. Dist. LEXIS 255, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval where settlement represented 1.7% of possible recovery (net settlement fund of $8,288,719.16, resolving claims worth potentially $499,420,000)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 986 F. Supp. 2d 207, 229 (E.D.N.Y. 2013) (granting final approval to antitrust class action settlement representing approximately 2.5% of the highest damages estimate as "within the range of reasonableness in light of the best possible recovery and in light of all the attendant risks of litigation"); *City of Detroit,* 495 F.2d at 455 n.2 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

Accordingly, this factor favors final approval.

<u>The Extent of Discovery Completed and The Stage of the Proceedings</u>

[4] *See* Preliminary Approval Order, ECF No. 268 at 19 & n.68 (citing Thompson Decl., id. – ECF No. 239-1 at 8–10 (¶¶ 26–34), 31–32 (¶ 113)).

Plaintiffs' counsel conducted an extensive investigation of the claims and defenses in this case, including reviewing payroll data for the nightclubs at issue. As a result, Plaintiffs' counsel was in a position to make informed decisions regarding settlement. This favors final approval.

The Experience and Views of Counsel

Plaintiffs' counsel are experienced class action litigators, and they recommend the settlement. This factor favors final approval.

The Presence of a Governmental Participant

This factor is inapplicable and neutral because no government entity participated in the case, but if the Court were to consider this factor, it could find that despite notice to relevant federal and state authorities as required by the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"), none objected to the settlement or submitted adverse comments concerning it, and therefore conclude that this factor favors final approval. *See Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is inapplicable and neutral because no government entity participated in the case. The court notes, however, that despite notice to relevant federal and state authorities as required by CAFA, none objected to the settlement or submitted adverse comments concerning it. If the court were to consider this factor, therefore, it would conclude that it favored a finding that the settlement is fair and reasonable.") (citing *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *12 (N.D. Cal. Nov. 16, 2007) ("Because numerous governmental agencies . . . were given notice of the settlement and have not objected, this factor weighs in favor of the settlement")).

The Reaction of the Class Members to The Proposed Settlement

As described above, the overall reaction of the class members reflects support of the settlement. This favors final approval.

The Proposed Settlement Is Non-Collusive

As the Court found in its order granting preliminary approval, "the settlement is the product of serious, non-collusive, arm's-length negotiations. It was reached after multiple mediations and extensive settlement negotiations over the course of years, as detailed above." *See* ECF No. 268 at 26.

For all the above reasons, and the for the reasons set forth in the filings that that Court considered in granting preliminary approval of the settlement, Plaintiffs respectfully request that the Court find that the Settlement Agreement is fair and reasonable, and grant final approval.

## VI. THE PAGA PROVISIONS ARE REASONABLE

The Settlement provides for total PAGA payments of $125,000 (75% of which will be allocated as the LWDA PAGA Payment and the remaining 25% of which will be allocated as the Settlement Class Members' PAGA Payment). *See* ECF No. 239-1 at 80:9-11, 84:21-86:2 (§§ 6.2-6.3). That distribution formula, is reasonable, fair, and consistent with California case law. *See generally Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1148 (2012) (discussing the "general rule" regarding the 75/25 split), *disapproved of on other grounds by ZB, N.A. v. Superior Ct.*, 8 Cal. 5th 175, 448 P.3d 239 (2019). Moreover, the settlement's allocation of $125,000 for resolution of the PAGA claims reflects a reasonable valuation of those PAGA claims relative to the other claims in the action, and is in line with PAGA payments in other settlements that courts have approved. *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, at *25-*31 (N.D. Cal. Oct. 11, 2016) (finding that, in the context of a $6 million settlement, a PAGA payment of $20,000 was reasonable); *Williams v. Brinderson Constructors, Inc.*, 2017 WL 490901, at *13-*14 (C.D. Cal. Feb. 6, 2017) (finding that, in the context of a $300,000 settlement, a PAGA payment of $10,000 was reasonable); *Franco v. Ruiz Food Prods., Inc.*, 2012 U.S. Dist. LEXIS 169057, at *41-*42 (E.D. Cal. Nov. 27, 2012) (finding that, in the context of a $2.5 million settlement, a PAGA payment of $10,000 was reasonable and in line with settlement approval of PAGA awards in other cases) (citing cases); *Nikmanesh v. Wal-Mart Stores Inc.*, 2016 WL 6236446, at *4 (C.D. Cal. Oct. 17, 2016) (granting preliminary approval of $800,000 settlement that included PAGA payment of $5,000).

## VII. CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

//

//

//

DATED: September 6, 2022

Respectfully submitted,

THE TIDRICK LAW FIRM LLP

By: [signature]

STEVEN G. TIDRICK, SBN 224760
JOEL B. YOUNG, SBN 236662

*Attorneys for Plaintiffs and the Putative Class*

SOMMERS SCHWARTZ, PC

By: /s/ Jason J. Thompson

Jason J. Thompson, Esq. (*Pro Hac Vice*)

*Attorneys for Plaintiffs and the Putative Class*